IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUNE MEDICAL SERVICES LLC d/b/a HOPE MEDICAL GROUP FOR WOMEN, on behalf of its patients, physicians, and staff; BOSSIER CITY MEDICAL SUITE, on behalf of its patients, physicians, and staff; CHOICE, INC., OF TEXAS d/b/a CAUSEWAY MEDICAL CLINIC, on behalf of its patients, physicians, and staff, JOHN DOE 1, M.D., and JOHN DOE 2, M.D.,<br><br>      Plaintiffs,<br><br> v.<br><br>JAMES DAVID CALDWELL, in his official capacity as Attorney General of Louisiana; JIMMY GUIDRY, in his official capacity as Louisiana State Health Officer & Medical Director of the Louisiana Department of Health and Hospitals; and MARK HENRY DAWSON, in his official capacity as President of the Louisiana State Board of Medical Examiners,<br><br>      Defendants. | Case No. 3:14-cv-525 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COMES NOW Plaintiffs June Medical Services LLC (d/b/a Hope Medical Group for Women) ("Hope"), Bossier City Medical Suite ("Bossier"), and Choice, Inc. of Texas (d/b/a Causeway Medical Clinic) ("Causeway"), on behalf of their patients, physicians and staff (collectively, "Clinic Plaintiffs"), JOHN DOE 1, M.D., on behalf of himself and his patients, and JOHN DOE 2, M.D., on behalf of himself and his patients (together with the Clinic Plaintiffs, "Plaintiffs"), by and through their undersigned attorneys, and for their Complaint

dc-767422

against Defendants James David Caldwell, in his official capacity as Attorney General of Louisiana, Dr. Jimmy Guidry, in his official capacity as State Health Officer and Medical Director of the Louisiana Department of Health and Hospitals ("DHH"), and Mark Henry Dawson, in his official capacity as President of the Louisiana State Board of Medical Examiners, state as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for declaratory and injunctive relief brought under the United States Constitution and 42 U.S.C. § 1983, to challenge the constitutionality of Louisiana House Bill 388, Regular Session (2014), to be codified at La. Rev. Stat. § 40:1299.35.2 ("H.B. 388" or the "Act").

2.      The Act requires that every doctor who provides abortions have active admitting privileges at a hospital not more than thirty miles from where the abortion is performed, and gives doctors a mere eighty-one days to comply, an impossible task in light of the fact that the hospitals within the area proscribed by the statute can take anywhere from 90 days to seven months to decide on a doctor's privileges application.

3.      Despite this and other obstacles, each doctor who does not currently have such privileges at Clinic Plaintiffs has submitted at least one application at a hospital within thirty miles of the clinic.

4.      Upon information and belief, if the statute is enforced on its effective date of September 1, 2014, it is not at all clear that any doctor currently providing abortions at a clinic in Louisiana will be able to continue providing those services, thereby eliminating access to legal abortion in Louisiana.

5. As such, the admitting privileges requirement threatens irreparable injury to the Clinic Plaintiffs, their staff, and their patients, including, but not limited to, by depriving Plaintiff's patients' of their constitutional right to an abortion.

6. Plaintiffs seek declaratory and injunctive relief from these constitutional deprivations.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4).

8. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district, and the majority of Defendants, who are sued in their official capacities, carry out their official duties at offices located in this district.

## PARTIES

10. Plaintiffs are 3 of only 5 clinics that provide abortions in the entire state of Louisiana.

11. Hope is a women's reproductive health clinic located in Shreveport, Louisiana, and has been providing care since 1980.  Hope is a member of the National Abortion Federation, and is licensed and inspected annually by DHH.  In addition to abortion services, Hope provides contraception, pregnancy testing and counseling, adoption referrals, community and health professional education programs, and speaker services available to high schools,

colleges, and organizations to present information on birth control, abortion, adolescent sexuality and decision-making, and sexually transmitted diseases. Hope sues on its own behalf and on behalf of its physicians, staff and patients.

12. Bossier is a women's reproductive health clinic that has been operating in Bossier City since 1980, and provides both first and second trimester abortion services. In addition to abortion services, Bossier City offers pregnancy tests, ultrasounds, and pap smears to returning patients. Bossier City sues on its own behalf and on behalf of its physicians, staff and patients.

13. Causeway has been providing abortion and reproductive health services to the women of Louisiana since 1999. It is located in Metairie, Louisiana, and provides both first and second trimester abortions services. In addition to abortion services, Causeway offers pregnancy testing, ultrasounds, and pap smears to returning patients. Causeway sues on its own behalf and on behalf of its staff and patients.

