UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUNE MEDICAL SERVICES LLC d/b/a HOPE MEDICAL GROUP FOR WOMEN, on behalf of its patients, physicians, and staff; BOSSIER CITY MEDICAL SUITE, on behalf of its patients, physicians, and staff; CHOICE, INC., OF TEXAS, d/b/a CAUSEWAY MEDICAL CLINIC, on behalf of its patients, physicians, and staff, JOHN DOE 1, M.D., AND JOHN DOE 2, M.D., <br><br> v. <br><br> KATHY KLIEBERT, in her official capacity as Secretary of the Louisiana Department of Health and Hospitals and MARK HENRY DAWSON, M.D., in his official capacity as President of the Louisiana State Board of Medical Examiners, | CIVIL ACTION <br><br> NO.14-525-JWD-RLB |

**CONSOLIDATED WITH**

| | |
|---|---|
| WOMEN'S HEALTH CARE CENTER, INC., on behalf of its patients, physicians, and staff; DELTA CLINIC OF BATON ROUGE, INC., on behalf of its patients, physicians, and staff; JOHN DOE 5, M.D., on behalf of himself and his patients, <br><br> v. <br><br> KATHY KLIEBERT, in her official capacity as Secretary of the Louisiana Department of Health and Hospitals and MARK HENRY DAWSON, M.D., in his official capacity as President of the Louisiana State Board of Medical Examiners, | CIVIL ACTION <br><br> NO. 14-597-JWD-RLB |

**SECOND ORDER CLARIFYING TEMPORARY RESTRAINING**
**ORDER OF AUGUST 31, 2014**

The procedural history of this case prior to this Court's November 3, 2014 Order Clarifying

Temporary Restraining Order of August 31, 2014 (Doc. 57) is set forth in that ruling. On December

5, 2014, the newly joined Women's Health Plaintiffs moved to dismiss their case without prejudice. (Doc. 70.) The Court invited briefs regarding the effect this dismissal might have, if any, on the Court's existing temporary restraining order. (Doc. 73.) The Court has read and considered those briefs. (Docs. 74, 75 and 76.) On December 11, 2014, Plaintiff's Motion to Dismiss was granted with the consent of all parties. (Doc. 77.) Having reviewed the pleadings, the Court concludes that its TRO of August 13, 2014 (Doc. 31) as clarified by its ruling of November 3, 2014 (Doc. 57) remains in force and is unaffected by the dismissal of the Women's Health Plaintiffs.

> In its previous ruling, the Court stated the following in clarifying its TRO:
>
> It was and is the intention of this Court that the TRO remain in effect as to all parties before it until the end of the Preliminary Injunction Hearing. As the Defendants correctly stated, "Defendants do not see how the Court can decide the underlying merits issue, even at the preliminary injunction phase, if the factual picture remains in flux." (Doc. 38, p. 2.) The Court also agrees with the contention of Plaintiffs that if the TRO did not remain in effect with regard to each of the Plaintiff clinics and their doctors (even as to the doctors' whose applications have been acted upon), the Court would necessarily have to entertain as many as five separate TRO applications which would be disruptive and time-consuming not only to the Court but also to the parties in their efforts to complete discovery before the March 30, 2015 hearing.
>
> Furthermore, trying these TROs separately as each physician's application is acted upon would necessarily require the Court to rule in each case on an incomplete record, before the full impact of the law can be measured. On the other hand, the Court finds that, by maintaining the status quo until the preliminary injunction hearing, Defendants will suffer no irreparable harm or substantial prejudice.
>
> At the time the TRO was originally issued, the Court had before it only three of five clinics and two of an unknown number of physicians performing abortions in the State of Louisiana. (Doc. 31, p. 17, citing Decl. of Kathleen Pittman, Doc. 5-3, p. 2-3.) The record was therefore unclear regarding important questions bearing on the central issue of the potential undue burden of the law on Louisiana women's right to an abortion. "How many patients do these other two facilities treat? How many doctors practice there? How many of these doctors have applied for admitting privileges and what is the status of their applications? If these other two facilities remain open (or don't), what would be the overall effect in terms of the time and distance patients would need to travel in order to receive their care? This, and other information not currently before the court, would be relevant in measuring the impact on the constitutional right. See, e.g. *Abbott*, 748 F.3d 583 (5th Cir. 2014). Based on

