### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA

JUNE MEDICAL SERVICES LLC, et al.,
                    *Plaintiffs,*

v.

KATHY KLIEBERT,  et al.,
                    *Defendants*

No. 14-cv-525-JWD-RLB

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Don S. McKinney (La. Bar No. 26685)
Philip O. Bergeron (La. Bar. No. 2988)
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, LA  70139
Main: 504.581.3234
Direct:  504.585.0134
Cell:  504.813.9662
Fax:  504.566.0210
Email:  don.mckinney@arlaw.com

*Counsel for Defendant Dr. Mark Henry Dawson, in his official capacity as President of the Louisiana Board of Medical Examiners*

S. Kyle Duncan (La. Bar No. 25038)
DUNCAN PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: 202.714.9492
Fax: 571.730.4429
Email: kduncan@duncanpllc.com

J. Michael Johnson
KITCHENS LAW FIRM, APLC
2250 Hospital Drive
Beene Office Park, Suite 248
Bossier City, LA 71111
Phone: 318.658.9456
Email: mjohnsonlegal@gmail.com

*Counsel for Defendant Kathy Kliebert, in her official capacity as Secretary of the Louisiana Department of Health and Hospitals*

TABLE OF CONTENTS

Table of Authorities ...................................................................................................ii

Introduction ............................................................................................................... 1

Legal Standard .......................................................................................................... 1

Summary of Argument ............................................................................................. 2

Argument ................................................................................................................... 3

    I.    Plaintiffs' claim that the Act is medically unreasonable has already been rejected by the Fifth Circuit.................................................................. 3

    II.   There is no genuine dispute that the Act was passed with the valid purpose of protecting patient safety................................................................ 8

Conclusion ............................................................................................................... 19

Certificate of Service............................................................................................... 21

**EXHIBITS**

Act 620................................................................................................................... 1

Transcript of House Committee on Health and Welfare (March 19, 2014)................. 2

House vote on H.B. 388 (March 31, 2014) .............................................................. 3

Transcript of House final passage of H.B. 388 (March 31, 2014)............................. 4

Transcript of Senate Committee on Health and Welfare (May 7, 2014) ................... 5

Senate vote on H.B. 388 (May 14, 2014)................................................................. 6

Senate vote rejecting amendment to H.B. 388 (May 14, 2014) ................................. 7

Senate floor debate on amendments to H.B. 388 (May 14, 2014) .............................. 8

House vote on concurrence with Senate amendment (March 21, 2014)..................... 9

Transcript of House floor statement on concurrence (March 21, 2014).................... 10

Exhibits from Deposition of Secretary Kathy Kliebert.............................................. 11

TABLE OF AUTHORITIES

**Cases**

*Bd. of Educ. v. Mergens,*
   496 U.S. 226 (1990) ...................................................................................... 9, 19

*Croft v. Perry,*
   604 F.Supp.2d 932 (N.D. Tex. 2009) ................................................................ 9

*Edwards v. Aguillard,*
   482 U.S. 578 (1987) ....................................................................................... 10

*Flemming v. Nestor,*
   363 U.S. 603 (1960) ................................................................................... 9, 18

*Garcia v. United States,*
   469 U.S. 70 (1984) ......................................................................................... 10

*Gonzales v. Carhart,*
   550 U.S. 124 (2007) ................................................................................ passim

*Greenville Women's Clinic v. Comm'r,*
   317 F.3d 357 (4th Cir. 2002) ........................................................................... 5

*Hollyday v. Rainey,*
   964 F.2d 1441 (4th Cir. 1992) ....................................................................... 19

*In re First T.D. & Inv., Inc.,*
   253 F.3d 520 (9th Cir. 2001) ......................................................................... 11

*Jackson Women's Health Org. v. Currier,*
   760 F.3d 448 (5th Cir. 2014) .................................................................. passim

*Kansas v. Hendricks,*
   521 U.S. 346 (1997) ................................................................................. 10, 17

*Karlin v. Foust,*
   188 F.3d 446 (7th Cir. 1999) ......................................................................... 12

*Maher v. Strachan Shipping Co.,*
   68 F.3d 951 (5th Cir. 1995) ..................................................................... 10, 17

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997) ................................................................ 11, 12, 18

*Nat'l Paint & Coatings Ass'n v. City of Chicago,*
  45 F.3d 1124 (7th Cir. 1995) ............................................................ 7-8

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,*
  734 F.3d 406 (5th Cir. 2013) ............................................................ 4-5

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,*
  748 F.3d 583 (5th Cir. 2014) ...................................................... passim

*Planned Parenthood of Se. Pa. v. Casey,*
  505 U.S. 833 (1992) ................................................................... passim

