UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JUNE MEDICAL SERVICES LLC, et al.,
    *Plaintiffs,*

v.

KATHY KLIEBERT, et al.,
    *Defendants*

No. 14-cv-525-JWD-RLB

**MEMORANDUM OF DEFENDANT KATHY KLIEBERT IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT EVIDENCE**

S. Kyle Duncan (La. Bar No. 25038)
DUNCAN PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: 202.714.9492
Fax: 571.730.4429
Email: kduncan@duncanpllc.com

J. Michael Johnson
KITCHENS LAW FIRM, APLC
2250 Hospital Drive
Beene Office Park, Suite 248
Bossier City, LA 71111
Phone: 318.658.9456
Email: mjohnsonlegal@gmail.com

*Counsel for Defendant Kathy Kliebert, in her official capacity as Secretary of the Louisiana Department of Health and Hospitals*

## TABLE OF CONTENTS

Legal Standard ........................................................................................................... 1

Argument .................................................................................................................... 2

    I.    Evidence attacking the medical reasonableness of Act 620 is irrelevant in light of settled circuit law......................................................... 2

    II.   Evidence that pro-life groups participated in the drafting process is irrelevant to the legislature's purpose in passing Act 620 ........................... 5

Conclusion ................................................................................................................ 10

Certificate of Service................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Bd. of Educ. v. Mergens*,
    496 U.S. 226 (1990) ............................................................................................................ 9

*Bradley v. Pittsburgh Bd. of Educ.*,
    913 F.3d 1064 (3rd Cir. 1990) ............................................................................................ 1

*Fields v. Dept. of Public Safety*,
    2014 WL 6750663 (M.D. La. Nov. 29, 2014) .......................................................................... 1

*Flemming v. Nestor*,
    363 U.S. 603 (1960) ............................................................................................................ 8

*Gonzales v. Carhart*,
    550 U.S 124 (2007) ............................................................................................................. 6

*Herbert v. Architect of Capitol*,
    920 F.Supp.2d 33 (D.D.C. 2013) ........................................................................................ 1

*Hollyday v. Rainey*,
    964 F.2d 1441 (4th Cir. 1992) ............................................................................................ 9

*Jackson Women's Health Org. v. Currier*,
    760 F.3d 448 (5th Cir. 2014) .............................................................................................. 3

*Luce v. United* States,
    469 U.S. 38 (1984) .............................................................................................................. 1

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ............................................................................................................ 6

*Planned Parenthood of Ariz. v. Humble*,
    753 F.3d 905 (9th Cir. 2014) ...........................................................................................3-4

*Planned Parenthood of Greater Tex. Surg. Health Serv. v. Abbott*,
    734 F.3d 406 (5th Cir. 2013) .............................................................................................. 4

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
    748 F.3d 583 (5th Cir. 2014) ....................................................................................... 2, 3, 5

*Planned Parenthood Southeast, Inc. v. Strange*,
    9 F.Supp.3d 1272 (N.D. Ala. 2014) .................................................................................... 4

*Planned Parenthood Southeast, Inc. v. Strange*,
   33 F.Supp.3d 1330 (N.D. Ala. 2014) ........................................................................ 4

*United States v. American Trucking Ass'ns*,
   310 U.S. 534 (1940) ................................................................................................... 6

*United States v. Hall*,
   653 F.2d 1002 (5th Cir. Unit A 1981) .................................................................... 1-2

**Rules**

Federal Rule of Evidence 401 ............................................................................................ 2

Federal Rule of Evidence 402 ............................................................................................ 2

## MEMORANDUM OF DEFENDANT KATHY KLIEBERT IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT EVIDENCE

Defendant Kathy Kliebert, in her official capacity as Secretary of the Louisiana Department of Health and Hospitals ("DHH"), submits the following memorandum in support of her motion *in limine* to exclude (1) evidence attacking the medical reasonableness of Act 620; and (2) evidence of communications among outside advocacy groups, DHH officials, and the legislative sponsor of Act 620. Any evidence on these subjects is not probative to any issue to be tried in this case and should therefore be excluded. Defendant seeks a pre-trial ruling on these matters because plaintiffs intend to introduce voluminous evidence regarding these issues that will unnecessarily lengthen and complicate the trial of this matter.

