# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JUNE MEDICAL SERVICES, LLC, et al.

VERSUS

KATHY KLIEBERT, et al.

CIVIL ACTION

NO. 14-525-JWD-RLB

## RULING AND ORDER

Before the Court is a Motion for Partial Summary Judgment filed by defendants Kathy Kliebert and Mark Dawson. (Doc. 87). Plaintiffs oppose the motion. (Doc. 104). Defendants have filed a Reply Brief. (Doc. 107). The Court has reviewed the briefs (Docs. 87, 104 and 107) and heard and reviewed the oral argument of March 19, 2015. (Doc. 137). For the reasons which follow, the motion is GRANTED in part and DENIED in part.

## I.  BACKGROUND & PROCEDURAL HISTORY

Plaintiffs are June Medical Services, LLC d/b/a Hope Medical Group for Women (hereinafter "Hope"), Bossier City Medical Suite ("Bossier"), Choice, Inc., of Texas d/b/a Causeway Medical Clinic ("Choice") and Drs. John Doe 1 and 2.[1] Defendant is Kathy Kliebert ("Kliebert") sued in her official capacity as the Secretary of the Louisiana Department of Health and Hospitals ("DHH").[2]

---

[1] A Protective Order (Doc. 24) was issued protecting the identity of all doctors performing abortions in Louisiana, including those who are plaintiffs herein (Drs. Doe 1 and 2) and those who are not (Drs. Doe 3, 4, 5 and 6).

[2] Secretary Kliebert was added as a defendant in an Amended Complaint. (Doc. 14). Since the filing of this motion, Dr. Mark Dawson was dismissed based on a stipulation and Joint Motion and Order to Dismiss. (Docs. 110 and 111). In the original Complaint, Plaintiffs sued James David Caldwell in his official capacity as Louisiana Attorney General and Dr. Jimmy Guidry his official capacity as Louisiana State Health Officer and Medical Director of DHH. The Court dismissed both Caldwell and Guidry. (Doc. 31).

On August 22, 2014, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief (Doc. 1) and an Application for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. 5) seeking to enjoin Defendants from enforcing Section (A)(2)(a) of La. House Bill 388, Regular Session (La. 2014), Act 620 (hereinafter "Act 620" or the "Act"). (Doc. 5-2, p. 1). This Act is codified at La. Rev. Stat. § 40:1299.35.2. Section A(2)(a) requires every doctor who performs abortions in Louisiana to have "active admitting privileges" at a hospital within 30 miles of the facility where abortions are performed. (Doc. 5-2, p. 3). While the Act contains other requirements, this provision is the only one being challenged. (Doc 5-1, p. 8, n.1). Act 620 was signed into law on June 12, 2014. Its effective date was September 1, 2014. (Doc. 5-2, p. 6).

Plaintiffs Hope, Bossier and Choice are three of five licensed abortion clinics in Louisiana. They are located in Shreveport, Bossier City and Metairie respectively. Drs. Doe 1 and 2 are two of six physicians performing abortions in Louisiana. Dr. Doe 1 performs abortions at Hope. Dr. Doe 2 performs abortions at Bossier and Choice.

The Court issued a Temporary Restraining Order on August 31, 2014, enjoining Act 620 "until a hearing is held for the purpose of determining whether a preliminary injunction should issue. Plaintiffs will continue to seek admitting privileges. The Act will be allowed to take effect but Plaintiffs will not be subject to the penalties and sanctions allowed in the statute at this time or in the future for practicing without the relevant admitting privileges during the application process. Plaintiffs will be allowed to operate lawfully while continuing their efforts to obtain privileges." (Doc. 31, p. 18).

On September 19, 2014, a separate Complaint for Declaratory and Injunctive Relief was filed by Women's Health Care Center, Inc., Delta Clinic of Baton Rouge, Inc., Dr. John Doe 5 and Dr. John Doe 6 (referred to hereafter as "Women's Health Plaintiffs"). (No. 3:14-cv-00597,

Docs. 1 and 5 respectively). These two cases were consolidated on September 24, 2014. (No. 3:14-cv-00597, Doc. 8)

All parties agreed in briefs and orally at a status conference held on September 30, 2014, that significant discovery would need to be done to prepare for the hearing; therefore, the Court set the preliminary injunction hearing for March 30, 2015. A Joint Proposed Scheduling Order was submitted by the parties on October 8, 2014 (Doc. 49) and made the order of the Court on October 21, 2014. (Doc. 56).

On November 3, 2014, following the addition of the Women's Health Plaintiffs, this Court issued an Order Clarifying Temporary Restraining Order of August 31, 2014 (Doc. 57) in which, for the reasons given therein, the Court ruled that "It was and is the intention of this Court that the TRO remain in effect as to all parties before it until the end of the Preliminary Injunction Hearing." (Doc. 57, at p.6).

On December 5, 2014, the Women's Health Plaintiffs filed a Motion For Voluntary Dismissal (Doc. 70), and with the consent of all remaining parties, the Court dismissed their suit without prejudice on December 14, 2014. (Doc. 77). In light of that dismissal, the Court on January 15, 2015, issued a Second Order Clarifying Temporary Restraining Order of August 31, 2014 (Doc. 84) in which it, for reasons explained therein, ruled that "the TRO of August 31, 2014 remains in force until the Preliminary Injunction hearing on March 30, 2015."

On February 16, 2015, Defendants filed the present Motion for Partial Summary Judgment (Doc. 87) and a briefing schedule on the motion was set. On February 24, 2015, Defendants filed a Motion for Oral Argument on Motion for Partial Summary Judgment (Doc 90). On March 3, 2015, the Court granted that motion (Doc 92), and oral argument was set and heard on March 19, 2015.

