## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

JUNE MEDICAL SERVICES LLC, *et al.*,

                  Plaintiffs,

    v.

DR. REBEKAH GEE,

                  Defendant

Civil Action No. 3:14-CV-525- JWD-RLB

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STAY
## THE PRELIMINARY INJUNCTION PENDING APPEAL

Plaintiffs June Medical Services LLC, d/b/a Hope Medical Group for Women, on behalf of its patients, physicians, and staff; Bossier City Medical Suite, on behalf of its patients, physicians, and staff; Choice, Inc., of Texas, d/b/a Causeway Medical Clinic, on behalf of its patients, physicians, and staff; John Doe 1, M.D.; and John Doe 2, M.D. (collectively, "Plaintiffs") submit this Memorandum in Opposition to Defendant's Motion to Stay the Preliminary Injunction Pending Appeal.  Defendant is not entitled to a stay of this Court's preliminary injunction because she does not meet the four-pronged test that must be applied when assessing the propriety of the extraordinary remedy of a stay pending appeal.

### I.  Defendant Fails to Meet the Legal Standard for a Stay

Defendant must establish that the following four factors weigh in her favor as a prerequisite for a stay to issue.  The factors are (1) whether the stay applicant has made a strong showing that she is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies.  *Nken v. Holder*, 556 U.S.

418, 434 (2009); *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d

406, 410 (5th Cir. 2013) ("*Abbott I*"). "The party requesting a stay bears the burden of showing

that circumstances justify [its entry]." *Nken*, 556 U.S. at 433-34.  In addition to meeting this

four-pronged test, a balance of the equities must weigh in favor of a stay.  *Barnes v. E-Sys., Inc.*

*Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (Scalia, J., in chambers)

(quoting *Magnum Import Co. v. Coty*, 262 U.S. 159, 174 (1923)).  None of the relevant factors,

nor considerations of equity, weigh in favor of a stay.

### A.     Defendant Has Not Made a Strong Showing of Likelihood of Success on the Merits

*1.  The Large Fraction Test Does not Apply to As-Applied Relief Granted in a Preliminary Injunction*

Defendant is not likely to succeed on the merits of her appeal of the preliminary

injunction because her challenge to the Court's application of the "large fraction" test misses the

mark.  *See* Doc. 229, Defendant's Memorandum in Support of Her Motion for Stay Pending

Appeal, for Expedited Consideration, and for Temporary Stay ("Brief"), at 2.  The "large

fraction" test must be met in order for the Court to grant *facial* relief.  *See Planned Parenthood*

*of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 895 (1992) (an abortion restriction should

be invalidated on its face if it operates as a substantial obstacle in a large fraction of the cases in

which it is relevant); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v.*

*Abbott*, 748 F.3d 583, 588 (5th Cir. 2014) ("*Abbott II*"); Doc. 216, Findings of Fact and

Conclusions of Law, Jan. 26, 2016 ("*slip op.*") at ¶ 379 ("a facial challenge can be sustained only

if "the law itself imposes an undue burden on at least a large fraction of women" (citing *Whole*

*Woman's Health v. Cole*, 790 F.3d 563, 589 (5th Cir. 2015), *stay granted*, 135 S. Ct. 2923

(2015), *cert. granted*, 136 S. Ct. 459 (2015) (quoting *Whole Woman's Health v. Lakey*, 769 F.3d

285, 299 (5th Cir. 2014), *vacated in part*, 135 S. Ct. 399 (2014); *Abbott I*, 734 F.3d at 415;

*Harris v. McRae*, 448 U.S. 297, 316 (1980); and *Maher v. Roe*, 432 U.S. 464, 474 (1977))).

Here, the preliminary injunction that Defendant intends to challenge on appeal grants *as-applied* relief only to Plaintiffs and Plaintiff clinics' staff and physicians.  Doc. 227, Judgement; *slip op*. at p. 112.  To support a grant of as-applied relief, this Court need only find that the challenged statute imposes an undue burden on the women whom Plaintiffs serve.  *See Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 (5th Cir. 2014) (granting preliminary injunctive relief to as applied to plaintiff under *Casey*'s undue burden standard and not applying the large fraction test).  The Court's "large fraction" analysis will be relevant in future proceedings in this case when the Court will determine whether to grant Plaintiffs the facial relief they seek.  *See, e.g., Abbott II*, 748 F.3d at 588.  The Court's finding that the large fraction test is met as to all women seeking abortions in Louisiana, *slip op.* at ¶ 405, is certainly more than sufficient grounds for its narrower, as-applied injunction, *slip op.* at p.112.  But because this test need not even be met in order for the Fifth Circuit to affirm this Court's injunctive relief, Defendant has failed to make any showing of likelihood of success on the merits on appeal.

