IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUNE MEDICAL SERVICES LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> REBEKAH GEE, <br><br> Defendant. | Civil Action No. 3:14-CV-525- JWD-RLB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
PETITION FOR ATTORNEY'S FEES**

Plaintiffs brought this case under 42 U.S.C. § 1983 ("§ 1983") to seek relief from Louisiana Act 620 of 2014, which violates their patients' – and all women's – constitutional right to choose abortion in Louisiana. Findings of Fact and Conclusions of Law ¶ 428, ECF No. 274 (hereinafter "Opinion"). This Court has now declared the Act unconstitutional and entered a permanent injunction against it. *Id.* ¶ 431. As the prevailing parties, Plaintiffs seek an award of a reasonable attorney's fee under 28 U.S.C. § 1988(b) ("§ 1988").[1]

Pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Civil Rule 54(b)(1), Plaintiffs respectfully move this Court for an award of $4,701,228.38 in attorney's fees, including

---

[1] Plaintiffs are also today filing a Bill of Costs, pursuant to Local Civil Rule 54(c), to recover costs taxable under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. Plaintiffs respectfully request that items sought as attorney's fees that are more appropriately awarded as costs be so deemed by this Court, and likewise that items sought in the Bill of Costs more properly awarded as attorney's fees be so deemed. *See Davis v. Perry*, 991 F. Supp. 2d 809, 849-50 (W.D. Tex. 2014) (Smith, C.J.) (considering the plaintiffs' request for taxable costs under 28 U.S.C. § 1920 together with their request for reasonable, out-of-pocket expenses under § 1988, and assigning particular charges to the most appropriate category) *rev'd on other grounds sub nom. Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015); *Richardson v. Tex-Tube Co.*, 843 F. Supp. 2d 699, 711 (S.D. Tex. 2012) (same).

$4,514,143.25 for time reasonably expended by attorneys and other legal professionals working on litigating this case to judgment, and $187,085.13 for nontaxable expenses, plus an award of reasonable fees and expenses incurred in litigating the present petition and any future proceedings.[2]

## PLAINTIFFS' LEGAL TEAM

As a challenge to the constitutionality of a Louisiana anti-abortion law, the case involves both complex questions of constitutional law and scientific and medical evidence. Over the course of three years, it has progressed through an extensive amount of litigation, including, thus far: fully briefed and argued motions for a temporary restraining order, a protective order, a preliminary injunction, dismissal, clarification of the temporary restraining order (on two separate occasions), and partial summary judgment; significant written discovery; two dozen depositions; numerous discovery motions; a six-day trial; submission of proposed findings of fact and conclusions of law, and replies to the same (twice); an emergency motion for a stay in this Court; an emergency motion for a stay in the Fifth Circuit Court of Appeals; and an emergency application in the United States Supreme Court to vacate the Court of Appeals' stay.

Plaintiffs' legal team has shared and divided the work on this case according to their specialties and abilities. Plaintiffs are represented by attorneys from the Center for Reproductive

---

[2] Plaintiffs expect to submit a supplemental motion for attorney's fees to recover fees for litigating the present petition and for opposing Defendant's appeal. *See, e.g., Cruz v. Hauck*, 762 F.2d 1230, 1231, 1238 (5th Cir. 1985) ("prevailing parties are entitled to attorney's fees under § 1988 for time spent establishing and litigating a fee claim as well as for time spent prosecuting the merits of the civil rights action;" fees are recoverable by means of a "supplemental motion for attorney's fees"); *Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 256-57 (5th Cir. 1990) (affirming district court's decision to award fees pre-appeal, awarding fees on appeal, and remanding with instructions for further fact finding regarding the proper amount of each). It is black letter law that this Court retains jurisdiction to award fees pending appeal. *Thomas v. Capital Sec's Servs.*, 812 F.2d 984, 987 (5th Cir. 1987). District courts in this circuit routinely make such awards under § 1988. *E.g., Strain v. Kaufman Cty. Dist. Attorney's Office*, 23 F. Supp. 2d 698, 700 (N.D. Tex. 1998); *Police Ass'n of New Orleans v. City of New Orleans*, No. CIV.A. 94-0065, 1995 WL 608470, at *1 n.1 (E.D. La. Oct. 16, 1995).

