# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JUNE MEDICAL SERVICES, LLC,** *et al.*                **CIVIL ACTION**

                                                        **NO. 14-525-JWD-RLB**

**VERSUS**

**COURTNEY PHILLIPS, in her official capacity as**
**Secretary of the Louisiana Department of Health**

## <u>ORDER</u>

Before the Court is the Motion to Maintain Documents Under Seal filed by Plaintiffs,

June Medical Services, LLC, *et al*. (R. Doc. 344). The Motion is Opposed. (R. Doc. 350).

Plaintiffs have filed a Reply. (R. Doc. 360). Also before the Court is a related Motion to

Intervene and Oppose filed by certain Movant-Intervenors. (R. Doc. 349). That Motion is also

Opposed (R. Doc. 365) and Movant-Intervenors have been granted leave of Court to file a Reply

(R. Doc. 379). For the reasons set forth herein, the Court will grant the Motion to Intervene and

Oppose (R. Doc. 349), and grant in part and deny in part Plaintiffs' Motion to Maintain

Documents Under Seal (R. Doc. 344).

## I.      Background

Plaintiffs initiated this action with the filing of their Complaint for Declaratory and

Injunctive Relief (R. Doc. 1) on August 22, 2014. Plaintiffs immediately sought the issuance of a

protective order, which request was opposed by Defendants. (R. Docs. 4, 19, 23). After review of

the law and arguments, the Court issued an Order granting Plaintiffs' request, specifically

permitting the Plaintiff physicians to proceed under pseudonym. (R. Doc. 24). A similar Order

was issued permitting two additional Plaintiff physicians in the consolidated action to proceed

under pseudonym. (R. Doc. 55). Thereafter, on November 6, 2014, the Court issued an Order (R.

Doc. 59) granting the Parties' Joint Motion for Protective Order, which contained a further stipulation permitting the Plaintiff physicians to proceed under pseudonym, and outlined the terms of stipulated protections agreed to by the parties governing documents and information obtained throughout the course of the litigation. Specifically relevant to this instant Order, the parties to the Stipulated Protective Order agreed that "[u]nless a court orders otherwise, the parties and their counsel shall maintain the confidentiality of all Confidential information after final disposition of this litigation, by adjudication (including appeals) or otherwise." (R. Doc. 59 at 8).

Proceeding through trial at the district court, the district judge issued an Order (R. Doc. 161) granting a Joint Consent Motion Regarding Confidential Trial Procedures, preserving the confidentiality of certain documents and exhibits through trial, as well as preserving the anonymity of the Plaintiff physicians. This litigation then proceeded through the courts, culminating with a decision issued by the United States Supreme Court on June 29, 2020. *See June Medical Servs., LLC, et al. v. Russo*, 140 S.Ct. 2103 (2020).

## II.    Law and Analysis

### a.    Motion to Intervene

Before addressing the propriety of maintaining any documents or information under seal, the Court must first address the request to intervene. (R. Doc. 349). The parties seeking intervention are a group of Louisiana legislators, journalists, and legal academics, who request permission to appear and oppose Plaintiffs' Motion to Maintain. (R. Doc. 349-1 at 1). For the following reasons, the Motion to Intervene (R. Doc. 349) will be granted, and the Intervenors will be permitted to intervene for the limited purpose of appearing and asserting argument

pertaining to Plaintiffs' Motion to Maintain, without right to additional discovery or appearance pertaining to any other matter, including any fee disputes between Plaintiffs and Defendant.

Fed. R. Civ. P. 24 governs both intervention of right as well as permissive intervention. Fed. R. Civ. P. 24(a)(2) requires a court to permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(b)(1)(B) allows anyone to intervene who "has a claim or defense that share with the main action a common question of law and fact." Additionally, "[w]hether leave to intervene is sought under section (a) or (b) of Rule 24, the application must be timely." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977). "The timeliness of a motion to intervene is a matter committed to the sound discretion of the trial court." *Terrebonne Parish Branch NAACP v. Jindal*, 2016 WL 2743525, at *2 (M.D. La. May 11, 2016) (citing *McDonald v. E.J. Lavino*, 430 F.2d 1065, 1071 (5th Cir. 1977)). As noted in *Terrebonne*, the Fifth Circuit has set forth the following four factors to consider when evaluating whether a motion to intervene is timely: (1) the length of time during which the proposed intervenors should have known of their interest in the case before they petitioned to intervene; (2) the extent of prejudice that those parties already in the litigation would suffer "as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;" (3) the extent of prejudice to the proposed intervenors if they are not allowed to intervene; and (4) the existence of "unusual circumstances militating either for or against a determination that the application is timely." 2016 WL 2743525 at *2 (citing *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005)).

Here, the Court finds Intervenors' request to intervene timely, and the remaining factors weigh in favor of granting intervention, with the limitation that Intervenors' appearance is limited to the issues surrounding continued confidentiality of documents and information, and Intervenors are not entitled to appear with regard to the remaining fee dispute nor are they entitled to seek any additional discovery.

The first factor pertaining to timeliness—the length of time during which the proposed intervenors should have known of their interest in the case before they petitioned to intervene—weighs in favor of finding Intervenors' request timely. Plaintiffs argue that Intervenors knew of this litigation from its inception in 2014 and failed to seek intervention at any point until after final disposition. Timeliness, however, "is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Stallworth v. Monsanto Co*., 558 F.2d 257, 263 (5th Cir. 1977). Under the circumstances of this case, the Court finds that inception of the litigation is not the appropriate starting point. Instead, the relevant starting point for purposes of timeliness is the point at which this case was resolved. The interests of journalists, academics, and legislators may exist during the pendency of the litigation, but is separate and distinct from those interests upon final disposition, particularly with regard to the legislators who desire access for the purpose of attempting to craft new legislation that would withstand Constitutional muster. Said interest does not arise unless and until a final finding of the unconstitutionality of the challenged legislation. *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) ("A better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties.") (citing *Stallworth*, 558 F.2d at 264).

