## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

JUNE MEDICAL SERVICES LLC, *et al.*,

        Plaintiffs,

   v.

COURTNEY N. PHILLIPS, in her
official capacity as Secretary of the
Louisiana Department of Health,

        Defendant

Civil Action No. 3:14-CV-525-JWD-RLB

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED PETITION FOR ATTORNEY'S FEES

Plaintiffs June Medical Services, LLC d/b/a Hope Medical Group for Women ("Hope"), John Doe 1, M.D., and John Doe 2, M.D. (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their renewed petition for attorney's fees and nontaxable expenses under 28 U.S.C. § 1988(b) ("§ 1988"), Federal Rule of Civil Procedure 54(d)(2) and Local Civil Rule 54(b)(1).

### PRELIMINARY STATEMENT

Plaintiffs brought this case under 42 U.S.C. § 1983 ("§ 1983") to seek relief from Louisiana Act 620 of 2014 (the "Act"), which violates their patients'—and all pregnant people's—constitutional right to abortion in Louisiana. The U.S. Supreme Court declared the Act unconstitutional and permanently enjoined it. *June Medical Servs. L.L.C. v. Russo*, 140 S. Ct. 2103 (2020). As the prevailing parties, Plaintiffs seek an award for reasonable attorney's fees and

nontaxable expenses.[1] Plaintiffs seek a total of $8,407,418.83 for hours reasonably expended by their attorneys and other legal professionals and $246,929.35 for nontaxable expenses incurred prior to the case's administrative closure in August 2020. Plaintiffs also reserve the right to supplement this application with fees and costs incurred since August 2020.

Plaintiffs have submitted ample information to substantiate the amount of fees and costs incurred, including declarations from attorneys and a plaintiff, in addition to detailed billing records for attorney time and disbursements. Accordingly, Plaintiffs' renewed request for an award of attorney's fees and expenses should be granted.

## BACKGROUND

### A. Procedural History

As a challenge to the constitutionality of a Louisiana anti-abortion law, the case involved both complex questions of constitutional law and scientific and medical evidence, proceeding over the course of the past six-plus years through an extensive amount of litigation, often proceeding on an expedited or emergency basis, and reaching the Supreme Court on two separate occasions.

### 1. The Trial Proceedings

Plaintiffs filed this case on August 22, 2014—before the Act's effective date—to challenge the constitutionality of the Act and to obtain a temporary restraining order ("TRO") and/or a

---

[1] Plaintiffs are also today filing a Bill of Costs, pursuant to Local Civil Rule 54(c), to recover costs taxable under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. Plaintiffs respectfully request that items sought as attorney's fees that are more appropriately awarded as costs be so deemed by this Court, and likewise that items sought in the Bill of Costs more properly awarded as attorney's fees be so deemed. *See Davis v. Perry*, 991 F. Supp. 2d 809, 849-50 (W.D. Tex. 2014) (Smith, Cir. J.) (considering the plaintiffs' request for taxable costs under 28 U.S.C. § 1920 together with their request for reasonable, out-of-pocket expenses under § 1988, and assigning particular charges to the most appropriate category) *rev'd on other grounds sub nom. Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015); *Richardson v. Tex-Tube Co.*, 843 F. Supp. 2d 699, 711 (S.D. Tex. 2012) (same).

preliminary injunction in addition to declaratory and permanent injunctive relief, *see* Brown Decl. ¶¶ 3-4, because the Act endangered Plaintiffs' patients and their abortion practices, and threatened Plaintiffs with imprisonment, license revocation, and civil liability, La. Stat. Ann. §§ 40:1061.10(A)(2)(c), 40:1061.29; *see also* La. Admin. Code tit. 48, pt. I, §§ 4401, 4415(B), 4417(A); Pittman Decl. ¶ 6. For the next three years, the parties litigated the case before this Court, the U.S. Court of Appeals for the Fifth Circuit, and even the United States Supreme Court, before this Court permanently enjoined the Act on April 26, 2017 (collectively referred to herein as the "Trial Proceedings"). *See, e.g.*, Brown Decl. ¶¶ 4-20.

The Trial Proceedings included a hearing on Plaintiffs' request for a TRO; entrance into a protective order ["PO"]; briefing on the scope of the TRO; several months of "significant discovery," *June Med. Servs., LLC v. Kliebert*, 105 F. Supp. 3d 611, 614 (M.D. La. 2015), with twenty-four depositions, extensive written discovery, and briefing on several motions *in limine*; briefing on a motion for partial summary judgment; and, a six-day preliminary injunction hearing where the Court heard live testimony from 12 witnesses and received into evidence testimony from eight witnesses via deposition designation and 245 exhibits. Brown Decl. ¶¶ 5-10; Suppl. Doufekias Decl. ¶ 9. After review of this extensive evidentiary showing, the Court preliminarily enjoined the Act on January 26, 2016. Brown Decl. ¶ 11.

Even though just months earlier the Supreme Court granted emergency relief to prevent an identical Texas law from going into effect, *see Whole Woman's Health v. Cole*, 576 U.S. 1050 (2015), Louisiana filed a motion for a stay pending appeal of this Court's preliminary injunction order and sought expedited consideration and a temporary stay pending consideration of the stay motion, Brown Decl. ¶ 13. After this Court denied Louisiana's request, the State sought the same relief from the Fifth Circuit and again asked for expedited consideration. *Id.* ¶¶ 13-14. Briefing on

3

Louisiana's requests before this Court and the Fifth Circuit therefore proceeded on an accelerated basis, and on February 24, 2016, the Fifth Circuit granted Louisiana's motion. *Id.* ¶¶ 13-14; *see also June Med. Servs., L.L.C. v. Gee*, 814 F.3d 319, 321 (5th Cir. 2016).

Plaintiffs were thus forced to seek emergency relief from the Supreme Court to vacate the Fifth Circuit's opinion. Brown Decl. ¶ 15. Briefing again proceeded on a highly accelerated basis, *id.*, with the Supreme Court granting Plaintiffs' application on March 4, 2016, "[c]onsistent with the [Supreme] Court's action granting a stay in *Whole Woman's Health v. Cole* . . ." *June Med. Servs. L.L.C. v. Gee*, 136 S. Ct. 1354 (2016) (Mem.). On Louisiana's motion, the case was then placed in abeyance pending the outcome of *Whole Woman's Health*, which had been argued before the Supreme Court on March 2, 2016. Brown Decl. ¶ 16. On June 26, 2016, the Supreme Court decided *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), striking down the identical Texas law. Brown Decl. ¶ 17.

