# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUNE MEDICAL SERVICES LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COURTNEY N. PHILLIPS, in her official capacity as Secretary of the Louisiana Department of Health, <br><br> Defendant | Civil Action No. 3:14-CV-525-JWD-RLB |

### SUPPLEMENTAL DECLARATION OF KIMBERLY A. PARKER
### IN SUPPORT OF PLAINTIFFS' RENEWED PETITION FOR ATTORNEY'S FEES

KIMBERLY A. PARKER declares under penalty of perjury that the following statements are true and correct.

### Professional Qualifications and Experience

1. I am an attorney admitted to practice in the District of Columbia since 1999 and in the State of New York since 1998. I am a member in good standing of the bars of the United States District Court for the District of Colombia, Southern District of New York, several United States Courts of Appeals, and the United States Supreme Court.

2. I graduated *magna cum laude* from Princeton University in 1992. In 1996, I received my law degree *magna cum laude* from Harvard Law School, where I served as the Articles Editor of the *Harvard Law Review*. After law school, I worked as a law clerk for the Honorable Alfred T. Goodwin of the United States Court of Appeals for the Ninth Circuit.

3. Following my clerkship, from 1997 to 1998, I was a Staff Attorney Fellow at the Reproductive Freedom Project of the American Civil Liberties Union. During my fellowship, I worked on numerous challenges to state laws that restricted and regulated access to abortion.

4. In 1998, I became an associate at the firm then-known as Wilmer, Cutler & Pickering, which merged with Hale and Dorr in May 2004 to become Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer"). In January 2005, I was elected Partner in the firm. My practice focuses on internal corporate investigations, white-collar criminal matters, and matters involving the Foreign Corrupt Practices Act. I also work on complex civil matters at the trial and appellate levels, including in the United States Supreme Court. I currently co-lead Wilmer's Foreign Corrupt Practices Act and Anti-Corruption Practice and am also the co-chair of the firm's Pro Bono and Community Service Committee.

5. During my tenure at Wilmer, I have continued to devote substantial time to reproductive-rights litigation. For example, I was a member of the trial team that brought one of several cases challenging a federal ban on a particular abortion procedure. *See Nat'l Abortion Fed. v. Ashcroft*, 330 F. Supp. 2d 436 (S.D.N.Y. 2004). I have also served as counsel in (i) a challenge to an Alabama law, similar to the law challenged in this case, that required physicians at abortion clinics to have admitting privileges at a local hospital, *Planned Parenthood Southeast, Inc. v. Strange*, 33 F.Supp.3d 1330 (M.D. Ala. 2014); (ii) a challenge to Kentucky's abortion-procedure ban, *Eubanks v. Stengel*, 224 F.3d 576 (6th Cir. 2000); (iii) a case challenging a prohibition on abortion-related advertising on Atlanta's mass transit system, *Nat'l Abortion Fed. v. Metro. Atlanta Rapid Transit Auth.*, 112 F.Supp.2d 1320 (N.D. Ga. 2000); and (iv) a case challenging a 2011 North Carolina law that sought to prohibit a Planned Parenthood affiliate from receiving

government funding, which was held unconstitutional, *Planned Parenthood of Cent. N.C. v. Cansler*, 877 F. Supp. 2d 310 (M.D.N.C. 2012).

6. I have long represented the American College of Obstetricians and Gynecologists (ACOG), and in 2016 I received the American College of Obstetricians and Gynecologists' Distinguished Service Award, which recognizes outstanding contributions to the advancement of women's health and the practice of obstetrics and gynecology. I have drafted *amicus curiae* briefs on behalf of ACOG in numerous cases, including many brought on behalf of healthcare providers and their patients by the Center for Reproductive Rights ("the Center"). In addition to my representation of ACOG, I have also represented the American Medical Association and numerous other medical organizations in reproductive rights-related litigation. Notably, I filed an amicus brief in this case at the Supreme Court on behalf of ACOG, the American Medical Association, and twelve other medical organizations. Brief for American College Obstetricians and Gynecologists et al. as Amici Curiae Supporting Petitioners, *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103 (2020).

