IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUNE MEDICAL SERVICES LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COURTNEY N. PHILLIPS, in her official capacity as Secretary of the Louisiana Department of Health, <br><br> Defendant. | Civil Action No. 3:14-CV-525-JWD-RLB |

**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REVIEW AND OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ECF No. 397**

Plaintiffs respectfully submit this consolidated reply in further support of their objections to the Magistrate Judge's Order, ECF No. 397 (the "Order") concerning intervention and unsealing as to certain documents.

I.   **The State and Intervenors Fail to Overcome the Presumption of Adequacy, Which Is Fatal to Intervention.**

The Magistrate Judge did not discuss the adequacy requirement for intervention, so Intervenors and the State are left to argue that this was harmless error. Intervenors and the State, however, fail to overcome the double presumptions that the State adequately represents their interests in accessing record material.[1] The Order granting intervention should be reversed.

---

[1] The State suggests the Court should disregard the adequacy requirement when it comes to permissive intervention. Def's Mem. Opp. Pls.' Mot. to Review Magistrate Judge's Order at 3 n.1, ECF No. 410. The Fifth Circuit, however, has held that "[i]n acting on a request for permissive intervention, it is proper to consider, among other things, 'whether the intervenors' interests are adequately represented by other parties[.]'" *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)); *see also Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1290 (5th Cir. 1987) (holding district court did not abuse discretion by denying permissive intervention where existing party adequately represented intervenors' claims).

1

The State, as sovereign, is *presumed* adequate to represent the public's interest. Mem. in Support of Pls.' Mot. to Review & Objections at 7-10, ECF No. 405-1 ("Pls' Br."). In response, the State surprisingly attempts to undermine *its own authority*; the State claims that its ability to represent the public is limited to Louisiana citizens and, therefore, it cannot adequately represent intervenors who live and work outside the state. Def's Mem. Opp'n Pls.' Mot. to Review Magistrate Judge's Order at 4, ECF No. 410 ("State's Br."). Intervenors advance the same argument. Intervenors' Opp'n Pls.' Mot. to Review & Objections to Magistrate Judge's Order at 9, ECF No. 412 ("Intervenors' Br."). Neither the State nor Intervenors cite a single case holding that a state's ability to represent the public interest is limited to its citizens only. In fact, courts have acknowledged that states adequately represent the public generally. *See, e.g., Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) (recognizing that courts "presume that the government entity adequately represents the public" and using the terms "public" and "general citizenry" interchangeably); *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982) ("The state is charged with representing the public interest.").

The State and Intervenors rest their argument on *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994), in which the Court of Appeals used "citizens" as short-hand for the public generally and plainly intended no limitation. *See id.* The failed intervenors in that case were members of an African-American Pre-Law Society, and the Court of Appeals found that Texas adequately represented their interests without any inquiry into whether the students were citizens of Texas or not. *See id.* at 604-606. Additionally, neither of the cases *Hopwood* cited for the proposition that the State adequately represents the public's interest even discussed, let alone imposed a limitation based upon, in-state citizenship. *Id.* at 605; *see New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 690 F.2d 1203, 1209, 1213 (5th Cir. 1982) (denying

intervention to consumers in favor of government intervention without regard to citizenship); *Environmental Defense Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979) (no discussion of citizenship when recognizing state's ability to adequately represent the public).

Even if it were possible to imagine a hypothetical situation where a state might not adequately represent out-of-state intervenors, there is no reason to negate the presumption in this case. Neither Intervenors nor the State cite any evidence to suggest that, here, the interests of out-of-state intervenors differ materially from those in Louisiana. Indeed, if anything, one would assume that Louisiana-based reporters, academics, and legislators would have an equal, *if not stronger*, interest in access to court documents concerning a Louisiana admitting-privileges law declared invalid. (The out-of-state intervenors hail from places such as Minnesota, Washington D.C., Florida, and Virginia where no such admitting-privileges laws even exist.)

In this case, adequacy is additionally presumed because the State and Intervenors have the same objective, *i.e.*, to unseal the record. Pls.' Br. at 8-9. The State completely ignores this presumption, and Intervenors concede that it applies. *See* Intervenors' Br. at 8.

There is no dispute that Intervenors face a high burden to overcome these applicable presumptions of adequacy. With respect to the presumption triggered by the State's sovereign authority, Intervenors acknowledge that they must show not only that their "interest is in fact different from" the State, but also that "the[ir] interest will not be represented by [the State]." *Id.* at 8 (citation omitted). And when it comes to the presumption arising from the State's shared objectives, Intervenors acknowledge that they must go even further and demonstrate actual "adversity of interest, collusion, or nonfeasance on the part of an existing party." *Id.* at 5.

