## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUNE MEDICAL SERVICES LLC, *et al.*, | |
|     Plaintiffs, | |
|        *v.* | No. 14-cv-525 |
| COURTNEY PHILLIPS, in her official capacity as Secretary of the Louisiana Department of Health, *et al.*, | |
|     Defendants. | |

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

This case involved a constitutional challenge to a single Louisiana statute. The Supreme Court found that statute unconstitutional, explaining that it "is almost word-for-word identical to Texas' admitting-privileges law," which the Court struck down while this case was pending. *June Med. Servs. L. L. C. v. Russo*, 140 S. Ct. 2103, 2112, (2020) (referencing *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016)). The *Whole Woman's Health* attorneys sought $4.3 million dollars in attorneys' fees for about 5500 hours for their work in that case. Counsel seeks almost twice that in this case. Two of the three groups of *Whole Woman's Health* attorneys also claim fees in this case and they – plus a third firm that was not involved in *Whole Woman's Health* – request $8,407,419 in attorneys' fees for 10,751 billable hours, plus expenses.

"Although the abortion debate is of paramount importance to an extremely large number of the population of this country and attracts a great amount of media attention, the constitutionality of portions of a state statute is all that is at stake here. That is all this case is about." App'x Exh. 31, "*WWH* Fee Order" at pp. 17-18. The fee application in this case is unreasonable for many of the same reasons Judge Lee Yeakel determined the application in *Whole Woman's Health* was unreasonable.

Plaintiffs are entitled to "a reasonable attorney's fee," but their requested fee is not reasonable. Plaintiffs generate their astounding $8,407,419 demand by improperly seeking out-of-district rates more properly charged to a Fortune 500 corporate client, which are two to three times higher rates than the applicable local rates of $250-$450 per hour; expending twice as many hours litigating this case as they did in *Whole Woman's Health*; and by failing to exercise any indicia of billing judgment. Plaintiffs staffed this litigation with twenty-eight (28) attorneys, plus support staff, from at least 4 different states; they used two multinational law firms, and a global public interest organization; some of the top demands were billed in quarter-hour increments or rounded-up to the nearest hour; and approximately 32% of the demand was improperly block billed. The result — like Judge Yeakel found in *Whole Woman's Health* — was that the fee demand of plaintiffs' counsel was unreasonable and subject to a significant reduction.

As explained below, a proper calculation of the lodestar in this case results in a presumptively reasonable attorneys' fee in the range between <u>**$2,069,760**</u> and <u>**$3,104,640**</u>. Expert Report of Michele Avery, CPA/ABV, CVA, MAFF, p. 14.

## LEGAL STANDARDS

District courts are vested with discretion to award the prevailing party in certain civil rights actions "a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988. "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal citations and quotation marks omitted). "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. […] Section 1988's aim is to enforce the covered civil rights statutes, not to provide 'a form of economic relief to improve the financial lot of attorneys.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662 (2010) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088 (1986) (*Delaware Valley I*)) (citations omitted).

"The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence." *Perdue*, 559 U.S. at 551 (internal citations and quotations omitted). "[C]ases interpreting § 1988 establish "[a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee." *Murphy v. Smith*, 138 S. Ct. 784, 789, (2018) (quoting *Delaware Valley I,* 478 U.S. at 565). "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee award." *Hensley*, 461 U.S. at 437. Where, as here, settlement was unsuccessful,[1] Plaintiffs seeking attorneys' fees bear the burden of showing the reasonableness of their rates and of the hours billed. See *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (citing *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002)). As Judge Yeakel noted in reducing counsel's claimed fee by more than half in *Whole Woman's Health*, "foremost in the court's mind" should be the "more basic questions" of "'what result was obtained, and what was the *reasonable* amount of effort and resources necessary to reach the result?" Doc. 418-1, p. 21-22, citing App'x Exh. 31, "*WWH* Fee Order".

I.  **Prevailing market rates in Louisiana must be applied in this case.**

A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11, (1984). "In an unbroken and consistent line of precedent, [the Fifth Circuit] has interpreted rates 'prevailing in the community' to mean what it says." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). The relevant legal community is the community where the district court sits. See *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

A.  **Out-of-district rates do not apply in this case.**

---

[1] The Defendants in this case made every effort to comply with the Supreme Court's suggestion that it amicably resolve the attorneys' fees issue. *Compare WWH Fee Order* at p. 10.

Counsel for the Plaintiffs claim they are entitled to their "home" rates, which are approximately double the forum market rates.[2] "[C]ases where out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff" are "unusual". *McClain*, 649 F.3d at 383. See also *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 191 (2d Cir. 2008) (finding the presumption in-district rates apply may be rebutted "only in the unusual case".) Contrary to that established rarity, CRR and at least one large national law firm are routinely enrolled in abortion-related cases, and they request their "home" rates in most cases as a matter of course. *See, e.g.*, *Whole Woman's Health* Fee Order (App'x Exh. 31). *Jackson Woman's Health Org. v. Currier*, No. 3:12-CV-436-DPJ-FKB, 2019 WL 418550, at *4-5 (S.D. Miss. Feb. 1, 2019); *Stuart v. Walker-McGill*, No. 1:11-CV-804, 2016 WL 320154, at *15 (M.D.N.C. Jan. 25, 2016).

Despite almost always being requested, Counsel's home rates are rarely awarded. Indeed, similar claims were rejected in *Whole Woman's Health*. *See* App'x Exh. 31, "*WWH* Fee Order". And where "home" have applied, the district court appropriately awarded much-lower rates for comparably-experienced New York civil rights attorneys — awarding $550 per hour for Ms. Rikelman, for example — with inexperienced junior litigators receiving only $225 per hour. *See e.g.* App'x Ex. 32, "JWHO Fee Order", pp. 10-11.

Indeed, the Fifth Circuit has applied "home" rates only "where … abundant and uncontradicted evidence proved the necessity of …. turning to out-of-district counsel." *McClain,* 649 F.3d at 382; *see also Bywaters v. United States*, 670 F.3d 1221, 1233 (Fed. Cir. 2012) (citing *McClain*, 649 F.3d at 382) ("[S]everal circuits have acknowledged an exception to the forum rule where local counsel is either unwilling or unable to take the case."). A litigant can only overcome the presumption that forum rates apply by "establishing that local counsel possessing requisite experience were unwilling or

---

[2] Local counsel, William Rittenberg and Larry Samuel, request local, New Orleans rates.

unable to take the case, or by establishing, in a case requiring special expertise, that no in-district

counsel possessed such expertise." *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 26 (N.D.N.Y. 2015).