14. Plaintiff Dr. John Doe 1, M.D., is a board-certified medical doctor specializing in obstetrics and gynecology with over 8 years of experience. He is one of two clinic physicians at Hope providing women's health services to the clinic's patients, including providing abortion services. Plaintiff Doe 1 sues on his own behalf and on behalf of his patients.

15. Plaintiff Dr. John Doe 2, M.D., is a board-certified obstetrician-gynecologist ("ob-gyn") with over 34 years of experience in women's health. He is one of two clinic physicians at Causeway, and the only clinic physician at Bossier who provides abortion services. Plaintiff Doe 2 sues on his own behalf and on behalf of his patients.

**DEFENDANTS**

16. James David Caldwell is the Attorney General of the state of Louisiana. As Attorney General, Defendant Caldwell has the authority to enforce the Act. He is sued in his official capacity.

17. Jimmy Guidry is the Louisiana State Health Officer and Medical Director of the Louisiana Department of Health and Hospitals. The Department of Health and Hospitals has the authority to revoke or deny clinics' licenses for violation of this or any other law. La. Rev. Stat. § 40:2175.6. He is being sued in his official capacity.

18. Mark Henry Dawson is the President of the Louisiana State Board of Medical Examiners. The State Board of Medical Examiners has the authority to take disciplinary action against a physician who violates this or any other law. La. Rev. Stat. § 37:1263 et seq. He is being sued in his official capacity.

**FACTUAL ALLEGATIONS**

19. Legal abortion is one of the safest procedures in medical practice. Abortion complications are exceedingly rare: nationwide, less than 0.3% of abortion patients experience a complication that requires hospitalization. The Clinic Plaintiffs' hospitalization rates are even lower: at Hope, over the last 20 years, just 0.007% of patients experienced complications requiring hospitalization. At Bossier, the complication rate is only 0.004% for the past 5 years, and Causeway's complication rate for the past 5 years was just 0.0009%.

20. Even though abortion is exceedingly safe, Plaintiffs provide high quality care in the rare event of complications requiring hospitalization. Although most complications related to abortions are safely and appropriately managed in the clinic setting, in the rare event that a

patient needs to be transferred to a hospital, Plaintiffs have robust policies in place to ensure a high level of care.

21. Complications from abortion are not only rare, but the few complications that do occur may not present until after a patient has left the clinic. Upon discharge, Plaintiffs provide their patients with phone numbers to call if they experience complications or have concerns at any time after they have left the clinic. In rare cases where emergency care is required, Plaintiffs' staff will refer the patient to a local emergency room, as is also consistent with the standard of care.

22. Many of Plaintiff Clinics' patients travel from other parts of the state, or from neighboring states, to reach the clinic. If these patients experience a complication that requires emergency treatment after they have returned home, it is the standard of care to refer the patient to the hospital closest to her, rather than to require the patient to travel in an emergency situation to a hospital where her physician may have admitting privileges.

23. In the event that a patient does require post-procedure care at a hospital, patients typically are treated by the emergency room doctors on an outpatient basis and released. To the extent complications arise, the majority are similar to those encountered by women experiencing miscarriage, which emergency room doctors can, and routinely do, handle.

24. Requiring abortion providers to have hospital admitting privileges, therefore, does not increase patient safety and is medically unnecessary.

## THE ACT AND ITS IMPACT

25. The Act provides that every doctor who provides abortions must "have active admitting privileges at a hospital that is located not further than thirty miles from the location at which the abortion is performed or induced and that provides obstetrical or gynecological

health care services ("admitting privileges requirement"). Exhibit 1[1] at § (A)(2)(a) (amending La. Rev. Stat. § 1299.35.2). "Active admitting privileges" means that "the physician is a member in good standing of the medical staff of a hospital that is currently licensed by the department, with the ability to admit a patient and to provide diagnostic and surgical services to such patient." *Id*.

26.     Any doctor who violates this provision is subject to a fine of not more than four thousand dollars. *Id*. at § (A)(2)(c). Furthermore, failure to comply with the admitting privileges requirement will subject a clinic to adverse licensure action, up to and including license revocation. *Id*. at § (A)(1).

27.     No physician who provides abortions at Bossier City or Causeway has admitting privileges at a hospital within 30 miles of the clinic. Although one physician at Hope has admitting privileges, the physician who provides the majority of abortions at Hope does not.