the record before it *at this time*, the Court finds that Plaintiffs have not shown a substantial likelihood of success on this ground." (Doc. 31, p. 8, 17-18, emphasis added.)

But the circumstances have changed significantly since the Court's original ruling. Now, all five facilities providing abortions in Louisiana are before the Court. Also before the Court are four of the six physicians who perform abortions in Louisiana: Drs. Doe 1, 2, 5 and 6. (Docs. 50 and 51.) Although Dr. Doe 4 is not a party, he is providing to the Court, through counsel for the June Medical Plaintiffs, information regarding the status of his applications for admitting privileges. (Doc. 51.) Dr. Doe 3 has submitted a Declaration in which he states that he has admitting privileges at a hospital within 30 miles of where he performs abortions but if the applications of the other physicians are denied and he is the only physician performing abortions in Louisiana, he will discontinue performing abortions because of fears for his personal safety. (Doc. 5-7, p. 4, ¶ 12.) If admitting privileges are denied to five of the only six physicians performing abortions in Louisiana and, for the reasons stated, the sixth physician quits performing abortions, Louisiana women would be denied any and all access to abortions in Louisiana, a situation likely to place an undue burden on this constitutionally protected right. *Jackson Women's Health Organization v. Currier*, 760 F3d. 448 (5th Cir. July 29, 2014).[1]

(Doc. 57.)

Although the Women's Health Plaintiffs are no longer parties to this suit, their participation in this proceeding prior to dismissal provided answers to important questions that the Court had at the time of its original TRO, including that there are a total of six physicians performing abortions at five clinics in Louisiana. Five of the six physicians have made at least one application for admitting privileges at nearby hospitals. The conclusion I reached in the previous ruling remains unaffected by the dismissal of the Women's Health Plaintiffs, namely that if admitting privileges are denied to five of only six physicians performing abortions and if the sixth physician quits performing abortions, as he has indicated he will, Louisiana women would be denied any and all access to abortions in Louisiana. This situation would likely place an undue burden on a constitutionally protected right. *Jackson Women's Health Organization v. Currier*, 760 F.3d 448 (5th

---

[1] The Court's earlier decision, quoted herein, cited *Planned Parenthood v. Abbott*, 748 F.3d 583 (5th Cir. 2014). Rehearing in *Abbott* has been denied. *Planned Parenthood v. Abbott*, 769 F.3d 330 (5th Cir. 2014).

Cir. July 29, 2014), *reh'g denied*, No. 00512843283 (5th Cir. Nov. 12, 2014).

The other reason given for the Court's previous ruling is also unchanged by the dismissal: if the TRO does not remain in effect with regard to each of the clinics and their doctors as their applications are eventually acted upon, the Court may have to entertain multiple separate TRO applications which would be disruptive and time-consuming not only to the Court but also to the parties in their efforts to complete discovery and preparation for the March 30, 2015 hearing. Furthermore, trying these TROs separately as each physician's application is acted upon would necessarily require the Court to rule in each case on an incomplete record, before the full impact of the law can be measured. On the other hand, maintaining the status quo until the preliminary injunction hearing of March 30, 2015 would not cause Defendants to suffer irreparable harm or substantial prejudice.

Accordingly, the TRO of August 31, 2014 (Doc. 31) remains in force until the Preliminary Injunction hearing of March 30, 2015 or as otherwise modified by this Court.

Signed in Baton Rouge, Louisiana, on <u>January 15, 2015</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**