*Planned Parenthood of Wisconsin, Inc. v. Van Hollen,*
  738 F.3d 786 (7th Cir. 2013) ........................................ 4, 11-12, 18

*U.S. v. American Trucking Ass'ns,*
  310 U.S. 534 (1940) ......................................................................... 9

*U.S. v. O'Brien,*
  391 U.S. 367 (1968) ........................................................................ 11

*U.S. v. Young,*
  585 F.3d 199 (5th Cir. 2009) ..................................................... 10, 17

*Wallace v Jaffree,*
  472 U.S. 38 (1985) .................................................................... 10, 11

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) ......................................................................... 8

*Women's Health Ctr. of West County, Inc. v. Webster,*
  71 F.2d 1377 (8th Cir. 1989) ............................................................. 5

*Women's Medical Professional Corp v. Baird,*
  438 F.3d 595 (6th Cir. 2006) ........................................................... 13

**Statutes**
La. Rev. Stat. § 40:1299.35.2 ..................................................... 1, 6, 13

iii

La. Rev. Stat. § 40:1299.35.2.1 ................................................................. 13

La. Rev. Stat. § 40:2175.3 ......................................................................... 13

Tex. Health & Safety Code § 171.031 ........................................................ 6

**Rules**

Fed. R. Civ. P. 56 ....................................................................................... 1

## INTRODUCTION

1. Plaintiffs are three Louisiana abortion clinics and two physicians who provide abortions in Louisiana. Doc. 14, ¶¶ 10-15. They challenge the Louisiana admitting-privileges law, Act 620 ("Act 620" or the "Act") (codified at La. Rev. Stat. § 40:1299.35.2), which requires physicians to obtain "active admitting privileges" at a hospital within 30 miles of the facility where abortions are performed. Ex. 1.

2. Plaintiffs claim the Act is unconstitutional because it imposes a "medically unnecessary" requirement which has the "unlawful purpose and effect of imposing an undue burden on women's right to choose abortion before viability." Doc. 14, ¶¶ 25, 41. *See generally Gonzales v. Carhart*, 550 U.S. 124, 146 (2007) (an "undue burden … exists if a regulation's 'purpose or effect is to place a substantial obstacle in the path of a woman seeking [a pre-viability] abortion'") (quoting *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 878 (1992) (plurality op.)). Plaintiffs seek declaratory and injunctive relief. Doc. 14, at 10.

## LEGAL STANDARD

A party may move for summary judgment as to a claim or part of a claim. FED. R. CIV. P. 56(a). The court shall grant summary judgment on finding that there is no genuine dispute as to any material fact and that the movant is therefore entitled to judgment as a matter of law. *Id.* Unless otherwise provided by local rule or court order, a movant may seek summary judgment at any time until 30 days after close of discovery. FED. R. CIV. P. 56(b).

## SUMMARY OF ARGUMENT

The Court should grant summary judgment on two of plaintiffs' claims based on controlling Fifth Circuit precedent. Eliminating these two issues as a matter of law will streamline the issues for trial and significantly reduce the character and the amount of evidence the Court will be required to consider at trial.

1. Plaintiffs' claim that Act 620 imposes a medically unreasonable requirement has already been rejected by the Fifth Circuit. It is settled circuit law that substantively identical privileges laws in Texas and Mississippi reasonably protect the safety of women seeking abortion through regulation of the medical profession. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 593-96 (5th Cir. 2014), *reh'g en banc denied*, 769 F.3d 330 (5th Cir. 2014) ("*Abbott II*"); *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 454 (5th Cir. 2014) ("*JWHO*"); *see also infra* I.

2. Plaintiffs have raised no genuine issue of fact regarding their claim that Act 620 has the improper purpose of placing an undue burden on abortion access in Louisiana. The text and legislative history of Act 620 demonstrate that the Louisiana Legislature passed the Act for the valid purpose of protecting patient safety by regulating the credentialing of physicians who provide abortions in outpatient clinics. This is the same purpose already recognized by the Fifth Circuit for substantively identical privileges laws in Texas and Mississippi. Nothing in the record raises any inference that the Louisiana Legislature had any different purpose in passing Act 620. *See infra* II.

ARGUMENT

**I.    Plaintiffs' claim that the Act is medically unreasonable has already been rejected by the Fifth Circuit.**

1. Whether an abortion regulation rationally furthers legitimate government interests is a threshold inquiry in undue burden cases. *See Abbott II*, 748 F.3d at 590 (observing that "*Gonzales* added that abortion restrictions must also pass rational basis review") (citing *Gonzales*, 550 U.S. at 158). While the Fifth Circuit has not clarified the precise relationship between rational basis and undue burden, *see JWHO*, 760 F.3d at 454 (declining to resolve "dispute" over whether rational basis analysis is "independent of" or rather a "necessary part of" undue burden analysis), two successive Fifth Circuit panels have treated rational basis as an analytical first step. *Abbott II*, 748 F.3d at 590-96 (rejecting district court's conclusion that Texas "admitting-privileges requirement lacked a rational basis"); *JWHO*, 760 F.3d at 454 (addressing rational basis of Mississippi admitting privileges law even though district court regarded the analysis as "superfluous").