### LEGAL STANDARD

This Court may grant motions *in limine* "pursuant to [its] inherent authority to manage the course of trials." *Luce v. United* States, 469 U.S. 38, 41 n.4 (1984). Such motions "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" *Herbert v. Architect of Capitol*, 920 F.Supp.2d 33, 37 (D.D.C. 2013) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.3d 1064, 1070 (3rd Cir. 1990)). For instance, the Court may grant a motion *in limine* to exclude evidence regarding claims foreclosed as a matter of law. *See, e.g., Fields v. Dept. of Public Safety*, 2014 WL 6750663, at *1-*2 (M.D. La. Nov. 29, 2014) (slip copy) (granting motion *in limine* to exclude evidence concerning claims on which summary judgment had been granted). Such evidence is irrelevant to any issue of consequence and should therefore be excluded. *See United States v. Hall*, 653 F.2d

1002, 1005 (5th Cir. Unit A 1981) (to be "relevant" under Federal Rule of Evidence 401, evidence must be probative of an issue "of consequence to the determination of the action"); FED. R. EVID. 402 ("Irrelevant evidence is not admissible.").

## ARGUMENT

I. **EVIDENCE ATTACKING THE MEDICAL REASONABLENESS OF ACT 620 IS IRRELEVANT IN LIGHT OF SETTLED CIRCUIT LAW.**

1. Plaintiffs intend to introduce at trial apparently voluminous evidence concerning whether it is medically reasonable to require physicians who provide abortions in outpatient clinics to have admitting privileges at hospitals within 30 miles of those clinics. *See* Pl. Reply in Support of Mot. for Prelim. Inj. at 1 (Sealed Doc.) ("Pl. Reply") (asserting "evidence will establish" that "the admitting privileges requirement is not rationally related to … [protecting] the health and safety of women"); Pl. Mem. in Opp. to Def. Motion for Partial Summ. J. at 4, 11 (Sealed Doc.) ("Pl. SJ Opp.") (urging Court to "examin[e] … the Act's rationality at trial" and to consider "substantial evidence that admitting privileges are not medically necessary"). As Defendant has explained, however, the Fifth Circuit has already settled this precise question. *See* Doc. 87-1, at 3-6. In two recent decisions, the Fifth Circuit (1) held that a Texas admitting privileges law identical to Louisiana's was a medically reasonable requirement that furthers "the desirable protection of abortion patients' health" (*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 594 (5th Cir. 2014), *reh'g en banc denied*, 769 F.3d 330 (5th Cir. 2014) ("*Abbott II*")); and (2) subsequently held that the holding in *Abbott II* was not "state specific" to Texas and was therefore "binding precedent" establishing the

2

medical reasonableness of a substantively identical requirement in Mississippi (*Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 454 (5th Cir. 2014) ("*JHWO*")). Act 620 places exactly the same requirement on outpatient abortion providers as do the Texas and Mississippi laws addressed in *Abbott II* and *JHWO*. The medical reasonableness of Act 620 has therefore been definitively settled by the Fifth Circuit; allowing plaintiffs to re-litigate that issue in this case would be a needless waste of the Court's and the parties' resources.

2. a. The medical reasonableness of Act 620 is also irrelevant to the issue of whether the Act imposes an "undue burden" on abortion access in Louisiana. Under Fifth Circuit law, the undue burden analysis focuses solely on whether the law causes a decrease in abortion access so drastic that it constitutes a "substantial obstacle" to women's ability to obtain a pre-viability abortion. *See Abbott II*, 748 F.3d at 597-600 (in undue burden analysis, considering only whether operation of H.B.2 would close Texas clinics and impact travel distances). By contrast, the medical reasonableness of the law is relevant *only* to the question of whether the law passes rational basis. *See id.* at 593-96 (in rational basis inquiry, considering conflicting arguments on medical reasonableness of H.B. 2). As noted, that issue has been settled by *Abbott II* and *JHWO*.