Based on a stipulation reached among the parties, a Joint Motion to Dismiss Defendant Mark Dawson was filed on March 17, 2015 (Doc. 110) and granted the same day. (Doc. 111). On March 20, 2015, the parties conferred with the Court and agreed to a continuance of the hearing on the preliminary injunction until the week of June 22, 2015. (Doc. 129). The parties agreed that the Temporary Restraining Order would remain in effect until the completion of the trial and ruling on the merits of the preliminary injunction. (Doc. 129)

On April 1, 2015, oral argument was heard on motions in limine filed by the parties. In its ruling (Doc. 136), the Court denied Plaintiffs' Motion in Limine to Preclude Expert Testimony of Dr. Tumulesh Solanky (Doc 96) and Defendant's Motion to Exclude Expert Testimony of Sheila Katz, Ph.D. (Doc. 99). Plaintiffs' Motion in Limine to Preclude Expert Testimony of Dr. McMillan (Doc. 97) was denied as moot. Because of their connection to Defendant's Motion for Summary Judgment, Defendant's Motion in Limine to Exclude Irrelevant Evidence (Doc. 95) and Plaintiffs' Motion in Limine to Preclude Evidence of DHH Deficiency Reports and Related Evidence (Doc. 98) were taken under advisement.

## II.    CONTENTIONS OF THE PARTIES

In Plaintiffs' Application for Temporary Restraining Order and Motion For Temporary Restraining Order, Plaintiffs challenge Act 620 as an unconstitutional abridgment of their patients' right to an abortion guaranteed under the Fourteenth Amendment. (Doc. 5, p. 2). Plaintiffs contend that Act 620 does not have a rational basis, and its purpose and effect is to place an undue burden on the right of Louisiana women to receive an abortion. (Docs. 5, 5-1 and 102).

"[F]or more than forty years, it has been settled constitutional law that the Fourteenth Amendment protects a woman's basic right to choose an abortion." *Jackson Women's Health*

*Org. v. Currier*, 760 F.3d 448, 453 (5th Cir. 2014), *petition for cert. pending*, No. 14-997 (filed February 19, 2015) (citing *Roe v. Wade*, 410 U.S. 113, 153, 93 S. Ct. 705 (1973)). The Supreme Court has held that this right can be regulated by a state consistent with the state's interest in protecting potential life and health, but only if the regulation does not place an "undue burden" on the basic right to terminate a pregnancy by abortion prior to the fetus's viability. *Planned Parenthood of S.E. Penn. v. Casey*, 505 U.S. 833, 877, 112 S. Ct. 2791 (1992) (plurality opinion). An "undue burden . . . exists if a regulation's 'purpose or effect is to place a substantial obstacle in the path of a woman seeking a[] [pre-viability] abortion.'" *Gonzales v. Carhart*, 550 U.S. 124, 146, 127 S. Ct. 1610 (2007) (quoting *Casey*, 505 U.S. at 878).

In addition to the "undue burden" test, abortion restrictions must pass rational basis review. *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott* ("*Abbott II*"),748 F.3d 583 (5th Cir. 2014), *reh'g & reh'g en banc denied*, 769 F.3d 330 (5th Cir. 2014); *Currier*, 760 F.3d at 453 ("In addition to creating no undue burden, an abortion restriction must pass a rational basis test."); *see also Whole Woman's Health v. Lakey*, 769 F.3d 285 (5th Cir. 2014), *vacated in part*, 135 S. Ct. 299 (2014).

The issue of whether the *effect* of Act 620 places an undue burden on a woman's right to an abortion is not raised in Defendant Kliebert's Motion for Partial Summary Judgment. Defendant concedes that the Preliminary Injunction hearing can properly consider the issue of the Act's effect. (Doc. 137, pp. 32-33). Rather, Defendant contends that she is entitled to summary judgment on two specific claims made by Plaintiffs: 1) that Act 620 imposes a medically unreasonable requirement, and 2) that Act 620 has the *improper purpose* of placing an undue burden on abortion access in Louisiana. (Doc. 87-1, p. 7). Defendant argues that the Fifth Circuit's *Abbott II* and *Currier* decisions rejecting a rational review challenge to statutes similar

to Act 620 are binding on this Court and dispositive of these two claims (*See, e.g.,* Doc. 87-1, pp. 9-10 (citing *Abbott II*, 748 F.3d at 594 and *Currier*, 760 F.3d at 454)).

Furthermore, Defendant argues that the rational review test applied by the Fifth Circuit, although admittedly different from that used in other circuits (*See, e.g.*, *Planned Parenthood of Ariz. v. Humble*, 753 F.3d 905, 913 (9th Cir. 2014)), does not permit the introduction of evidence of the kind that Plaintiffs believe creates a factual issue in this case. Defendant points to *Abbott II*'s suggestion that the taking of evidence on the issue of rational review is unnecessary and inappropriate. *Abbott II*, 748 F.3d at 596 ("[T]here is 'never a role for evidentiary proceedings' under rational basis review." (quoting *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1127 (7th Cir. 1995))). Thus, Defendant argues, while there may be issues of fact, these fact issues are no longer material to the Plaintiffs' rational review challenge, and therefore summary judgment should be granted in her favor as a matter of law. In conclusion, Defendant argues that *Currier* and *Abbott II* "compel[] the conclusion that Louisiana Act 620 reasonably furthers valid interests in protecting the safety of women who seek abortion." (Doc 87-1 at p. 11).