> 2.  *In Any Event, the Large Fraction Test Was Properly Applied*

Defendant also contends that she is likely to prevail on appeal because the Court deviated from the "large fraction" test of *Casey*, as applied in this Circuit.  Brief at 2 (citing *Abbott I* and *Abbott II*).  Defendant argues that the "large fraction" test requires an analysis of distance traveled by women to reach an abortion provider.  *See* Brief at 2-4.  Defendant is mistaken.

In fact, a substantial obstacle in the undue burden analysis can take different forms.  In *Casey*, the Supreme Court struck down a Pennsylvania law requiring married women to certify that they notified their husband of their intent to obtain an abortion prior to the procedure.  505

U.S. at 898.  Although the Court estimated that the effects of this statute would be "relevant" to about 1% of women seeking abortions – those women who were married and determined not to tell their husbands – the Court's decision was driven by the fact that for a "large fraction" of that 1% – the cases in which women risked domestic violence, intimidation, retaliation, abuse, or withdrawal of support – the spousal notification would operate as a substantial obstacle to the decision to have an abortion, and was therefore invalid.  *Id*. at 887-95.  The Supreme Court's decision in *Casey* to strike down the restriction had nothing to do with driving distances.  Defendant's position that a showing of increased driving distances is required in the Fifth Circuit is plainly inconsistent with *Casey*.  Indeed, it is directly contradicted by the Fifth Circuit's insistence that "*Casey* counsels against striking down a statute solely because women may have to travel long distances to obtain abortions."  *Abbott II*, 748 F.3d at 598; *accord Cole*, 790 F.3d at 593.

Consistent with the principles stated in *Casey*, *Abbott I*, and *Abbott II*, this Court properly examined whether enforcement of Act 620 would create a substantial obstacle in the path of a woman seeking abortion by shuttering the vast majority of abortion providers in the state.  It was proper for the Court to consider that, for those women affected by the statute – women seeking abortions in Louisiana – a "large fraction" of them would face a substantial obstacle in obtaining an abortion in the form of (1) being unable to get an appointment with the sole remaining provider; (2) facing unreasonable or dangerous delays in doing so; or (3) risking self-performed, unlicensed and unsafe abortions.  *Slip op.* at ¶¶ 305-21, 405-406.

Defendant next takes issue with this Court's calculations to determine the approximate numerical value of the "large fraction" of women affected by the law.  Defendant's assertion that a "large fraction" of the 10,000 women who seek abortions in Louisiana each year from six

physicians will not face a substantial obstacle when abortion services are available only from a single physician in the entire state simply defies common sense.  And in any event, the Court's findings regarding the effect of Act 620 were supported by substantial record evidence.  *See generally slip op.* at ¶¶ 305-321.

Finally, Defendant claims that the Court improperly failed to exclude in its "large fraction" analysis the women who obtain abortions in Louisiana but who are not domiciled in the state.  *See* Brief at 4.  There is no legal support for Defendant's reading of *Casey* to exclude non-residents of the state whose law is being challenged.  *Casey* holds that "[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects.  *The proper focus of constitutional inquiry is the group for whom the law is a restriction . . .*" 505 U.S. at 894 (emphasis added).  Thus, the inquiry focuses on *women* for whom the law is a restriction, not *women of a particular state* for whom the law is a restriction.  Act 620 restricts the rights of all Americans seeking an abortion in the state of Louisiana, regardless of where they live.  The "large fraction" test contains no residency test, and *Casey*, which never even mentions the residency of women affected by the challenged requirements, cannot be read to require one.