Rights (the "Center"); Morrison & Foerster LLP ("Morrison & Foerster"); and Rittenberg, Samuel, & Phillips, LLC. The Center and Morrison & Foerster have acted as co-lead counsel on this case. Demme Doufekias, a Morrison & Foerster partner, led the trial team, including managing the discovery process, overseeing trial strategy, and taking the lead in drafting pleadings and briefs. Janet Crepps, a senior counsel at the Center, led the opening case strategy. Ilene Jaroslaw, a senior staff attorney at the Center, subsequently took over as the lead Center attorney in the matter. In appellate and Supreme Court proceedings, David Brown took the lead on the papers. Marc Hearron, a partner in Morrison & Foerster's Appellate and Supreme Court Practice Group, provided strategic guidance. William Rittenberg both advised the legal team about local practice and procedure, and provided substantive input into strategy and pleadings and briefs. This team was assisted throughout by other legal professionals at the Center and Morrison & Foerster.

The background and qualifications of the Morrison & Foerster attorneys are set forth in the declaration of Demme Doufekias. *See* Doufekias Decl. ¶¶ 5–17. Those of the Center attorneys are set forth in the declaration of David Brown. *See* Brown Decl. ¶¶ 39–48. Mr. Rittenberg's are set forth in his declaration. Rittenberg Decl. ¶¶ 1–3.

## ARGUMENT

### I. PLAINTIFFS ARE ENTITLED TO AN AWARD OF REASONABLE ATTORNEY'S FEES.

Parties that prevail in litigation brought under § 1983 are entitled to reasonable attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, codified as § 1988. *See Indep. Fed. of Flight Attendants v. Zipes*, 491 U.S. 754, 760-61 (1989); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Here, Plaintiffs are clearly the "prevailing parties . . . because [they] obtained the declaratory and injunctive relief they sought." *Sanchez v. City of Austin*, 774 F.3d 873, 879 (5th Cir. 2014); *see supra* at 1; Brown Decl. ¶¶ 19–20.

3

"The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (internal quotation marks omitted). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. "Normally this will encompass all hours reasonably expended on the litigation, and indeed in some case of exceptional success an enhanced award may be justified." *Id.*

"In this circuit, courts apply a two-step method for determining a reasonable attorney's fee award." *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, a court must calculate the lodestar amount, which consists of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 434; *see also Combs*, 829 F.3d at 392. Second, the court must determine whether an adjustment to the lodestar is warranted by the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Combs*, 829 F.3d at 392.

Here, the proper lodestar amount for Plaintiffs' attorneys[3] collectively is $4,514,143.25. Although many of the *Johnson* factors would support an enhancement—including the novelty and difficulty of the issues, the skill required to perform the legal services properly, time limitations imposed by the circumstances, and the undesirability of the case, *see Johnson*, 488 F.2d at 717-19—Plaintiffs do not seek an enhancement. Instead, Plaintiffs ask the Court to take these factors into account when determining a reasonable hourly rate for each attorney. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (explaining that "the quality of an attorney's performance"

---

[3] Throughout this memorandum of law, Plaintiffs use the term "attorneys" to encompass both the licensed attorneys and the law clerks and paralegals who comprised their legal team. The Supreme Court has long held that the "'reasonable attorney's fee' provided for by [§ 1988] should compensate the work of paralegals, as well as that of attorneys." *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *accord Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 582 (2008) (awarding fees for paralegal work at prevailing market rates).

"should be reflected in the reasonable hourly rate"); *Davis v. Perry*, 991 F. Supp. 2d 809, 849 (W.D. Tex. 2014) (Smith, C.J.) (holding that an enhancement of the lodestar amount is not necessary where "the hourly rates are high enough to compensate for [the *Johnson*] factors"), *rev'd on other grounds sub nom. Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015).