The second factor also weighs in favor of finding Intervenors' request timely. This action was administratively closed by the Fifth Circuit on August 6, 2020, in light of the opinion and judgment of the United States Supreme Court. (R. Doc. 336). Pursuant to General Order 2019-4, confidential portions of the record were to remain sealed for thirty days, and Plaintiffs moved to extend the sealing of confidential information on September 4, 2020. (R. Doc. 344). Twenty-one days later, on September 25, 2020, Intervenors sought intervention to represent their asserted interests in opposition to Plaintiffs' request to extend the seal. (R. Doc. 349). Defendant's Opposition to Plaintiffs' Motion was also filed on September 25, 2020. (R. Doc. 350). In the same sense that Intervenors' request was made within a reasonable length of time during which they should have known of their interest, Plaintiffs are not prejudiced by a timely filed request to intervene coupled with their opposition. That Intervenors may assert interests that ultimately tip the scales against Plaintiffs, or that Plaintiffs may find it necessary to address arguments different from those presented by Defendant, does not rise to a finding of prejudice.

Conversely, to prohibit Intervenors' intervention would be tantamount to a substantive dismissal of their asserted interests without meaningful review. Accordingly, the third factor—prejudice to the proposed intervenors—also weighs in favor of granting intervention for the limited purpose of advancing argument pertaining to the continued confidentiality of documents and information.

The Court finds no significant unusual circumstances militating for or against intervention but will again note that the interests asserted by Intervenors are separate and distinct from that of Plaintiffs and Defendant. That Intervenors' ultimate position aligns more closely with that of Defendant is of no matter, and the Court would find intervention proper were their ultimate recommendation the same as that of Plaintiffs.

The public's right to access judicial records is "a precious common law right, one that predates the Constitution." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 612 (1978) (Marshall, J., dissenting) (citation omitted). Further, in exercising discretion to seal judicial records, which is the substantive issue at hand, the Court seeks to balance the public's right of access against the interests favoring nondisclosure. *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon*, 435 U.S. at 599, 602). The public's right to access judicial records is not absolute, but given such a right, to deny intervention would be inappropriate. Intervenors seek to assert and protect the public's general right to access judicial records, an essential interest that is not currently represented, and therefore, intervention is justified and appropriate. The Motion to Intervene (R. Doc. 349) is **GRANTED**.

       **b.**     **Motion to Maintain**

Plaintiffs seek to maintain certain documents and information under the seal following the final resolution of the substantive issues in this litigation by the Supreme Court. More specifically, Plaintiffs request the following information remain under seal, providing a demonstrative chart reflecting the electronic docket reference along with the following supporting classifications: (1) the identity or other identifying information of the Plaintiff abortion providers ("Plaintiff physicians"); (2) purportedly sensitive business information; (3) identity of non-party healthcare provider(s); and (4) confidential clinic information. (R. Doc. 344-3).

As a starting point, "[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597. However, "the right to inspect and copy judicial records is not absolute," and "[e]very court has supervisory power over its own records and files." *Nixon*, 435 U.S. at 598.

*See also Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctro.*, 913 F.3d 443, 450-51 (5th Cir. 2019) ("The decision whether to allow public access to court records 'is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.'" (internal citations omitted)). As noted in *Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 225 (5th Cir. 2020), "[t]his circuit has not assigned particular weight to the presumption [of public access to judicial records]… Nor has this court interpreted the presumption in favor of access as creating a burden of proof."

Pursuant to General Order 2019-4, thirty days after final disposition of an action, "all sealed pleadings and other papers shall be placed in the case record unless a District Judge or Magistrate Judge, upon motion and for good cause shown, orders that the pleading or other paper be maintained under seal." As such, the Court's general order puts the onus on the party seeking to maintain such items under seal to make an appropriate showing. This is consistent with similar treatment in our sister districts[1] and also consistent with the Fifth Circuit's admonition that "[i]n any case, "[t]he district court's discretion to seal the record of judicial proceedings is to be exercised charily." *Bradley*, 954 F.3d at 225 (citing cases).

The balance of considerations that justified the sealing of certain documents and information during the pendency of this litigation is not the same as applied upon final disposition. Thus, it is prudent to re-assess those considerations upon final disposition when a party makes a timely motion requesting continued, essentially permanent sealing of court records from the public eye.

---

[1] *See, e.g., Ruby Slipper Café, LLC v. Belou*, 2020 WL 4897905, at *6 (E.D. La. Jan. 8, 2020); *Select Interior Concepts, Inc. v. Pental*, 2020 WL 2132575, at *3 (N.D. Tex. May 5, 2020); *Bankhead v. Gregg Cty.*, 2013 WL 124114, at *2 (E.D. Tex. Jan. 9, 2013); *Torres-Montalvo v. Keith*, 2011 WL 5023271, at *2 (S.D. Tex. Oct. 17, 2011).

Upon review, the Court notes the following docket entries, with and without exhibits or attachments, remain sealed: R. Docs. 63, 93, 94, 101-105, 109, 112, 113, 117-120, 168, 170, 175, 176, 180, 182-189, 197, 198, 200, 203, 205, 211, 237, 257, 261, 262, 351, 366, 378, 379, 380, 387-390. The Court will address the propriety of continued confidentiality in sections that follow, noting explicitly that reference to a main document in an entry herein does not purport to include attachments unless specifically noted. For example, were the Court to rule that R. Doc. ABC should be unsealed, that finding is inapplicable to attached R. Docs. ABC-1 and ABC-2 unless also explicitly stated.