In August 2016, the parties and the Court agreed that a final decision on the merits could be reached on the existing record, applying the Supreme Court's articulation of the undue burden standard in *Whole Woman's Health*, with each side submitting extensive supplemental proposed findings of fact and conclusions of law based largely on the existing record, and without further submission of evidence, apart from stipulations. Brown Decl. ¶ 18.

On April 26, 2017, the Court issued a 116-page opinion, again finding the Act unconstitutional under *Whole Woman's Health*. *June Med. Servs. L.L.C. v. Kliebert*, 250 F. Supp. 3d 27, 35 (M.D. La. 2017). Brown Decl. ¶ 19. The Court issued its final judgment the same day, concluding the Trial Proceedings. *Id.* ¶ 20.

4

## 2.  The Appellate Proceedings

While other states (such as Alabama and Tennessee) conceded in the wake of *Whole Woman's Health* that their identical admitting privileges laws were unconstitutional, *see* Mot. to Dismiss Appeal at 1, *Planned Parenthood Se., Inc. v. Strange*, No. 16-11867 (11th Cir. July 15, 2016); Joint Mot. to Enter Partial J. on Consent 4, *Adams & Boyle, P.C. v. Slatery*, No. 3:15-cv-00705 (M.D. Tenn. Apr. 13, 2017), Louisiana appealed this Court's permanent injunction, Tu Decl. ¶ 3. This appeal marked the beginning of more than three years of additional appellate litigation, which concluded with the case being administratively closed on August 6, 2020 after the Supreme Court struck down the Act on June 29, 2020 (referred to herein as the "Appellate Proceedings"). *Id.* ¶ 2.

Following Louisiana's appeal, the Fifth Circuit received briefing and oral argument from the parties, and, on September 26, 2018, a divided panel of the Fifth Circuit reversed this Court's permanent injunction order. Tu Decl. ¶ 3. Given the dire circumstances that would occur if the Fifth Circuit's mandate issued, Plaintiffs rapidly took all potential measures to prevent the Act from taking effect. *Id.* ¶¶ 4-5; *see also* Pittman Decl. ¶ 6. Within two weeks of the Fifth Circuit's ruling, Plaintiffs filed a Petition for Rehearing En Banc, which the Fifth Circuit denied on January 18, 2019. Tu Decl. ¶ 4. Plaintiffs then filed with the Fifth Circuit a Motion to Stay the Mandate Pending the Filing of a Petition for Certiorari on January 25, 2019. *Id.* This motion was denied within hours. *Id.* Plaintiffs were thus forced to seek emergency relief from the Supreme Court again. *Id.* ¶ 5. The Supreme Court ultimately granted this relief on February 7, 2019, staying the Fifth Circuit's mandate pending Plaintiffs' petition for certiorari. *Id.*

On April 17, 2019, Plaintiffs filed a Petition for a Writ of Certiorari with the Supreme Court presenting the question whether the Fifth Circuit's decision upholding the Act conflicted with *Whole Woman's Health*. *Id.* ¶ 6. On May 20, 2019, Louisiana filed a Conditional Cross-

Petition, challenging for the first time—after nearly five years of litigation—Plaintiffs' third-party standing to assert the claims of their patients. *Id.* As a result, over the summer of 2019, Plaintiffs briefed two petitions seeking certiorari. *Id.* On October 4, 2019, the Supreme Court granted certiorari on both Plaintiffs' and Louisiana's petitions. *Id.* ¶ 6. Merits briefing before the Supreme Court took several months throughout the fall and winter of 2019 going into 2020. *Id.* ¶ 7. Because of the two petitions, both Plaintiffs and Louisiana filed two merits briefs. *Id.* ¶¶ 7-8.

On the same day Louisiana filed its opening merits brief, Louisiana filed a separate extraordinary motion with the Supreme Court requesting that the Court expand the record on appeal, including with confidential discovery material covered under a protective order in another case involving Plaintiffs. *Id.* ¶ 15. While Plaintiffs successfully opposed this motion, Plaintiffs were forced to brief these issues at the same time they were preparing their final merits brief. *Id.*

The Supreme Court heard oral argument on March 4, 2020 with Elizabeth Murrill, Solicitor General of Louisiana, arguing on behalf of Louisiana; Julie Rikelman from the Center arguing on behalf of Plaintiffs; and Jeffrey B. Wall, Principal Deputy Solicitor General of the United States. *Id.* ¶ 10. On June 29, 2020, the Supreme Court reversed the Fifth Circuit and declared the Act unconstitutional after a majority of the Supreme Court found no way to distinguish this case from *Whole Woman's Health*. *See June Medical Servs. L.L.C.*, 140 S. Ct. at 2133 (plurality opinion) ("This case is similar to, nearly identical with, *Whole Woman's Health*. And the law must consequently reach a similar conclusion."); *id.* at 2141-42 (Roberts, C.J., concurring) ("*Stare decisis* instructs us to treat like cases alike. The result in this case is controlled by our decision four years ago invalidating a nearly identical Texas law."). On August 6, 2020, the Fifth Circuit administratively closed the case. Tu Decl. ¶ 11.

### 3. Post-Appellate Proceedings

Despite the case's administrative closure, Louisiana has continued to pursue issues that are running up Plaintiffs' legal fees (this litigation, which post-dates the administrative closure of this case, is referred to herein as the "Post-Appellate Proceedings"). *Id.* ¶ 16. Specifically, Louisiana persists in its efforts—dating back to October 2018—to reveal Plaintiff abortion providers' identities through extant challenges to the Court's PO and related sealing orders. *Id.* ¶¶ 13-21. Beyond the State's efforts, the Post-Appellate Proceedings have also included briefing on proposed intervention on these issues by a group of Louisiana legislators, academics, and media. Finally, the State has also filed a motion to void the parties' obligations under the PO to destroy confidential discovery material now that the case has concluded. *Id.* ¶¶ 19-21. Litigation over all these issues has forced Plaintiffs' attorneys to continue to expend significant time and resources on this case. *Id.* ¶¶ 16-21.