7. Based on publicly available sources, and my own knowledge of the legal communities in which my colleagues and I practice, I am also generally familiar with the prevailing market rates for attorneys of comparable skill in the California, New York City, and Washington, D.C. markets.

**The Center's Preeminent Expertise in the Area of Reproductive Rights Was Essential to Plaintiffs' Success.**

8. Given my significant and continued involvement in reproductive rights litigation, I am aware of the high degree of expertise and experience in the field of reproductive rights of the litigation attorneys at the Center. These attorneys were extremely well-qualified to perform work in this case.

9. The Center has skilled litigators with strong backgrounds in reproductive rights litigation, and they obtain excellent results for their clients. The Center has successfully litigated numerous cases, including *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), which, along with this case, was one of the most important abortion rights opinions issued by the Supreme Court in the past quarter century. Additionally, the Center has specific expertise in challenging unconstitutional admitting privileges laws, having prevailed in its suits against Texas and Mississippi in recent years. *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016); *Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014), *cert. denied*, 136 S. Ct. 2536 (2016).

10. The Center also brings significant experience in reproductive rights litigation. Collectively, the attorneys at the Center have litigated dozens of abortion rights cases and have built an almost unparalleled level of institutional knowledge on how to challenge state laws restricting abortion access. The plaintiffs' success in this case depended on the collective and individual experience, knowledge, and skills of its attorneys, particularly those from the Center.

**Morrison & Foerster Brought Significant Expertise and Needed Resources to This Case.**

11. I am also familiar with the law firm of Morrison & Foerster. Morrison & Foerster is a well-regarded law firm with an excellent national reputation. The firm frequently partners with the Center in the most challenging reproductive rights cases.

12. A law firm like Morrison & Foerster brings extensive experience in complex litigation and is able to invest significant resources in a case. This case proceeded in federal court for nearly six years and entailed considerable discovery, motion practice, a six-day trial, emergency appeals, and arguments before three separate courts. Plaintiffs would not have been

adequately represented before this Court or the Court of Appeals for the Fifth Circuit without the resources that Morrison & Foerster brought to this case.

13. The firm, along with the Center, dedicated substantial time, expense, and staff to build a comprehensive record for this Court. This Court was able to make extensive factual findings in a 116-page opinion because of the record. *See* Findings of Fact and Conclusions of Law, ECF No. 274. The Supreme Court later reversed the decision of the Court of Appeals for the Fifth Circuit, which had overturned this Court's decision, based on those factual findings and the substantial evidence in the record. *See June Med. Servs. v. Russo*, 140 S. Ct. 2103, 2120-2132 (2020). The district court record was therefore essential to Plaintiffs' ultimate success at the Supreme Court.

## O'Melveny & Myers Brought Unique and Significant Supreme Court Expertise to This Case.

14. I am also familiar with the law firm of O'Melveny & Myers (O'Melveny). O'Melveny is a strong national law firm, like Morrison & Foerster. The O'Melveny attorneys retained for this litigation are known for their expertise in appellate work and regularly practice before the Supreme Court.

15. All of the O'Melveny attorneys practice in the firm's Supreme Court & Appellate Litigation group, which is renowned for its work litigating before federal appellate courts. Each attorney on this case clerked for at least one judge on the U.S. Courts of Appeals. Half of the O'Melveny attorneys have served as co-counsel in other reproductive rights cases at the appellate level.