Intervenors make three attempts to overcome the presumptions of adequacy, but all fall far short. First, Intervenors claim that the State has taken positions "materially adverse" to

3

public access by stipulating to a Protective Order and not contesting the sealing of documents at trial. *Id.* at 5-6. However, as Plaintiffs demonstrated in their opening brief, the State long ago reversed its positions on these issues and for years has disputed the Protective Order and the Court's sealing orders. *See* Pls.' Br. at 2-5. The State's conduct confirms that there is currently no material difference, let alone adversity, between Intervenors' and the State's positions on public access to court documents.

Second, Intervenors assert that the State conceded in its opposition that documents identifying Dr. Doe 2's name may remain sealed, a position with which Intervenors claim to disagree. Intervenors' Br. at 6. Intervenors give the State too much credit. In fact, the State's opposition merely contains the tautological observation that "[t]o the extent the Court maintains Doe 2's identity under seal," then documents that identify Dr. Doe 2 may be redacted. State's Br. at 6-7. Moreover, Intervenors cannot seriously maintain that they disagree with the State's position on this point. The Magistrate Judge ordered that Louisiana abortion providers' identities, including Dr. Doe 2's identity, may be maintained under seal. Order at 16-17. Neither the State *nor Intervenors* filed objections to that aspect of the Order. Intervenors' evident willingness to abide by the Magistrate Judge's ruling that Dr. Doe 2's identity be maintained under seal necessarily means that they concur in the State's view that Plaintiffs may redact this information.

Third, Intervenors claim that they harbor interests different from and adverse to the State such as "holding the executive branch . . . accountable" and "informing the public through their writings." Intervenors' Br. 9-10. For purposes of determining adequacy, however, it is irrelevant that Intervenors' motives or ultimate objectives may differ from the State's obligation to defend Act 620. Pls.' Br. at 8-10. Adequacy is presumed so long as Intervenors and the State

4

have the same *litigation* objective. *Id.*; *see also Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 168 n.9 (5th Cir. 1993) (second emphasis added) ("It is the mutuality of interests *in the litigation* that is the proper inquiry, not their . . . *respective legal obligations*."). Intervenors cannot dispute that vis-à-vis the sealed record, the State shares their same litigation objective.

The State does not endorse Intervenors' first or second arguments against the presumption of adequacy. However, the State puts its own twist on Intervenors' third argument and claims that intervention is appropriate because, whereas a state has multiple interests to balance, Intervenors are purportedly focused exclusively on public access. State's Br. at 4. This is plainly insufficient because it would render states inadequate in virtually every case, which is the exact opposite of a presumption of adequacy. To overcome that presumption, Intervenors were required to "connect the allegedly divergent interests" with "concrete effects on the litigation" and show how the case would be litigated differently in their absence. *Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015); *see also Hopwood*, 21 F.3d at 606 (intervention properly denied because "intervenors have not demonstrated that the State will not strongly defend" the affirmative action program supported by intervenors). Intervenors made no such showing.

The State's reliance on *Texas v. United States* and *Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014), is misplaced. State's Br. at 4. The intervenors' position in *Texas* concerning the benefits of *granting* drivers' licenses was contrary to the State's position concerning the benefits of *denying* those same licenses. *Texas*, 805 F.3d at 662-63. The intervenors' position in *Brumfield* that school vouchers do not constitute state aid to private schools similarly ran counter to the State's admission that they do. *Brumfield*, 749 F.3d at 346. In both cases, denying intervention would clearly have resulted in the case being litigated differently. Here, Intervenors

5

failed to identify a single argument that would not be adequately presented to the Court if intervention were denied. On the contrary, Intervenors *concede* in their opposition that "[t]he [State] has argued" the Intervenors' same contentions "that under common law and the First Amendment, the disputed records should be unsealed." Intervenors' Br. at 11.

With no legitimate basis to overcome the presumptions of adequacy, the State falls back on hurling groundless allegations. Specifically, while the State maintains that it can adequately represent the public's First Amendment rights to access court documents, the State contends that Plaintiffs should be "estopped" from making this point because we supposedly took a contrary position in a different case proceeding in this District. State's Br. at 5-6. The issues in the two cases are not the same. In the other case, the State asserted that it is a "natural person," State's Br. at 6, and, as such, has its own First Amendment right to publicly speak the names of Louisiana abortion providers who have been granted anonymity. Mem. in Support of Defs.' Mot. Vacate & Unseal at 10-11, *June Med. Servs. LLC v. Gee*, No. 3:16-cv-444 (M.D. La. Oct. 25, 2018), ECF No. 207-1 ("*June II*"). Plaintiffs rebutted that argument by citing the well-established principle that government entities do not have personal First Amendment rights. Pls.' Mem. in Opp'n to Defs.' Mot. Vacate & Unseal at 9, *June II* (M.D. La. Nov. 15, 2018), ECF No. 219. Here, the State is not asserting a personal First Amendment right; it is asserting *the public's* right to access court documents.[2] Pls.' Br. at 8.