> As the Second Circuit has explained, "[i]f a high priced, out of town attorney renders
> services which local attorneys could do as well, and there is no other reason to have
> them performed by the former, then the judge ... m[ay] allow only an hourly rate which
> local attorneys would have charged for the same service."  "The [non-prevailing party]
> should not be required to pay for a limousine when a sedan could have done the job."

*Id.* (quoting *Simmons v. N.Y. City Transit Auth.,* 575 F.3d 170, 175-76 (2d Cir.2009) (internal citations

omitted)). Applying that standard, and analogous to the situation here, the *Osterweil* court rejected

former Solicitor General Paul Clement's claimed $1100 per hour rate, and awarded only $300 per hour

for his services. *Id.*

Plaintiffs cannot meet their high burden to justify "home" rates with arguments that out-of-

district attorneys had "special competence" or that there "was a lack of available counsel of that quality

locally". *Hopwood v. State of Texas*, 236 F.3d 256, 281 (5th Cir. 2000) (quoting *Leroy v. City of Houston*,

906 F.2d 1068, 1079 (5th Cir.1990)) (reducing the claimed hourly rate of former Solicitor General Ted

Olson by 50%). "Congress intended that statutory fee awards be adequate to attract competent

counsel, but not produce windfalls to attorneys." *Id.* (*quoting Riverside v. Rivera*, 477 U.S. 561, 580, 106

S.Ct. 2686, 91 L.Ed.2d 466 (1986)). Retaining "lions at the bar" does not automatically entitle Plaintiffs

to recover the rates those lawyers might normally command. *Id.* (quoting *Van Ooteghem v. Gray*, 774

F.2d 1332, 1338 (5th Cir.1985)).

1.   The Plaintiffs never sought local counsel.

Plaintiffs never considered or attempted to retain Louisiana lawyers in this case. And, absent

proof that Plaintiffs diligently sought, but could not find, any attorneys in Louisiana willing and able

to join in this case, Plaintiffs cannot overcome the presumption that forum hourly rates apply. *McClain,*

649 F.3d at 378 (holding, based on the evidence presented, "It is clearly established that Garrigan

diligently searched for, but could not find, any lawyers in Texas who were willing and able to join him

in litigating this class action.") (Footnote describing said evidence omitted).

In 2019, the managing member of June Medical explained his retention of CRR, testifying: "I definitely know lawyers in Louisiana, and I use lawyers in Louisiana. I'm happy to do that. I don't know anyone who is a constitutional specialist." Barbalich Decl Ex. 17 at 226:21-227:22. Kathaleen Pittman, the clinic administrator at the Hope Medical Group, declared that Hope was the first client of the Center for Reproductive Rights in 1992, and "the relationship between Hope and the Center has continued ever since." Doc. 428, ¶4-5. "Specifically, Hope has always retained the Center to challenge, on statutory or constitutional grounds, laws that threaten the clinic's ability to provide high quality abortion care." Doc. 428, ¶5. The clinic did not retain MoFo or OMM; the clinic retained CRR, which "connected" the clinic with MoFo and OMM. *Id.*at ¶17.

Tellingly, on March 19, 2019, nearly five years *after* MoFo enrolled on his behalf in this case, Doe 2 testified he did not recognize Morrison & Foerster, the law firm that now seeks over $2.5 million dollars for litigating on his behalf. Barbalich Decl. Ex. 18 at 342:14-17. Doe 2 candidly admitted he had worked with CRR in the past, was satisfied with the work CRR had done, and, therefore, did not retain a lawyer in Louisiana. *Id.* at 343:1-11. Equally telling, neither Doe 1 nor Doe 2 submitted evidence in support of the claim for attorneys' fees and costs.

CRR candidly admits it did not make any effort to "connect" the plaintiffs with Louisiana attorneys. CRR's counsel declared he was "not aware of any Louisiana lawyers willing and able to serve as lead counsel in a case like this one, which requires not only tackling the topic of abortion, but also the complexity of a large, fact-intensive case, lasting several years, with uncertainty regarding the outcome and the expectation of any monetary recovery." Doc. 279, ¶28. Plaintiffs' willful ignorance of the Louisiana Bar does not excuse them from their obligation to prove retaining CRR, MoFo, and OMM was necessary at the time those firms were enlisted.

2. Local counsel were available and, in fact, enrolled in this case.

6

Ellie Schilling, a New Orleans attorney, avers that she is a nationally recognized expert on reproductive health and rights in Louisiana. Doc. 429, ¶5. Ms. Schilling, her partner Thomas McEachin, and their firm, were willing and able to represent Plaintiffs Woman's Health Care Center, Delta Clinic of Baton Rouge, John Doe 5 and John Doe 6 in this case. Ms. Schilling further declared she is familiar with "a handful" of other attorneys in the state who are willing to represent abortion providers, and she is "one of the very few attorneys in Louisiana with the substantive knowledge of reproductive rights law that would be necessary to litigate this case." *Id.* ¶¶ 8, 10. But, as explained above, none of the other competent Louisiana lawyers known to Ms. Schilling were contacted by the Plaintiffs in this case. *See also* Mitchell Report ¶¶26-33. Moreover, there is significant doubt that any special expertise was needed. *Id.* at ¶38.

William Rittenberg similarly described his expertise in challenges to Louisiana's abortion statutes, but stated he was unaware of any local lawyers with both the expertise and the resources to handle a case of this type. Doc. 280, ¶7. That statement is irrelevant to whether Plaintiffs are entitled to recover rates that are double reasonable Louisiana market rates. The Plaintiffs do not explain why Mr. Rittenberg or Ms. Schilling (or any other experienced civil rights attorney in Louisiana) could not work with any of the numerous local law firms with the *litigation* experience and resources necessary to challenge a state statute. Mitchell Report at ¶38. The answer is simple; Plaintiffs never asked any local attorneys to represent them in this case, because they went straight to CRR, which went straight to MoFo and OMM. Plaintiffs cannot meet their burden of proving local counsel were unable or unwilling to take the case because they made no diligent effort to find lawyers in Louisiana who were willing and able to join them in litigating this case. *McClain,* 649 F.3d at 378.