28.     Although all of Clinic Plaintiffs' physicians who do not have admitting privileges have applied for such privileges at a local hospital, there is not enough time for the hospitals to consider and decide the submitted applications before the Act takes effect. The process of applying for privileges and receiving a decision from a hospital on such an application can and generally does take months.

29.     Hospitals have discretion in granting admitting privileges to doctors, and can deny privileges for reasons unrelated to qualification, such as a minimum number of guaranteed hospital admissions per year; political, ideological, or religious reasons; or based on residency requirements.

30.     If the Act takes effect, Plaintiffs Hope, Bossier, and Causeway will stop providing abortion services. It is not at all clear that either of the other two clinics in Louisiana who

---

[1] Exhibit 1 to Plaintiffs' Motion for Preliminary Injunction, filed August 22, 2014.

dc-767422

currently provide abortions will able to continue to do so as of September 1, because none of the doctors who perform abortions there currently have admitting privileges at a qualifying hospital.  The Act, therefore, will make legal abortion unavailable in the state of Louisiana.

31.     Louisiana law does not require a physician providing any type of medical procedure other than abortion to have admitting privileges at a local hospital.  Physicians perform similar, and often higher risk, outpatient procedures in their offices without admitting privileges.

## IRREPARABLE INJURY

32.     Plaintiffs and their patients will suffer irreparable harm from the violation of their constitutional rights if the Act goes into effect.

33.     The Act will force Plaintiffs to close their clinics and will prevent them from providing comprehensive reproductive health care to their patients.  It is not at all clear that either of the other two clinics currently providing abortions in Louisiana could continue to do so as of September 1.

34.     The Act will jeopardize women's health, shutting down health centers that provide abortions without medical justification, and either eliminate or severely limit the availability of abortions in the state.  As a result, many Louisiana women will be forced to carry their pregnancies to term, while other may resort to self-abortion.

35.     Even if some women are able to obtain an abortion in Louisiana after the Act takes effect, by severely reducing the number of legal abortion providers in the state, the Act will force women to incur additional travel costs and delays in obtaining an abortion.  Although abortion is one of the safest surgical procedures, the risk of complications, as well as the cost of the procedure, increases as the pregnancy advances.  Given that many of Plaintiffs'

patients live below the federal poverty line, the increased costs alone will make it impossible for some women to obtain an abortion.

36. The Act will therefore irreparably harm Plaintiffs' patients in two ways: threatening the health of women seeking abortions, and depriving women of their constitutionally protected right to obtain a pre-viability abortion.

## CLAIMS FOR RELIEF

## COUNT I

### (Procedural Due Process)

37. The allegations of paragraphs 1 through 34 are incorporated as though fully set forth herein.

38. The Act violates Plaintiffs' rights not to be deprived of liberty and property without due process of law in violation of the Fourteenth Amendment to the U.S. Constitution.

## COUNT II

### (Substantive Due Process – Right to Privacy)

39. The allegations of paragraphs 1 through 34 are incorporated as though fully set forth herein.

40. The Act violates Plaintiffs' patients' right to liberty and privacy as guaranteed by the due process clause of the Fourteenth Amendment to the U.S. Constitution because it has the unlawful purpose and effect of imposing an undue burden on women's right to choose abortion before viability.

WHEREFORE, Plaintiffs respectfully request that the Court:

1. declare Louisiana House Bill 388, Regular Session (2014), unconstitutional under the Fourteenth Amendment to the United States Constitution;

2. without bond, enjoin Defendants, their employees, agents, and successors in office from enforcing H.B. 388;

3. award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. grant Plaintiffs such other, further, and different relief as the Court may deem just and proper.

Respectfully submitted this 22nd day of August, 2014.

/s/ William E. Rittenberg
William E. Rittenberg
Louisiana State Bar No. 11287
RITTENBERG, SAMUEL AND PHILLIPS, LLC
715 Girod St.
New Orleans, LA 70130-3505
(504) 524-5555
rittenberg@rittenbergsamuel.com

Ilene Jaroslaw (*pro hac vice* pending)
CENTER FOR REPRODUCTIVE RIGHTS
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3697
ijaroslaw@reprorights.org

Dimitra Doufekias  (*pro hac vice* pending)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006-1888
(202) 887-1500
ddoufekias@mofo.com
*Trial Attorney*

*Attorneys for Plaintiffs*
*June Medical Services LLC d/b/a Hope Medical Group for Women, Bossier City Medical Suite, Choice Inc., of Texas d/b/a Causeway Medical Clinic,  John Doe 1, M.D., and John Doe 2, M.D.*

dc-767422