2. In this case, plaintiffs claim the admitting privileges requirement in Act 620 is medically unreasonable. Their amended complaint and preliminary injunction motion repeatedly assert that requiring abortion providers to have hospital admitting privileges is "medically unnecessary" (Doc. 14 at ¶ 25), "medically unnecessary and unjustified" (Doc. 5-1 at 9), "medically unwarranted and unnecessary," (*id.* at 17), and "neither medically necessary nor justified" (*id.* at 19). The Court should grant summary judgment rejecting this claim and recognizing that Act 620 furthers legitimate state interests in patient protection and in

3

regulating the medical profession.

3. The reasonableness of a privileges law exactly like Louisiana's has already been settled by binding Fifth Circuit precedent. In *Abbott II*, the Fifth Circuit held that Texas's substantively identical law reasonably furthered "the desirable protection of abortion patients' health." *Abbott II*, 748 F.3d at 594. More specifically, *Abbott II* found the law furthered interests in:

- Protecting that particular subset of women who experience abortion-related complications requiring treatment by a specialist in a hospital. *Id.* at 595 (noting "some of the women who are hospitalized after abortion have complications that require an Ob/Gyn specialist's treatment").

- Guarding against the possibility that a hospital emergency room may "lack an Ob/Gyn on call for emergencies." *Id.*

- "[P]romot[ing] the continuity of care in all cases, reducing the risk of injury caused by miscommunication and misdiagnosis when a patient is transferred from one health care provider to another." *Id.*

- "[M]aintain[ing] the standard of care within the abortion practice" because "the credentialing process entailed in the regulation reduces the risk that abortion patients will be subjected to woefully inadequate treatment." *Id.*

*Abbott II* summarized its holding thus: "Applying the rational basis test correctly, we have to conclude that the State acted within its prerogative to regulate the medical profession by heeding these patient-centered concerns and requiring abortion practitioners to obtain admitting privileges at a nearby hospital." *Id.; see also, e.g., Planned Parenthood of Wisconsin, Inc. v. Van Hollen*, 738 F.3d 786, 802 (7th Cir. 2013) (Manion, J., concurring) (noting "every circuit to address the issue has held that admitting-privileges requirements further states' legitimate interests") (citing *Planned Parenthood of Greater Tex. Surgical Health Servs. v.*

*Abbott*, 734 F.3d 406, 415 (5th Cir. 2013) ("*Abbott I*"); *Greenville Women's Clinic v. Comm'r*, 317 F.3d 357, 363 (4th Cir. 2002); *Women's Health Ctr. of West County, Inc. v. Webster*, 871 F.2d 1377, 1381 (8th Cir. 1989); *see also Greenville Women's Clinic*, 317 F.3d at 363 (observing that "requirements of having admitting privileges at local hospitals and referral arrangements with local experts are so obviously beneficial to patients") (citing *Webster*, 871 F.2d at 1382).

4. *Abbott II*'s holding is not limited only to the Texas privileges law or to the particular record in that case. In *JHWO*, the Fifth Circuit addressed an as-applied challenged to Mississippi's privileges law, H.B. 1390, and confirmed that "our court in *Abbott [II]* has addressed the rational basis of a virtually identical law, and we are bound by that precedent to accept that the Mississippi statute has a rational basis." *JHWO*, 760 F.3d at 454. The court went on to explain that, in *Abbott II*,

> [w]e … held that the Texas regulation satisfied a rational basis review because it was based on the rational speculation that it would 'assist in preventing patient abandonment' by the doctor providing the abortion. We see no basis for distinguishing the rational basis analysis of H.B. 1390. None of the rationales discussed in *Abbott [II]* was state specific, and each would be equally applicable to H.B. 1390. Accordingly, we hold that H.B. 1390 satisfies rational basis review based upon our binding precedent in *Abbott [II]*.

*Id.* (citation omitted) (brackets added).

5. The admitting privileges requirement in Act 620 is substantively identical to the Texas and Mississippi requirements the Fifth Circuit has already held to be medically reasonable. *JWHO* explained that Mississippi's law—which requires physicians to "have admitting privileges at a local hospital," 760 F.3d at 750—was "substantively identical" to the Texas law which requires physicians to have

privileges "at a hospital no more than thirty miles from the location where the abortion is provided." *Id.* at 750 n.3. The language of Louisiana's law is even *closer* to the language of the Texas statute, as both require physicians to have "active admitting privileges at a hospital not further than thirty miles" from the location where the abortion is performed.[1] Consequently, just as in *JWHO*, the Fifth Circuit's holding in *Abbott II* compels the conclusion that Louisiana's Act 620 reasonably furthers valid interests in protecting the safety of women who seek abortion.