b. To be sure, a few courts *outside* the Fifth Circuit have adopted a different undue burden analysis: they would balance the strength of the medical justification for the law against the decrease in access attributable to the law. *See, e.g., Planned Parenthood of Ariz. v. Humble*, 753 F.3d 905, 913 (9th Cir. 2014) (describing Ninth

3

Circuit's approach as "compar[ing] the extent of the burden a law imposes on a woman's right to abortion with the strength of the state's justification for the law"); *Planned Parenthood Southeast, Inc. v. Strange*, 9 F.Supp.3d 1272, 1289 (N.D. Ala. 2014) (undue burden test "calls for the court to assess the significance of the State's interest in the particular regulation at issue") ("*Strange I*"). Those courts, however, have expressly recognized that the Fifth Circuit sharply differs on that precise point. As the Ninth Circuit explained in *Humble*, the Fifth Circuit "consider[s] the state's justification *only for the very limited purpose of applying rational-basis review*," but "pay[s] no attention" to those justifications in applying the undue burden test. *Humble*, 753 F.3d at 914 (emphasis added); *see also id.* (explaining that "[i]n *Abbott [II]*, the Fifth Circuit held that courts may not consider the strength of the state's justification" in applying undue burden); *Strange I*, 9 F.Supp.3d at 1293 (disagreeing with Fifth Circuit's approach because it "consider[s] the severity of particular obstacles in isolation from the weight of the government's interests") (citing *Planned Parenthood of Greater Tex. Surg. Health Serv. v. Abbott*, 734 F.3d 406, 412-16 (5th Cir. 2013) ("*Abbott I*"); *Planned Parenthood Southeast, Inc. v. Strange*, 33 F.Supp.3d 1330, 1338-39 (N.D. Ala. 2014) ("*Strange II*") (noting disagreement with undue burden approach of *Abbott I* and *II*). Therefore, under settled Fifth Circuit law, the medical justifications for Act 620 are not relevant to whether the Act constitutes an undue burden.

3. By following Fifth Circuit precedent and excluding evidence attacking the medical justifications for Act 620, the Court would significantly streamline the

4

amount and character of evidence to be presented at trial. *See* Doc. 87-1, at 6-8. It would also pay heed to the Fifth Circuit's admonition that "there is never a role for evidentiary proceedings under rational basis review." *Abbott II*, 748 F.3d at 596 (internal quotation marks and citation omitted). Otherwise, the Court will be required to weigh conflicting expert testimony and voluminous documentary evidence in order to resolve a question the Fifth Circuit has already settled.[1] That would be an obvious waste of this Court's resources. The efforts of the parties and the Court would be better focused on the only genuinely disputed issue in this case—namely, whether the operation of Act 620 will so drastically reduce abortion access as to constitute a substantial obstacle to obtaining an abortion in Louisiana.

## II. EVIDENCE THAT PRO-LIFE GROUPS PARTICIPATED IN THE DRAFTING PROCESS IS IRRELEVANT TO THE LEGISLATURE'S PURPOSE IN PASSING ACT 620.

1. Plaintiffs also intend to introduce evidence of communications among pro-life advocacy groups, DHH officials, and the Act's legislative sponsor, purporting to establish that the Louisiana Legislature passed Act 620 not to protect women's health, but to hinder abortion access. *See* Pl. Reply at 15-16 (arguing evidence of "communications" among "right to life groups … Representative Katrina Jackson and executive members of [DHH]" will show that pro-life groups "had a significant hand in the drafting of Act 620"); Pl. SJ Opp. at 17-18 (arguing that "[t]he evidence will show" that "anti-abortion activists were a driving force behind the Act"). Under controlling Supreme Court precedent, however, that evidence is wholly irrelevant to

---

[1] The voluminous nature of the evidence is suggested by plaintiffs' exhibit list. On Friday, March 13, Defendant Kliebert will file objections to specific exhibits on the same grounds raised in this motion.

5

discerning the legislative purpose of Act 620. Allowing plaintiffs to introduce it in support of this argument would create a side-show that would distract from the actual legal issues in the case.