As to Plaintiffs' claim that Act 620 was passed with the unlawful purpose of placing an undue burden on a woman's right to an abortion, Defendant argues that this too is foreclosed by *Abbott II* and *Currier,* both of which held that laws identical to Act 620 furthered valid interests. (Doc. 87-1, p. 18). Defendant concedes that "[t]he Fifth Circuit has not clarified the relationship between the rational basis inquiry and *Casey*'s purpose prong." (*Id.*). However, Defendant posits that "whether an abortion regulation furthers legitimate interests is highly relevant to whether the regulation has a valid purpose under *Casey*." (*Id.*). Therefore, "given [the] binding Fifth Circuit precedent finding identical privileges laws from other states further . . . valid interests, it is

legally untenable for plaintiffs to argue that Act 620 has some other, hidden purpose that runs afoul of *Casey*." (*Id.*).

Plaintiffs argue that Act 620 is not rationally related to a legitimate state interest. (*See*, *e.g.*, Doc. 102, pp. 5-7; Doc. 104, pp. 7-10). They argue that, despite the holdings in *Abbott II* and *Currier*, this Court must make an independent and "context–specific" examination of whether Act 620 has a relationship to the State's purported goals and must therefore "examine the State['s] . . . rationale informed by the setting and history of the challenged rule." (Doc. 104, p. 9 (quoting *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013), *cert denied*, 134 S. Ct. 423 (2013))).

Plaintiffs believe that evidence regarding undue burden is relevant to and intertwined with the rational basis review and that Plaintiffs' proposed evidence raises a substantial question of whether the admitting privileges requirement is reasonably designed to further the state's interest in women's health or whether, to the contrary, it "would result in a net harm to women seeking abortions." (Doc. 104, p. 11). Because this evidence raises factual issues which are in dispute, Plaintiffs argue that the Motion for Partial Summary Judgment should be denied.

Even if the rational review prong is foreclosed by *Abbott II* and *Currier* (which they dispute), Plaintiffs contend that the evidence on the issue of "medical justification is crucial to the undue burden analysis" because "[t]he undue burden standard, properly understood, is highly fact-dependent and requires this Court to evaluate whether the particular law, in the factual context in which it operates: (a) actually furthers a valid state interest, (b) has a valid purpose, taking into account its practical operation and the fit between the means and the purported ends of the restriction, and (c) places a substantial obstacle in the path of a woman seeking an

abortion." (*Id.* at p. 6). Thus, argue Plaintiffs, "such evidence is crucial in the analysis of the effects under the undue burden standard." (*Id.* at p. 23).

### III.    STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–587, 106 S.Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable [fact-finder] drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991).

The procedures in a Rule 65(a) preliminary injunction hearing are "less formal and [the] evidence . . . is less complete than in a trial on the merits." *Jonibach Mgmt. Trust v. Wartburg Enterprises, Inc.*, 750 F.3d 486, 491 (5th Cir. 2014) (quoting *University of Tex. v. Comenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830 (1981)). This less

formal standard is in accordance with the primary purpose of a preliminary injunction, namely "to preserve the relative positions of the parties until a trial on the merits can be had." *Id*.; *see also* 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* §2947 (3d ed. 2013) ("[A] preliminary injunction is an injunction that is issued to protect plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits.").

## IV.    DISCUSSION

Plaintiffs challenge Act 620 as unconstitutional on three broad grounds. First, under the rational review prong of the *Casey* test, Act 620 does not serve a legitimate state interest. (Doc. 102, pp. 5-7). Second, the effect of Act 620 imposes an undue burden on the right of Louisiana women to have an abortion. (*Id*. at 7-16). And third, the purpose of Act 620 is to create a substantial obstacle to a Louisiana woman's right to an abortion. (*Id*. at 16-19). Both sides agree that the question of whether the effect of Act 620 creates an undue burden is properly before the Court for consideration in the upcoming preliminary injunction hearing. In her Motion for Summary Judgment, Defendant seeks to eliminate two discrete issues from consideration at the hearing:  1) whether Act 620 imposes a medically unreasonable requirement, and 2) whether Act 620 has the improper purpose of placing an undue burden on abortion access in Louisiana. (Doc. 87-1, p. 7).

The essence of Defendant's argument is that both issues were decided in *Abbott II* and *Currier*, which are binding on this Court and require the granting of Defendant's motion. Further, Defendant argues that Plaintiffs have failed to offer admissible and relevant evidence in support of their position that Act 620 has an improper purpose. The essence of Plaintiffs' response is that: 1) *Abbott II* and *Currier* do not bind this Court on rational review because that

analysis is fact-specific and must be evaluated in the context of this specific statute as applied in this specific state; 2) that medical justification is relevant to the issue of the statute's alleged undue burden; and 3) that medical justification is relevant to the statute's purpose, an issue related to but separate from rational basis or the statute's effect, and one not addressed in *Abbott II* or *Currier*.

## A. Recent Fifth Circuit Precedent Governing Abortion Regulations

The Court must start with an evaluation of *Abbott II*, *Currier* and *Lakey* because, if applicable to the issues of this case, this Court is bound to follow them.

### i. *Abbott II*

*Abbott II* involved a challenge to two provisions of 2013 Texas House Bill No. 2 ("Texas H.B. 2"). *Abbott II*, 748 F.3d 583. One of those provisions is similar to Act 620 in that it requires a physician performing or inducing an abortion to have admitting privileges at a hospital no more than thirty miles from the location where the abortion is provided. *Abbott II*, 748 F.3d at 587.[3] Plaintiffs challenged the constitutionality of Texas H.B. 2 as a violation of patients' substantive due process rights, a violation of physicians' procedural due process rights, an unlawful delegation of authority to hospitals and as being impermissibly vague.