The United States Constitution prohibits a state from infringing the fundamental rights of out-of-state residents.  *E.g., Corfield v. Coryell*, 6 F. Cas. 546, 551 (C.C.E.D. Pa. 1823).  Article IV § 2 plainly states that "[t]he citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."  Subtracting out-of-state women from the large fraction test, as Defendant proposes, would result in out-of-state women who seek abortions in Louisiana and are affected by Act 620 having no weight in that analysis.  This deprives them of constitutional protection for their right to abortion.  A law that deprives out-of-state women of their constitutional rights is flatly unconstitutional.  *Doe v. Bolton*, 410 U.S. 179, 200 (1973)

(striking down ban on out-of-state residents obtaining abortion in Georgia because "the Privileges and Immunities clause . . . must . . . protect persons who enter Georgia seeking the medical services that are available there."). Defendant's flawed interpretation of the undue burden test does precisely what the Constitution and the Supreme Court have forbidden: it denies out-of-state women the protection of the Privileges and Immunities Clause and their substantive due process rights.

### 3. This Court Properly Used the Statutory Definition of "Active Admitting Privileges" in Determining the Application of Act 620 to Dr. Doe 2

Defendant is not likely to succeed on the merits of her appeal by claiming that the Court "exceeded its jurisdiction" and "legally erred" in discounting Secretary Kliebert's sworn statement that she considered Dr. Doe 2's privileges at Tulane Medical Center to satisfy the requirements of Act 620. *See* Brief at 5. Had the Secretary's opinion been given due deference, Defendant continues, the Court would have had to include in its "large fraction" analysis Dr. Doe 2's ability to continue providing abortions in the New Orleans area. This, in turn, would have significantly diminished the "large fraction" as determined by the Court in rendering its opinion.

As noted above, the "large fraction" test is not at issue in an appeal of a preliminary injunction that grants as-applied relief only. *Supra* at 2-3. But in any event, the Court properly considered and discounted then-Secretary Kliebert's interpretation of Act 620. Secretary Kliebert proffered her declaration one business day before the evidentiary hearing. She also provided live testimony before the Court that undermined the declaration when she admitted that she had limited knowledge and understanding of the hospital admitting privileges process, including what type of hospital admitting privileges meet Act 620's requirements. (Doc. 191 at 203:4-10, 205:23 – 206:6, 206:12-16, 207:2-8 (Kliebert).). After hearing and considering both the declaration as proffered and Secretary Kliebert's testimony, as well as other evidence

regarding hospital admitting privileges in Louisiana, *slip op.* at ¶¶ 230-247, the Court found that Dr. Doe 2 had legitimate concerns about relying on the Secretary's declaration because he did not have the type of privileges required under the plain language of Act 620, *id.* at ¶¶ 248-249.

Indeed, Defendant's own expert admitted in his testimony that Act 620 requires more than what the privileges granted to Dr. Doe 2 allow, directly contradicting Secretary Kliebert's declaration.  Act 620, by its terms, defines "active admitting privileges" to include "the ability to admit a patient and to provide diagnostic and surgical services to such patient."  The privileges granted to Dr. Doe 2 by Tulane Medical Center, which were the subject of Secretary Kliebert's declaration, specified that he had to transfer all care of his admitted patients to another hospital physician immediately upon the patient's admission.  *See slip op.* at ¶ 241.  Defendant's expert, Dr. Robert Marier, who was also involved in the drafting of Act 620, came to the same conclusion as the Court:  the Secretary's interpretation of the statute flies in the face of the law's basic text.  *See slip op.* at ¶¶ 242-244.  As this Court correctly ruled, it was not bound to interpret the Act in contradiction to its plain meaning, solely on the basis of Secretary Kliebert's assertions.  *See slip op.* at ¶¶ 236-241.

Contrary to Defendant's contention that "the Court exceeded its jurisdiction," Brief at 6, the Court did not "substitute its own view of state law for that of the Secretary's."  The Court read the statute's definition of "active admitting privileges" and, finding no ambiguity, observed that the Secretary's interpretation was irreconcilable with Act 620's plain language.  In short, the Court's legal analysis was correct and it properly did not uncritically defer to Secretary Kliebert's flawed interpretation of the law.  *See slip op. at* ¶¶ 236-49.[1]

---

[1] The Court also made alternative findings based on evidence in the record and determined that Act 620 would still impose an undue burden even if Dr. Doe 2 continued to practice in the New Orleans area.  *See slip op.* at ¶¶ 312-315.