### A. The Hourly Rates Sought by Plaintiffs' Attorneys Are Reasonable.

"The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (footnote omitted). Prevailing market rates are the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895 n.11. They should result in "an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551 (emphasis in original).

Although the "relevant community" for purposes of determining prevailing market rates is typically the district in which the case was filed, where it is necessary for litigants to retain an attorney from outside the district to ensure that their interests are adequately represented in a lawsuit, the attorney's "home" jurisdiction is the "relevant community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-83 (5th Cir. 2011) ("[W]here out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation."); *see also La. Generating LLC v. Ill. Union Ins. Co.*, CV No. 10-516-JJB, 2014 WL 1270049, at *4 (M.D. La., March 27, 2014) ("[A] litigant [seeking extra-forum rates] must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result [and] must make a particularized showing, not only that the selection

5

of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result. Among ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.") (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir.2009)).

Thus, in *McClain*, the Fifth Circuit reversed a district court's decision to limit lawyers based in California to rates prevailing in the Eastern District of Texas where the record demonstrated that "no Texas attorneys were willing and able to assist in such a large case that might drag on for years without any guarantee of financial remuneration." *Id.* at 383 ("[T]he district court clearly erred in finding that local counsel were readily available to assist [plaintiffs' lead counsel], and it legally erred in suggesting that local community rates are always required when out-of-district counsel are employed."). Likewise, in *Louisiana Generating*, the court here found it reasonable to award out-of-state rates to a Washington, D.C.-based attorney with "decades worth of experience, honed expertise, and complex litigation experience," in a suit regarding pollution liability insurance claims where "no in-district counsel possessed the level of expertise that [non-forum counsel] did in complex insurance recovery matters." 2014 WL 1270049, at * 4.

Here, as in *McClain* and *Louisiana Generating*, the record contains abundant evidence that Plaintiffs needed to retain out-of-district counsel to secure adequate representation in their challenge to the abortion restrictions. Similarly to the plaintiffs in those cases, Plaintiffs here needed counsel willing and able to take on a large, highly-specialized, multi-year case with an uncertain outcome and without any guarantee of compensation. No counsel in the community were ready, willing and able to take this case.

6

This case concerns abortion rights. This is a highly-specialized area of constitutional law. Few lawyers in Louisiana possess expertise in this area. *See* Adcock Decl. ¶ 9; Rittenberg Decl. ¶ 7.[4] Additionally, Louisiana law appears to forbid any state or local government entity from hiring any law firm that has also has been retained by any abortion provider, including the Plaintiffs here. La. Rev. Stat. § 36:21(B)(1).[5] Thus, a Louisiana law firm could only represent Plaintiffs under the threat of losing its ability to obtain any business from the entire public sector within the state—an enormous lost source of possible clients and revenue. In addition to this government-imposed disability, many lawyers in this State are unwilling to represent abortion providers for fear of offending other clients or potential clients regarding a controversial topic, or because of personal objections to abortion. Adcock Decl. ¶¶ 10–12; Rittenberg Decl. ¶ 4.

Furthermore, it was known from the outset of this case that the parties would have to address rapidly shifting appellate and Supreme Court jurisprudence. *See* Tr. of H'g on the Mot. of TRO at 26:10-14, ECF No. 29 ("[Ms. Doufekias:] There are two cases pending on exactly these types of statutes in front of the Fifth Circuit right now, and it's a very -- right now we're in a very fluid time. The Court: I agree with that."). There was also adverse precedent from the Fifth Circuit on the central legal issue in the case—the constitutionality of requiring admitting privileges for

---

[4] The need for out-of-state-counsel in cases such as the present is further evidenced by the fact that, in the years preceding this case, an out-of-state attorney has taken the lead in every federal court challenge to a Louisiana anti-abortion law. *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d 477, 481 (5th Cir. 2016) (argued by Carrie Flaxman of Washington, D.C.); *K.P. v. LeBlanc*, 729 F.3d 427, 431 (5th Cir. 2013) (argued by Stephanie Toti of New York); *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 712 (5th Cir. 2012) (argued by J. Alexander Lawrence of New York); *K.P. v. LeBlanc*, 627 F.3d 115, 118 (5th Cir. 2010) (argued by Stephanie Toti of New York).