As an initial matter, Plaintiffs' purported reliance on the existing Protective Orders, including any argument that documents or information was divulged in this litigation in reliance that such information would remain confidential forever, is misplaced, as is Plaintiffs' reliance on any initial finding of good cause to seal information for the duration of this litigation. As noted previously, the weight of the various interests changes upon final disposition of a litigation such that considerations and balancing of those interests should be addressed anew where a party requests continued sealing after final disposition in contravention of the ordinary practice of unsealing same. General Order 2019-4, which provides the default for unsealing documents and information upon the passing of thirty days after final disposition of a litigation, is a public order to which Plaintiffs and their counsel practicing in federal court are presumed to be aware. Continued sealing past the thirty days provided for in General Order 2019-4 is a separate inquiry.

### 1. Plaintiffs do not Request Continued Confidentiality

Plaintiffs accompany their Motion to Maintain with a demonstrative chart marked "Exhibit A," representing those documents over which Plaintiffs request continued sealing. (R. Docs. 344-1 at 1, 344-3). Not all of the documents currently under seal appear on Plaintiffs'

Exhibit A such that it can be reasonably inferred from this document that continued confidentiality is not requested as to those documents not listed. Given the default rule of public access, and Plaintiffs' burden of establishing good cause to maintain documents under seal, where Plaintiffs do not request a document to remain under seal, the Court will lift the seal without further discussion. Accordingly, the following documents shall no longer be maintained under seal: R. Docs. 101, 103, 105, 109, 109-1, 109-2, 112, 112-1, 112-2, 112-3, 112-4, 112-5, 113, 113-1, 113-2, 113-3, 113-4, 113-5, 113-6, 113-7, 113-8, 117, 118, 118-1, 118-2, 118-3, 119, 120, 120-1, 120-2, 120-3, 120-4, 120-5, 120-6, 175, 183, 211, 261.[2]

### 2. Documents without Confidential Information

In addition to the documents listed above, for which Plaintiffs do not request continued sealing beyond final disposition, the Court notes that a number of documents filed under seal contain no information Plaintiffs contend might be subject to further sealing (though certain attachments may). Documents that do not contain any confidential information, including the identity or identifying information of abortion providers, their staff or clinic staff, the identity or identifying information of patients, the identity or identifying information of third party providers, or any purportedly sensitive business information or confidential clinic information, do not justify continued sealing. This includes, but is not necessarily limited to, orders of this Court as well as the district court that simply grant or deny a motion without discussion. Based on the Court's review, these documents shall be made public, and are as follows: R. Docs. 93,

---

[2] The Court notes that certain documents were filed under seal *after* the filing of Plaintiffs' Motion to Maintain. The validity of continued sealing separately of those documents will be addressed in a subsequent section as necessary. (*See, e.g.*, R. Docs. 351, 366, 378, 379, 380, and 387-390, along with attachments).

94, 168, 168-1, 168-2,[3] 168-3, 170, 180, 197, 198, 203, 257, 351, 351-1, 351-2, 366, 366-1, 380, 380-3, 387, 387-1, 388, 390.[4] The Court then turns to the substantive categories of documents over which Plaintiffs request continued sealing.

### 3. Identity of Plaintiff Physicians and Non-Party Healthcare Providers

This Court permitted the Plaintiff physicians to proceed under pseudonym for the duration of this litigation. In so doing, the Court noted after reviewing the arguments and information provided that "the potential for harassment, intimidation and violence in this case, particularly in light of the past and present instances of such conduct both nationwide and in Louisiana, justifies the unusual and rare remedy of allowing the individual Plaintiffs to proceed anonymously." (R. Doc. 24 at 2). Those concerns underlying the Court's August 28, 2014 finding have not necessarily disappeared, but must be re-assessed now that the litigation has been resolved, and in consideration of the arguments and information presented to date.

Plaintiffs argue continued sealing of the identity of the Plaintiff physicians is warranted for two reasons. First, Plaintiffs cite various news sources and argue that the "threats to the safety of these physicians, their families, and co-workers have not gone away." (R. Doc. 344-1 at 8). Second, Plaintiffs argue that abortion providers in other, currently pending proceedings were granted pseudonymous protection such that, to the extent they may be parties in this case, the unsealing of their identities herein would "effectively 'out' their participation in those proceedings as well." (R. Doc. 344-1 at 8).

---

[3] The deposition testimony of certain witnesses are identified by name. Those witnesses and their testimony is specifically referenced in the district judge's Findings of Fact and Conclusions of Law. (R. Doc. 274).

[4] Certain documents that do not contain confidential information were not asked to remain sealed. Those are not referenced in this section but the same reasoning would apply. At the same time, some documents and/or attachments may be referenced in more than one section, as the considerations for unsealing or continued sealing may be applicable on numerous grounds.

Defendant's position is that the identity of the Plaintiff physicians should be unsealed for various reasons including assertions that at least some of their identities as abortion providers are already known and available to the public, they have failed to show any specific, current threat to their safety, and that they have waived any privacy concerns through selective revelation of their identities as abortion providers to reporters. (R. Doc. 350 at 16-19). Intervenors echo Defendant's argument, asserting that "several aspects of these identities are already known," and that Plaintiffs have failed to establish good cause for the continued sealing of their identities. (R. Doc. 349-1 at 20-22).