### B. Plaintiffs' Legal Team

Plaintiffs' legal team has shared and divided the work on this case according to their specialties and abilities. Plaintiffs have been represented—at various times—by attorneys from the Center for Reproductive Rights (the "Center"), Morrison & Foerster LLP ("Morrison & Foerster"), O'Melveny & Myers LLP ("OMM"), and Rittenberg, Samuel, & Phillips, L.L.C. ("Rittenberg"). Tu Decl. ¶¶ 22-30. Throughout the Trial Proceedings, the Center and Morrison & Foerster acted as co-lead co-counsel. Brown Decl. ¶ 22; Doufekias Decl. ¶ 8. During the Appellate Proceedings, the Center and Morrison & Foerster continued as co-lead co-counsel until the Fifth Circuit decision. Suppl. Doufekias Decl. ¶ 17; Tu Decl. ¶¶ 22-23. At that point, the Center acted as lead counsel throughout most of the briefing before the Supreme Court on certiorari, at which point, Plaintiffs decided to bring on further expertise in Supreme Court practice and retained OMM as co-lead co-counsel throughout the remainder of the Appellate Proceedings. Tu Decl. ¶¶ 25-26;

Metlitsky Decl. ¶ 1. Throughout the Post-Appellate Proceedings, the Center and Morrison & Foerster have served as co-lead co-counsel for Plaintiffs. Suppl. Doufekias Decl. ¶ 17; Tu Decl. ¶ 28.

The specific roles, background, and qualifications of the attorneys[2] from each of these entities are set out in the declarations of several of Plaintiffs' counsel: Dimitra Doufekias, *see* Doufekias Decl. ¶¶ 5--17 and Suppl. Doufekias Decl. ¶¶ 14-20 (describing the Morrison & Foerster attorneys); David Brown, *see* Brown Decl. ¶¶ 39-48, (describing the Center attorneys during the Trial Proceedings); William Rittenberg, *see* Rittenberg Decl. ¶¶ 1-3, 5, 8-9 (describing the Rittenberg attorneys during the Trial Proceedings); Travis J. Tu, *see* Tu Decl. ¶¶ 41-46 (describing the Center attorneys during the Appellate Proceedings and Post-Appellate Proceedings); Anton Metlitsky, *see* Metlitsky Decl. ¶¶ 5-12 (describing the OMM attorneys during the Appellate Proceedings); and Charles (Larry) Samuel, III, *see* Samuel Decl. ¶¶ 1-3, 5, 7 (describing the Rittenberg attorneys during the Appellate Proceedings and Post-Appellate Proceedings).

## ARGUMENT

### I. PLAINTIFFS ARE ENTITLED TO AN AWARD OF REASONABLE ATTORNEY'S FEES.

Prevailing parties under § 1983 are entitled to reasonable attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b). *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 760-61 (1989); *Hensley v. Eckerhart*, 461 U.S. 424, 429

---

[2] Throughout this memorandum of law, Plaintiffs use the term "attorneys" to encompass both the licensed attorneys and the law clerks and paralegals who comprised their legal team. The Supreme Court has long held that the "'reasonable attorney's fee' provided for by [§ 1988] should compensate the work of paralegals, as well as that of attorneys." *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *accord Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 582 (2008) (awarding fees for paralegal work at prevailing market rates).

(1983). Here, Plaintiffs are clearly the "prevailing parties . . . because [they] obtained the declaratory and injunctive relief they sought." *Sanchez v. City of Austin*, 774 F.3d 873, 879 (5th Cir. 2014); *see supra* at 6.

"The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (citation and internal quotation marks omitted). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. "Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.*

"In this circuit, courts apply a two-step method for determining a reasonable attorney's fee award." *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, a court must calculate the lodestar amount, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the court must determine whether an adjustment to the lodestar is warranted by the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Combs*, 829 F.3d at 392.

Here, the proper lodestar amount for Plaintiffs' attorneys collectively, for work performed during the Trial Proceedings and Appellate Proceedings, is $8,407,418.83. Although many of the *Johnson* factors support an enhancement—including the novelty and difficulty of the issues, the skill required to perform the legal services properly, time limitations imposed by the circumstances, and the undesirability of the case, *see Johnson*, 488 F.2d at 717-19—Plaintiffs do not seek an enhancement. Instead, Plaintiffs ask the Court to take these factors into account when determining a reasonable hourly rate for each attorney. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (citation omitted) (explaining that "the quality of an attorney's performance"

should be "reflected in the reasonable hourly rate"); *Perez v. Bruister*, No. 3:13CV1001, 2015 WL 5712883, at *6 (S.D. Miss. Sept. 29, 2015), *aff'd*, 653 F. App'x 811 (5th Cir. 2016) (awarding rates of up to $700/hour and noting that "the hourly rates account for the nature of the representation and the characteristics of counsel").

### A.  The Hourly Rates Sought by Plaintiffs' Attorneys Are Reasonable.

"'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (footnote omitted). Prevailing market rates are the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895 n.11. They should result in "an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551 (emphasis in original).

### 1.  Plaintiffs' Retention of Out-of-District Attorneys Was Reasonable.

In general, the "relevant community" for purposes of determining prevailing market rates is the district in which the case was filed. *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). Where it is necessary, however, for plaintiffs to retain an attorney from outside the district to ensure that their interests are adequately represented in the lawsuit, the attorney's "home" jurisdiction is the relevant community. *Id.* at 383 ("[W]here out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation."). Thus, in *McClain*, the Fifth Circuit reversed a district court's decision to limit lawyers based in California to rates prevailing in the Eastern District of Texas where the record demonstrated that "no Texas attorneys

were willing and able to assist in such a large case that might drag on for years without any guarantee of financial remuneration." *Id.* ("[T]he district court clearly erred in finding that local counsel were readily available to assist [plaintiffs' lead counsel], and it legally erred in suggesting that local community rates are always required when out-of-district counsel are employed."); *see also Jackson Women's Health Org. v. Currier*, No. 3:12-CV-436-DPJ-FKB, 2019 WL 418550, at *4-*5 (S.D. Miss. Feb. 1, 2019) (awarding out-of-district rates where declarations showed that no local attorney would have been willing to spend the time and resources necessary to effectively litigate the case).