16. The firm also brought significant experience practicing at the Supreme Court. Two-thirds of the O'Melveny attorneys clerked at the Supreme Court, including for Chief Justice John Roberts, Justice Stephen Breyer, and Justice Elena Kagan. Every O'Melveny attorney on this case

has co-authored multiple briefs filed with the Supreme Court. Jeffrey Fisher has argued 40 cases before the Court. Anton Metlitsky was appointed by the Court to argue *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), and Kendall Turner argued *Holguin-Hernandez v. United States*, 140 S. Ct. 762 (2020), which resulted in a unanimous victory.

17. Clients bringing a case at the Supreme Court will typically seek counsel with this level of experience. Plaintiffs sought to partner with O'Melveny once the Supreme Court granted their petition for a writ of certiorari. Defendants, too, chose to work with out-of-state co-counsel in search of similar expertise. Defendants partnered with attorneys at the Washington, D.C.-based law firm Schaerr Jaffe, including now-Judge Kyle Duncan of the Court of Appeals for the Fifth Circuit, at the district-court level, long before this case reached the Supreme Court.

**Morrison & Foerster, O'Melveny & Myers, and the Center's Requested Rates Are Consistent with the Prevailing Market Rates in Their Home Districts.**

18. I have reviewed the declarations attached to the fee application submitted in 2017 in addition the Declaration of T.J. Tu from the Center, Supplemental Declaration of Dimitra Doufekias from Morrison & Foerster, the Declaration of Anton Metlitsky, and Appendix A attached to the Plaintiffs' Memorandum in Support of Plaintiffs' Renewed Petition for Attorney's Fees, which collectively describe Plaintiffs' attorneys qualifications and the hourly rates sought by Plaintiffs for work performed by those attorneys from Morrison & Foerster, the Center, and O'Melveny & Myers based in Washington, D.C., New York, and California. For work performed during the Trial Proceedings, these rates range from $385 for a recent law school graduate in 2014 to $900 for a partner in 2016. For work performed during the Appellate Proceedings, these rates range from $755 for a mid-level associate in 2019 to $1555 for an eminent Supreme Court practitioner in 2020. For work performed during the Post-Appellate Proceedings, these rates range from $690 for a junior associate in 2019 to $1375 for a highly experienced litigator in 2021.

Plaintiffs also suggest in Appendix A an hourly rate of $295 for a skilled e-discovery analyst in 2014, rising to $310 in 2015, and a rate of $380 for a senior paralegal who has managed dozens of Supreme Court filings in 2019, rising to $395 in 2020. The rates Plaintiffs suggest in Appendix A are reasonable, appropriate, and within the range of prevailing market rates in Washington, D.C., New York and California, for similar services by attorneys of reasonably comparable skills, experience, and reputation.

19. In addition to general legal experience, the Center's attorneys brought significant expertise in reproductive rights litigation to this case. For instance, Julie Rikelman, co-lead counsel, is a nationally recognized expert in reproductive rights law and has served as lead counsel in many reproductive rights cases. These attorneys are among the only practitioners who routinely litigate constitutional challenges to laws that infringe on reproductive rights. I believe that these rates are reasonable, appropriate, and within the range of prevailing market rates in New York City for similar services by attorneys of reasonably comparable expertise, experience, and reputation.

20. Given my professional experience, I am generally familiar with the hourly rates awarded to attorneys with strong appellate practices. Appellate specialists typically command higher rates than many other litigators. These attorneys bring experience and expertise in formulating litigation strategy and delivering successful appellate outcomes. This background is especially important in a case like this one that involved complex appellate proceedings and closely contested areas of constitutional law.

21. Attorneys who regularly practice before the Supreme Court, like several of the O'Melveny attorneys who worked on this case at the Supreme Court, are awarded even higher rates. The Supreme Court bar is a specialized practice. Supreme Court practitioners generally have additional professional qualifications as well as a strong track record of outcomes before the Court.

I believe that these higher rates are within the range of prevailing market rates in these jurisdictions for similar services by attorneys of reasonably comparable expertise, experience, and reputation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 22, 2021

      _/s/ Kimberly A. Parker_
Kimberly A. Parker