---

[2] In a footnote, the State further claims that, as part of recent settlement discussions, Plaintiffs indicated a willingness to compromise on their claim for attorneys' fees if the State were to withdraw its remaining objections to the Protective Order and redactions. State's Br. at 4-5 n.2. Intervenors then cite this portion of the State's opposition as evidence of "collusion" between the parties to the detriment of the public's interest in court access. Intervenors' Br. at 7-8. However, as the Court is aware, the parties' (confidential) settlement discussions occurred under the supervision of the Magistrate Judge. That dispels any suggestion of backroom dealing. *See United States v. Texas Educ. Agency (Lubbock Indep. Sch. Dist.)*, 138 F.R.D. 503, 506–07 (N.D. Tex. 1991), *aff'd sub nom. United States v. Texas Educ. Agency*, 952 F.2d 399 (5th Cir. 1991) (conferring with opposing counsel at the direction of a court "is not collusion between the parties, but an attempt to follow Court Orders, as well as ordinary negotiations in an ongoing lawsuit"); *see also United States v. Am. Inst. of Real Est. Appraisers of Nat. Ass'n of*

Lastly, Plaintiffs again urge the Court to consider as part of the intervention analysis the unnecessary litigation burdens and delay that have already resulted from the Intervenors' involvement in this case. Pls.' Br. at 10-11. Intervenors do not dispute that Plaintiffs have been prejudiced by their conduct, but effectively concede the point when they claim that the prejudice Plaintiffs face is not the type of prejudice the Court may consider.[3] Intervenors' Br. at 11-12. However, the Court may consider such "unusual circumstances" when analyzing intervention as of right, *see Kneeland v. National Collegiate Athletic Association*, 806 F.2d 1285, 1289 (5th Cir. 1987), and it may consider all forms of prejudice when it comes to permissive intervention. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 265-66 (5th Cir. 1977) ("Whether allowing intervention will delay the progress of the case or prejudice the rights of the original parties is a factor which the district court must consider in exercising its discretion to permit intervention under section (b) of Rule 24."). Here, Intervenors' conduct has shown that intervention would unnecessarily prolong these proceedings, impose additional burdens on Plaintiffs and the Court, and force Plaintiffs to expend resources on a closed case in which they have already prevailed.

---

*Realtors*, 442 F. Supp. 1072, 1081 (N.D. Ill. 1977) ("[E]ntry into a proposed settlement does not constitute . . . collusion per se.").

    In support of this misguided argument, Intervenors cite 7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1909 (3d ed. 2020) for the proposition that "representation may be inadequate, and intervention will be allowed, if there is even a hint of collusion between the purported representative and those to whom the representative is formally opposed in the litigation." Intervenors' Br. at 7. Yet they omit the treatise's very next sentence, which states: "The *rare* cases in which a member of the public is allowed to intervene in an action in which the United States, or some other governmental agency, represents the public interest are cases in which a *very strong showing* of inadequate representation has been made." 7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1909 (3d ed. 2020) (emphasis added). Here, no "strong showing" has been made.

[3]    Plaintiffs demonstrated in our opening brief that Intervenors are not disinterested third-parties but partisans who have supported the State in this case as advocates, amici, or otherwise. Pls.' Br. at 2-5. Plaintiffs further showed that, based upon the eleventh-hour timing of Intervenors' motion, there is a serious question raised whether the State enabled Intervenors' disclosure of Dr. Doe 2's identity in violation of the Protected Order. *Id.* at 11 n.4. Tellingly, in their respective oppositions, neither the State nor Intervenors dispute any of these facts. The Court should no longer entertain Intervenors' pretense that this is a bona fide bid to vindicate some independent interests. Moreover, as Plaintiffs suggested in their opening brief, the Court should consider ordering the State to account for any possible manipulation of the judicial process.

7

II. **The State Agrees that Identifying Information for Dr. Doe 2 Should Be Sealed or Redacted.**

Plaintiffs identified two documents—ECF Nos. 94-13 and 104-12—that should remain sealed because they disclose Dr. Doe 2's name. *See* Pls.' Br. at 11-12. As discussed above, the Magistrate Judge ordered that Dr. Doe 2's identity be maintained under seal, and neither the State nor the Intervenors have objected to that ruling. As a result, and as the State acknowledges in its opposition, these two documents should be sealed. State's Br. at 6-7.

Intervenors assert that they remain opposed to redacting Dr. Doe 2's name. *See* Intervenors' Br. at 2. However, in light of their decision not to challenge the Magistrate Judge's ruling on this point, the Court need not credit that assertion. ECF No. 94-13 and ECF No. 104-12 should be sealed or redacted for all the reasons the Magistrate Judge found Dr. Doe 2's identity should be maintained under seal. *See* Order at 16-17.