    3.  <u>Plaintiffs fail to offer abundant, uncontradicted evidence that retaining out-of-district counsel was necessary.</u>

Under *McClain,* "[o]nly where 'abundant and uncontradicted evidence prove[s] the necessity of...out-of-district counsel,' should such counsel's 'home' rates be considered for the purposes of

calculating the lodestar." *McClain*, 649 F.3d at 382.  Plaintiffs claim the use of out-of-district counsel was "reasonable" in this case for the same reasons as in *McClain*. Plaintiffs allege they "needed counsel willing and able to take on a large, multi-year case that would require immense expenditures of attorney time and resources." Doc. 418-1, p. 11 (citation omitted). As explained above, the Plaintiffs cannot prove they were unable to find local counsel "willing and able" to enroll because they never attempted to engage local counsel.

Regarding the assertion that this was a "large, multi-year case…", the Plaintiffs exaggerate. This case, quite simply, involved a challenge to the constitutionality of a single state statute.[3] *McClain*, on the other hand, was Title VII employment discrimination class action litigation that lasted over a decade. *McClain*, 649 F.3d at 377. This case was filed in early September, 2014, discovery was completed, and the case was tried at the end of June, 2015. Docs. 1, 166-170. The case slowed down significantly in 2016, very few hours were billed in 2017 and 2018, then the case picked up with appellate litigation in 2019 and 2020. Only 2 of Plaintiffs' 28 billing attorneys, Demme Doufekias and Julie Rikelman, have been enrolled in (but not necessarily working on) this case from 2014 through the present. *See* Avery Report Ex. 1. The total number of hours billed is massive but, Plaintiffs hyperbolize the size of the case, its duration, and the amount that constituted a reasonable expenditure of attorney time and resources. Plaintiffs also argue that, at times, the case proceeded on an expedited basis. *See* Doc. 418-1, pp. 12-13. That argument is irrelevant to the Plaintiffs' choice to retain out-of-district counsel, which was made before anything was "expedited" and without even considering local counsel.

Regarding the costs allegedly covered by the out-of-state counsel, in *McClain,* plaintiffs requested an *unchallenged* amount of expenses and costs that exceeded $1,000,000.00. *McClain*, 649 F.3d

---

[3] As succinctly articulated by Judge Lee Yeakel, "the constitutionality of portions of a state statute is all that is at state here.  That is all this case is about."  *Whole Woman's Health* pp. 17-18

at 379. The Plaintiffs in this case allegedly incurred, over the entire course of litigation, approximately one-third of the uncontested amount of expenses in *McClain*. *See* Doc. 418-4 (nontaxable expenses); Doc. 430 (bill of costs).[4] Travel expenses, which total approximately $89,000.00 (about 1/3 of the total claimed expenses), would have been significantly reduced if the Plaintiffs retained local counsel. Regardless of the travel expenses and others of dubious necessity, the total amount of expenses is not so significant as to discourage a law firm from taking the case. Plaintiffs offer no evidence, including the affidavits of Russ Herman and Judy Barrasso, which would support that this case required an unusual or extreme outlay of financial resources.[5]

This Court can take judicial notice that law firms in Louisiana routinely operate on a contingency fee basis and front litigation costs. Even Plaintiffs concede "there are some firms in Louisiana that could theoretically commit the resources necessary to prosecute this case." Doc. 418-1, p. 12. Plaintiffs then speculate and conclude, without competent evidence, that none "would have been willing" to take the risk of never receiving compensation or to take this case *pro bono*. *Id.* Those types of conclusory statements are insufficient to constitute "abundant and uncontradicted evidence".

It is worth noting that, in addition to the common practice of taking cases on a contingency-fee basis, many cases brought against the State of Louisiana are brought without guarantee of remuneration thus making the "risk of no recovery" an even less likely ground for needing out-of-state counsel. As a general rule, the State, State agencies, and political subdivisions cannot be

---

[4] Among the claimed nontaxable expenses is a claim for approximately $79,000.00 for "research" which is generally considered part of a firm's overhead. See e.g. *Recursion Software, Inc. v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2013 WL 12403528, at *9 (E.D. Tex. Jan. 3, 2013) (citing *Carrabba v. Randalls Food Markets, Inc.*, 191 F.Supp.2d 815, 834 (N.D. Tex. 2002)). And, unlike most of the other claimed expenses, Plaintiffs do not provide an invoice or proof that the research charges were paid by the firm in connection with this particular case. See *id.* (citing *Javelin Invs., LLC v. McGinnis*, No. H-05-3379, 2007 U.S. Dist. LEXIS 23582, at *15-*16 (S.D. Tex. March 30, 2007). See also Doc. 420-2, pp . 5-6 (OMM Research charges); 423-2, 423-3 (MoFo Research charges).

[5] That absence is telling. Mr. Herman has served as lead counsel in large class actions. Were he to aver that his firm (or other Louisiana firms) lack financial resources to undertake a case of this limited size on contingency, it would raise grave doubt as to their adequacy to serve as class counsel.

compelled to pay judgments rendered against them unless funds have been appropriated for that purpose. Additionally, no public property shall be subject to seizure. See Louisiana Constitution Article XII, Section 10(C); La. R.S. 13:5109. The "risk" of not being paid is one routinely accepted by attorneys in State of Louisiana.

Plaintiffs argue it is necessary to enlist abortion-law experts to litigate cases like this one. However, Plaintiffs offer no evidence, beyond self-aggrandizing puffery. Jonathan Mitchell, who has personally handled numerous abortion-related cases, attests that no special knowledge or experience is necessary to handle an abortion case beyond that of any experienced litigator. Mitchell Report ¶38. Plaintiffs cite their own experience as the only proof that such experience is needed, yet they conspicuously fail to articulate what "expertise" is needed to handle an abortion case. *Cf. Osterweil*, 92 F. Supp. 3d at 27. But, even if it were true that special abortion expertise is needed in a case like this, Plaintiffs never sought it in Louisiana. Furthermore, the alleged need for special expertise in abortion cases does not explain why MoFo and OMM — with no obvious abortion-related expertise — were retained in addition to CRR.