6. *Abbott II* therefore settles as a matter of circuit law that Act 620's admitting privileges requirement is medically reasonable. Recognition of this threshold fact in advance of trial will save the Court and all parties substantial time and expense going forward.

a. First, *Abbott II* removes any need for the Court to consider competing expert views on the medical rationale for requiring outpatient abortion providers to have admitting privileges. *Abbott II* already considered conflicting views on precisely that subject and determined that the legislature was nonetheless reasonable in requiring admitting privileges. *See Abbott II*, 748 F.3d at 590-93 (considering competing expert opinions on medical rationales for admitting privileges). Thus, there is no

---

[1]    *Compare* La. Rev. Stat. § 40:1299.35.2(A)(2)(a) ("On the date the abortion is performed or induced, a physician performing or inducing the abortion shall … [h]ave active admitting privileges at a hospital that is located not further than thirty miles from the location at which the abortion is performed or induced and that provides obstetrical or gynecological health services."), *with* Tex. Health & Safety Code § 171.0031(a)(1) ("A physician performing or inducing an abortion … must, on the date the abortion is performed or induced, have active admitting privileges at a hospital that … is located not further than 30 miles from the location at which the abortion is performed or induced; and … provides obstetrical or gynecological health services.").

need for the Court to hear evidence of this nature.

b. Second, *Abbott II* removes any need for the Court to consider expert testimony on the risks of abortion or evidence regarding post-abortion complication rates. *Abbott II* already considered evidence purporting to establish the complication rate of abortion, *see id.* at 591 (discussing testimony that "fewer than 0.3 percent experience a complication that requires hospitalization"), but the court nonetheless ruled that the privileges requirement reasonably protected that particular subset of women who may experience complications requiring hospitalization and treatment by a specialist. *See id.* at 595 (noting general agreement that "some of the women who are hospitalized after an abortion have complications that require an Ob/Gyn specialist's treatment").

c. In sum, paying proper heed to *Abbott II*'s precedential force will streamline the factual issues for trial. There is no need for the Court to hear testimony and weigh conflicting arguments and evidence on the medical reasonableness of Act 620, because that issue has *already* been settled by *Abbott II* and reaffirmed by *JWHO* for substantively identical privileges statutes. Indeed, *Abbott II* strongly suggested that an evidentiary hearing on medical reasonableness would not only be a waste of resources, but legally inappropriate. The Fifth Circuit explained that "[t]he first-step in the analysis of an abortion regulation … is *rational* basis review, not *empirical* basis review," and emphasized that "there is 'never a role for evidentiary proceedings' under rational basis review." *Abbott II*, 748 F.3d at 596 (citing *Gonzales*, 550 U.S. at 158, and quoting *Nat'l Paint & Coatings Ass'n v. City of*

*Chicago*, 45 F.3d 1124, 1227 (7th Cir. 1995)).

These are important considerations as the parties in this case prepare for the trial set to begin March 30, 2015. There is simply no need for trial to be lengthened unnecessarily by allowing competing evidence and arguments on questions that have already been definitively settled by two successive Fifth Circuit panels. For those reasons, Defendants will also file a motion *in limine* at the appropriate time before trial addressing this issue as an evidentiary matter.

## II.   There is no genuine dispute that the Act was passed with the valid purpose of protecting patient safety.

1. Plaintiffs allege the Louisiana Legislature passed Act 620 with the "unlawful purpose" of imposing an undue burden on a woman's right to abortion. Doc. 14 at ¶14. Under binding Supreme Court and Fifth Circuit precedent, the Court should grant summary judgment on this claim.

Like Texas's substantively identical privileges law, Act 620 is a regulation of the medical profession passed with the legitimate purpose of protecting the health of women seeking abortion. *See Abbott II*, 748 F.3d at 594, 595 (concluding that H.B. 2 furthers "the desirable protection of abortion patients' health" and "regulate[s] the medical profession by heeding … patient-centered concerns"); *see also, e.g., Gonzales*, 550 U.S. at 157 ("There can be no doubt the government 'has an interest in protecting the integrity and ethics of the medical profession.'") (quoting *Washington v. Glucksberg*, 521 U.S. 702, 731 (1997)); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846 (1992) (part of *Roe*'s "essential holding" is "the principle that the State has legitimate interests from the outset of the pregnancy in

protecting the health of the woman"). Moreover, it is settled circuit law that substantively identical privileges laws in Texas and Mississippi further legitimate interests in protecting women's health. *Abbott II*, 748 F.3d at 593-96; *see also JWHO*, 760 F.3d at 454 (*Abbott II* was not "state specific" and is "binding precedent" on the reasonableness of the substantively identical Mississippi law). Nothing in the text or legislative history of Louisiana's Act 620 suggests it has any different purpose from those legitimate purposes already recognized by the Fifth Circuit.