2. The Supreme Court has explained—and precisely in the context of abortion regulations—that the kind of evidence on which plaintiffs would rely is irrelevant to the legislative purpose inquiry under *Casey*. Even if evidence shows that "an anti-abortion group drafted the … law" in question, the Court has emphasized that this "says *nothing significant* about the legislature's purpose in passing it." *Mazurek v. Armstrong*, 520 U.S. 968, 973 (1997) (emphasis added); *see also* Doc. 87-1, at 8-12 (discussing legislative purpose inquiry). Plaintiffs have announced their intention to show that pro-life groups "had a significant hand in drafting" the bill and were "a driving force behind the Act." Pl. Reply at 15-16; Pl. SJ Opp. at 17-18. But the Supreme Court could not have been plainer that this kind of evidence "says nothing significant" about the *Louisiana Legislature's* collective purpose in passing Act 620. *Mazurek*, 520 U.S. at 973. To the contrary, the legislature's purpose is discerned—not from evidence that an outside group supported or drafted the bill—but from the text the legislature passed and from the legislature's public deliberations during that process. *See* Doc. 87-1, at 9-11 (explaining that "[t]he best evidence of legislative purpose is the text of the statute," and that "[a] court may also consider legislative history, such as official legislative findings and committee reports") (citing *United States v. American Trucking Ass'ns*, 310 U.S. 534, 543 (1940); *Gonzales v. Carhart*, 550 U.S 124, 157-60 (2007); *see also* Doc. 87-1, Exs. 2-10

6

(transcripts of Act 620's legislative history).

3. a. Plaintiffs also propose to introduce communications between pro-life groups and DHH officials to suggest an improper legislative purpose behind Act 620. *See* Pl. Reply, at 15 (promising to show Act 620's "improper purpose" from communications between pro-life groups and "executive members of the Department of Health and Hospitals"). But communications of pro-life groups with DHH officials are irrelevant to the *legislature*'s purpose in passing Act 620. To state the obvious: DHH officials did not pass Act 620, the Louisiana Legislature did. Plaintiffs evidently seek to impugn the motivations of DHH officials by suggesting they conspired with pro-life groups to achieve passage of Act 620. *See* Plaintiffs' Counterstatement of Additional Material Facts (Sealed Doc.) ("Pl. Counterstatement"), at ¶45 (asserting that members of "anti-choice activist groups … met with Ms. Kliebert, secretary of DHH, about [Act 620's] implementation"). But even if there were any substance to this outlandish conspiracy theory—and there is not—it would be entirely irrelevant to proving the collective purpose of the *Louisiana Legislature* in passing Act 620. The proper sources for discerning the legislature's purpose are the Act's text and legislative history, and those sources do not remotely suggest the legislature entertained any such improper purpose. *See* Doc. 87-1, at 13-16 (discussing text and legislative history of Act 620). That should be the end of the matter with respect to *Casey*'s purpose inquiry.

b. Furthermore, plaintiffs' conspiracy theory about DHH officials misses another crucial point: this is a *pre*-enforcement challenge to Act 620. Because of the Court's

7

temporary restraining order, the Act is not now being enforced against any outpatient abortion provider in Louisiana who lacks admitting privileges. *See* Doc. 31, at 16, 18 (temporarily enjoining enforcement of Act as to plaintiffs' whose privileges applications remain pending); Doc. 57, at 6 (clarifying that "[i]t was and is the intention of this Court that the TRO remain in effect as to all parties before it until the end of the Preliminary Injunction Hearing"); Doc. 84, at 4 (Court's second clarification that "the TRO of August 31, 2014 (Doc. 31) remains in force until the Preliminary Injunction hearing of March 30, 2015"). Since DHH is currently enjoined from enforcing the Act against any abortion provider in Louisiana who lacks privileges, plaintiffs' speculations about the motivations of DHH officials cannot possibly be relevant to any issue in this case. To be sure, if the Act is allowed to be enforced and if, at some *future* time, plaintiffs were to challenge the manner in which DHH is enforcing the Act, then it is at least conceivable that the motivations of DHH officials may be relevant to such a claim. It is not conceivable, however, that such motivations are relevant in this pre-enforcement challenge, when DHH is enjoined from enforcing the Act against any abortion provider in Louisiana who currently lacks admitting privileges.