After a bench trial, the district court found parts of the admitting privileges requirement unconstitutional as lacking a rational basis and placing an undue burden on a woman's right to an abortion and issued an opinion permanently enjoining that provision of the statute. *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 951 F. Supp. 2d 891, 909 (W.D. Tex. 2013), *rev'd in part*, 748 F.3d 583 (5th Cir. 2014). The State filed an emergency motion to stay the district court's injunction pending the resolution of the State's appeal, which the Court

---

[3] Texas H.B. 2 also mandates that the administration of abortion producing drugs comply with the protocol authorized by the Food and Drug Administration, with limited exceptions. *Abbott II*, 748 F.3d at 587. There is no comparable provision in Act 620. This opinion deals only with the admitting privileges issue.

of Appeals granted in part. *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott* ("*Abbott I*"), 734 F.3d 406 (5th Cir. 2013). In a five-four decision, the Supreme Court refused to vacate the Court of Appeals' stay. *Planned Parenthood of Greater Tex. Surgical Health Servs. Of Greater Tex. v. Abbott*, ___ U.S. ___, 134 S. Ct. 506 (2013).

On appeal of the district court's judgment, the Fifth Circuit held that the issue of an abortion regulation's constitutionality is decided in two parts: it "must pass rational basis review" and also must not place an undue burden on a woman's right to an abortion. *Abbott II*, 748 F.3d at 590 (citing *Gonzales*, 550 U.S. at 158). In *Abbott II*, the plaintiffs challenged Texas H.B. 2 as unconstitutional both facially and as-applied. *Id.* at 589. As to the facial challenge, the Court noted that the "[s]tandard principles of constitutional adjudication require courts to engage in facial invalidation only if no possible application of the challenged law would be constitutional." *Id.* at 588. However, the Court stated that "whether the Supreme Court applies this rule in the same way in abortion cases as in others is uncertain." *Id.* ("[A]n abortion-regulating statute . . . fail[s] constitutional muster if it erect[s] an undue burden on women's decisions to choose abortion in a 'large fraction' of the cases." (citing *Casey*, 505 U.S. at 895; *Gonzales*, 550 U.S. at 168)).

In terms of sequencing, the Court said that "[t]he first-step of the analysis of an abortion regulation . . . is *rational* basis review, not *empirical* basis review." *Abbott II*, 748 F.3d at 596 (emphasis in original) (citing *Gonzales*, 550 U.S. at 158).[4] As to this first-step, the Court reversed the district court's holding that the admitting privileges requirement failed rational basis

---

[4] In *Currier*, the Fifth Circuit acknowledged that there is disagreement as to whether the rational review test is independent from and precedes the undue burden test but found it unnecessary to resolve the dispute. *Currier*, 760 F.3d at 454. *Lakey*, however, clearly reaffirms *Abbott II* in what it calls the Fifth Circuit's "two-step approach, first determining whether the law at issue satisfies rational basis, then whether it places a substantial obstacle in the path of a large fraction of women seeking abortions." *Whole Woman's Health v. Lakey*, 769 F.3d 285, 297 (5th Cir. 2014), *vacated in part*, 135 S. Ct. 299 (2014).

review. *Abbott II*, 748 F.3d at 591. The Court took issue with the district court's conclusion because it was based on the failure of the State to produce *evidence* that a rational relationship existed between this requirement and improved patient care and the failure of the State to produce *evidence* that the requirement "address[ed] issues of patient abandonment, hospital costs or accountability." *Id.* at 593-94. In support of its conclusion, the Court pointed to "the Supreme Court's oft-repeated guidance, that there is 'never a role for evidentiary proceedings' under rational basis review." *Id.* at 596 (quoting *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1127 (7th Cir. 1995)).[5] "[L]egislative choice is not subject to courtroom fact-finding." *Abbott II*, 748 F.3d at 594 (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096 (1993)).

The Court set out a number of principles to observe in deciding whether abortion regulation passes rational review, i.e. whether it is rationally related to a legitimate state interest. The rational basis test seeks only to determine whether there is any conceivable basis for the enactment. *Abbott II*, 748 F.3d at 594 (citing *Beach Commc'ns*, 508 U.S. at 313). A district court should not relitigate the facts that led to the passage of the law. *Abbott II*, 748 F.3d at 594 (citing *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637 (1993)). Rather, "[a] law based on rational speculation unsupported by evidence or empirical data' satisfies rational basis review." *Abbott II*, 748 F.3d at 594 (quoting *Beach Commc'ns*, 508 U.S. at 315).

As to Plaintiffs' contention that the Texas H.B. 2 had an impermissible purpose, the Court found that the district court erred in placing the burden on the State to disprove improper purpose. This, said the Court, is "plainly backwards." *Abbott II*, 748 F.3d at 597 (the burden of

---

[5] It is interesting, however, that the Court did discuss testimony and other evidence introduced at the trial in connection with its conclusion that the law passed rational review by serving a medical purpose and that the thirty mile geographic restriction requirement also passed rational review. *Abbott II*, 748 F.3d at 594-96 ("There is sufficient evidence here that the geographic restriction has a rational basis.").

proving the unconstitutionality of the abortion statute rests with the plaintiff (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865 (1997))). The Court then found that the plaintiffs produced no evidence to show that the admitting privileges requirement was passed to limit abortions or for any other improper purpose. *Abbott II*, 748 F.3d at 597. Plaintiffs "did not attack the State's purpose at all. There is thus no basis for a finding of impermissible purpose under *Casey*." *Id.*

The Court also reversed the district court's conclusion that the admitting privileges requirement created an undue burden on the right of women to obtain an abortion. *Id*. Because the effect prong of the undue burden test is not the subject of the motion before this Court, it is not necessary to review the Court's conclusions except that it found that the plaintiffs failed to carry their burden of proof on the facts. *Id*. at 600 ("[T]he regulation will not affect a significant (much less 'large') fraction of such women . . . .").