### 3. *Defendant Has Not Met Her Burden to Show a Likelihood of Success*

As discussed above, Defendant's arguments concerning the "large fraction" test are irrelevant to the order she seeks to appeal. The injunctive relief granted by the Court is preliminary and applies only to Plaintiffs and their staff and physicians. Because the Court did not grant facial injunctive relief, it is not necessary to review the "large fraction" analysis that will only potentially become relevant if facial injunctive relief is entered. Defendant's contention that the "large fraction" test was wrongly-applied is also incorrect, in addition to being irrelevant.

The Court's conclusion that Act 620 had the effect of imposing an undue burden in the path of women seeking an abortion in Louisiana is amply supported by the evidentiary record presented to the Court. Its holding that the effect of the Act would be to prevent thousands of women from obtaining abortions is well-supported by factual findings and is unassailable as applied to Plaintiffs. *See generally slip op.* at ¶¶ 373-391. Furthermore, Defendant's assertion that the Court's rejection of Secretary Kliebert's interpretation of the Act 620 was "legal and jurisdictional error" is frivolous. In short, Defendant has failed to make the requisite "strong showing" that she is likely to succeed on the merits of her appeal.

### B.   The Factors of Irreparable Injury to Applicant, Injury to Other Parties in the Proceeding, and Public Interest All Weigh Against a Stay

The three remaining factors in the analysis of whether a stay is warranted – whether the applicant will be irreparably injured absent a stay, whether issuance of the stay will substantially injure the other parties interested in the proceeding, and where the public interest lies – are dispatched in Defendant's brief in two desultory sentences. *See* Brief at 8. This is so because Defendant cannot establish that *any* of these factors weigh in her favor.

First, Defendant does not even attempt to show what irreparable injury may result if a stay is not granted. Indeed, Defendant "has not shown that *any* damage would result from the issuance of a preliminary injunction." *See slip op.* at ¶ 408 (emphasis added).

Second, issuance of a stay would injure Plaintiffs, their physicians, and their patients. Permitting Act 620 to be enforced would violate the federal constitutional rights of women seeking an abortion in Louisiana; this is irreparable harm by definition. *See id.* at ¶ 404. Permitting the Act to be enforced would create, rather than avoid, immediate irreparable harm in the form of severely restricted access to abortion; unreasonable and dangerous delays in obtaining needed medical care; and the health risks created by self-performed, unlicensed, and unsafe abortions, all of which would be consequences of staying the preliminary injunction. *See id.* at ¶¶ 404-407.

Third, the public interest is best served by not enforcing an unconstitutional state law. *See id.* at ¶ 409. Without an injunction, women in Louisiana will suffer significantly reduced access to constitutionally protected abortion services, risking serious health consequences and violating their constitutionally protected rights, as noted above. *See also id.* at ¶ 410.

Defendant offers no counter argument, but merely offers a circular complaint that failing to stay the preliminary injunction will deny her the ability to enforce this unconstitutional law.

## II.  Conclusion

The Supreme Court has admonished that a stay may be granted only in compelling circumstances because "[a] stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right. . . ." *Nken*, 556 U.S. at 427 (citations and internal quotation marks omitted). Where, as here, Defendant has failed to make a strong showing that she is likely to succeed on the merits, and has failed to meaningfully address the

9

remaining factors in the inquiry, she is not entitled in equity to a stay of this Court's preliminary injunction.

Dated: February 12, 2016

Respectfully submitted,

/s/      William E. Rittenberg

William E. Rittenberg
Louisiana State Bar No. 11287
RITTENBERG, SAMUEL AND PHILLIPS, LLC
715 Girod St.
New Orleans, LA 70130-3505
(504) 524-5555
rittenberg@rittenbergsamuel.com

Ilene Jaroslaw
CENTER FOR REPRODUCTIVE RIGHTS
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3697
ijaroslaw@reprorights.org

Dimitra Doufekias
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006-1888
(202) 887-1500
ddoufekias@mofo.com
*Trial Attorney*

*Attorneys for Plaintiffs*
*June Medical Services LLC d/b/a Hope Medical*
*Group for Women, Bossier City Medical Suite,*
*Choice Inc. of Texas d/b/a Causeway Medical  Clinic,*
*John Doe 1, M.D., and John Doe 2, M.D.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 12th day of February, 2016, a copy of the foregoing Memorandum in Opposition to Defendant's Motion to Stay the Preliminary Injunction Pending Appeal has been served upon counsel of record via the CM/ECF electronic filing system and by email.

<u>/s/ Ilene Jaroslaw</u>
Ilene Jaroslaw