[5] The relevant portion of the provision reads, "No institution, board, commission, department, agency, official, or employee of the state, or of any local political subdivision thereof, shall contract with, award any grant to, or otherwise bestow any funding upon, an entity or organization that performs abortions, *or that contracts with an entity or organization that performs abortions*, in this state." La. Rev. Stat. § 36:21(B)(1) (emphasis added).

7

doctors to offer abortion care, *see Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 594 (5th Cir. 2014), *abrogated by Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016)—making the likelihood of success here uncertain.

Finally, this case has entailed an expedited schedule at several stages. These include Defendant's emergency motions for a stay in this Court and in the Court of Appeals, which in turn required Plaintiffs to make an emergency application to the Supreme Court, *see* Brown Decl. ¶¶ 13–15; *see also, e.g.,* Tr. of Tel. Conf. on Feb. 10, 2016, at 6:5-6, ECF No. 233 ("MR DUNCAN: . . . I don't think [a motion for a stay pending appeal is] impracticable. I just think it's very difficult do it under the time constraints."). An expedited schedule was also necessary during the case's opening phase, in which Plaintiffs needed to obtain a TRO. This schedule left Plaintiffs' attorneys limited time for other engagements. *See* Brown Decl. ¶¶ 4–8.

The testimony of experienced and well-respected Louisiana attorneys demonstrates that it would not have been possible for Plaintiffs to retain counsel from within this district who possessed the necessary expertise to litigate complex constitutional issues all the way to the Supreme Court, would risk losing the ability to obtain any business from the state's entire public sector, were willing to represent abortion providers, and were able to set aside their other engagements, and all for a case involving new clients that would take years to resolve with an uncertain likelihood of success or payment, in the face of adverse circuit precedent. Adcock Decl. ¶¶ 9–13; Rittenberg Decl. ¶¶ 4, 7. Accordingly, it has proven necessary for Plaintiffs to engage out-of-district counsel with expertise in abortion rights and the capacity to handle a large case on a frequently expedited basis in order to ensure that they would be adequately represented in this case. Plaintiffs' out-of-

district counsel should therefore be compensated at their home rates where those rates are greater than the prevailing rates in this district.[6]

The reasonable rate determination for all relevant communities must take into account the complexity of the issues raised in the case and the corresponding degree of expertise and experience required to litigate it successfully. *See Davis*, 991 F. Supp. 2d at 846 ("The reasonable hourly rate reflects the novelty and complexity of the issues, the special skill and experience of counsel, and the quality of representation."). "The Supreme Court indicated in *Perdue* that the lodestar calculation should 'measure the attorney's true market value' and the attorney should be 'compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes.'" *Id.* (quoting *Blum*, 559 U.S. at 554-55).

The rates sought by Plaintiffs' attorneys, set forth in Appendix A hereto, are reasonable and in accordance with the foregoing principles. The rates sought by the Morrison & Foerster attorneys are the rates that the firm actually charged its clients, for the services of those professionals during the years indicated.[7] *See* Doufekias Decl. ¶ 18. In other words, Morrison & Foerster would charge paying clients in Louisiana these rates. *Id*. Also, these rates are in line with the prevailing rates in Washington, D.C. and New York City for similar services by lawyers of reasonably comparable skill, experience, and reputation during the relevant time period. *See* Doufekias Decl. ¶¶ 18-21; Herman Decl. ¶¶ 4–6; Parker Decl. ¶¶ 11–12.

---

[6] The Fifth Circuit has explained that "local community rates . . . set[] a floor for compensation." *McClain*, 649 F.3d at 383.