That the identity of some or all of the Plaintiff physicians is publicly available does not end the inquiry. Identifying the Plaintiff physicians as abortion providers may add very little to the public's existing knowledge. It would, however, confirm their participation in this particular litigation as well as in other, still pending matters.[5] Thus, the balance of interests turns on two considerations: the significance of their identities in this litigation, i.e., whether continued sealing of their identities would hinder the public's meaningful access, and their anonymity in other, currently pending abortion-related litigation.

The Court notes that certain plaintiff-physicians in the case of *June Medical Services LLC, et al. v. Gee, et al.*, Case No. 3:16-cv-444-BAJ-RLB, were permitted to proceed using pseudonyms. Upon challenge to the protective order in that related action, the district court acknowledged "the potential harm that may result to the non-Doe doctors, should their names be publicized," and noted that "[m]ost troubling, Defendants have alleged that searching for the names of the non-Doe Doctors, it was discovered that their names appeared on websites that

---

[5] Plaintiffs correctly distinguish between the public's ability to learn the identity of an abortion provider versus the unsealing and confirmation of such individual's involvement as a plaintiff in this case. (R. Doc. 344-1 at 6).

11

Plaintiffs identified as being potentially linked with groups that advocate violence against abortion providers and clinics." *Id*. at ECF 265 at 6. The district court in that litigation has not changed the determination that good cause exists to allow the Protective Orders to stand, including the genuine need to protect the identities of the abortion providers.

Plaintiffs also direct the Court's attention to information and media reports of continuing, and in some instances increasing, threats of violence against abortion providers that would compromise their safety as well as the safety of their families. (R. Doc. 344-1 at 8). The district court in the aforementioned litigation noted that certain physicians' "names appeared on websites that Plaintiffs identified as being potentially linked with groups that advocate violence against abortion providers and clinics." *June Medical*, Case No. 16-cv-444-BAJ-RLB, ECF No. 265 at 6. Further, the district court recognized the concerns of Plaintiff physicians at several points in its Findings of Fact. For example, the district court stated, "[t]he evidence is overwhelming that in Louisiana, abortion providers, the clinics where they work and the staff of these clinics, are subjected to violence, threats of violence, harassment and danger... Defendant offered no evidence to counter Plaintiffs' evidence on this point." (R. Doc. 274 at 41-42). "[T]here is a mountain of un-contradicted and un-objected to evidence supporting this conclusion." (R. Doc. 274 at 42). *See also* R. Doc. 274 at 43 ("The evidence, in turn, leaves no question about the dangers and hostility regularly endured by Plaintiffs."); R. Doc. 274 at 45 ("Anti-abortion activists picketed the school of the children of a doctor formerly affiliated with Delta, after which that doctor quit."); R. Doc. 274 at 93 n.49 ("It is noteworthy that Hospital C, a hospital in a major metropolitan area and not a party to this action, is so concerned about the ramifications of having its identity public[ly] revealed, that it requested that it be named only through a pseudonym and, with the consent of all the Parties, this was allowed.").

Contrary to Defendant and Intervenors' assertions that generalized threats of harm are insufficient to sustain anonymity in abortion-related litigation, this Court notes that the line between generalized and specific is potentially thin, and shares those concerns with the Plaintiff physicians as well as the two district court judges in this district that have issued rulings upholding the ability to proceed under pseudonym. As stated by a Dr. Doe in a public exhibit provided by Defendant, "[t]he terrorism works you know. It does. And so once you start murdering abortion providers you know it really does terrorize the other abortion providers," while the interviewer in that same transcript notes that "[d]ue to safety concerns, he [Dr. Doe] has always left his name out of the press." (R. Doc. 352-6 at 12). These circumstances weigh heavily in favor of protecting the identity of the Plaintiff physicians out of general concerns for their safety and well-being as well as that of their families.

At the same time, these concerns must be balanced against the general deference to the public's right to access judicial records. Most compelling is Defendant's argument that Plaintiff physicians have voluntarily revealed themselves to the public as abortion providers, and then seemingly express concern about threats of violence directed to abortion providers in general. The Court recognizes, however, that their identity as Plaintiff physicians in this matter may carry additional risks beyond their identification as an abortion provider.

The Court has reviewed the information advanced by Defendant that purports to reveal their identities to the public, and finds that the revealing nature of that information is somewhat exaggerated. First, an internet search of a physician's name or a webpage that states the name does not establish public availability as an abortion provider (or as a plaintiff in this case) because a necessary prerequisite of the search is knowledge of the identity in the first place. Neither Defendant nor Intervenors provide any information regarding search engine results

returned after searching terms like "Louisiana abortion providers" or "physicians performing abortions in Louisiana."

As to the specific Plaintiff physicians, other publicly available information may show that a Plaintiff physician has retired from practice, but there is nothing in that exhibit that indicates he provides or provided abortions or is involved in this litigation. (*See* R. Doc. 351-8). The Court does, however, recognize that possible searches pertaining to the known abortion clinics may reveal the identities of a Plaintiff physician, but still will not identify them or their involvement in this litigation.

Evidence cited by Defendant in support of its contention that "June Medical and its counsel have solicited media coverage in ways that are wholly inconsistent with any serious concerns about safety" contains no reference to or identifying information regarding Plaintiff physicians, but does identify several clinic staff by name and image. (R. Doc. 350 at 6). On balance, the Court finds Defendant and Intervenors' suggestions that the identity of Plaintiff physicians is publicly available is true as to some, but not all of the Plaintiff physicians.