The essence of the *McClain* standard is whether Plaintiffs' choice to retain out-of-district counsel—here the Center, Morrison & Foerster, and OMM—was reasonable at the time each decision was made. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 191 (2d Cir. 2008) ("[A] district court may use an out-of-district hourly rate . . . if it is clear that a reasonable, paying client would have paid those higher rates."); *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 744 (7th Cir. 2003) (concluding that it was "reasonable" for plaintiff to choose out-of-district counsel and awarding out-of-district rates); *In re Lopez*, 576 B.R. 84, 98 (Bankr. S.D. Tex. 2017) (holding that a plaintiff "may be entitled to its out-of-town rates if it was reasonable for [p]laintiff to hire [out-of-town counsel] in the first instance" (citing *McClain*, 649 F.3d at 382)); *In re Rodriguez*, 517 B.R. 724, 733 (Bankr. S.D. Tex. 2014) (concluding that "it was reasonable to hire out-of-town counsel in this case" where "there are at least several skilled lawyers who were capable of taking this case" but "none that would have been willing to do so").

Plaintiffs' decision to retain out-of-district counsel here was reasonable for the same reasons as in *McClain*. Plaintiffs needed counsel willing and able to take on a large, multi-year case that would require immense expenditures of attorney time and resources. *See supra* 2-7.

11

Further, as in *McClain*, there was no guarantee of compensation for this massive expenditure of resources. Because Plaintiffs could not shoulder the expenses of the litigation, Pittman Decl. ¶ 12, Plaintiffs needed attorneys willing to expend these resources, knowing they would only be compensated if they prevailed—a prospect that, at the outset, was extremely uncertain, Brown Decl. ¶ 28; Suppl. Doufekias Decl. ¶ 12. To begin, at filing, there was adverse precedent from the Fifth Circuit on the central legal issue in the case—the constitutionality of requiring admitting privileges for doctors to offer abortion care. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 594 (5th Cir. 2014), *abrogated by Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016). Moreover, two other cases were simultaneously being litigated within the Fifth Circuit challenging identical laws in Texas and Mississippi that could produce rapid shifts in relevant appellate and Supreme Court jurisprudence. *See* Tr. of Hr'g on the Mot. of TRO at 26:10-14, ECF No. 29 ("[Ms. Doufekias:] There are two cases pending on exactly these types of statutes in front of the Fifth Circuit right now, and it's a very -- right now we're in a very fluid time. The Court: I agree with that."). While there are some firms in Louisiana that could theoretically commit the resources necessary to prosecute this case, none would have been willing to take on such a significant financial risk or to pursue this case pro bono. *See* Barrasso Decl. ¶ 8; Schilling Decl. ¶ 11; *see also* Gottlieb Decl. ¶ 18; Pittman Decl. ¶¶ 12-16; Rittenberg Decl. ¶ 7; Samuel Decl. ¶ 6. On the other hand, large national law firms, like Morrison & Foerster, are capable of devoting this level of resources to cases like this one. *See* Suppl. Doufekias Decl. ¶¶ 11-12; Gottlieb Decl. ¶ 18; Schilling Decl. ¶ 14.

Four additional factors, not present in *McClain*, further underscore the reasonability of Plaintiffs' retention of out-of-district counsel. *First*, this case proceeded on an expedited basis at several stages that required Plaintiffs attorneys, at times, to focus almost exclusively on this case.

*See* Brown Decl. ¶¶ 13-16, 21; Tu Decl. ¶¶ 4-5, 14-15. For smaller firms based in Louisiana, this would have heightened the financial risks and further deterred them from taking this case. *Cf.* Barrasso Decl. ¶ 8; Schilling Decl. ¶ 11.

*Second*, Plaintiffs have a longstanding relationship with the Center—an organization with extensive experience in cases like this. *See Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994) (awarding out-of-state rates to plaintiff's "regular counsel" who were "well-experienced in the type of matters involved"); *Sierra Club v. Future Holdings Corp.*, No. W-12-CV-108, 2014 WL 12690022, at *6 (W.D. Tex. Aug. 29, 2014) (holding that efficiencies of retaining counsel working on a "similar case" made it reasonable to retain out-of-state counsel). Plaintiffs' connection to the Center dates back to 1992. *See* Pittman Decl. ¶ 4. Through this decades-long relationship, the Center has developed significant expertise in Louisiana's regulatory scheme for abortion providers and has litigated challenges to those laws successfully. *See id.* ¶¶ 4-6. Indeed, it is highly unlikely that Plaintiffs could have obtained any other counsel—either within or outside the district—with comparable knowledge of Plaintiffs' operations and of federal constitutional challenges to Louisiana abortion restrictions. *See id.*; Schilling Decl. ¶ 10; Suppl. Parker Decl. ¶¶ 8-10. Moreover, given the Center's and Morrison & Foerster's combined experience challenging Louisiana abortion restrictions and, specifically, admitting privileges laws, it was far more efficient for these attorneys to litigate this case than unfamiliar local attorneys starting from scratch. *See* Brown Decl. ¶ 38; Suppl. Doufekias Decl. ¶ 7; Suppl. Parker Decl. ¶¶ 9-10; Tu Decl. ¶¶ 39-40.

*Third*, the Center, Morrison & Foerster, and OMM possess a level of expertise in abortion rights that would have been extremely difficult for Plaintiffs to find locally. *See* Schilling Decl. ¶ 10; Gottlieb Decl. ¶ 16. Courts frequently award out-of-district rates when there are scant attorneys

locally with the relevant expertise. *See Claudet v. Cytec Ret. Plan*, No. CV 17-10027, 2020 WL 3128611, at *14 (E.D. La. June 12, 2020) (awarding "elevated fees by reference to their legal specialties and nationwide expertise for which there is no applicable prevailing community standard in this district"); *Defrese-Reese v. Healthy Minds, Inc.*, No. CV 3:18-1134, 2020 WL 5437743, at *4 (W.D. La. Sept. 10, 2020) ("[I]n a specialized area of the law . . . the Court may consider evidence outside the relevant legal market if there are not a sufficient number of practitioners in that area."); *Sierra Club*, 2014 WL 12690022, at *6 (applying *McClain* and holding that the "specific legal issues the case presented" in that case "warranted retaining a legal team primarily consisting of out-of-district counsel"). In particular, courts have awarded out-of-district rates in cases requiring expertise in abortion and reproductive rights that local lawyers did not possess. *See Jackson Woman's Health Org.*, 2019 WL 418550, at *5; *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995) (per curiam) (approving out-of-district rates for attorneys experienced "in the field of reproductive-rights law").