III. **There Is No Public Interest in Unsealing Documents that Reveal How to Identify Dr. Doe 2.**

Plaintiffs identified four documents—ECF Nos. 379, 380-2, 387-1, and 389—that should be sealed because they serve as a roadmap to identifying Dr. Doe 2. Pls.' Br. at 12-14. Neither the State nor Intervenors dispute that these documents can readily be used as a guide to anyone who might wish to identify Dr. Doe 2 and do him harm. Indeed, the State makes no arguments at all with respect to these roadmap documents.

For their part, Intervenors make only brief mention of the roadmap documents, claiming that "Plaintiffs did not establish with particularity how the Magistrate Judge clearly erred in ordering each of these documents unsealed." Intervenors' Br. at 15. However, as Plaintiffs explained in their motion, the Magistrate Judge endorsed the principle that documents should remain sealed or be redacted if they "only serve to identify the Plaintiff physicians as the parties

8

in this lawsuit." Order at 25. Under that principle, the roadmap documents should be sealed or redacted—indeed, one of the documents is *identical* to a document that the Magistrate Judge ordered sealed for this very reason. *Compare* ECF No. 366-2 *with* ECF No. 379.

Even if the roadmap documents are sealed or redacted, the document that the Intervenors purportedly used to track down Dr. Doe'2 identity should also be maintained under seal or redacted to remove the identifying information that Intervenors exploited. The State and Intervenors claim that the Court cannot seal this document because the proverbial cat is already out of the bag. State's Br. at 7; Intervenors' Br. at 15. While that may be true with respect to *these* Intervenors, sealing is necessary to prevent *other* third parties from following Intervenors' lead and using this same document to circumvent the Court's pseudonym protections. The Court previously affirmed the Magistrate Judge's earlier order retroactively sealing the Intervenors' reply brief in support of intervention because it disclosed Dr. Doe 2's identity. Order, ECF No. 390. That ruling was necessary to shield Dr. Doe 2 from *future* harm by *other* third parties, even though Intervenors already determined who he is. The document that Intervenors used to identify Dr. Doe 2 should now be retroactively sealed for the same reason.

To be sure, Plaintiffs regret filing this document on the public docket in the first place, but we did not anticipate that the document could be so misused. Plaintiffs also did not delay in seeking to address this problem. When Intervenors filed their submission explaining how they seized upon this document to pierce Dr. Doe 2's anonymity, Plaintiffs' priority was to seal Intervenors' brief that expressly disclosed Dr. Doe 2's name. Pls.' Emergency Mot. Strike and/or Seal Proposed Intervenors' Reply in Support of Intervention & Certain Ex., ECF No. 367. Once that immediate problem was redressed, Plaintiffs then promptly moved to seal the document at the root of Intervenors' impropriety. Contrary to Intervenors' contention, courts are

9

well within their authority to retroactively seal when, as here, circumstances call for it. *See, e.g.*, *In re Est. of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1364-67 (N.D. Ga. 2002) (retroactively sealing deposition testimony where the "interest in maintaining confidentiality trump[ed] any public interest in open access"); *Cf. People v. Bryant*, 94 P.3d 624, 626-27, 635 (Colo. 2004) (retroactively deeming documents confidential).

Finally, Intervenors claim that sealing the document they used to identify Dr. Doe 2 would be a prior restraint. *See* Intervenors' Br. at 15. This makes no sense. Plaintiffs' objections to the Magistrate Judge' Order do not ask or require the Court to restrain Intervenors from anything. Rather, Plaintiffs have urged the Court to exercise its authority over its own docket to prevent *other* third parties from following Intervenors' example. To ensure that Dr. Doe 2 does not face increased risk of public disclosure, harassment, or violence from other third-parties, Plaintiffs' request to seal or redact the document that Intervenors used to identify him should be granted.

Dated: March 25, 2021                                    Respectfully submitted,

*/s/ Charles M. Samuel, III*            */s/ Travis J. Tu*

Charles M. (Larry) Samuel, III         Travis J. Tu*                            Dimitra Doufekias*
La. State Bar No. 11678                CENTER FOR                               MORRISON & FOERSTER
RITTENBERG, SAMUEL &                   REPRODUCTIVE RIGHTS                      LLP
PHILLIPS, LLC                          199 Water St., 22nd Floor                2000 Pennsylvania Ave., NW
1539 Jackson Ave., Suite 115           New York, NY 10038                       Suite 6000
New Orleans, LA 70130                  (917) 637-3627                           Washington, DC 20006-1888
(504) 524-5555                         tjtu@reprorights.org                     (202) 887-1500
samuel@rittenbergsamuel.com                                                     DDoufekias@mofo.com

*Counsel for Plaintiffs*                                                        *admitted *pro hac vice*

10