Finally, Plaintiffs' arguments that local attorneys refuse to accept cases about abortion is meritless. New Orleans attorney William Most and his law firm recently prosecuted an employment discrimination claim arising from a claim that the plaintiff was fired from her job because she terminated her pregnancy. *Ducharme v. Crescent City Deja Vu, L.L.C.*, 406 F. Supp. 3d 548 (E.D. La. 2019). Mandie Landry, a New Orleans attorney, was elected to the Louisiana House of Representatives based, in large part, on her priority promise of protecting a woman's right to have an abortion. Barbalich Decl. Exhs. 19-21; *see also* https://mandielandry.com/priorities. Fear of reprisal from the Archdiocese of New Orleans is also not a deterrent. *See* Doc. 418-1, p. 16. Attorneys in New Orleans, including Russ Herman's law firm, are willing and able to sue the Archdiocese directly. *JAMES DOE v. ARCHDIOCESE OF NEW ORLEANS INDEMNITY, INC., et al. Additional Party Names: Roman*

10

*Cath. Church of the Archdiocese of New Orleans*, No. CV 20-1338, 2020 WL 4593443, at *1 (E.D. La. Aug. 11, 2020). Furthermore, as Mr. Mitchell explains, Plaintiffs' conclusory and speculative argument that "many lawyers in this State are unwilling to represent abortion providers for fear of offending other clients or potential clients" is not credible. Mitchell Report ¶34. The purpose of §1988 is to encourage lawyers to take civil rights cases, which often pertain to controversial topics. That this case pertains to the topic of abortion does not justify an award of hourly rates that are double Louisiana rates.

In short, Plaintiffs chose their lawyers based on their prior relationships with CRR *not* because local counsel were unable or unwilling to enroll. June Medical made its choice over 20 years before this suit was filed and never looked elsewhere; the John Doe Plaintiffs simply went along with June Medical's choice. That is not the standard. In order to recover out-of-district rates that are double those in the market of their chosen venue, Plaintiffs were required to provide abundant and uncontradicted evidence that local counsel were unable or unwilling to take this case. Plaintiffs fail to meet that burden.  They never even tried to retain local counsel, even though willing and able experts were available (like Ellie Schilling). In *Whole Woman's Health*, Judge Yeakel described counsels' rationale for receiving out-of-state rates as "hogwash". App'x Ex. 31, p. 21. The same can be said here and, like in *Whole Woman's Health*, forum district rates should apply.

    4.  <u>Assuming *arguendo* that Plaintiffs' home rates apply, the requested rates are too high.</u>

Plaintiffs' requested rates do not reflect that this is a civil rights case. The Supreme Court explained that the lodestar is supposed to be based on the "prevailing market rate in the relevant legal community for <u>similar services</u> ..." *Blum*, 465 U.S. at 895–96 n.11 (emphasis added).  In the Second Circuit, the circuit governing most of the Plaintiffs' attorneys, "the presumptively reasonable fee is 'what a reasonable, paying client would be willing to pay.'" *Osterweil*, 92 F. Supp. 3d at 25 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir.2008)). The Second Circuit cautions its district courts, "[w]hen 'stepping into the shoes of the reasonable,

paying client,' the court is to bear in mind that the reasonable client 'wishes to pay the least amount necessary to litigate the case effectively.'" *Id.* That instruction correlates with the underlying purpose of §1988 – to attract *competent* civil rights counsel.

Additionally, Plaintiffs' discussion of the Secretary's retainer of Schaerr Duncan is misplaced. See ECF 418-1, p. 18 n. 3. The Secretary retained future Fifth Circuit Judge Kyle Duncan, an LSU trained lawyer who previously headed the Louisiana Department of Justice Appellate Division, to head its defense team in this case.[6] Judge Duncan tried this case and would have presumably continued his involvement in this case through the Supreme Court had he not been confirmed to the Fifth Circuit. That being said, prior to his confirmation Duncan had an exceptional career as a civil rights attorney, including multiple appearances in the Supreme Court. Judge Duncan and his even more-experienced law partner, Gene Schaerr (who enrolled after Judge Duncan's withdrawal), accepted the reasonable *Louisiana* market rate of $385.00 per hour for their services . *See generally* Barbalich Dec. & Exhibits 1-14 thereto (biographies of the private attorneys who enrolled on behalf of the Secretary).

In contrast to the $385 sought by Judge Duncan and Mr. Schaerr, Plaintiffs' counsel seek rates ranging from about $400 for new associates to over $1200 for lead counsel. The claimed rates at CRR, a public interest organization, do not substantively differ from those claimed by the multinational white shoe law firms, MoFo and OMM. But in a glaring omission from Plaintiffs' fee submission, Plaintiffs cite no civil rights case where they, or any civil rights attorneys, were awarded the rates they claim in this case.  See ECF 418-1 p. 18 ("The rates sought herein for the attorneys at Morrison & Foerster and OMM are the rates prominent global law firms, like Morrison & Foerster and OMM, charged clients for the services of their attorneys' services during the years indicated…")

Plaintiffs argue, on the other hand, rates from $375 - $780 have been awarded in cases

---

[6] That Judge Duncan lived in Washington D.C. during the time he was enrolled in this case does not change the indisputable fact that he was accurately described as a Louisiana lawyer and, more importantly, he accepted an hourly rate reasonable in the State of Louisiana.

involving "similar civil rights work". Doc. 418-1, p. 20. There is nothing similar about the cases cited by the Plaintiffs. Plaintiffs fail to explain, with legal argument or evidence, how the instant challenge to the constitutionality of a single state statute is similar to a Title VII employment discrimination class action proceeding (*Cruz*) or a Title VII class action that had already lasted over 20 years (*Gulino*), a retaliation claim that had been tried before a jury for 15 days (*Ravina*), or an "exceedingly arduous and complex" §1983 wrongful conviction case prosecuted by the nation's leading expert on wrongful conviction claims, Barry Scheck (whose rate was noted to be above-market) (*Restivo*).

Two months ago, the Southern District of New York rejected a request from attorneys challenging the constitutionality of an ordinance on behalf of a commercial client to be awarded commercial litigation rates. *HomeAway.com, Inc. v. City of New York*, No. 18 CIV. 7742 (PAE), 2021 WL 791232, at *17 (S.D.N.Y. Mar. 1, 2021). The District Court found the case was a particularly unique Fourth Amendment case and, so, awarded rates that were above the normal market for experienced civil rights attorneys to attorneys hailing from a large law firm, yet those rates were far lower than Plaintiffs seek here. In doing so, the Court noted that even attorneys from large with shoe law firms with substantial experience in civil rights litigation generally topped out at $450 per hour. *Id.* The *HomeAway.com* ruling is consistent with the application of New York rates in the *Jackson Woman's* case, in which Plaintiffs' attorney Julie Rikelman was awarded $550 per hour.  See App'x Ex. 32, pp. 10-11 (JWHO Fee Order). If New York rates are to apply, despite the absence of proof of the need for enlisting over 2 dozen out-of-state lawyers, Julie Rikelman's rate of $550 per hour should be the absolute top tier rate for the most experienced civil rights attorneys, and the rest of the rates should fall below that rate.