2. a. An inquiry into a statute's purpose seeks the collective intent of the legislative body as a whole in passing the statute, and not the subjective motivations of individual legislators. *See, e.g., Bd. of Educ. v. Mergens*, 496 U.S. 226, 249 (1990) (explaining "what is relevant is the legislative *purpose* of the statute," not the "*motives* of the legislators who enacted it"); *Croft v. Perry*, 604 F.Supp.2d 932, 938 (N.D. Tex. 2009) (legislative purpose inquiry "only considers the overall legislative purpose …, not a particular legislator's motive in supporting it"), *aff'd*, 624 F.3d 157 (5th Cir. 2010). Assessing legislative motive is "at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed." *Flemming v. Nestor*, 363 U.S. 603, 617 (1960).

The best evidence of legislative purpose is the text of the statute. *See, e.g., U.S. v. American Trucking Ass'ns*, 310 U.S. 534, 543 (1940) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."). A court may also consider

legislative history, such as official legislative findings and committee reports. *See, e.g., Gonzales*, 550 U.S. at 157-60 (relying on congressional findings to discern law's purpose); *Garcia v. United States*, 469 U.S. 70, 76 (1984) (relying on committee reports as a source for legislative intent); *see also generally Edwards v. Aguillard*, 482 U.S. 578, 594 (1987) ("The plain meaning of the statute's words, enlightened by their context and the contemporaneous legislative history, can control the determination of legislative purpose.").

Because the legislative purpose inquiry must be guided by objective factors, courts are extremely reluctant to find hidden purposes contradicting those reflected in the law's text. The burden of proving an improper purpose "falls squarely on the plaintiffs," *Abbott II*, 748 F.3d at 597, and only the "clearest proof" could negate the collective purpose manifested in a statute's plain text. *U.S. v. Young*, 585 F.3d 199, 204-05 (5th Cir. 2009); *see also, e.g., Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (courts "ordinarily defer" to stated intent and demand the "clearest proof" before rejecting the "manifest intent" reflected in text); *Wallace v Jaffree*, 472 U.S. 38, 74 (1985) (O'Connor, J., concurring) (if legislature expresses a "plausible" purpose in text or legislative history, "courts should generally defer to that stated intent"). Consequently, in assessing whether the legislature's purpose was proper, courts should disregard "isolated statements in the legislative history, particularly those speaking to the motives of individual legislators," because such statements are "irrelevant to the issue of what [the legislature] actually did." *Maher v. Strachan Shipping Co.*, 68 F.3d 951, 957 (5th Cir. 1995); *see also, e.g., Garcia v. U.S.*, 469 U.S.

70, 76 (1984) ("In surveying legislative history … [w]e have eschewed reliance on the passing comments of one Member, and casual statements from floor debates") (citations omitted); *U.S. v. O'Brien*, 391 U.S. 367, 383-84 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it[.]"); *Wallace*, 472 U.S. at 74 (O'Connor, J., concurring) (courts "must exercise extreme caution" in assessing purpose and have "no license to psychoanalyze the legislators"). Even more irrelevant to discerning legislative purpose is the participation of outside advocacy groups in sponsoring or supporting legislation. *See, e.g., In re First T.D. & Inv., Inc.*, 253 F.3d 520, 530 (9th Cir. 2001) (advocacy group's "statement of support" was irrelevant to legislative purpose "since we may not assume that its intention in sponsoring the bill was the same as the legislature's intention in passing the bill").

b. The legislative purpose inquiry under *Casey* generally follows those principles. The object is to discern not the motivations of particular legislators or interest groups, but instead the collective purpose of the legislature in passing the statute. *See, e.g., Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*Casey*'s purpose inquiry requires evidence of "an unlawful motive on the part of *the … Legislature*") (emphasis added). In discerning that collective purpose, the text of the statute is paramount. *See Gonzales*, 550 U.S. at 156, 158 (relying on both on the operative provisions of the law as well as the "recitals preceding its operative provisions" to conclude abortion regulation had a permissible purpose). Official legislative findings are also relevant. *See id.* at 157-60 (relying on Congressional Findings to uphold

permissible purpose of abortion regulation). Irrelevant, however, is the participation of outside advocacy groups in sponsoring legislation. *See, e.g., Van Hollen*, 738 F.3d at 791 (explaining that advocacy of the "right to life movement" was irrelevant to purpose inquiry because "[d]iscovering the intent behind the statute is difficult at best because of the collective character of a legislature"). Indeed, as the Supreme Court has emphasized, even if evidence shows that "an anti-abortion group drafted the … law" in question, that "says nothing significant about the legislature's purpose in passing it." *Mazurek*, 520 U.S. at 973.