4. a. Allowing plaintiffs to present this irrelevant purpose evidence would not only contravene clear Supreme Court precedent, but it would lead to absurd results. "Judicial inquiries into [legislative] motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed." *Flemming v. Nestor*, 363 U.S. 603, 617 (1960). If plaintiffs could

8

impugn the legislative purpose of Act 620 through evidence of outside communications with the Act's legislative sponsor, the Court would also be required to hear testimony from that legislator, from the legislators on the House and Senate Committees who debated the bill, and from each of the 85 House members and 34 Senators who voted to approve the Act. *See* Doc. 87-1, Exs. 3, 6 (House and Senate votes on H.B. 388). But that absurd process is obviously not what the Supreme Court intended by allowing inquiry into the legislature's purpose in passing a law. *See, e.g., Bd. of Educ. v. Mergens*, 496 U.S. 226, 249 (1990) (explaining "what is relevant is the legislative *purpose* of the statute," not the "*motives* of the legislators who enacted it"); *see also Hollyday v. Rainey*, 964 F.2d 1441, 1443 (4th Cir. 1992) ("Legislators must be permitted to discharge their legislative duties without fear of being subjected to the cost and inconvenience of a trial at which their motives come under scrutiny.") (citations omitted). Precisely for that reason, the Supreme Court has limited the search for a legislature's collective purpose to the public manifestations of intent reflected in the statute's text and legislative history. *See generally* Doc. 87-1, at 8-12.

b. Allowing plaintiffs to introduce irrelevant communications with DHH officials would lead to additional problems. If plaintiffs are allowed to impugn legislative purpose by showing pro-life groups communicated with DHH officials—including DHH Executive Counsel Stephen Russo, DHH General Counsel Kimberly Humbles, and DHH Secretary Kathy Kliebert—then those officials could be required to explain the context of those communications in order to rebut plaintiffs' unfounded

9

insinuations. Indeed, plaintiffs have listed these officials on their proposed witness list. But having these officials testify would send the trial down a long and pointless rabbit trail, where DHH officials—including the Secretary herself and her counsel—could be forced to offer testimony with respect to subjects that can have *no* relevance to the purpose of the Louisiana Legislature in passing Act 620, the only matter at issue under *Casey*. Again, this plainly demonstrates why the search for legislative purpose in *Casey* is limited to objective manifestations of intent reflected in the statute's text and legislative history.

c. Defendant recognizes that the Court may wish to review the particular communications at issue *in camera* before determining whether to exclude them before trial. Defendant welcomes that review. The Court will find, defendant believes, that these innocuous communications have no bearing on the issue of the Louisiana Legislature's purpose in passing Act 620.

## CONCLUSION

For the foregoing reasons, Defendant asks the Court to grant its motion *in limine* to exclude from trial (1) any evidence attacking the medical reasonableness of Act 620; and (2) any evidence of communications among outside advocacy groups, DHH officials, and the legislative sponsor of Act 620 seeking to impugn the Louisiana Legislature's purpose in passing Act 620.

Respectfully submitted,

/s *S. Kyle Duncan*
S. Kyle Duncan (La. Bar No. 25038)
DUNCAN PLLC
1629 K Street NW, Suite 300
Washington, DC 20006

10

Phone: 202.714.9492
Fax: 571.730.4429
Email: kduncan@duncanpllc.com

J. Michael Johnson
KITCHENS LAW FIRM, APLC
2250 Hospital Drive
Beene Office Park, Suite 248
Bossier City, LA 71111
Phone: 318.658.9456
Email: mjohnsonlegal@gmail.com

*Counsel for Defendant Kathy Kliebert, in her official capacity as Secretary of the Louisiana Department of Health and Hospitals*

## CERTIFICATE OF SERVICE

 I hereby certify that on March 10, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        /s *S. Kyle Duncan*
        S. Kyle Duncan