### ii. *Currier*

At issue in *Currier* was Mississippi House Bill 1390 ("Miss. H.B. 1390") passed by the Mississippi Legislature in April of 2102 which took effect in July of 2012. *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 450 (5th Cir. 2014), *petition for cert. pending*, No. 14-997 (filed February 19, 2015). Miss. H.B. 1390 requires that "[a]ll physicians associated with the abortion facility must have admitting privileges at a local hospital and staff privileges to replace local hospital on-staff physicians." *Id*. The district court held that the statute created an undue burden and therefore did not address the rational basis issue because to do so would be "superfluous." *Currier*, 760 F.3d at 454. The Fifth Circuit, "assum[ed] that a rational basis review is a necessary first step." *Id*. Acting on that assumption, the Fifth Circuit found that

because *Abbott II* held that "a virtually identical law" had a rational basis, "we are bound by that precedent to accept that the Mississippi statute has a rational basis." *Id.*

The Court then moved to whether the purpose or effect of the law created an undue burden. Because the district court had not reached the "purpose inquiry," and the parties did not argue it, the Court did not consider or decide this prong of the test. *Id.* at 454-55. The district court's finding that the effect of the law would be to close Mississippi's only abortion clinic was not contested by the State. *Id.* at 452. The Court of Appeals affirmed the district court's finding that this effect created an undue burden and affirmed the preliminary injunction against the enforcement of that portion of Miss. H.B. 1390.

### iii. *Lakey*

In *Lakey*, Plaintiffs challenged the admitting privileges requirement of Texas H.B. 2 as applied to two specific abortion clinics. *Whole Woman's Health v. Lakey*, 769 F.3d 285 (5th Cir. 2014), *vacated in part*, 135 S. Ct. 299 (2014). In addition, they challenged the law's requirement that abortion clinics existing on or after September 1, 2014, comply with the same minimum standards required of ambulatory surgical centers (hereinafter "ASC"). *Id.* at 290. The district court held that, together, these two requirements "create[d] a brutally effective system of abortion regulation" and issued a final judgment enjoining these two portions of the law and others as to all abortion facilities in Texas. *Id.* at 289. Although Plaintiffs' challenge to the admitting privileges requirement was limited to an as-applied challenge, the district court held that both the admitting privileges and the ASC provision were unconstitutional on their face. *Id.*

"To alleviate confusion and to fairly address the State's emergency motion and the Plaintiffs' response, [the Court of Appeals] consider[ed] whether to stay injunctions of both the admitting privileges requirement and the ambulatory surgical center provision on their face . . . ."

*Id.* at 292. As to the admitting privileges part of the law, the Court of Appeals found that the State had shown a substantial likelihood of success on the merits and, therefore, granted the State's emergency motion for stay pending the resolution of the State's appeal. *Id.* at 301.

In reaching its conclusion, the Court used what it called a "two-step approach," applying first a rational basis inquiry followed by an undue burden analysis. *Id.* at 297. As to the first step, the Court reaffirmed its test for rational basis, stating that "if the State establishes that a law is rationally related to a legitimate state interest, we do not second guess the legislature regarding the law's wisdom or effectiveness." *Id.* at 294.

The Court then turned to the second step – the undue burden analysis. "The undue burden inquiry looks to whether the challenged provision has either 'the *purpose* or *effect* of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.' If it does, it is unconstitutional." *Id.* (emphasis in original) (quoting *Casey*, 505 U.S. at 877).

In evaluating the possible undue burden of the ASC requirement, the Court separately considered "purpose" and "effect," making the "purpose inquiry" first. *Id.* In reversing the district court on the ASC provision, the Fifth Circuit emphasized that the district court "cited no record *evidence* to support its determination that [this] provision was enacted for the purpose of imposing an undue burden on women seeking abortions, nor did it make any *factual finding* regarding an improper purpose." *Id.* at 294-95 (emphasis added).

The Court then proceeded to examine the "effect" of the ASC provision. In doing so, it reemphasized its uncertainty as to the proper test to measure the extent of the burden. *Id.* at 295-96. While the general rule requires the plaintiff making a facial challenge to show that there is no set of circumstances under which the statute could be held constitutional, "as we noted in *Abbott II*, it is not clear whether the Supreme Court applies this general rule in abortion cases." *Id.*

(citing *Abbott II*, 748 F.3d at 588). Thus, the Court measured the effect utilizing both the traditional standard and what the Court saw as the standard used in *Casey*: a statute regulating abortion will "fail constitutional muster if, 'in a *large fraction of the cases* . . . it will operate as a substantial obstacle to a woman's choice to undergo an abortion.'" *Id.* at 296 (emphasis in original) (quoting *Casey*, 505 U.S. at 895).[6]

The Fifth Circuit rejected the district court's use of a test followed by other circuits wherein the court measures the burden of the statute on a woman's right to abortion by balancing the efficacy of the provision against the burdens that it imposes. *Id.* at 296-97 (comparing *Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 914 (9th Cir. 2014) and *Planned Parenthood of Wisc., Inc. v. Van Hollen*, 783 F.3d 786, 791-99 (7th Cir. 2013), with *Abbott II*, 748 F.3d at 593-94, 597, *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 515 (6th Cir. 2012), *Greenville Women's Clinic v. Bryant*, 222 F.3d 157 (4th Cir. 2000) and *Women's Health Center of W. Cnty., Inc. v. Webster*, 871 F.2d 1377 (8th Cir. 1989)); *see also Lakey*, 769 F.3d at 305 ("[O]ur circuit does not incorporate a balancing analysis into the undue burden analysis."). The Court also took issue with the district court's failure to use the "large fraction" test. *Lakey*, 769 F.3d at 298.