[7] Although Plaintiffs' attorneys are entitled to apply their current rates retroactively to all time spent on the case, *see Perdue*, 559 U.S. at 556, they seek only the rates that they actually charged clients in prior years, to avoid any possibility of a windfall.

Likewise, the rate sought by William Rittenberg is in line with the prevailing rates in the community[8] for similar services by lawyers of reasonably comparable skill, experience, and reputation during the relevant time period. *See* Adcock Decl. ¶ 8; Rittenberg Decl. ¶ 10; *see also, e.g., In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, No. 2179, 2016 WL 6215974, at *19, *19 n.14 (E.D. La. Oct. 25, 2016) (approving of $450 per hour as a reasonable lodestar rate for area plaintiffs' attorneys, and reviewing cases and other sources); *Labarge Pipe & Steel Co. v. First Bank*, Case No. 03-281, 2011 WL 3841605, at *5 n.4 (M.D. La. 2011) (holding $435 per hour reasonable for work done by a highly experienced attorney in 2003); *Hornbeck Offshore Serv., L.L.C. v. Salazar*, Case No. 10-1663, 2011 WL 2214765 (E.D. La. 2011), *rev'd on other grounds*, 713 F.3d 787, 796 (5th Cir. 2013) (finding $420 per hour reasonable for work done by a highly experienced attorney in 2010).

Although Center attorneys do not typically charge their clients on an hourly basis, the rates sought by Center attorneys (with the exception of Janet Crepps, *see infra* at 11) are in line with the prevailing rates in New York City for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See* Brown Decl. ¶ 50; Herman Decl. ¶¶ 4–5; Parker Decl. ¶ 11. They are the rates that these attorneys would have charged their clients if they worked in the New York City office of Morrison & Foerster or one of its peer firms during the relevant years. *See* Brown Decl ¶ 50; Doufekias Decl. ¶¶ 18-21; Herman Decl. ¶¶ 4–5; Parker Decl. ¶¶ 11–12; *cf. La.*

---

[8] Rates in the Eastern District and Middle District of Louisiana are comparable, and courts in this district use both when calculating the community rate. *Ball v. LeBlanc*, CV No. 13-00368-BAJ-SCR, 2015 WL 5749458, at * 2 (M.D. La., Sept. 30, 2015) (reviewing cases); *Stogner v. Sturdivant*, No. CIV.A. 10-125-JJB-CN, 2011 WL 6140670, at *2 n. 4 (M.D. La. Dec. 9, 2011) ("Since Katrina, the size of New Orleans and Baton Rouge has become more comparable, resulting in a similar legal market, and the [court] therefore finds that the associate rates found reasonable in the New Orleans market during the post-Katrina period can therefore be applied to associates in this judicial district."); Adcock Decl. ¶ 3.

10

*Generating*, 2014 WL 1270049, at *5 (finding $1,000 per hour is a reasonable rate for a highly-specialized, highly experienced out-of-district attorney practicing in Louisiana). Ms. Crepps, who is based in Simpsonville, South Carolina, is seeking compensation at community rates applicable to her home jurisdiction, the District of South Carolina. Brown Decl. ¶ 41; *see also Doe v. Kidd*, No. 14-1428, 2016 WL 4191505, at *7-*10 (4th Cir. Aug. 9, 2016) (awarding an hourly rate of $480 to a South Carolina attorney of "national reputation" for work done in 2013 and prior years).

Accordingly, the Court should calculate Plaintiffs' reasonable attorney's fees based on the rates set forth in Appendix A.

### B. The Lodestar Amounts Calculated by Plaintiffs Constitute Reasonable Attorney's Fees.

The chart in Appendix A also sets forth the lodestar amounts for all attorneys. These amounts are based on reasonable hourly rates, *see supra* at 5–11, and reflect the exercise of reasonable billing judgment, including the elimination of some 2,200 hours of attorney time, for which Plaintiffs are seeking no recovery, *see* Brown Decl. ¶ 36; *see also* Doufekias Decl. ¶ 23; Rittenberg Decl. ¶ 9. Accordingly, they constitute reasonable fees for the legal services provided to Plaintiffs. *See Perdue*, 559 U.S. at 554 ("[T]here is a strong presumption that the lodestar figure is reasonable."); *Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987) ("[T]he lodestar-is presumed to be the reasonable fee authorized by [§ 1988] . . . .").