Dr. Does 1-3, as noted by Plaintiffs, are also proceeding as plaintiffs anonymously in a separate abortion-related action in this district, *June Medical Services, et al. v. Russo*, Case No. 16-cv-444-BAJ-RLB. This fact weighs heavily in favor of permitting continued anonymity. As Plaintiffs note, the unsealing of certain Plaintiff physicians in this litigation would reveal their participation in a currently pending litigation for which the district judge found good cause to permit those Plaintiff physicians to proceed anonymously, citing continued concerns for personal safety. To unseal their identities herein would be tantamount to disregarding a standing order of the district judge in that litigation.

14

Defendant also cites to cases in other courts wherein abortion providers have litigated in their own names. That certain abortion providers would choose to litigate in their own names does not necessitate a finding that other abortion providers' identities must necessarily be available to the public. It is entirely possible that one or more of the identities of the Plaintiff physicians is publicly available through other means of inquiry, or even that an astute individual would be able to aggregate public information in this litigation to deduce a reasonable or potentially accurate guess as to the identity of one or more of the Plaintiff physicians. Those possibilities do not, however, necessitate a finding that their identities should be judicially unveiled in light of valid, recognized concerns for their safety and their ability to practice in their chosen areas.

In *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981), the Fifth Circuit allowed plaintiffs challenging governmental activity to proceed anonymously based in part on a finding that, "[a]lthough they do not confess either illegal acts or purposes, the Does have, by filing suit, made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." The same can be said here. The Court is sensitive to these concerns, and notes that two of our district judges have agreed in this and other pending abortion-related litigation.

What remains for consideration is the relevant significance of the identity of the Plaintiff physicians to the findings of the district court, the Fifth Circuit, and the Supreme Court, based, once again, on the general right of public access to judicial records. Even in that light, however, the scales do not tip so significantly as to warrant unsealing of the identity of the Plaintiff physicians.

First, there is a substantial volume of relevant information pertaining to each of the Plaintiff physicians contained in the substantive decisions at each level, which includes but is not limited to the physicians' practice areas, board certifications, age and years in practice, clinic association, clinic practice schedules, types of abortion provided, gestational ages at which abortions provided, approximate daily, weekly, monthly, and yearly abortions performed by number and percentage, summaries of admitting privileges and applications (including excerpts of communications), training, and personal accounts of complications (without patient-identifying information. *See, e.g.,* R. Doc. 274 at 24-28; *June Med. Servs. L.L.C. v. Gee*, 905 F.3d 787, 793-801 (5th Cir. 2018); *June Medical Servs., LLC, et al. v. Russo*, 140 S.Ct. 2103 (2020).

The addition of the identities of the Plaintiff physicians adds very little, if anything, to the pool of public information. The district court, Fifth Circuit, and Supreme Court all took great care to thoroughly outline the facts and information upon which they relied in their findings, while preserving the anonymity of the Plaintiff physicians. The various courts' decisions did not turn on the identity of the Plaintiff physicians, and their identities add little to understanding the basis and, as Defendant and Intervenors point out, highly fact-specific underpinnings of the courts' decisions. Further, Intervenors have not shown how the identity of the Plaintiff physicians would assist in the crafting of new legislation regulating abortion, or the drafting of analytical articles regarding the Supreme Court's decision, especially considering the availability of a substantial volume of information regarding the Plaintiff physicians in the other courts' decisions.

In light of this finding, balanced with the noted continuing concerns for safety as well as the continued anonymity provided certain Plaintiff physicians in *June Medical Services LLC, et*

*al. v. Gee, et al.*, Case No. 3:16-cv-444-BAJ-RLB, this Court finds good cause to order the identity of Plaintiff physicians to remain sealed. Neither Defendant nor Intervenors provide any argument as to why the identity of a Plaintiff physician is necessary going forward, which fact the Court considers on balance with the genuine concerns for safety expressed by those same Plaintiff physicians. This finding specifically includes the actual identity of the Plaintiff physicians by name, SSN, driver's license number, telephone number, residential address, marital status, and any familial relations, all of which shall remain confidential. Conversely, this finding does not include information about the Plaintiff physicians that appears in public decisions as outlined above, as well as any other similar information.

Defendant suggests that "even if anonymity were still justified, it would not justify maintaining documents under seal," noting that "heavy redactions cover the doctors' names even in the sealed record." (R. Doc. 350 at 19). The Court agrees. Based upon the Court's review of the documents that remain under seal, much of the information noted above has already been redacted, even in the sealed record. R. Doc. 63 shall remain sealed. In addition, R. Docs. 170-2 and 176 will also remain sealed.[6] Beyond that, to the extent the Court does not find good cause to continue to seal any document herein that contains any of the above listed information, that information shall be redacted where appropriate. In other words, the existence of some or all of the information the Court has found to be confidential in this section, that information shall remain confidential via redaction rather than seal an entire document that contains confidential

---

[6] These two documents are an attachment to a Joint Stipulation. That attachment contains a unique identifying number for one of the Plaintiff physicians. This sealing protects the identity of the Plaintiff physician. The actual joint stipulation (R. Doc. 170-1), which is addressed in the public record and provides all information sufficient to address the concerns of the defense and the intervenors, is being unsealed.

information, notwithstanding the Court's finding that R. Doc. 63, 170-2 and 176 shall remain
sealed in their entirety.

### 4. Sensitive Business Information

Plaintiffs argue that sensitive business information should remain sealed, describing the
category as "non-public information regarding the innerworkings of non-party hospitals,
including hospital by-laws, credentialing processes, and communications with physicians," and
making a distinction between non-party sensitive business information and confidential clinic
information, the latter of which the Court will address in a separate section. (R. Doc. 344-1 at 9).
Plaintiffs give very little indication, however, of what specific documents or information would
constitute sensitive business information, beyond the categories listed in Exhibit A, which
suggests that R. Docs. 93, 94, 102, 104, 168, 170, 176, 197, 198, 200, 203, 205, and 237 contain
such information. (R. Doc. 344-3).