The Center is widely regarded as having preeminent expertise in reproductive rights law. *See* Brown Decl. ¶ 38; Gottlieb Decl. ¶ 16; Suppl. Parker Decl. ¶¶ 8-10; Schilling Decl. ¶ 13; Tu Decl. ¶¶ 39-40. More significantly, the attorneys at the Center have particular expertise in litigating cases involving admitting privileges laws and have successfully challenged similar laws in every state within the Fifth Circuit (Julie Rikelman is the only attorney in the country to have worked on all three challenges to admitting privileges laws within the Fifth Circuit). *See* Brown Decl. ¶¶ 38-39, 42; Suppl. Parker Decl. ¶ 9; Schilling Decl. ¶ 13; Tu Decl. ¶¶ 40, 44; *Whole Woman's Health*, 136 S. Ct. 2292; *Jackson Woman's Health Org.*, 760 F.3d 448. This experience was critical to the development and execution of the case strategy here and to Plaintiffs' ultimate success before the Supreme Court. *See* Tu Decl. ¶¶ 22-25.

Morrison & Foerster and OMM also have significant experience in reproductive rights litigation. Morrison & Foerster regularly partners with the Center and other groups as pro bono counsel on complex abortion rights cases due to their specific experience with reproductive rights litigation and their general experience before the federal courts of appeals and the Supreme Court—where much of this litigation ultimately ends up. *See* Suppl. Doufekias Decl. ¶ 7; *see also* Suppl. Parker Decl. ¶ 11; Brown Decl. ¶ 38; Tu Decl. ¶ 40. More specifically, Morrison & Foerster brought to this case the highly relevant experience of challenging Texas' admitting privileges law alongside the Center. *See* Suppl. Doufekias Decl. ¶ 7; Brown Decl. ¶ 38; Tu Decl. ¶ 40.

OMM has a similar relationship with the Center and other national reproductive rights organizations. The firm regularly collaborates with the Center and other organizations to litigate cases involving abortion rights. *See* Metlitsky Decl. ¶¶ 6, 7, 10, 11. Moreover, OMM has one of the top Supreme Court practices in the country, and Jeff Fischer—who led the OMM team—is a seasoned Supreme Court advocate with more than forty oral arguments under his belt. *See* Metlitsky Decl. ¶¶ 4-12; Suppl. Parker Decl. ¶¶ 14-16; Tu Decl. ¶¶ 26-27.  Indeed, Supreme Court practitioners, like those who worked on this matter from OMM, are highly specialized and command significantly higher rates, regardless of where a case emanates. *See* Barrasso Decl. ¶ 7; Metlitsky Decl. ¶¶ 14-16; Suppl. Parker Decl. ¶ 21; *cf.* Schilling Decl. ¶ 15. *See also Rum Creek*, 31 F.3d at 179 (holding that the criteria for out-of-district rates "need not even be considered" with respect to appeals).

*Fourth*, and perhaps most importantly, this case concerned abortion rights. Louisiana is overwhelmingly anti-abortion. *See* Barrasso Decl. ¶ 9; Gottlieb Decl. ¶¶ 6-7; Pittman Decl. ¶¶ 7-8; Schilling Decl. ¶ 9. As a result, it is extremely difficult to find attorneys willing to work with Plaintiffs. *See* Barrasso Decl. ¶ 9; Gottlieb Decl. ¶ 15; Pittman Decl. ¶¶ 12-17; Rittenberg Decl. ¶

4; Samuel Decl. ¶ 4; Schilling Decl. ¶ 9. While Plaintiffs have a limited roster of local attorneys, these relationships are the result of serendipitous, often personal, connections and none of these local attorneys possess the necessary combination of expertise, resources, and willingness to adequately prosecute a case like this, let alone on a pro bono basis. Barrasso Decl. ¶¶ 8-9; Pittman Decl. ¶¶ 13-16; Schilling Decl. ¶¶ 9-11; *cf.* Gottlieb Decl. ¶¶ 13-16. Plaintiffs have otherwise had significant difficulty finding attorneys to represent them, even in ancillary matters that do not involve abortion. Pittman Decl. ¶¶ 12-14; *cf.* Gottlieb Decl. ¶¶ 13-16 (noting similar experiences at Planned Parenthood's local affiliate, Planned Parenthood Gulf Coast ("PPGC")).

While many Louisiana attorneys refuse to work with Plaintiffs due to their own personal objections to abortion, others fear the consequences of being associated with abortion rights. *See* Barrasso Decl. ¶ 9; Schilling Decl. ¶ 9; *cf.* Pittman Decl. ¶¶ 9, 12. In Louisiana, those who publicly support abortion rights, or even associate with those who do, regularly find themselves the target of significant harassment and violence. *See* Barrasso Decl. ¶ 9; Gottlieb Decl. ¶¶ 8-12; Pittman Decl. ¶ 8; Schilling Decl. ¶ 9. For example, after PPGC announced its plans to construct a new healthcare facility in New Orleans, the Archbishop of New Orleans publicly stated that any vendor who worked on the project would be blacklisted from ever doing business with the Archdiocese— a major landowner and employer in Orleans Parish. Gottlieb Decl. ¶¶ 8-9. Similarly, leaders in the local construction industry intimidated, threatened, and harassed any vendor who dared to submit bids for the project. *Id.* ¶¶ 9-10. Consequently, PPGC had an extremely difficult time securing subcontractors to help construct its new healthcare center and was forced to look outside Louisiana and to pay a significant premium for services. *Id.* ¶ 9.

Similarly, many attorneys in the state will not work with abortion providers because they fear their colleagues will object or that they will lose business due to other clients' objections.

Barrasso Decl. ¶ 9; Schilling Decl. ¶ 9. Working with abortion providers in Louisiana entails significant risk—to personal safety and relationships, business contacts, and financial well-being. Barrasso Decl. ¶ 9; Gottlieb Decl. ¶¶ 9-12; Schilling Decl. ¶ 9.