Further, as noted above, counsel do not cite any case in which they were awarded the rates they claim herein. However, CRR has requested and been awarded fees in cases for work done during the time period at issue. Most notably, in *Edwards v. Beck* , 4:13-cv-00224-SWW, E.D.Ar. (3/11/16),

Julie Rikelman requested and was awarded $300.00 per hour for work she performed in 2015 and 2016. App'x Ex. 33, p. 4. She requested between $850 and $950 per hour for work done in this case in those same years. In *Whole Woman's Health*, CRR's requested blended rate[7] was $744 per hour, which Judge Yeakel reduced to $400 per hour. WWH Order at p. 15. Despite that guidepost in the larger Austin, Texas market, the blended rate CRR requests in this case is $782 per hour.  In *Jackson Woman's*, CRR requested a blended rate of $469 per hour, and was awarded $334.56.  Further, in those cases, Ms. Rikelman requested rates below those requested in this case. As explained by Michele Avery, Plaintiffs' counsel does not explain the reasonableness of the extreme increases in their rates, and the increases do not comport with market trends. Avery Report at pp. 10-11.

     5.   <u>Conclusion regarding out-of-district rates</u>

Considering the foregoing, the Plaintiffs have failed to meet their burden of offering abundant and uncontroverted evidence that retaining out-of-district counsel was necessary, and their requested rates are inconsistent with the rates awarded in their home districts  Therefore, the relevant legal market is the Middle District of Louisiana, and counsel's rates should be calculated using forum rates.

**B. The proper market rates are those for Louisiana civil rights attorneys.**

In *Whole Woman's Health*, Judge Yeakel applied a blended rate of $400 per hour, which encompassed the full range of reasonable Texas rates for civil rights attorneys of varying experience and skill. That approach is appropriate here, especially considering that Plaintiffs are claiming fees for 28 attorneys in this case, as compared with the 18 who billed in *Whole Woman's Health*.

The rate of $400.00 per hour was reasonable in Austin, Texas in 2019. In Louisiana, however, rates for civil rights lawyers are lower. The rate that should be applied in this case is $385 per hour, which is the rate the Secretary paid for prominent Louisiana civil rights attorney (now Judge) Kyle Duncan. The prevailing market rates for civil rights attorneys in Louisiana are from $200.00 to $450.00

---

[7] The blended rate is calculated by dividing the total fee requested by the total number of hours.

per hour. Wittmann Report at p. 4, ¶3. Any amount above $400.00 per hour is reserved for "the most experienced and preeminent members of this court's civil rights bar." *Scott v. Schedler*, No. CIV.A. 11-926, 2013 WL 5739070, at *7 (E.D. La. Sept. 20, 2013), *report and recommendation adopted,* No. CIV.A. 11-926, 2013 WL 5739066 (E.D. La. Oct. 22, 2013), *aff'd in part, vacated in part, remanded,* 771 F.3d 831 (5th Cir. 2014); *See also Seals v. McBee,* No. CV 16-14837, 2018 WL 6815067, at *3 (E.D. La. Dec. 4, 2018), *report and recommendation adopted sub nom. Seals v. McGee,* No. CV 16-14837, 2018 WL 6812463 (E.D. La. Dec. 27, 2018) (awarding $350.00 per hour to 19 year attorney for civil rights work in 2017 and 2018); *Advoc. Ctr. v. Cain,* No. 3:12-CV-00508-BAJ, 2014 WL 1246840, at *6 (M.D. La. Mar. 24, 2014) (awarding rates of $350/hour and $275/hour). The blended rate of $385.00 is in the mid-high end of the reasonable market range, which accounts for the fact that the highest billers are claiming the highest rates. *See* Wittmann Report at p. 4.

Judy Barrasso's declaration discusses the alleged market rate for attorneys "handling commercial or complex matters in this market." Doc. 425, ¶6. She may be correct about the market rates for commercial and complex matters but, this is neither a commercial nor complex case. Ms. Barrasso offers no evidence of the market rate for civil rights attorneys in Louisiana. The Declaration of Russ Herman is purely conclusory. Mr. Herman declares the claimed rates are "essentially below the national average". Doc. 287, ¶4. Mr. Herman offers no evidence of the prevailing market rates in Louisiana for civil rights attorneys. *Id.*

Based on the rates proven by Mr. Wittmann, which are consistent with the rulings of the Eastern and Middle Districts of Louisiana , the absence of relevant evidence from the Plaintiffs, and the rationale for applying a blended rate utilized in *Whole Woman's Health*, this  Court may reasonably apply a blended rate of $385.00 across the board.

## II.    The Claimed Hours are Not Reasonable.

"Hours that are not properly billed to one's client also are not properly billed to one's

adversary." *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 520 (E.D. La. 2012) (citing *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933). "The party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of 'billing judgment.'" *Wegner v. Standard Ins. Co.,* 129 F.3d 814, 822 (5th Cir.1997); *Walker v. United States Dep't of Housing & Urban Dev.,* 99 F.3d 761, 770 (5th Cir.1996). To prove the exercise of billing judgment, the party seeking the award must show all hours actually expended on the case but not included in the fee request. *Leroy v. City of Houston,* 831 F.2d 576, 585 (5th Cir.1987). The remedy for absent billing judgment is a percentage reduction in the hours awarded and exclusion of hours that were not reasonably expended. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green v. Administrators of the Tulane Educational Fund,* 284 F.3d 642 (5th Cir. 2002).