c. Finally, the Supreme Court has strongly suggested that the purpose prong of *Casey* overlaps with the rational basis inquiry. *Casey* itself found a 24-hour waiting period had a valid purpose because it was a "reasonable measure" to ensure informed choice. *Casey*, 505 U.S. at 885. Applying *Casey*, *Gonzales* concluded a partial-birth abortion ban had a valid purpose because the ban was in "furtherance of legitimate government interests" in regulating medical ethics. *Gonzales*, 505 U.S. at 161; *see also id.* at 158 (formulating undue burden test as "[w]here [the State] has a rational basis to act, and it does not impose an undue burden"). Thus, some courts have concluded that the *Casey* purpose prong is equivalent to rational basis inquiry, including one Fifth Circuit judge. *See Karlin v. Foust*, 188 F.3d 446, 481 (7th Cir. 1999) (*Casey* asks whether an abortion regulation is "reasonably related to a legitimate state interest" and has "the practical effect of imposing an undue burden"); *Van Hollen*, 738 F.3d at 799 (Manion, J., concurring) (stating *Casey*'s "two-part test" as whether the legislature "has a rational basis to act" and whether

12

the law "impose[s] an undue burden") (quoting *Gonzales*, 550 U.S. at 799) (brackets added); *JWHO*, 760 F.3d at 460 n.4 (Garza, J., dissenting) (urging view that "*Gonzales* … re-stated *Casey*'s purpose inquiry as a rational basis review").[2] The Fifth Circuit has not clarified the relationship between the rational basis inquiry and *Casey*'s purpose prong. It is evident, however, that whether an abortion regulation furthers legitimate interests is highly relevant to whether the regulation has a valid purpose under *Casey*. *See, e.g., Women's Medical Professional Corp v. Baird*, 438 F.3d 595, 607 (6th Cir. 2006) (*Casey* suggested that "governmental action that 'serve[d] no purpose other than to make abortions more difficult' might be unconstitutional") (quoting *Casey*, 505 U.S. at 901).

3. Applying these principles to Act 620 reveals that it has the valid purpose under *Casey* of protecting the health of women seeking abortion by regulating the credentialing of physicians who provide abortions in outpatient facilities. Indeed, given binding Fifth Circuit precedent finding that identical privileges laws from other states further those valid interests, it is legally untenable for plaintiffs to argue that Act 620 has some other, hidden purpose that runs afoul of *Casey*.

a. Act 620, entitled the "Unsafe Abortion Protection Act," added various requirements concerning the safety of abortion procedures to Sections 1299.35.2, 1299.35.2.1, and 2175.3 of Title 40 of the Louisiana Revised Statutes. Ex. 1.[3] In

---

[2]   In his dissent, Judge Garza expressed his view that *Abbott II* decided that the *Casey* purpose prong is distinct from rational basis inquiry. *Id.* But *Abbott II* had no occasion to address *Casey*'s purpose prong, and so *Abbott II*'s statements on that issue are *dicta*.

[3]   Title 40 of the Revised Statutes generally treats "Public Health and Safety." Abortion is treated in Chapter 5, Part XVIII. "Outpatient abortion facilities" are treated in Title 40, Chapter 11, Part  VI-a of the Revised Statutes and in Title 48, Part I, Chapter 44 of the

addition to the admitting privileges requirement at issue here, Act 620 also added requirements that the physician provide the woman with a telephone number for facilitating 24-hour access to her medical records in the event of abortion-related complications, as well as the name and telephone number of the nearest hospital to her home "at which an emergency arising from the abortion would be treated." Ex. 1. The Act also added provisions concerning informed-consent and reporting requirements for medication abortions. *Id.* In sum, the admitting privileges requirement in Act 620 was part of a package of requirements focused on enhancing the safety of women seeking abortion.

b. The House and Senate Committees considering Act 620 (then entitled H.B. 388) heard a wealth of testimony concerning the Act's goals of enhancing patient safety and of achieving greater consistency in the overall regulation of outpatient surgical procedures. *See generally* Ex. 2, 5 (transcripts of House and Senate Health and Welfare Committee Hearings); *see also, e.g.,* Ex. 2, at 5-6, 12-17, 20-23, 23-25, 27-30, 33-36 (House Committee) (testimony regarding function of admitting privileges and their relationship to patient safety); Ex. 5, at 2-4, 4-12, 16, 27-32, 34-39, 41-46 (Senate) (same); Ex. 2, at 3-4, 8-10 (House) (testimony regarding goal of achieving regulatory consistency with ambulatory surgical center regulation); Ex. 5, at 12-16, 18-19, 46-51, 54-58 (Senate) (same).