As to the admitting privileges requirement, the Court found that the unconstitutional as-applied challenge was likely barred by res judicata because the plaintiffs "could have brought, but chose not to bring, as-applied challenges" in their suit. *Id.* at 301. In *dicta*, the Court found that State was likely to succeed in proving that the effect of this and the ASC provisions had not produced an undue burden on a woman's right to an abortion as applied to the McAllen, Texas,

---

[6] In Judge Higginson's separate concurring and dissenting opinion, he notes that *Casey* invalidated the spousal-notification statute because it would prevent a "significant number" as well as a "large fraction" of women from obtaining an abortion. *Lakey*, 769 F.3d at 308 (Higginson, J., concurring in part and dissenting in part) (citing *Casey*, 505 U.S. at 893-95).

clinic but had not so proved that likelihood of success regarding the El Paso clinic. *Id.* at 302-04.

In its review of the undue burden of the admitting privileges provision, the Court did not engage

in a separate "purpose inquiry."

## B. Analysis

In applying these principles to the case at hand, the Court notes that unlike any of the

cases previously discussed, this is a motion for partial summary judgment.[7] As such, the burden

is on mover, Defendant Kliebert, to show that there is no material issue of fact and that she is

entitled to judgment on her motion as a matter of law.

Defendant contends that she is entitled to summary judgment on two specific claims

made by Plaintiffs: 1) that Act 620 imposes a medically unreasonable requirement, and 2) that

Act 620 has the *improper purpose* of placing an undue burden on abortion access in Louisiana.

(Doc. 87-1, p. 7). The two are related and therefore analyzed together.

The admitting privileges requirement of Act 620 is substantially similar to both Texas

H.B. 2 and Miss. H.B. 1390. To the extent that Plaintiffs contend that Act 620 is not rationally

related to a legitimate state interest because it is medically unreasonable or unnecessary, this

Court is bound by the Fifth Circuit's previous rulings in *Abbott II*, *Currier* and *Lakey*. *Abbott II*,

*Currier* and *Lakey* make clear that the admitting privileges provision in Act 620 passes rational

basis review. *Abbott II*, 748 F.3d at 599-600; *Currier*, 760 F.3d at 454; *Lakey*, 769 F.3d at 293.

Plaintiffs argue, however, that Fifth Circuit jurisprudence allows for the introduction of

evidence to negate the statute's alleged rational basis in the context of this specific statute. (Doc.

104, p. 9 ("[A]lthough rational basis review places no affirmative evidentiary burden on the

government, plaintiffs may nonetheless negate a seemingly plausible basis for the law by

---

[7] *Abbott II* was an appeal from a trial on the merits. *Abbott II*, 748 F.3d at 587-88. *Currier* was an appeal from a trial in which the district court granted a preliminary injunction. *Currier*, 760 F.3d at 451. And *Lakey* was an emergency motion to stay the district court's injunctions following a four day trial. *Lakey*, 769 F.3d at 289, 298.

adducing evidence of irrationality.… [T]he State['s] … chosen means must rationally relate to the state interests …. Our analysis does not proceed with abstraction for hypothesized ends[,] and means do not include post hoc hypothesized facts. Thus, we will examine the State['s] … rationale informed by the setting and history of the challenged rule.") (quoting *St. Joseph's Abbey v. Castille*, 712 F.3d 215, 233 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 423 (2013))).

But in considering the similar Mississippi statute, the Court of Appeals in *Currier* held that,

> [O]ur court in *Abbott* [*II*] has addressed the rational basis of a virtually identical law, and we are bound by that precedent to accept that the Mississippi statute has a rational basis.… [W]e … held that the Texas regulation satisfied a rational basis review because it was based on the rational speculation that it would 'assist in preventing patient abandonment' by the doctor providing the abortion. We see no basis for distinguishing the rational basis of [Mississippi] H.B. 1390. None of the other rationales discussed in *Abbott* [*II*] was state specific, and each would be equally applicable to H.B. 1390. Accordingly, we hold that H.B. 1390 satisfies the rational basis review upon our binding precedent in *Abbott* [*II*].

*Currier*, 760 F.3d at 454 (footnote omitted).

This Court is likewise bound by this precedent and therefore finds that Act 620 passes rational basis review. Accordingly, Defendant's Motion for Partial Summary Judgment is granted in part. The issue of medical reasonableness – as it pertains to the issue of Act 620's rational review – is decided as a matter of law.

Rational basis review, however, is only one part of the test for constitutionality. The statute must not place an undue burden on a woman's right to an abortion. "The undue burden inquiry looks to whether the challenged provision has either 'the *purpose* or *effect* of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.' If it does, it is unconstitutional." *Lakey*, 769 F.3d at 294 (emphasis in original) (quoting *Casey*, 505 U.S. at 877).

Plaintiffs contend that the statute's alleged medical unreasonableness is relevant to the undue burden question. (*e.g.*, Doc. 104, pp. 10-11). They also argue that the statute's purpose is an integral part of the undue burden analysis, that the purpose inquiry is fact sensitive and that it is informed by, among other fact issues, the question of whether the statute is medically necessary or medically unreasonable. (*Id.*). Plaintiffs' contested factual issues are listed in Doc. 104-1, pp. 2-16. Plaintiffs also point the Court to the evidence attached to their opposition (a listing of these exhibits is found at Doc. 104-2).

Defendant argues the issue of medical necessity is relevant only to the rational basis inquiry, which has been decided by *Abbott II*. (Doc. 87-1, p. 7). Further, Defendant contends that while "[t]he Fifth Circuit has not clarified the relationship between the rational basis inquiry and *Casey*'s purpose prong.… *Abbott II*'s statements on that issue are *dicta*." (Doc 87-1, p. 18 and p. 18, n.2). She argues that *Abbott II*'s holding that the admitting privileges statute furthered a legitimate state interest is "highly relevant to whether the regulation has a valid purpose under *Casey*." (*Id.*). In any event, Defendant points to the exhibits attached to its motion showing Act 620's legislative history (a listing of these exhibits is found at Doc. 87-1, p. 2). Defendant contends that the Plaintiffs have not offered sufficient admissible evidence to raise a material issue of fact regarding any alleged improper purpose. (Doc. 107, pp. 7-11).