### II. PLAINTFFS ARE ENTITLED TO AN AWARD OF REASONABLE LITIGATION EXPENSES.

§ 1988 also entitles prevailing parties to compensation for reasonable litigation expenses that are not taxable under 28 U.S.C. § 1920.[9] *Associated Builders & Contractors of La., Inc. v.*

---

[9] Expenses that are covered by 28 U.S.C. § 1920 are recoverable as costs taxed by the clerk. *Chacon v. City of Austin, Tex*, No. A-12-CA-226-SS, 2015 WL 4138361, at *10 (W.D. Tex. July 8, 2015). Plaintiffs are also filing a Bill of Costs today to seek those expenses, *see supra* at n.1.

11

*Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). These nontaxable expenses are "costs normally charged to a fee-paying client," including items such as "charges for photocopying, paralegal assistance, travel, and telephone." *Id.*; *accord Gros v. New Orleans City*, No. CIV.A. 12-2322, 2014 WL 3894371, at *4-*5 (E.D. La. Aug. 8, 2014) (awarding recovery of "reasonable out-of-pocket expenses" for items including photocopying, paralegal expenses, mailing, telecommunications, and travel including airfare, airport shuttle, baggage checks, meals, lodging, and parking and reviewing cases).

The chart in Appendix B sets forth the total amount of expenses for which Plaintiffs are seeking reimbursement. All of the expenses represented in the chart are of the type that attorneys would normally pass on to fee-paying clients. *See* Brown Decl. ¶¶ 54–55; Doufekias Decl. ¶¶ 26-27; Herman Decl. ¶ 4.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Petition for Attorney's Fees in its entirety.

May 10, 2017                Respectfully submitted,

                  s/ *Charles M. Samuel*
                  Charles M. Samuel III
                  Louisiana State Bar No. 11678
                  RITTENBERG, SAMUEL AND PHILLIPS, LLC
                  715 Girod St.
                  New Orleans, LA 70130-3505
                  (504) 524-5555
                  samuel@rittenbergsamuel.com

                  Dimitra Doufekias
                  David Scannell
                  MORRISON & FOERSTER LLP
                  2000 Pennsylvania Avenue, NW

Suite 6000
Washington, DC 20006-1888
(202) 887-1500
ddoufekias@mofo.com

David Brown
Zoe Levine
Janet Crepps
CENTER FOR REPRODUCTIVE RIGHTS
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3697
dbrown@reprorights.org

*Attorneys for Plaintiffs June Medical Services LLC d/b/a Hope Medical Group for Women, Bossier City Medical Suite, Choice Inc., of Texas d/b/a Causeway Medical Clinic, John Doe 1, M.D., and John Doe 2, M.D.*