Plaintiffs' representations are insufficient to meet their burden of establishing good cause.
General reference to a document, or documents, without more, does not establish the existence of
sensitive business information. The Court's review of the documents asserted to be confidential
by Plaintiffs confirms this finding, as there exists a significant amount of information that could
not possibly be subject to continued confidentiality, essentially in perpetuity. For example,
Plaintiffs contend that an application for admitting privileges containing a hospital's bylaws
would constitute sensitive business information, but do not assert any particular information
contained therein that would be confidential.[7] This would include materials sent to anyone
applying for medical staff membership and clinical privileges. These and other information

---

[7] The Court recognizes that portions of the documents may contain the identity or identifying information
of the Plaintiff physician. Redaction of that information, however, is more appropriate than sealing in
perpetuity. It also appears that for the most part, that information has already been redacted, even from the
sealed documents.

appear to be part of an application packet, freely provided to anyone interested. Indeed, in one

such example, Plaintiffs seek the court to retain such document under seal (R. Doc. 197-1 at 56-

189), yet the same document was filed and is available to the public as one of <u>Plaintiffs'</u> exhibits

(R. Docs. 165-66 through 165-74).

Plaintiffs have not indicated any distinction of what information within such a document

would be confidential, and what would not. Plaintiffs provide insufficient support for their

argument that allegedly sensitive business information should be subject to continued sealing

beyond final disposition of this litigation. More specifically, Plaintiffs have provided no legal

authority to support continued confidentiality of hospital bylaws, admitting privileges

procedures, credentialing processes or procedures, or any other third-party, non-clinic business

information. Nor do Plaintiffs render any argument as to what specific information they suggest

would be confidential. Plaintiffs have, therefore, failed to meet their burden. Thus, to the extent

not specifically found confidential herein, Plaintiffs' Motion to Maintain Seal will be denied.

First, information discussed in public decisions of the courts in this litigation, including

the same or similar information, will not be subject to confidentiality. A non-exhaustive list of

exemplary information based on the court's review of the public decisions includes admitting

privileges status and applications, communications with hospitals regarding admitting privileges,

identity of clinic administrators, testimony of Doe doctors regarding credentialing of hospitals

and clinics, legislative history of Act 620, including testimony pertaining to clinic conditions and

practices, and complications and/or hospitalizations relating to abortions. *See* R. Doc. 274; *June

Med. Servs. L.L.C. v. Gee*, 905 F.3d 787 (5th Cir. 2018); *June Medical Servs., LLC, et al. v.

Russo*, 140 S.Ct. 2103 (2020), *passim*. Some of this sealed information includes individuals who

were later witnesses at trial, either in person or through their deposition testimony, depositions of

experts whose reports were then referenced in public proceedings, and in some circumstances, the same exact document sealed in one instance and not sealed in another. More egregious examples can be found, for instance, where Plaintiffs seek certain documents to remain sealed (R. Doc. 104-21) yet actually filed that document as an exhibit at trial (R. Doc. 165-151). *Compare also* R. Doc. 104-22 with R. Doc. 165-152. This type of review has been a waste of the Court's resources and reflects a lack of diligence by the mover and an abuse of this process.

Another example where the instant motion goes too far is the continued sealing of certain briefing and argument. These contain no confidential information, do not identify the Plaintiff physicians, and are often purely legal argument. The district judge's public decisions on these issues reference much of the parties' respective sealed briefing. In addition, the public has a strong interest in access to the arguments made before the Court for relief and how (and whether) those arguments were addressed by the Court. This equally applies to the proposed findings of fact and conclusions of law. Curiously, Plaintiffs did not request sealing of their own proposed findings of fact and conclusions of law (R. Doc. 196), but now seek the continued sealing of essentially the same facts and argument that was advanced by the defense. (R. Docs. 198, 198-1, 200).

In another example, Plaintiffs request continued sealing of their Opposition to Defendant's Motion for Partial Summary Judgment (R. Doc. 104) along with exhibits, though it is unclear what specific information contained within this filing would be subject to continued sealing. Indeed, Plaintiffs' Opposition itself contains none of the information Plaintiffs generally argue should remain sealed, as it references the Plaintiff physicians by pseudonym, is devoid of any identifying information, and contains no specific information regarding clinic practices or the innerworkings of the hospitals. (*See generally*, R. Doc. 104 at 16-19, 21-22).

The Court also notes that identifying details regarding many of the exhibits to Plaintiffs' Opposition are already part of the public record, including direct reference in the district judge's Findings of Fact and Conclusions of Law. For example, where Plaintiffs broadly suggest the exhibits to their Opposition should remain sealed, which include certain deposition excerpts, Judge deGravelles noted by name that Kathaleen Pittman, Kathy Kliebert, Dr. Christopher Estes, Dr. Sheila Katz, and Dr. Eva Karen Pressman all provided live testimony at the hearing. (*Compare* R. Doc. 104-13, 104-20 through 104-24 *with* R. Doc. 216 at 6-7). Similarly, Plaintiffs seek to maintain seal over deposition excerpts of Dr. Doe 2, but a comparison of those excerpts with the publicly available Findings of Fact and Conclusions of Law of Judge deGravelles reveals information in substantially more detail regarding Dr. Doe 2's practice as well as his requests for admitting privileges. (*Compare* R. Doc. 104-6 *with* R. Doc. 216 at 57-62). This information was necessary for the resolution of this matter and the public and intervenors have a right to know such information.