In short, it would have been nearly impossible for Plaintiffs to retain counsel from within this district who could have adequately represented Plaintiffs throughout this litigation. *See supra* 11-17. Indeed, unlike in *Whole Woman's Health*—where the court refused to award out-of-district rates largely because local lawyers had served as lead counsel in several recent similar cases, s*ee* Order on Mots. for Atty.'s Fees at 23, *Whole Woman's Health v. Hellerstedt*, No. 1:14-cv-00284-LY (W.D. Tex. Aug. 9, 2019), ECF No. 297—an out-of-state attorney has taken the lead in every federal court challenge to a Louisiana anti-abortion law in the years preceding and following this case, *see, e.g.*, *June Med. Servs., L.L.C. v. Gee*, No. CV 16-444-BAJ-RLB, 2020 WL 981701, at *1 (M.D. La. Feb. 28, 2020) (led by Emily Nestler of New York and Dimitra Doufekias of Washington, D.C.); *In re Gee*, 941 F.3d 153, 156 (5th Cir. 2019) (argued by Shannon Selden of New York); *Planned Parenthood of Gulf Coast, Inc. v. Gee*, No. 3:18-cv-00176 (M.D. La. May 23, 2018), ECF No. 43 (argued by Carrie Flaxman of Washington, D.C.); *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d 477, 481 (5th Cir. 2016) (argued by Carrie Flaxman of Washington, D.C.); *K.P. v. LeBlanc*, 729 F.3d 427, 431 (5th Cir. 2013) (argued by Stephanie Toti of New York); *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 712 (5th Cir. 2012) (argued by J. Alexander Lawrence of New York); *K.P. v. LeBlanc*, 627 F.3d 115, 118 (5th Cir. 2010) (argued by Stephanie Toti of New York). Further, even Louisiana turned to out-of-district counsel to

defend the Act throughout the proceedings.[3] Because the *McClain* standard is more than satisfied here, Plaintiffs' out-of-district attorneys should be compensated based on the prevailing rates in their home districts.

### 2.  The Rates Sought by Plaintiffs' Attorneys Are Reasonable.

The rate determination should account for the complexity of the issues raised in the case and the corresponding degree of expertise and experience required to litigate it successfully. *See Davis*, 991 F. Supp. 2d at 846 ("The reasonable hourly rate reflects the novelty and complexity of the issues, the special skill and experience of counsel, and the quality of representation."). "The Supreme Court indicated in *Perdue* that the lodestar calculation should 'measure the attorney's true market value' and the attorney should be 'compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes.'" *Id.* (quoting *Perdue*, 559 U.S. at 554-55).

The rates sought for Plaintiffs' attorneys, set forth in Appendix A hereto, are reasonable and in accordance with the foregoing principles. The rates sought herein for the attorneys at Morrison & Foerster and OMM are the rates prominent global law firms, like Morrison & Foerster and OMM, charged clients for the services of their attorneys' services during the years indicated,[4]

---

[3] At the start of this case, Louisiana retained now-Judge S. Kyle Duncan, then located in Washington, D.C. Order Granting Mot. to Enroll S. Kyle Duncan as Counsel of Record, ECF No. 21, Aug. 26, 2014. When Judge Duncan was appointed to the Fifth Circuit, Louisiana continued to work with Judge Duncan's former firm, now Schaerr Jaffe LLP. And, at the Supreme Court, Louisiana sought additional out-of-district counsel, this time from Consovoy McCarthy PLLC, based in Arlington, Virginia. *See* Br. For Resp't/Cross-Pet'r, *June Med. Servs. L.L.C.*, Nos. 18-1323 and 18-1460 (U.S. Dec. 26, 2019).

[4] Although Plaintiffs' attorneys are entitled to apply their current rates retroactively to all time spent on the case, *see Perdue*, 559 U.S. at 556, they seek only the prevailing rates in the relevant years work was performed to avoid any possibility of a windfall.

and they are in line with the prevailing rates in Washington, D.C., New York City, and Palo Alto for similar services by lawyers of reasonably comparable skill, experience, and reputation during the relevant time period. Doufekias Decl. ¶ 21; Suppl. Doufekias Decl. ¶¶ 22-24; Metlitsky Decl. ¶¶ 14-16, Supp. Parker Decl. ¶¶ 11, 14, 18, 20-21. It is "not legally relevant" that Morrison & Foerster and OMM performed this work pro bono,[5] and courts "must avoid . . . decreasing reasonable fees" on those grounds. *Blum*, 465 U.S. at 895 (citations and internal quotation marks omitted).

Although the Center's attorneys do not charge their clients, this too is legally irrelevant. *Id.* (holding that courts "must avoid . . . decreasing reasonable fees" because "plaintiffs' counsel . . . are employed by . . . a privately funded non-profit public interest law firm") (citation and internal quotations omitted). The rates sought for the Center attorneys (with the exception of Janet Crepps, *see infra* at 20) are in line with the prevailing rates in New York for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See* Brown Decl. ¶¶ 38-40, 42-43, 46-50; Suppl. Parker Decl. ¶¶ 18-19; Tu Decl. ¶¶ 41-48; *cf. La. Generating LLC v. Ill. Union Ins. Co.*, No. CIV.A. 10-516-JJB, 2014 WL 1270049, at *5 (M.D. La. Mar. 27, 2014) (finding $1,000 per hour is a reasonable rate for a highly-specialized, highly experienced out-of-district attorney practicing in Louisiana). Plaintiffs seek compensation at community rates applicable to Ms. Crepps' home jurisdiction, the District of South Carolina. Brown Decl. ¶¶ 44, 49, 51.

---

[5] Consistent with the Pro Bono Institute and American Bar Association's guidance, Morrison & Foerster segregates attorney's fee awards in pro bono cases from the firm's other revenue. Any attorney's fee award to Morrison & Foerster would be used only for pro bono purposes, such as charitable donations. Suppl. Doufekias Decl. ¶ 32. Similarly, OMM does not hold attorney's fee awards, but rather has a policy of remitting them directly to an appropriate charitable or pro bono organization. Metlitsky Decl. ¶ 17.

In *Jackson Women's Health Organization*—the case challenging Mississippi's admitting privileges law—the court determined that out-of-district rates were justified, but granted the attorney's fee award based on rates awarded within the attorneys' home district for similar civil rights work. 2019 WL 418550, at *5-*7. While these rates are lower than the prevailing market rates for Plaintiffs' attorneys, should the Court decide to take this path, in the Southern District of New York (where most of Plaintiffs' attorneys are located), courts have awarded rates ranging from $650 to $780 per hour for partners, $500 to $525 per hour for counsel, and $375 to $475 per hour for associates. *See Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2020 WL 1080780, at *16 (S.D.N.Y. Mar. 6, 2020) (awarding Proskauer Rose LLP's fees at rates between $487.50 and $780.00 for attorneys and senior partners); *see also Cruz v. Zucker*, No. 14-cv-4456 (JSR), 2017 WL 1093285, at *3 (S.D.N.Y. Mar. 10, 2017) (awarding Willkie, Farr & Gallagher attorney's fees in a pro bono matter at rates of $675/hour for partners, $525/hour for a counsel, and $375/hour to $475/hour for associates); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96-CV-8414, 2017 WL 4103643 (S.D.N.Y. Sept 7, 2017), *report and recommendation adopted*, No. 96-CV-8414 (KMW), 2017 WL 4082304 (S.D.N.Y. Sept. 8, 2017) (approving $650 hourly rate for partners and $500 hourly rate for counsel); *Restivo v. Nassau Cnty.*, No. 06-CV-6720(JS)(SIL), 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015), *aff'd sub nom. Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) (awarding $700 hourly rate for senior partners). [6]