### A. Counsel's claimed hours are facially unreasonable.

Plaintiffs make an extraordinary demand for ten thousand seven hundred fifty-one and 92/100 hours (10,751.92), which is almost double the amount of hours deemed reasonable in *Whole Woman's Health.* Particularly at the appellate and Supreme Court level, their staffing and claimed hours are radically inconsistent with what Mr. Mitchell indicates is reasonable. Mitchell Report ¶ 52; *see also, e.g.,* *Osterweil,* 92 F. Supp. 3d at 33 (rejecting claim for 80.35 hours spent on appellate briefing and awarding 56.45 hours to team led by former Solicitor General Paul Clement). As Mr. Mitchell explains, Plaintiffs' Supreme Court litigation was grossly overstaffed and inefficient such that CRR's claim for over 3600 hours should, more reasonably, have been closer to 600 hours and "[t]he Court should award no more than 150 hours" for OMM's time. Mitchell Report at ¶53-54. By way of comparison, Plaintiffs in *Whole Woman's Health* claimed approximately 800-900 hours for the Supreme Court litigation in that case. *See* Appendix B to Plaintiffs' Fee Application in *Whole Woman's Health,* Case 1:14-cv-00284-LY Document

246 Filed 10/07/16 pp 14-15. Mr. Mitchell accurately notes that the Plaintiffs offer no explanation, reasonable or otherwise, for the extreme amount of hours claimed for the Supreme Court litigation.

Further, as detailed below, Plaintiffs claims should be reduced by a percentage to account for the lack of billing judgment. A minimum reduction of 25% to 50% of the Plaintiffs claimed hours is appropriate in this case.

## B. Counsel did not submit proof of the hours written-off and, therefore, failed to prove the exercise of billing judgment.

Counsel did not submit proof of the hours written-off. *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (citing *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir.2002); *Green* 284 F.3d at 662). See also *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996) (citing *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir.), modified on other grounds, 903 F.2d 352 (5th Cir.1990) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off."); *Leroy v. City of Houston*, 831 F.2d 576, 585 n.15 (5th Cir.1987) ("[T]he billing records are completely devoid of any hours written off.")

CRR alleges it "eliminated from this application and do[es] not seek recovery for at least 4,400 hours of attorney time expended during the Trial Proceedings and Appellate Proceedings." Doc. 418-1, p. 24 (citing Brown Decl. ¶ 36; Tu Decl. ¶ 37). No evidence shows what was incorporated in that estimated 4400 hours. Neither MoFo nor O'Melveney estimates the number of hours allegedly written-off or not billed.

That practice was expressly discouraged in the *Whole Woman's Health* opinion. See *Whole Woman's Health* at p. 16. Furthermore, the Fifth Circuit has established that conclusory statements that hours or categories of time have been written-off are unconvincing when those statements are unsupported by actual proof. *Saizan*, 448 F.3d at 800. Here, counsel unconvincingly argue the vague statements about omitted time should not affect the lodestar. See Doc. 418-1, pp. 23-24. Absent proof of the hours actually written-off, Plaintiffs fail to satisfy their burden of proving they exercised

billing judgment and an across the board reduction is appropriate.

**C. The evidence offered by counsel displays lack of billing judgment.**

The evidence Plaintiffs submitted undermines their counsels' unsubstantiated assertions that they exercised billing judgment. Indeed, despite Judge Yeakel's clear statements in *Whole Woman's Health* that specificity is needed in the hours and categories of time deducted, App'x Ex. 31, p. 11, Plaintiffs once again failed to do so.   Further instances where counsel ignored express findings of the Court in *Whole Woman's Health* indicate that counsel disregarded their obligations to exercise billing judgment prior to submission of bills to this Court. The *Whole Woman's Health* Fee Order was entered on August 9, 2019, *i.e.*, over two years *after* Plaintiffs' original fee petition in this case. Doc. 278. Yet counsel have not gone back and reviewed their bills or made any adjustments to its original request in this case to conform to the *Whole Woman's Health* ruling.

The following examples of lack of billing judgment support a reduction of the claimed hours by at least 25%-50%.

1.    Billing in quarter- and half-hour increments or rounding-up to the nearest hour.

56% of CRR's total time entries and 59% of MoFo's total time entries, for a total of over $5,000,000.00 in claimed billing, was billed in half-hour increments. Avery Report at p. 9. CRR admits Irene Janoslaw, who billed at the same extremely high rates ($800-900 per hour in 2014-2016) as lead counsel Julie Rikelman, rounded her time to the nearest hour. Doc. 279, ¶34. Louisiana federal courts specifically and vehemently discourage quarter-hour billing increments. See Wittmann Report pp. 21-23 (collecting cases). Half-hour increments are outrageous. *Id.*; *See also* Mitchell Report ¶62-65. Yet Plaintiffs claim a fee of over $1,000,000 for attorney Ilene Jaroslaw, who billed in *one hour* increments.

2.    Block Billing

A block-billed time entry is one that includes multiple discrete tasks lumped together in a single entry for a large "block" of time.  Block billing displays a lack of sound billing judgment. *See,*

*e.g.*, *Rodney v. Elliott Sec. Sols., LLC*, No. 19-11890, 2020 U.S. Dist. LEXIS 148643 (E.D. La. July 30, 2020). "The practice of block-billing is disfavored because it is not the province of the Court to approximate how much time was spent on the motion to compel in block-billed entries." *Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 287 (E.D. La. 2008) (citations omitted). In a particularly egregious example, on November 16, 2014, Irene Jaroslaw claims $10,000.00 for a single 12.50 hour entry for "travel to New Orleans, prep Dr. Doe 4 deposition, work on dep outlines, meet with DD, DS, and others." No paying client would accept such a claim. The Court should not either.

Plaintiffs seek $2,659,284 in fees based on 3890 block-billed hours. Avery Report p. 8. None of the Plaintiffs' declarants state that they exercised billing judgment by reviewing the bills for block-billing and reducing the hours accordingly. *See* Doc. 419 (CRR), 420 (OMM), 423 (MoFo). It is well-established that block-billing significantly overstates hours actually worked. Thus, where a large number of hours is block billed and counsel "did nothing to remedy or even address the problem," the Court should apply a percentage reduction to the block billed entries, then further reduce the claimed hours overall to account for that and other instances of a lack of billing judgment. *See, e.g.*, *Jolie Design & Décor, Inc. v. Gogh*, No. CV 15-0740, 2016 WL 4708210, at *6 (E.D. La. Aug. 11, 2016), *report and recommendation adopted*, 2016 WL 4718186 (E.D. La. Sept. 8, 2016) (reducing award "by 70% – 35% for block billing and 35% for lack of billing judgment").