c. The full House and Senate heard statements in support of the Act explaining

---

Louisiana Administrative Code. "Ambulatory surgical centers" are treated in Title 40, Chapter 11, Part IV of the Revised Statutes and in Title 48, Part I, Chapter 45 of the Louisiana Administrative Code.

it was intended to protect "the safety of women" and "the lives and safety of pregnant women who may experience short-term risk[s] of abortion, which can include hemorrhaging, uterine perforation, or infection." Ex. 4, at 2 (transcript of House H.B. 388 Final Passage); Ex. 8, at 2 (transcript of Senate Floor Debate on H.B. 388). The House statement expressly noted that the Act tracked the Texas admitting privileges law, which had been upheld by the Fifth Circuit in *Abbott II* a week earlier. *See* Ex. 4, at 2-3 (statement that the Fifth Circuit "recently visited a similar law from Texas and issued a ruling … last week that everything that we have in this bill is constitutional"). The Senate approved one amendment to the Act, concerning the definition of admitting privileges, and rejected another amendment that would have eliminated the 30-mile radius. *See* Ex. 8, at 3 (definition); *id.* at 3-13 (debate on 30-mile radius). Act 620 passed both chambers, with 85 House members and 34 Senators voting in favor, and 88 House members concurring in the Senate amendment. *See* Ex. 3 (House vote); Ex. 6 (Senate vote); Ex. 9 (House vote on concurrence); Ex. 10 (transcript of House concurrence).

d. These materials objectively demonstrate that the Louisiana Legislature passed Act 620 with the valid purpose of protecting women's health through regulation of the medical profession. On its face, Act 620 included admitting privileges in a package designed to enhance patient safety, access to medical records, information about emergency services, informed consent, and data reporting. Moreover, the Legislature passed the privileges requirement shortly after the Fifth Circuit ruled that a substantively identical law from Texas furthers state

15

interests in patient safety and in regulating the medical profession. *Abbott II*, 748 F.3d at 595. The legislative record of Act 620 discloses no reason to conclude it has any different purpose than those recognized as valid in *Abbott II*—in fact, the Texas law and the Fifth Circuit decision upholding it were expressly referenced during the legislative debates on Act 620. *See* Ex. 4, at 2-3. Moreover, the legislative committees that considered the Act heard the same debates on the advisability of adopting the privileges requirement that the Fifth Circuit described in *Abbott*. *See Abbott*, 748 F.3d at 594-95 (discussing testimony before the Texas Legislature concerning advisability of privileges requirement). In sum, both the plain text and the legislative history of Act 620 show precisely why the Legislature passed it: to further "the desirable protection of abortion patients' health" and to "regulate the medical profession by heeding these patient-centered concerns." *Abbott II*, 748 F.3d at 594, 595.

  e. Supreme Court precedent forecloses any other conclusion with respect to the Act's legislative purpose. As explained above, the Supreme Court has strongly suggested that *Casey*'s purpose prong overlaps with rational basis. *See supra* II.2.c. Since the Fifth Circuit has already determined that substantively identical privileges laws in Texas and Mississippi reasonably protect patient safety, it is legally untenable to argue that Act 620 *also* has the hidden, impermissible purpose of placing an undue burden on abortion. That would contradict *Casey* itself, which found that a 24-hour waiting period had a valid purpose precisely because it was a "reasonable measure" to ensure informed consent. *Casey*, 505 U.S. at 885. It would

also contradict *Gonzales*, which found that a partial-birth abortion ban had a valid purpose precisely because it was a reasonable means of regulating medical ethics. *Gonzales*, 550 U.S. at 156-60.

4. Even if there *were* any legal avenue open to proving some hidden, illicit purpose for Act 620—which there is not—nothing in the record suggests plaintiffs have raised a genuine factual dispute on that issue. In the face of a permissible purpose demonstrated by the law's text and legislative history, only the "clearest proof" will suffice to negate that permissible purpose. *See, e.g., Hendricks*, 521 U.S. at 361 (courts "ordinarily defer" to stated intent and demand the "clearest proof" before rejecting the "manifest intent" reflected in text); *Young*, 585 F.3d at 204-05 (same). The record here reflects nothing of the sort.

a. During discovery, plaintiffs introduced as deposition exhibits certain communications among pro-life advocacy groups, Representative Katrina Jackson (the Act's House sponsor), and the House committee staff. *See* Ex. 11. These communications suggest that one advocacy group provided initial drafts of the proposed legislation. *Id.* Even assuming that is true, however, it would be irrelevant to the *Legislature*'s purpose in passing what later became Act 620. The object of the purpose inquiry is the collective purpose of the Legislature in passing the bill, not the subjective motivations of the legislator who sponsored the bill or, *a fortiori*, an outside advocacy group that may have contributed to drafting the bill. *See, e.g., Maher v. Strachan Shipping Co.*, 68 F.3d 951, 957 (5th Cir. 1995) (explaining courts should disregard "isolated statements in the legislative history, particularly those