In resolving these issues, the Court is required to follow the test set out in *Abbott II, Currier* and *Lakey*. While Plaintiffs urge this Court to apply the undue burden balancing test used by other circuits in such cases as *Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 914 (9th Cir. 2014), *Planned Parenthood of Wisc., Inc. v. Van Hollen*, 783 F.3d 786, 791-99 (7th Cir. 2013), *Planned Parenthood Se, Inc. v. Strange*, 33 F. Supp. 3d 1330, 1338-39 (2014), *Lakey* specifically rejected this test. *Lakey*, 769 F.3d  296-97, 305. Applying the Fifth Circuit test, the

Court finds that there are questions of material fact which preclude granting Defendant's Motion for Partial Summary Judgment in its entirety.

*Abbott II* instructs that the rational basis review is conducted without evidence. *Abbott II*, 748 F.3d at 596 ("[T]here is 'never a role for evidentiary proceedings' under rational basis review.") (quoting *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1127 (7th Cir. 1995)).[8] "[L]egislative choice is not subject to courtroom fact-finding." *Abbott II*, 748 F.3d at 594 (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, (1993)). While the Court agrees with the Defendant that there may be some lack of clarity in the Fifth Circuit's view of the relationship between the rational basis and purpose prong of the test, it is clear that the Fifth Circuit treats these prongs separately and that, as to the latter, proof is allowed and, indeed, required.

After having held that Texas H.B. 2 was rationally related to a legitimate state interest, the *Lakey* Court then turned to the separate and distinct "purpose inquiry." *Lakey*, 769 F.3d at 294. It is instructive to this Court that *Lakey* did not consider its holding that the statute passed rational basis review as dispositive of whether the statute had a legitimate purpose under *Casey*. Indeed, in evaluating the possible undue burden of the ambulatory surgical center requirement, the Court separately considered "purpose" and "effect," first making the "purpose inquiry." *Id*. In reversing the district court, the Fifth Circuit emphasized that the district court "cited no record *evidence* to support its determination that [this] provision was enacted for the purpose of imposing an undue burden on women seeking abortions, nor did it make any *factual finding* regarding an improper purpose." *Id*. at 294-95 (emphasis added).

---

[8] It is interesting, however, that the Court pointed to testimony and other evidence introduced at the trial to bolster its conclusion that the thirty mile geographic restriction requirement passed rational review. *Abbott II*, 748 F.3d at 595-96 ("There is sufficient evidence here that the geographic restriction has a rational basis.").

*Abbott II* also separated the purpose prong of the undue burden test from the rational basis review. It noted that "plaintiffs offered no evidence implying that the State enacted the admitting privileges provision in order to limit abortions; in fact, as their reply brief states, they did not attack the State's purpose at all." *Abbott II*, 748 F.3d at 597.

This Court draws three conclusions from the approach taken in *Abbott II* and *Lakey* to the purpose inquiry: first, that the purpose inquiry is separate and distinct from the rational basis review; second, the fact that a statute passes the rational basis review does not, by itself, answer the question of whether it has a legitimate purpose for purposes of measuring undue burden; and finally, the purpose inquiry is fact sensitive and a plaintiff challenging a statute on this basis must offer evidence in order to prevail. The question here is whether the evidence offered by Plaintiffs in opposition to Defendant's Motion for Partial Summary Judgment is sufficient to raise issues of material fact so as to require the denial of the motion. This begs the question of what kind of evidence the Court can consider for purposes of the present motion and the preliminary injunction hearing.

In answering this question, we get little help from *Abbott II*, *Lakey* and *Currier*. In *Lakey*, the Court found that as to the ASC requirement, Plaintiffs had offered no evidence on the purpose issue. *Lakey*, 769 F.3d at 299, n.15. As to the admitting privileges provision, the *Lakey* Court did not separately consider the purpose inquiry but, in evaluating the evidence introduced at preliminary injunction trial, found that the State was likely to ultimately win on both requirements as to the McAllen clinic but not as to the El Paso clinic. *Id*. at 303-04. In *Currier*, "[t]he district court did not reach the purpose inquiry, and the parties [did] not address it [on appeal]." *Currier*, 760 F.3d at 455. In *Abbott II*, the Court found that "plaintiffs offered no evidence implying that the State enacted the admitting privileges provision in order to limit

abortions; in fact, as their reply brief states, they did not attack the State's purpose at all." *Abbott II*, 748 F.3d at 597. All three decisions were rendered not at the summary judgment stage, as in the present case, but after a preliminary injunction trial where testimony and evidence were presented and weighed by the district court.

Defendant concedes that the Fifth Circuit "has not clarified the relationship between the rational basis inquiry and *Casey's* purpose prong" (Doc. 87-1, p. 18), but argues that in finding that Act 620 furthers a legitimate state interest, *Abbott II* has answered the purpose inquiry and finally determined that the statute has a valid purpose (*Id*. at pp. 13, 17-18). To the extent that the purpose inquiry has not already been decided by *Abbott II*, Defendant contends in the alternative that the only relevant evidence of the statute's purpose is the language of the statute, its legislative history and its furtherance of a legitimate state interest, (*Id*. at pp. 19-22) and that evidence offered by Plaintiffs to show an improper purpose is irrelevant or, at the very least, insufficient, to overcome Act 620's legislative text and history for purposes of the summary judgment motion. (*Id*. at pp. 9-13, 22-24).