## APPENDIX A
## CHART OF RATES AND LODESTAR AMOUNTS

| Time-keeper | 2014 | | | 2015 | | | 2016 | | | Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|
| | Hrs. | Rate | Total | Hrs. | Rate | Total | Hrs. | Rate | Total | |
| David Brown | .1 | $670 | **$67** | 326.5 | $720 | **$235,080** | 182.8 | $770 | **$140,756** | **$375,903** |
| Janet Crepps | 60.1 | $480 | **$28,848** | n/a | n/a | **n/a** | 27.6 | $580 | **$16,008** | **$44,856** |
| Ilene Jaroslaw | 373.75 | $800 | **$299,000** | 833.3 | $850 | **$708,305** | 160.25 | $900 | **$144,225** | **$1,151,530** |
| Zoe Levine | 16.6 | $670 | **$11,122** | 347.7 | $720 | **$250,344** | 155.4 | $770 | **$119,658** | **$381,844** |
| Julie Rikelman | 53.5 | $800 | **$42,800** | n/a | n/a | **n/a** | 12.2 | $900 | **$10,980** | **$53,780** |
| *Center for Reproductive Rights subtotal – $2,007,913* | | | | | | | | | | |
| | | | | | | | | | | |
| Bill Rittenberg | 49.57 | $450 | **$22,306[50]** | 8.5 | $450 | **$3,825** | 5.0 | $450 | **$2,250** | **$28,381[50]** |
| *Rittenberg, Samuel & Phillips subtotal – $28,381.50* | | | | | | | | | | |
| Hanna Abrams | n/a | n/a | **n/a** | 156.25 | $675 | **$105,468[75]** | n/a | n/a | **n/a** | **$105,468[75]** |
| Gregory Brooks | 86 | $295 | **$25,370** | 43 | $310 | **$13,330** | n/a | n/a | **n/a** | **$38,700** |
| Demme Doufekias | 378 | $775 | **$292,950** | 601.25 | $825 | **$496,031[25]** | 118.25 | $875 | **$103,468[75]** | **$892,450** |
| Timothy Gallivan | 43.5 | $385 | **$16,747[50]** | 389 | $405 | **$157,545** | 29 | $465 | **$13,485** | **$187,777[50]** |
| Libby Greismann | 539 | $385 | **$207,515** | 206 | $460 | **$94,875** | n/a | n/a | **n/a** | **$302,390** |

14

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Marissa Harris | 56.75 | $615 | **$34,901$^{25}$** | 141 | $675 | **$95,175** | n/a | n/a | **n/a** | **$130,076$^{25}$** |
| Marc Hearron | n/a | n/a | **n/a** | 3.5 | $800 | **$2,800** | 39 | $850 | **$33,150** | **$35,950** |
| Kerry Jones | 60.25 | $385 | **$23,196$^{25}$** | 539.75 | $405 | **$218,598$^{75}$** | 45.75 | $465 | **$21,273$^{75}$** | **$263,068$^{75}$** |
| Jeremy Merkelson | 256.75 | $615 | **$157,901$^{25}$** | 94.75 | $675 | **$63,956$^{25}$** | n/a | n/a | **n/a** | **$221,857$^{50}$** |
| David Scannell | 330.25 | $615 | **$203,103$^{75}$** | 93.5 | $675 | **$63,112$^{50}$** | 46.75 | $725 | **$33,893$^{75}$** | **$300,110** |
| *Morrison Foerster subtotal – $2,477,848.75* | | | | | | | | | | |
| **TOTAL – $4,514,143$^{25}$** | | | | | | | | | | |

15

# APPENDIX B
# SUMMARY CHART OF NONTAXABLE, OUT-OF-POCKET EXPENSES

| Firm | Object of Expense | Amount |
|---|---|---|
| **Morrison & Foerster** | | |
| | E-discovery | $43,388.53 |
| | Depositions | $1,054.14 |
| | Postage | $47.68 |
| | Research | $60,044.13 |
| | Shipping & Couriers | $10,082.76 |
| | Travel | $52,098.42 |
| | Word-processing | $1,581.00 |
| | Faxes | $91.00 |
| | Overtime | $421.97 |
| | Printing | $302.40 |
| | Trial Expenses | $1,751.62 |
| | *Subtotal* | *$170,863.65* |
| **Center for Reproductive Rights** | | |
| | Overtime | $69.60 |
| | Travel | $15,320.89 |
| | Research | $72.28 |
| | Shipping | $708.65 |
| | Telephone | $50.06 |
| | *Subtotal* | *$16,221.48* |
| **Total** | | **$187,085.13** |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of May 2017, a copy of the foregoing Memorandum of Law in Support of Plaintiffs' Petition for Attorney's Fees has been served upon the parties' counsel of record by electronic service through the Court's ECF system.

*/s/ David Brown*
David Brown