Plaintiffs also appear to seek maintenance of seal over certain correspondence pertaining to the drafting of Act 620, but in addition to the examples set forth above, identical information was filed publicly as joint exhibits. (*Compare, e.g.* R. Doc. 104-17 *with* R. Doc. 165-7). The Court also notes that Plaintiffs' apparent request to maintain seal over correspondence between advocacy groups and legislators is generally incongruous with their position in Opposition to Defendant's Motion in Limine (which is not requested to remain sealed), wherein Plaintiffs argued that such information was highly relevant to the issue of whether Act 620 was passed with an invalid purpose. (*See* R. Doc. 120 at 10-14). Ultimately, the apparent lack of information Plaintiffs specify as subject to continued sealing, coupled with the public availability of a substantial or equivalent portion of the exhibits to Plaintiffs' Opposition, as shown by examples

given herein, lend the Court to conclude that continued sealing of Plaintiffs' Opposition (R. Doc. 104 through 104-24)[8] is unwarranted.

The Court likewise finds continued sealing inappropriate in a scenario where the same or similar information was discussed or disclosed regarding one provider, clinic, or hospital in public court documents, but where such information would also be available for any other provider. For example, if a court decision in this litigation (or through appeal) refers to the specific number of abortions performed annually by a specific clinic, any reference in the district court record regarding the number of abortions performed annually by any other clinic is, likewise, no longer subject to confidentiality.

The Court has undertaken the task of reviewing sealed, court-issued documents and party briefing with attachments in light of this finding. To that end, the following docket entries will no longer remain sealed: R. Docs. 93, 93-1, 94, 94-1 through 94-25, 102, 104, 104-1 through 104-24, 168, 168-1, 170, 170-1, 198, 198-1, 200, 203, 257-1, and 262.

### 5.  Confidential Clinic Information

Plaintiffs also seek to maintain the confidentiality of purportedly confidential clinic information, including "proprietary clinic policies and procedures, non-public information regarding the clinic's operations, and information that 'could jeopardize the privacy of the staff, physicians, patients and other associated with' the clinic." (R. Doc. 344-1 at 9). Like Plaintiffs assertions regarding purportedly sensitive business information, Plaintiffs provide little indication of what specific documents or information would constitute confidential clinic information that could somehow jeopardize the safety of those associated with the clinic(s). An independent review by the Court finds little information that would arguably qualify and any

---

[8] This would include the proposed filing of the opposition to Defendant's Partial Summary Judgment (R. Doc. 94 and exhibits).

concerns that may have led to sealing such information during the pendency of this lawsuit originally no longer apply. Although not an exclusive list, the following documents shall be unsealed in their entirety on this basis: R. Docs. 198, 198-1, 200, 257, 257-1, and 262.

### 6. Sealed Trial and Related Materials

The district judge implemented certain steps to protect the confidentiality of information covered by the protective order. Many of these steps were necessary to protect the identity of the Plaintiff physicians. For example, in addition to redacted exhibits that removed the actual names, certain redactions were made to references in the transcripts that provided personally identifying information. The Court has reviewed those transcripts and finds that the redacted transcripts that were filed in the record (R. Docs. 190-195) provide all information needed to protect the interests of the defense, the intervenors, and the general public. The unredacted transcripts (R. Docs. 184-189 will remain sealed. This includes other documents relating to those transcripts. (R. Docs. 180-1, 182).

There are, however, numerous exhibits that were filed under seal for reasons independent of the confidentiality of the Plaintiff physicians. As set forth above, the Court is not satisfied that there are sufficient other grounds to support the continued sealing of such documents. Those documents, however, may contain identifying information regarding the Plaintiff physicians or others involved in providing abortions not otherwise identified in the record, within those exhibits.

The Court agrees with Defendant and Intervenors that a finding of good cause for continued confidentiality of some information does not justify that any particular document remain sealed in its entirety in perpetuity. While a particular document may contain some sensitive information, the presence of such does not necessarily warrant a broad sealing of the

entire document where appropriate redactions could protect the confidential information while providing the public access to the remaining, non-confidential portions. Having conducted extensive review of the remaining sealed information in this docket, it is highly unlikely that there exists an entire document that would warrant sealing in perpetuity, with the noted exception of R. Doc. 63.

To that end, the Court finds guidance in the recent approach utilized by the district court in *June Medical Services LLC, et al. v. Gee, et al.*, Case No. 3:16-cv-444-BAJ-RLB. There, the district court noted that Fed. R. Civ. P. 5.2(d) allows a court to order that a filing be made under seal without redaction, and later unseal the filing or order the person who made the filing to file a redacted version for the public record.

That approach is warranted here. At the outset, most of these sealed documents are already redacted, and the undersigned does not expect that many, if any, additional redactions may be necessary in light of the other provisions in this Order. In an effort to minimize the need for judicial intervention as to redactions, Plaintiffs shall submit proposed redactions to Defendant within twenty-one (21) days of the date of this order. Following an opportunity to review Plaintiffs' proposed redactions, Plaintiffs and Defendant shall then meet and confer within 14 days of Defendant's receipt of such redactions in an effort to resolve any disagreements. Should any disagreements remain after the meet and confer, Plaintiffs shall have fourteen (14) days from the date of the meet and confer to file a motion, which motion shall contain a detailed certification regarding the attempts to resolve any outstanding disagreements prior to court intervention and set forth any agreements as to redacted documents that may be filed.

The following documents shall be subject to review by the parties for potential redaction via the procedure outlined above: This applies to the following documents only: R. Docs. 168-4

24

through 168-11, 197-1 through 197-32, 203-1 through 203-18, 205, 205-1 through 205-9, 237, and 237-1 through 237-158.