---

[6] Should the Court decline to award Plaintiffs out-of-district rates, the prevailing rates in Louisiana for attorneys handling complex matters, akin to this case, generally range from $450 to $650 per hour for attorneys with more than 15 years of experience out of law school; $400 to $500 per hour for attorneys with eight to 15 years out of law school; $250 to $300 per hour for junior attorneys with more than three years out of law school; and $125 to $170 per hour for the work of an experienced paralegal. Barrasso Decl. ¶¶ 6, 8. While these are generally the prevailing rates, specialization in certain areas of the law or expertise, for example as a Supreme Court practitioner, can elevate the rates commanded. *Id.* ¶ 7.

The rates sought by Mr. Rittenberg and Mr. Samuel are well within the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation during the relevant time period. *See* Rittenberg Decl. ¶ 10; Samuel Decl. ¶ 9; Schilling Decl. ¶ 18; Barrasso Decl. ¶ 6; *see also, e.g.*, *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. CV 17-491, 2020 WL 375596, at *6 (E.D. La. Jan. 23, 2020); *Labarge Pipe & Steel Co. v. First Bank*, No. CIV.A. 03-281, 2011 WL 3841605, at *5 n.4 (M.D. La. 2011) (awarding a rate of $435 per hour in 2003); *Hornbeck Offshore Serv., L.L.C. v. Salazar*, No. CIV.A. 10-1663, 2011 WL 2214765 (E.D. La. 2011), *rev'd on other grounds*, 713 F.3d 787, 796 (5th Cir. 2013) (awarding experienced attorneys rates of $420 and $450 per hour for work done in 2010).

Accordingly, the Court should calculate Plaintiffs' reasonable attorney's fees based on the rates set forth in Appendix A.

### B. The Lodestar Amounts Calculated by Plaintiffs Constitute Reasonable Attorney's Fees.

The chart in Appendix A also sets forth the lodestar amounts for all attorneys for work performed during the Trial Proceedings and Appellate Proceedings.[7] These amounts are based on reasonable hourly rates, *see supra* Section I.A., and reflect the exercise of reasonable billing judgment. *See* Brown Decl. ¶¶ 30-36; Tu Decl. ¶¶ 31-37; Doufekias Decl. ¶ 23; Suppl. Doufekias Decl. ¶ 26; Rittenberg Decl. ¶ 9; Samuel Decl. ¶ 8; Metlitsky Decl. ¶ 19.

As the court noted when awarding fees in *Whole Woman's Health*, "foremost in the court's mind" should be the "more basic questions" of "'what result was obtained, and what was the *reasonable* amount of effort and resources necessary to reach the result?". Order on Mots. for

---

[7] Plaintiffs reserve the right to supplement their time entries and request for fees with attorney hours expended litigating matters, including this fee application, during the Post-Appellate Proceedings. Tu Decl. ¶ 54; Suppl. Doufekias Decl. ¶ 5.

Atty.'s Fees, Nontaxable Expenses, and Costs at 11, *Whole Woman's Health v. Hellerstedt*, No. 1:14-cv-00284-LY (W.D. Tex. Aug. 9, 2019), ECF No. 297. Here, challenging Louisiana's admitting privileges law involved considerable and costly factual development by Plaintiffs' attorneys that resulted in a 116-page order from this Court. Brown Decl. ¶¶ 7-10; Suppl. Doufekias Decl. ¶¶ 9-11. This extensive factual record proved critical to the Supreme Court's decision because it allowed Plaintiffs to establish that, in all relevant respects, the facts in this case were identical to those in *Whole Woman's Health, see June Medical Servs. L.L.C.*, 140 S. Ct. at 2133 (plurality opinion); *id.* at 2141-42 (Roberts, C.J., concurring)—contrary to Louisiana's contentions. *See, e.g.*, Br. for Resp./Cross-Pet. at 25, 53-60, *June Med. Servs. L.L.C. v. Gee*, Nos. 18-1323 and 18-1460 (U.S. Dec. 26, 2019). Accordingly, the extensive time Plaintiffs' attorneys spent developing this record was not only reasonable, but essential to Plaintiffs' success. *See* Tu Decl. ¶¶ 40; Suppl. Parker Decl. ¶¶ 12-13.

Moreover, in *Whole Woman's Health*, although the court determined that the case was "over lawyered" by both sides, it ultimately awarded the plaintiffs fees for over 95 percent of the hours requested because "the State's tactics compelled an increase in manpower." Order on Mots. for Atty.'s Fees, Nontaxable Expenses, and Costs at 16-20, *Whole Woman's Health v. Hellerstedt*, No. 1:14-cv-00284-LY (W.D. Tex. Aug. 9, 2019), ECF No. 297. So too here. At several stages, Louisiana's aggressive litigation tactics forced (and continue to force) Plaintiffs to employ more attorneys and to spend more time on this case than otherwise necessary. *See* Tu Decl. ¶¶ 12-21.

To begin, Louisiana's extensive discovery requests significantly drove up attorney's fees throughout the Trial Proceedings. Suppl. Doufekias Decl. ¶¶ 9-11. For example, Louisiana served Plaintiffs with over 50 requests for production seeking documents spanning a seven-year period,

and some which required Plaintiffs' attorneys to spend days collecting documents in various storage locations across Louisiana, reviewing boxes of records to determine what materials were potentially responsive to the State's request. Suppl. Doufekias Decl. ¶ 10. Plaintiffs' attorneys then needed to conduct additional review and prepare the documents for production. *Id.* Likewise, Louisiana disclosed nine testifying experts, each of whom was then necessarily the subject of significant expert discovery, even though the State ultimately only offered three expert witnesses at trial. *Id.* Due to Louisiana's extensive discovery, Plaintiffs needed a large legal team throughout the Trial Proceedings. *See id.* ¶ 11.