3.    Other clear instances of lack of billing judgment

*Whole Woman's Health* was massively over lawyered. App'x. Ex. 31, p. 18. Eighteen attorneys were utilized to represent the Plaintiffs in that case. Twenty-eight were enlisted here, indicating this case was also massively over lawyered, at least on Plaintiffs' side. Both Jonathan Mitchell and Phillip Wittmann submit declarations detailing the lack of billing judgment evident in time spent on certain tasks and improper staffing. Mr. Wittmann explains that plaintiff's counsel seek compensation for time expended on matters that should not be billed to the client (*e.g.*, time handling logistical matters),

as well as time spent traveling, billed at full hourly rates, when the law in the Fifth Circuit is clear that travel time should be billed at no more than one-half a lawyer's hourly rate." *Wittmann* at p. 17 (citation omitted). Judge Yeakel struck 50% of the travel hours in *Whole Woman's Health*, see App'x Ex. 31 at pp. 16-17, and Julie Rikelman has, in other cases, voluntarily excluded 50% of her travel hours. See Ex. 35, ¶21 (*Stuart v. Walker-McGill* billing 50% for travel); Ex. 34, ¶24 (*JWHO v. Currier,* billing 50% for travel). Sophisticated clients paying national rates refuse to pay for travel time at all. Mitchell Affidavit at ¶ 65. That counsel claim their full rates for travel in this case is a clear example of a lack of billing judgment.

At all times this case is active, between 2014-2016 and 2019-present, no fewer than 10 attorneys actively bill to this file. *See* Avery Appendix 1. Whenever "more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Scott,* 2013 WL 5739070, at *5. Like in Whole Woman's Health, this case was clearly overstaffed and inefficiently prosecuted. Therefore, an across-the-board reduction of the claimed hours is appropriate. *Scott, supra.*

4. Conclusion

Plaintiffs' fee submission contains no proof of billing judgment. To the contrary, the evidence submitted indicates a serious lack of billing judgment. Inefficiency and overstaffing clearly increased the hours expended. Furthermore, plaintiffs displayed a plethora of improper billing practices such as block billing; billing full rates for travel; and allowing attorneys to bill in quarter-hour or, even more egregiously, in *half-hour* increments. Plaintiffs fee submission must be significantly be reduced to a reasonable number. Courts reasonably apply 50% - 75% across-the-board reductions in cases of egregious lack of billing judgment. See e.g. *Scott,* 2013 WL 5739070, at *11 collecting cases. A reduction of Plaintiffs' claimed hours by 25% - 50% would, therefore, be well within this Court's discretion.

### III.    Reasonable calculation of the Lodestar

Considering the foregoing, a proper calculation of the lodestar in this case results in a presumptively reasonable attorneys' fee in the range between **$2,069,760** and **$3,104,640**. Avery Report p. 14. That range was calculated by applying the reasonable, blended hourly rate of $385.00/hr and multiplying that by the total number of hours claimed, which was reduced by 25% and 50% to account for lack of billing judgment.

### IV.    Plaintiffs' claim for nontaxable expenses is unreasonable and should be reduced by one-third.

The Plaintiffs seek "$246,929.35 for nontaxable expenses incurred prior to the case's administrative closure in August 2020." Doc. 418-1, p. 2. "[U]nder 42 U.S.C. § 1988, a prevailing party may also recover '[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone ... because they are part of the costs normally charged to a fee-paying client.'" *DeLeon v. Abbott*, 687 F. App'x 340, 342 (5th Cir. 2017) (*quoting Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990)). Expenses that "are extravagant or unnecessary" must be disallowed. *Id* (quoting *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 553 (5th Cir. 1987)). "Before the court can tax costs, it must find that the costs were necessarily incurred in the litigation and this finding must be based on 'some *proof* of the necessity.'" *Scott*, 2013 WL 5739070, at *13 (citing *Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 64 (5th Cir.1994) (additional citations omitted).

Travel expenses, which total approximately $89,000.00 (about 1/3 of the total claimed expenses), would have been significantly reduced if the Plaintiffs retained local counsel. Travel expenses should be evaluated in direct proportion to the need for out-of-district counsel.

Furthermore, among the claimed nontaxable expenses is a claim for approximately $79,000.00 for "research" which is generally considered part of a firm's overhead. See e.g. *Recursion Software, Inc. v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2013 WL 12403528, at *9 (E.D. Tex. Jan. 3, 2013) (citing

*Carrabba v. Randalls Food Markets, Inc.,* 191 F.Supp.2d 815, 834 (N.D. Tex. 2002)). See also Mitchell at ¶65; Wittmann at p. 25.   In this case, counsel billed approximately $115,000.00 for conducting research, separate from any research that was factored into the time billed for drafting pleadings and appellate briefs. And, unlike most of the other claimed expenses, Plaintiffs do not provide an invoice or proof that the research charges were paid by the firm in connection with this particular case.   See *id.* (citing *Javelin Invs., LLC v. McGinnis,* No. H-05-3379, 2007 U.S. Dist. LEXIS 23582, at *15-*16 (S.D. Tex. March 30, 2007).  See also Doc. 420-2, pp . 5-6 (OMM Research charges); 423-2, 423-3 (MoFo Research charges). The evidence offered by the Plaintiffs indicates the cost of research was factored into the attorneys' hourly rates and, therefore, are properly considered overhead costs, which are not recoverable as costs that would normally be billed to a client.

Considering the dubious necessity and reasonableness of Plaintiffs' claimed expenses, the total claim should be reduced by at least 1/3 to account for the improperly expensed "research" costs.

**V.    Plaintiffs' claim for taxable costs is not reasonable.**

"The district court is allotted broad discretion in taxing costs and may order each party to bear its own costs." *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 428–29 (5th Cir. 2010) (citing *Alberti v. Klevenhagen*, 46 F.3d 1347, 1358 (5th Cir.1995); *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 216 (5th Cir.1991)). "If there is an objection to a request for costs, the party seeking costs has the burden of supporting its request with evidence documenting the costs incurred, and proof, if applicable, as to whether the challenged amount was necessarily incurred in the case." *Kellogg Brown & Root Int'l, Inc. v. Altanmia Com. Mktg. Co. W.L.L.*, No. CIV.A. H-07-2684, 2009 WL 1457632, at *3 (S.D. Tex. May 26, 2009) (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 285-86 (5th Cir.1991)).