17

speaking to the motives of individual legislators," because such statements are "irrelevant to the issue of what [the legislature] actually did"). As discussed above, the participation of outside advocacy groups in drafting or sponsoring legislation is meaningless to discovering a legislature's collective purpose in passing a law. *See supra* II.2.a, 2.b. The Supreme Court made this quite clear, and in the context of legislation touching the subject of abortion: "[T]he fact that an anti-abortion group drafted the … law" in question "says *nothing* significant about the legislature's purpose in passing it." *Mazurek*, 520 U.S. at 973 (emphasis added). The Seventh Circuit has made the same point more recently, specifically with respect to admitting privileges laws:

> The plaintiffs argue that such [admitting privileges] laws, which are advocated by the right to life movement, are intended to hamstring abortion. The defendants deny this. We needn't take sides. Discovering the intent behind a statute is difficult at best because of the collective character of a legislature, and may be impossible with regard to the admitting-privileges statutes. Some Wisconsin legislators doubtless voted for the statute in the hope that it would reduce the abortion rate, but others may have voted for it because they considered it a first step toward making invasive outpatient procedures in general safer.

*Van Hollen*, 738 F.3d at 791.

b. As the Supreme Court held in *Mazurek*, 520 U.S. at 973, this kind of evidence says nothing about legislative purpose and therefore cannot create a fact issue as to the Louisiana Legislature's collective purpose in enacting 620. To allow plaintiffs to build a case for improper purpose on this kind of evidence would start the Court down a perilous road. "Judicial inquiries into [legislative] motives are at best a hazardous matter, and when that inquiry seeks to go behind objective

manifestations it becomes a dubious affair indeed." *Flemming*, 363 U.S. at 617. If plaintiffs could impugn the legislative purpose of Act 620 through this kind of evidence, the Court would also be required to hear testimony from the legislator who sponsored the legislation, from the legislators on the House and Senate Committees who debated the legislation, and from each of the 85 House members and 34 Senators who voted to approve the Act. *See* Ex. 3, 6 (House and Senate votes on H.B. 388). But that absurd process is obviously not what the Supreme Court intended by allowing inquiry into the legislature's purpose in passing a law. *See, e.g., Mergens*, 496 U.S. at 249 (explaining "what is relevant is the legislative *purpose* of the statute," not the "*motives* of the legislators who enacted it"); *see also, e.g., Hollyday v. Rainey*, 964 F.2d 1441, 1443 (4th Cir. 1992) ("Legislators must be permitted to discharge their legislative duties without fear of being subjected to the cost and inconvenience of a trial at which their motives come under scrutiny.") (citations omitted). Precisely for that reason, the Supreme Court has limited the search for a legislature's collective purpose to the public manifestations of intent reflected in the statute's text and legislative history. *See supra* II.2. Here, consideration of those objective sources leaves no doubt that the Louisiana Legislature's purpose in passing Act 620 was the "protection of abortion patients' health." *Abbott II*, 748 F.3d at 594.

## CONCLUSION

For the foregoing reasons, Defendants Kathy Kliebert and Mark Dawson ask the Court to grant partial summary judgment rejecting plaintiffs' claims that Act 620

(1) is medically unreasonable and (2) has an improper purpose.

Respectfully submitted,

/s *Don S. McKinney*
_____

Don S. McKinney (La. Bar No. 26685)
Philip O. Bergeron (La. Bar. No. 2988)
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, LA 70139
Main: 504.581.3234
Direct: 504.585.0134
Cell: 504.813.9662
Fax: 504.566.0210
Email: don.mckinney@arlaw.com

*Counsel for Defendant Dr. Mark Henry*
*Dawson, in his official capacity as President*
*of the Louisiana Board of Medical*
*Examiners*

/s *S. Kyle Duncan*
_____

S. Kyle Duncan (La. Bar No. 25038)
DUNCAN PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: 202.714.9492
Fax: 571.730.4429
Email: kduncan@duncanpllc.com

J. Michael Johnson
KITCHENS LAW FIRM, APLC
2250 Hospital Drive
Beene Office Park, Suite 248
Bossier City, LA 71111
Phone: 318.658.9456
Email: mjohnsonlegal@gmail.com

*Counsel for Defendant Kathy Kliebert, in her*
*official capacity as Secretary of the*
*Louisiana Department of Health and*
*Hospitals*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.


/s *S. Kyle Duncan*

S. Kyle Duncan