Plaintiffs argue that the Court must consider the following kinds of evidence in determining whether Act 620's purpose is to place a substantial obstacle in the path of a woman seeking an abortion: 1) evidence that the Act will have the *effect* of creating this substantial obstacle (i.e. evidence of its effect is relevant to its purpose) (Doc. 104, p. 14); 2) evidence of the lack of medical necessity of Act 620, the Plaintiffs again arguing that this informs the question of the Act's effect and purpose (Doc. 104, pp. 10-11, 23); and 3) evidence regarding the circumstances of the Act 620's creation and passage. (Doc. 104, pp. 22-23)

In deciding the scope of evidence which is relevant to the purpose (as well as the effect) prong of the undue burden summary judgment analysis, this Court is bound by this circuit's

rejection of the undue burden *balancing* test used by other circuits. *Lakey*, 769 F.3d at 296-97, 305. Therefore, this Court follows only the test set forth in *Abbott II*, *Currier* and *Lakey*.

In her Motion for Partial Summary Judgment, Defendant does not challenge the right of Plaintiffs to offer evidence on the "effect" prong of the undue burden analysis. Therefore, the effect of Act 620 will clearly be an issue at the trial of the preliminary injunction, and evidence on the issue of the Act's effects, if any, on a woman's right to an abortion will be admissible and, indeed, extremely important to the outcome of the trial. That inquiry will necessarily be fact specific to Louisiana, and this Court will obviously not be bound by any factual findings on how the similar statutes in Texas and Mississippi affected the women in those states. Clearly, the factual differences on this question can lead to very different legal results on the constitutional question. *Compare Abbott II*, 748 F.3d 583 and *Lakey*, 769 F.3d 285 *with Currier*, 760 F.3d 488.

And while Defendant argues that the "purpose inquiry" is foreclosed or, at the very least, the evidence on this issue should be limited to the statute's text and legislative history, the Court agrees with the Plaintiffs that other kinds of evidence may also inform this inquiry. In *Okpalobi v. Foster*, 190 F.3d 337, 337, 354-56 (5th Cir. 1999), *superseded on other grounds on rehearing en banc*, 244 F.3d 405 (5th Cir. 2001), the Court addressed the issue of the "type of inquiry lower courts should undertake to determine whether a regulation has the 'purpose' of imposing an undue burden on a woman's right to seek an abortion." *Okpalobi*, 190 F.3d at 354. The Court found that a district court is "not to accept the government's proffered purpose if it is a mere 'sham.'" *Id.* (quoting *Edwards v. Aguillard*, 482 U.S. 578, 586-87 (1987)), and can look to "various types of evidence, including the language of the challenged act, its legislative history,

the social and historical context of the legislation, or other legislation concerning the same subject matter as the challenged measure." *Id.*[9]

Furthermore, evidence of the effect of the statute is relevant not only to the "effect prong," but also relevant, albeit indirectly, to the purpose inquiry. If for instance, after hearing the evidence, this Court concludes that the effect of Act 620 produces no undue burden, this finding would not necessarily be dispositive of whether the Act's purpose is legitimate. This finding, however, would certainly be relevant and support the argument that there was no improper purpose. The converse is also true. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535, 113 S. Ct. 2217 (1993) ("[T]he effect of a law in its real operation is strong evidence of its object.").

The same rationale applies with respect to evidence of the alleged lack of medical reasonableness of the admitting privileges requirement. If after hearing evidence on this issue, this Court were to conclude as a matter of fact that the admitting privileges requirement is medically reasonable, this finding would certainly inform and support (albeit indirectly) a finding that the statute has a legitimate purpose. And the converse is also true.[10]

The Court in *Abbott II* discussed evidence presented by the State to the Texas Legislature and at trial in support of the State's argument that the admitting privileges requirement was medically reasonable. *Abbott II*, 748 F.3d at 594-95. But this evidence was considered by the Court in the context of its rational basis inquiry which asks only whether the law, "'based on rational speculation[,] *unsupported by evidence or empirical data*[,]' satisfies rational basis

---

[9] *See also*, Roy G. Speece, Jr., *The Purpose Prong of Casey's Undue Burden Test and Its Impact on the Constitutionality of Abortion Insurance Restrictions in the Affordable Care Act Or Its Progeny*, 33 Whittier L. Rev. 77, 99, where, reviewing *Okpalobi* and other cases, the author lists a "broad array of factors" considered by courts to determine purpose, including "a bill's social and historical context."

[10] The Court again emphasizes that it finds these matters relevant not for purposes of weighing the severity of the obstacle against the state's justification for passing the law, but rather, as bearing simply on the question of the statute's purpose.

review." *Id*. at 594 (emphasis added). Given the *Abbott II* Court's emphatic insistence that "there is never a role for evidentiary proceedings under rational basis review," its finding relative to medical reasonableness in the context of rational review does not foreclose this Court's fact based examination of this issue for the separate and distinct "purpose inquiry."

On this issue of purpose, like the issue of effect, the parties have attached evidence to the motion and opposing memoranda which points in very different directions. For this reason, the Court finds that there are material issues of fact as to the statute's purpose as it relates to the undue burden inquiry. There are also issues of fact as to the Act's medical reasonableness as it relates to the purpose and effect prongs of the undue burden test. Therefore, summary judgment on the issue of purpose and medical reasonableness, as it pertains to both the purpose and effect prongs of the undue burden test, is inappropriate and is denied.

### V.    Conclusion

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendants Kathy Kliebert, is **GRANTED IN PART.** The Court finds as a matter of law that Act 620 is rationally related to a legitimate State interest; and therefore, Defendant's Motion for Partial Summary Judgment to eliminate Plaintiffs' claim of Act 620's medical unreasonableness as it pertains to Act 620's rational basis review is **GRANTED**. Defendant's Motion for Partial Summary Judgment is in all other respects **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>May 12, 2015</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**