### 7.  Documents Filed After Plaintiffs' Motion to Maintain

Several sealed documents post-date the Plaintiffs' filing of the Motion to Maintain, specifically R. Docs. 351, 366, 378, 379, 380, 387, 388, 389, 390 (including attachments where applicable). The same findings with regard to documents filed prior to Plaintiffs' Motion is applicable to these documents, without further discussion.

Based on this finding, the following documents are to be unsealed: R. Docs. 351, 351-1 through 351-2, 366, 366-1, 379, 380,[9] 380-1 through 380-3, 387, 387-1, 387-2, 388, 389, and 390.[10]

The following documents, filed after the instant motion, only serve to identify the Plaintiff physicians as the <u>parties in this lawsuit</u>, and will remain sealed: R. Docs. 351-3 through 351-26, 366-2 through 366-6, 378, 378-1 through 378-23, and 379-1 through 379-4.

As discussed above, that someone may be identified as an abortion provider in another context, or through diligent research (sometimes with the knowledge of the person's identity to begin with) is distinguishable from specifically identifying such person <u>as a party in the record of this lawsuit</u>. Indeed, it may be possible that the public (including the intervenors) can independently identify and confirm the identities of the Plaintiff physicians. This order cannot

---

[9] This document and attachments reflect argument directed to the undersigned's ruling on certain motions. Those motions as well as the ruling that was at issue are all public. There is nothing in this Motion, declaration or memorandum in support that contains confidential information.

[10] The Court notes that this Order was filed by the district judge. Consistent with the undersigned's treatment of the applicability of the protective order and continued sealing of documents in this matter, continued sealing of this order would likewise be inappropriate.

(and does not) prevent such identification or use of such information if gleaned from publicly available documents. The Court simply will not provide that confirmation in its docket.[11]

Any documents filed after the date of this Order shall be filed in accordance with the guidance provided herein. That is to say, no document shall be filed under seal, but may be filed with appropriate, limited redactions as outlined herein. If there is any doubt that a filing may contain any information that identifies the Plaintiff physicians or other individual abortion providers directly or indirectly, guidance from the Court must be sought as to whether such filing should be made under seal.

## III.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that the Motion to Intervene and Oppose (R. Doc. 349) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Maintain Documents Under Seal (R. Doc. 344) filed by Plaintiffs, June Medical Services, LLC, *et al.*, is **GRANTED IN PART** and **DENIED IN PART** as set forth more fully herein.

**IT IS FURTHER ORDERED** that the following documents will remain sealed: R. Doc. 63, 170-2, 176, 180-1, 182, 184-189, 351-3 through 351-26, 366-2 through 366-6, 378, 378-1 through 378-23, and 379-1 through 379-4.

---

[11] The protective order in this case served, among other things, to protect the identity of the Plaintiff physicians in this litigation. If anyone wants to participate in this case, then they will be subject to those provisions. Attaching publicly available documents to filings in this matter makes the filed document subject to this order. For example, a public state court document may identify otherwise confidential information. That document is public and can be freely used. Simply filing such document in this docket does not remove the underlying document's status as a public record. But, if it is to be filed in this record, it will be done under seal.

**IT IS FURTHER ORDERED** that, for R. Docs. 168-4 through 168-11, 197-1 through 197-32, 203-1 through 203-18, 205, 205-1 through 205-9, 237, and 237-1 through 237-158, **to the extent necessary**, Plaintiffs shall submit proposed redactions to Defendant within twenty-one (21) days of the date of this order. Following an opportunity to review Plaintiffs' proposed redactions, Plaintiffs and Defendant shall then meet and confer within 14 days of Defendant's receipt of such redactions in an effort to resolve any disagreements. Should any disagreements remain after the meet and confer, Plaintiff shall have fourteen (14) days from the date of the meet and confer to file a motion, which motion shall contain a detailed certification regarding the attempts to resolve any outstanding disagreements prior to court intervention and set forth any agreements as to redacted documents that may be filed.

**IT IS FURTHER ORDERED** that the Clerk shall unseal file the following documents in the public record. As there was no request made to retain these under seal, the Clerk may unseal these records upon docketing of this Order: R. Docs. 101, 103, 105, 109, 109-1, 109-2, 112, 112-1, 112-2, 112-3, 112-4, 112-5, 113, 113-1, 113-2, 113-3, 113-4, 113-5, 113-6, 113-7, 113-8, 117, 118, 118-1, 118-2, 118-3, 119, 120, 120-1, 120-2, 120-3, 120-4, 120-5, 120-6, 175, 183, 211, 261

**IT IS FURTHER ORDERED** that the following documents are also to be unsealed. Due to the nature of this dispute, however, and because certain documents pertain to sealed filings and order by the district judge, the Court will give the parties time to advance any applicable objections before these documents are made public. Accordingly, the following documents will be unsealed 14 days following the docketing of this Order to the extent no objections are raised. The Clerk of Court is advised that a subsequent order will be issued prior to such unsealing. Any objections made to this portion of the order shall specifically identify

those records that (1) are being challenged and (2) are not being challenged so that the non-objected to records may be appropriately unsealed at that time: R. Docs. 93, 93-1, 94, 94-1 through 94-25, 102, 104, 104-1 through 104-24, 168, 168-1, 170, 170-1, 180, 197, 198, 198-1, 200, 203, 257, 257-1, 262, 351, 351-1, 351-2, 366, 366-1, 379, 380, 380-1 through 380-3, 387, 387-1, 387-2, 388, 389, and 390.

Signed in Baton Rouge, Louisiana, on January 28, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**