During the Appellate Proceedings, Louisiana's conditional cross-petition—challenging Plaintiffs' third-party standing for the first time after nearly five years of litigation—further drove up Plaintiffs' attorney's fees by effectively generating two Supreme Court cases when not even one was necessary given how closely this case mirrored *Whole Woman's Health*. Tu Decl. ¶ 6. And, Louisiana's repeated and ongoing challenges to the Court's PO continue to force Plaintiffs to expend significant additional attorney hours despite the case's administrative closure approximately seven months ago. *Id.* ¶¶ 16-21.

Ultimately, in *Whole Woman's Health*, the court awarded plaintiffs' fees for just over 5,744 hours for a case that spanned barely more than two years. Order on Mots. for Atty.'s Fees, Nontaxable Expenses, and Costs at 20, *Whole Woman's Health v. Hellerstedt*, No. 1:14-cv-00284-LY (W.D. Tex. Aug. 9, 2019), ECF No. 297. Here, Plaintiffs seek reimbursement for less than twice as many hours for a case that has lasted three times as long, largely driven by Louisiana's own actions.

Furthermore, as outlined in the declarations, Plaintiffs' attorneys have reviewed their hours and already reduced whenever the time spent on a particular task seemed excessive or redundant.

23

*See* Brown Decl. ¶¶ 30-36; Doufekias Decl. ¶ 23; Suppl. Doufekias Decl. ¶ 26; Metlitsky Decl. ¶¶ 18-19; Rittenberg Decl. ¶ 9; Samuel Decl. ¶ 8; Tu Decl. ¶¶ 31-37. Further, Plaintiffs' attorneys have also omitted certain categories of time altogether. For example, the Center completely omitted the time entries for three attorneys working during the Appellate Proceedings who subsequently left the Center for other employment, as well as substantial time spent by replacement lawyers getting up to speed. Tu Decl. ¶ 33. Plaintiffs also omitted time spent by senior attorneys performing only high-level review of other's work product; omitted all time entries for certain junior attorneys and paralegals (even though their work was vital to the case); omitted time spent by Center attorneys familiarizing themselves with Supreme Court practice and rules; omitted time spent by Center attorneys during the Appellate Proceedings on internal emails and weekly team meetings and calls; and omitted time spent by those performing largely clerical tasks. *See* Brown Decl. ¶¶ 32-36; Doufekias Decl. ¶ 23; Suppl. Doufekias Decl. ¶ 24; Metlitsky Decl. ¶¶ 18-19; Rittenberg Decl. ¶ 9; Samuel Decl. ¶ 8; Tu Decl. ¶¶ 34-36. In total, Plaintiffs have eliminated from this application and do not seek recovery for at least 4,400 hours of attorney time expended during the Trial Proceedings and Appellate Proceedings. *See* Brown Decl. ¶ 36; Tu Decl. ¶ 37.

Given Louisiana's own role driving up fees in this case combined with Plaintiffs' extensive cuts to their attorneys' billing records, the lodestar amounts cited in Appendix A constitute reasonable fees for the legal services provided to Plaintiffs. *See Perdue*, 559 U.S. at 554 ("[T]here is a 'strong presumption' that the lodestar figure is reasonable."); *Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987) ("[T]he lodestar[] is presumed to be the reasonable fee authorized by [§ 1988] . . . .").

## II.    Plaintiffs Are Entitled to An Award of Reasonable Litigation Expenses.

Section 1988 also entitles prevailing parties to compensation for reasonable litigation expenses that are not taxable under 28 U.S.C. § 1920.[8] *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd*., 919 F.2d 374, 380 (5th Cir. 1990). These nontaxable expenses are "costs normally charged to a fee-paying client," including items such as "charges for photocopying, paralegal assistance, travel, and telephone." *Id.*; *DeLeon v. Abbott*, 687 F. App'x 340, 342 (5th Cir. 2017) (quoting *Associated Builders*, 919 F.2d at 380); *accord Gros v. New Orleans City*, No. CIV.A. 12- 2322, 2014 WL 3894371, at *4-*5 (E.D. La. Aug. 8, 2014) (awarding recovery of "reasonable out- of-pocket expenses" for items including photocopying, paralegal expenses, mailing, telecommunications, and travel, including airfare, airport shuttle, baggage checks, meals, lodging, and parking and reviewing cases).

The chart in Appendix B sets forth the total amount of expenses incurred during both the Trial Proceedings and Appellate Proceedings for which Plaintiffs are seeking reimbursement. All the expenses represented in the chart are of the type that attorneys would normally pass on to fee-paying clients. *See* Brown Decl. ¶¶ 54-55; Doufekias Decl. ¶¶ 26-27; Suppl. Doufekias Decl. ¶¶ 29-30; Metlitsky Decl. ¶ 22-23; Tu Decl. ¶ 51-52.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Renewed Petition for Attorney's Fees in its entirety.

---

[8] Expenses that are covered by 28 U.S.C. § 1920 are recoverable as costs taxed by the clerk. *Chacon v. City of Austin, Tex*, No. A-12-CA-226-SS, 2015 WL 4138361, at *10 (W.D. Tex. July 8, 2015). Plaintiffs are also filing a Bill of Costs today to seek those expenses. *See supra* at 2 n.1.

Dated: March 22, 2021                    Respectfully submitted,


                                         */s/ Charles M. Samuel*
                                         Charles M. Samuel III
                                         Louisiana State Bar No. 11678
                                         RITTENBERG, SAMUEL, AND PHILLIPS, LLC
                                         1539 Jackson Ave., Suite 115
                                         New Orleans, LA 70130
                                         (504) 524-5555
                                         samuel@rittenbergsamuel.com


                                         Dimitra Doufekias
                                         MORRISON & FOERSTER LLP
                                         2000 Pennsylvania Avenue, NW
                                         Suite 6000
                                         Washington, DC 2006-1888
                                         (202) 887-1500
                                         ddoufekias@mofo.com

                                         Travis J. Tu
                                         CENTER FOR REPRODUCTIVE RIGHTS
                                         199 Water Street, 22nd Floor
                                         New York, New York 10038
                                         (917) 637-3600
                                         tjtu@reprorights.org


                                         *Attorneys for Plaintiffs June Medical Services, LLC*
                                         *d/b/a Hope Medical Group for Women, John Doe 1,*
                                         *M.D., and John Doe 2, M.D.*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of March 2021, a copy of the foregoing Memorandum of Law in Support of Plaintiffs' Renewed Petition for Attorney's Fees has been served upon the parties' counsel of record by electronic service through the Court's ECF system.

<u>/s/ Charles M. Samuel</u>
Charles M. Samuel III