The Plaintiffs claims $90,141.01 in taxable costs. Doc. 430. For the following reasons, the Plaintiffs should be awarded no more than **$75,508.11** in taxable costs calculated as follows:

| Filing Fee | $400.00 |
|---|---|

| Service | $71.00 |
|---------|--------|
| Transcripts | $26,252.27 |
| Printing / Copies | $5,471.86 |
| Costs awarded by Supreme Court | $39,829.00 |
| Witness Fees | $3,483.98 |
| **TOTAL** | **$75,508.11** |

A.  Filing Fees: *Pro hac vice* fees are not recoverable in this case.

The Plaintiffs seek $1,702.00 in "filing fees *and pro hac vice* fees." Doc. 430-1, p. 2 (citing 430-3 (Ex.B).[8]  The Plaintiffs are indisputably entitled to recover the $400.00 filing fee.  That is the only filing fee that should be awarded.

The Fifth Circuit has "not yet decided whether *pro hac vice* fees are recoverable." *See DeLeon v. Abbott*, 687 F. App'x 340, 348 n.8 (5th Cir. 2017) (Elrod, J. concurring in part, dissenting in part) (citing *Obey v. Frisco Medical Ctr. L.L.P.*, No. 4:13-cv-656, 2015 WL 1951581, at *2 (E.D. Tex. Apr. 29, 2015)).*Pro hac vice* fees are not "clearly recoverable" as argued by the Plaintiff. *See Thomas v. Reeves*, No. 3:18-CV-441-CWR-FKB, 2021 WL 517038, at *13 (S.D. Miss. Feb. 11, 2021) (citing *Depriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-663-CWR-FKB, 2017 WL 4228751 (S.D. Miss. Sept. 22, 2017); *Knauff v. Dorel Juvenile Grp., Inc.*, No. SA-08-CV-336-XR, 2010 WL 2545424, at *2 (W.D. Tex. June 21, 2010) (disallowing pro hac vice costs); *Smith v. Fresh Cut Floral & Catering, Inc.*, No. 3:07-CV-661-WHB-LRA, 2008 WL 4539630, at *2 (S.D. Miss. Oct. 7, 2008) (same). *Pro hac vice* fees should not be awarded in this case because, as explained above, the Plaintiffs did not need to retain out-of-state counsel. *See Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499, 517 (E.D. La. 2018) (declining to award *pro hac vice* fees when it was not necessary to retain out-of-state counsel). Even if *pro hac vice* fees are awarded *in this case*, $200.00 must be excluded. Specifically, Trial Expense No. 15 "7/14/2016 - $200.00 - D. Scannell – Court Filing Fees" should be excluded because no filing fee was charged *in*

---

[8] The costs delineated under the category "filing fees" on Exhibit B total $1702.00.

*this case* on or around July 14, 2016. In fact, this case was still stayed on July 14, 2016. *See* Doc. 243. That $200.00 charge appears to be for *pro hac vice* fees in *June Medical Services LLC v. Gee*, 16-444 (See Doc. 13 in that case). Clearly, the Plaintiff should not recover that $200.00 cost *in this case*, and its presence in Plaintiffs' claims raises questions as to Plaintiffs record keeping. All fees of the clerk should be excluded except the $400.00 filing fee

B. Printing and Photocopying

Plaintiffs seek $16,516.95 for printing and $2,285.81 for copies. Doc. 430.[9] This Court should underline exclude $11,045.09 of that request due to a lack of evidence that those costs were necessarily incurred. *Leo v. JELD-WEN, Inc.*, No. CV 16-00605-BAJ-EWD, 2020 WL 806367, at *1 (M.D. La. Feb. 18, 2020) (quoting M.D. La. Local Rule 54(c)).

Lead counsel for the Plaintiff signed a declaration under penalty of perjury regarding "Expenses and Costs Incurred by Morrison & Foerster". Doc. 281, ¶26-28; Doc. 423, ¶29-31. Counsel did not declare any of the costs were necessarily obtained for use in the case. *Kellogg Brown & Root*, 2009 WL 1457632, at *3 (citing *Fogleman*, 920 F.2d at 285-86). Lead counsel for CRR similarly did not declare the necessity of the costs. Doc. 279, ¶54-55 (Declaration of David Brown); Doc. 419, ¶51-52 (Declaration of Travis Tu). The Memoranda in Support of the Bill of Costs similarly omit proof of necessity. Doc. 294, §4 (printing); §6 (exemplification and copies); *See also* Doc. 430-1, §IV (printing); §VI (exemplification and copies). "A signature in the declaration section of the Bill of Costs form does not suffice." *Leo v. JELD-WEN, Inc.*, No. CV 16-00605-BAJ-EWD, 2020 WL 806367, at *1 (M.D. La. Feb. 18, 2020). Despite the absence of the required declarations of necessity, $5,471.86 of the requested printing costs appear to have been necessary.  See Doc. 430-3, Expense Nos. 65, 73, 75, 76, 80, 82, and 84.  All other claimed printing and copying costs should be denied due to lack of

---

[9] This request for taxable costs is apparently duplicated in a similar request for just over $18,000.00 in nontaxable printing costs.  See Doc. 418-4, Plantiffs' Appendix B.  Plaintiffs do not explain this apparent discrepancy.

evidence of necessity.

## VI.    Conclusion

"Calculating fee awards is a holistic endeavor." *McClain*, 649 F.3d at 385. "Numerous competing considerations … might be balanced in determining the proper 'equitable judgment'". *Id* (citing *Hensley*, 461 U.S. at 429–37, 103 S.Ct. 1933). What is clear, however, is that Section 1988 was "never intended to produce windfalls" for parties and their attorneys. *Fox v. Vice*, 563 U.S. 826, 837, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011) (quoting *Farrar v. Hobby,* 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). Yet, the Plaintiffs have requested over $8,800,000.00 of public funds be awarded, an amount that is almost double the amount these same attorneys requested for substantively similar litigation in *Whole Woman's Health*.  As explained above, a reasonable award in this case is within the range between $2,309,887.68 and $3,344,767.68 *including* costs ($75,508.11) and nontaxable expenses ($164,619.57).  Plaintiffs' claim should be reduced to be within that range.

Respectfully Submitted,

**JEFF LANDRY
ATTORNEY GENERAL**

By:    */s/ Phyllis E. Glazer*
**Phyllis E. Glazer (#29878)
Assistant Attorney General**
Louisiana Department of Justice
Litigation Division
1885 N. Third Street, 4th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6300
Facsimile: (225) 326-6495
E-mail: glazerp@ag.louisiana.gov