**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**JUNE MEDICAL SERVICES, LLC, *et al.*** **CIVIL ACTION**

**NO. 14-525-JWD-RLB**

**VERSUS**

**COURTNEY PHILLIPS, in her official capacity as Secretary of the Louisiana Department of Health**

**ORDER**

Before the Court is Defendant's Motion to Clarify Protective Order Obligations or, Alternatively, to Preserve Documents ("Motion to Clarify"). (R. Doc. 347). The Motion is opposed. (R. Doc. 355). Defendant has filed a Reply. (R. Doc. 375).

**I. Background**

On August 22, 2014, June Medical Services LLC d/b/a Hope Medical Group for Women ("Hope"), Bossier City Medical Suite ("Bossier"), Choice Inc. of Texas d/b/a Causeway Women's Center ("Causeway"), and two John Doe physicians (collectively, "Plaintiffs") commenced this action by filing a Complaint for Declaratory and Injunctive Relief, which sought to have certain Louisiana statutory provisions pertaining to abortion and abortion clinics declared unconstitutional. (R. Doc. 1).

On November 5, 2014, the parties filed a Joint Motion for Protective Order. (R. Doc. 58). In support of the motion, the parties represented that they were "in agreement that such an order is necessary in light of the probability that certain information produced will reflect sensitive and confidential information" regarding the Plaintiffs, as well as abortion clinic physicians, staff, and patients. (R. Doc. 58 at 1-2). The parties further stated that "[a]s a result of their negotiations, the parties have reached agreement on the terms of the attached proposed Stipulated Protective

Order." (R. Doc. 58 at 2). The Court found good cause to grant the foregoing Joint Motion, and entered into the record the Stipulated Protective Order ("Protective Order") adopting the terms to which the parties agreed. (R. Doc. 59). The Protective Order governed the handling of confidential documents and information throughout the course of this litigation. Defendant did not file any motions during discovery challenging any confidentiality designations made by Plaintiffs or non-parties. The action was ultimately resolved on the merits with a decision issued by the United States Supreme Court on June 29, 2020. *See June Medical Servs., LLC, et al. v. Russo*, 140 S.Ct. 2103 (2020).

After the merits were decided, Courtney Phillips, in her official capacity as Secretary of the Louisiana Department of Health ("Defendant"), brought the instant Motion to Clarify. (R. Doc. 347). Defendant seeks clarification from the Court regarding the obligations of the Louisiana Department of Justice and the Louisiana Department of Health (the "State") regarding confidential documents produced to Defendant in the litigation.

Central to this dispute is the language of Paragraph 7 and Paragraph 14 of the Protective Order. Paragraph 7 limits the use of designated confidential information in this litigation, but allows for subsequent court orders to modify that limitation:

> Under no circumstances other than those specifically provided for in this Order *or subsequent Court Orders*, or with express written consent of the producing party or producing non-party, shall "Confidential" information be used for any purpose except the prosecution or defense of this litigation, or be in any way revealed, delivered or disclosed, or otherwise made known, in whole or in part, to any person except [those specifically listed].

(R. Doc. 59 at 4-5) (emphasis added). Paragraph 14 provides the following instructions to the parties at the conclusion of the litigation:

> *Unless a court orders otherwise*, the parties and their counsel shall maintain the confidentiality of all Confidential information after final disposition of this litigation, by adjudication (including appeals) or otherwise. Within thirty (30) days

> after the final disposition of this litigation, the recipient shall either (a) return to the producing party or producing non-party all Confidential information, all copies of such information, and any documents incorporating such information or (b) securely destroy all such materials and certify in writing to counsel for the producing party or producing non-party that all such materials have been destroyed. *Provided, however, that nothing in this Protective Order shall be interpreted or construed to require any officer or agency of the State of Louisiana to destroy any official records obtained in the ordinary course of such officer's or agency's duties, or which must be maintained in compliance with state law, federal law, or the regulations of such agency*.

(R. Doc. 59 at 8-9) (emphasis added).

Defendant argues that the last sentence of Paragraph 14 permits the State to preserve and maintain confidential documents exchanged in discovery because the State interprets the Louisiana Public Records Act, La R.S. 44:1 *et seq*., in such a way that all documents produced in litigation are "public records" under the Act. (R. Doc. 347-1 at 8-10). In the alternative, Defendant argues that modification of the Protective Order is merited to allow the State to preserve confidential information and documents produced by Plaintiffs. (R. Doc. 347-1 at 10-16). In support of finding good cause for modification of the Protective Order, Defendant represents that Bossier and Causeway destroyed their internal documents when they closed, and Robert Gross, a former Bossier clinic administrator deposed in this action, has died. (R. Doc. 347-1 at 2-6; *see* R. Doc. 347-2). Defendant further notes that three more actions have been filed by Hope challenging Louisiana statutes and regulations regarding abortion services since the Protective Order was entered in this action: No. 3:16-cv-444 ("*June II*") (ongoing), No. 3:17-cv-404 ("*June III*") (voluntarily dismissed with prejudice), and No. 3:20-cv-229 ("*June IV*") (voluntarily dismissed without prejudice). (R. Doc. 347-1 at 6-7).

In opposition, Plaintiffs argue that there is a statutory exception to the Louisiana Public Records Act specifically designed to accommodate the terms of protective orders such as the one entered in this action, and that Defendant's attempt to set aside the obligations under Paragraph

14 would frustrate the very purposes of the Protective Order, *i.e.*, ensuring the fair and efficient exchange of information while encouraging the full disclosure of all conceivably relevant information. (R. Doc. 355 at 5-9). Plaintiffs further argue that Defendant has failed to establish the required standards for modification of the Protective Order. (R. Doc. 355 at 9-19).

In reply, Defendant argues that the statutory exception to the Louisiana Public Records Act referenced by Plaintiffs is inapplicable because it only pertains to protective orders issued by Louisiana courts. (R. Doc. 375).

After the submission of the foregoing briefing, the Court sought further clarification from the parties regarding the scope of (1) confidential documents, (2) produced by Plaintiffs or third parties (3) to Defendant during the course of this litigation that (4) have not been made part of the Court's record (whether sealed or unsealed). (R. Doc. 414). The Court informed the parties that unless the parties are ordered to provide additional information, the Court would prepare and issue a ruling on the instant motion. (R. Doc. 417).

The Fifth Circuit has recently held that "[p]ublicly available information cannot be sealed" in the record, even where a party designated the documents as confidential pursuant to an agreed protective order to protect the identity of the plaintiffs. *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 515-16 (5th Cir. 2022) (vacating orders sealing documents and remanding to district court for evaluation of sealing orders). Accordingly, this Order does not pertain to any documents filed into the Court's record (whether sealed or unsealed). Any remaining issues regarding the filing of confidential documents under seal in the record are addressed by separate order as necessary.

## II. Law and Analysis

### A. Legal Standards

As discussed above, the Protective Order was agreed upon by the parties and entered into the record by the Court. (R. Doc. 59). The Fifth Circuit has recognized that "[a]t the *discovery* stage, when parties are exchanging information, a stipulated protective order under Rule 26(c) may well be proper. Party-agreed secrecy has its place—for example, honoring legitimate privacy interests and facilitating the efficient exchange of information." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 420 (5th Cir. 2021).

"An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its terms, absent good cause to modify or vacate the protective order." *Patrick v. Martin*, No. 150216, 2019 WL 2772115, at *2 (N.D. Tex. July 2, 2019) (quoting *Orthoflex, Inc. v. ThermoTex, Inc.*, Nos. 11-870, 10-2618, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013)). "As with all contracts, the ultimate question is what was the parties' mutual intent. The answer to that question is to be found within [the protective order's] four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Id*. The textual interpretation of an agreed protective order is a legal question that begins with the "plain language" of the protective order. *Moore v. Ford Motor*, 755 F.3d 802, 806 (5th Cir. 2014).

Courts have held that "a party seeking to modify an agreed protective order bears the burden of demonstrating good cause exists to modify the order." *United States ex rel. Long v. GSD&M Idea City LLC*, No. 11-1164, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014). In determining whether to modify a protective order, a court looks to the following four factors: "(1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order,

of the modification requested, (3) the parties' reliance on the order[,] and most significantly (4) whether good cause exists for the modification." *Schafer v. State Farm & Fire Cas. Co.*, No. 06-8262, 2009 WL 650263, at *2 (E.D. La. Mar. 11, 2009).

**B. The Plain Language of the Protective Order**

Defendant first asks the Court to interpret the last sentence of Paragraph 14 as permitting the State to preserve and maintain confidential documents exchanged in discovery (as opposed to destroying or returning such documents at the end of the litigation) because the State considers all documents produced in this litigation to be "public records" under the Louisiana Public Records Act. (R. Doc. 347-1 at 8-10). No such reading of the Protective Order is merited.

A plain reading of Paragraph 14 provides that, as a general rule, within 30 days after the final disposition of the litigation, the recipient of information designated as "Confidential" pursuant to the Protective Order must either (a) return all copies of the confidential documents or (b) securely destroy all copies of the confidential documents. (R. Doc. 59 at 8). The last sentence of Paragraph 14 provides a caveat that the Protective Order shall not be interpreted or constructed "to require any officer or agency of the State of Louisiana **to destroy** any official records **[1]** obtained in the ordinary course of such officer's or agency's duties, or **[2]** which must be maintained in compliance with state law, federal law, or the regulations of such agency." (R. Doc. 59 at 8-9) (emphasis and numbering added). The last sentence of Paragraph 14 does not place any limitation on the **return** of confidential documents (in lieu of destruction). Given this plain language of Paragraph 14, the Court need not determine whether any confidential documents produced pursuant to the Protective Order qualify as "public records" under Louisiana law.

Nevertheless, Defendant argues that the State's interpretation of its own public records law is what controls the interpretation of the State's duties under the Protective Order. Louisiana law defines as "public records" all documents "having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state. . . ." La R.S. 44:1(A)(2)(a). Defendant broadly argues that "defending the laws of the State falls within the performance of Defendant and its' counsel's public duties." (R. Doc. 347-1 at 8-9). Under this theory, all documents produced by Plaintiffs in this litigation (and any other federal litigation involving the State regardless of the language of the protective order) would qualify as "public records" under the terms of the Louisiana Public Records Act.

In opposition, Plaintiffs argue that "confidential" documents produced pursuant to a federal protective order are not "public records" under the Louisiana Public Records Act, which recognizes certain "exceptions, exemptions, and limitations" in Louisiana Revised Statute 44:4.1(A). In particular, the Act specifically incorporates by reference Louisiana Code of Civil Procedure 1426, which pertains to the issuance of protective orders by Louisiana courts. *See* La. R.S. 44:4.1(B)(37). Moreover, the Louisiana Supreme Court has expressly noted that "there is no presumptive right to public access to discovery materials, as discovery rules allow for broad and searching review of a party's files and review of these materials traditional takes place in private and the documents may never be presented to, or introduced in, a court." *Copeland v. Copeland*, 966 So.2d 1040, 1045 (La. 2007). Defendants argue in reply, however, that only confidential

documents produced pursuant to protective orders issued by Louisiana courts are exempt from the Act.

The Court need not delve into the scope of the Louisiana Public Records Act, including its exceptions.[1] As discussed above, the plain language of Paragraph 14 does not prevent Defendant from returning confidential documents at the conclusion of the litigation as agreed upon by the parties and ordered by the Court. The language of a protective order issued under Rule 26 controls the handling of confidential documents at the conclusion of the action. *See Mata Chorwadi, Inc. v. City of Boynton Beach*, No. 19-81069, 2020 WL 2516979, at *3 (S.D. Fla. May 18, 2020) ("[T]he intersection of the Supremacy Clause, State public records laws, and federal court discovery orders reveals that a federal court order issued pursuant to Rule 26 to prevent the disclosure of documents renders any state statute or regulation to the contrary void pursuant to the Supremacy Clause.") (citing *CSX Transportation, Inc. v. Fla. Dep't of Revenue*, No. 06-342, 2006 WL 8443347, at *6 (N.D. Fla. Dec. 26, 2006) ("[E]ven if it were Florida law that discovery materials arising from this litigation are public records, if this court finds good cause, notwithstanding Florida's open records policy, and enters a protective order, the order must supersede Florida law pursuant to the Supremacy Clause.") (citing *United States v. Napper*, 694 F. Supp. 897, 901 (N.D. Ga. 1988) (relying upon the Supremacy Clause to mandate that its order supersedes any requirements placed on documents imposed by a state court pursuant to a

[1] The Court need not interpret Louisiana law given the plain language of the Protective Order. Defendant argues, however, that this Court "cannot authoritatively interpret State laws" in this action. (R. Doc. 347-1 at 9). In support of this proposition, Defendants cites two decisions – *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (Eleventh amendment prohibited federal district court from ordering state officials on how to conform their conduct to state law with respect to conditions of confinement at a state institution) and *Doe I v. Landry*, 909 F.3d 99, 112 (5th Cir. 2018) (federal courts must defer to state official's interpretation of enforcement of state statute subject to constitutional challenge unless that interpretation is inconsistent with the statutory language). Here, even if the Court did interpret the terms of the Louisiana Public Records Act, it would be in the context of determining the meaning of language within a protective order issued under Rule 26. The Court is not instructing the State on how to interpret Louisiana law. The *Pennhurst* and *Landry* decisions are inapposite.

state public records law), *aff'd*, 887 F.2d 1528 (11th Cir. 1989)); *see also Fatemi v. White*, No. 11-458, 2014 WL 12754937, at *2 (E.D. Ark. Mar. 27, 2014) (holding the same, noting that "the Supremacy Clause resolves the conflict between this federal law and the [Arkansas Public Records Law], which would otherwise make these materials public records")).

Having concluded that the plain language of Paragraph 14 requires Defendant to return all confidential documents produced in this litigation regardless of the status of the documents under Louisiana law, the Court will turn to whether and to what extent a modification of the Protective Order is merited.

**C. Modification of the Protective Order**

Having considered the arguments of the parties, as well as the record in this action, the Court will modify the Protective Order in two ways. First, to avoid any further confusion with respect to Paragraph 14, the Court will modify Paragraph 14 to provide that any confidential documents produced in this litigation by Plaintiffs or non-parties shall be returned at the conclusion of the litigation notwithstanding any interpretation by Defendant that such documents produced are "public records" under the Louisiana Public Records Law. Second, the Court will modify the Protective Order to allow Defendant to retain copies of confidential documents pertaining to Bossier, Causeway, and Mr. Gross.

The first factor—the nature of the protective order—looks to the protective order's "scope and whether it was court imposed or stipulated to by the parties." *Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, L.L.C.*, No. 17-405, 2020 WL 10641896, at *3 (M.D. La. Dec. 10, 2020) (quoting *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 180 (N.D. Ill. 2006)); *see also Nearstar, Inc. v. Waggoner*, No. 09-218, 2009 WL 10677780, at *2 (E.D. Tex. Dec. 11, 2009) (the first factor "looks at how much the parties considered the

particular item under request for modification while drafting the current protective order."). A blanket protective order generally weighs against any modification. *Washington-St. Tammany Elec. Coop.*, 2020 WL 10641896, at *3.

The second factor—the foreseeability, at the time of issuance of the protective order, of the modification requested—weighs in favor of allowing the foregoing modifications. Foreseeability in the context of this factor is a question of "whether the need for modification of the order was foreseeable at the time the parties negotiated the original stipulated protective order." *Washington-St. Tammany Elec. Coop.*, 2020 WL 10641896, at *4 (quoting *Murata*, 234 F.R.D. at 180). As a general matter, it was foreseeable that Defendant would seek modification of the Protective Order to allow the State to retain copies of confidential documents produced in this action. It was also foreseeable that the Court, which retains jurisdiction over the Protective Order, would issue an appropriate order modifying the language agreed to between the parties to avoid prejudice or unintended consequences. Paragraph 7 and Paragraph 14 both anticipate modification of the Protective Order by subsequent court order. (R. Doc. 59 at 4-5, 8-9). Paragraph 15 specifically reserves the right of the parties to "seek relief from, or modification of" the Protective Order, indicating that it was foreseeable, and even contemplated, that a party would seek to use confidential information in a subsequent action by seeking and obtaining a court order. (R. Doc. 59 at 9). Such an express provision for later modification weighs in favor of modification. *Donahue v. Smith*, No. 15-6036, 2017 WL 6604842, at *4 (E.D. La. Dec. 27, 2017) ("[T]he existence of a procedure for removing a document's confidential designation being specifically provided for in the terms of the Protective Order make[s] it foreseeable that the parties might seek judicial modification of the protective order."); *Peoples v. Aldine Indep. Sch. Dist.*, No. 06-2818, 2008 WL 2571900, at *2 (S.D. Tex. June 19, 2008) ("In this case, the

protective order stipulates that 'the parties herein may petition the Court, for good cause, to request a modification.' This factor also weighs in favor of modification.") (citation omitted).

The third factor—the parties' reliance on the order—weighs in favor of modification to the extent necessary to clarify that Defendant must return confidential documents (with the exception of those pertaining to Bossier, Causeway, and Mr. Gross). The reliance factor focuses on "the extent to which a party resisting modification relied on the protective order in affording access to discovered materials." *Washington-St. Tammany Elec. Coop.*, 2020 WL 10641896, at *4 (quoting *Murata*, 234 F.R.D. at 180). The Court observes, however, that "[r]eliance will be less with a blanket order, because it is by nature overinclusive." *See Donahue*, 2017 WL 6604842, at *4. Plaintiffs relied upon the Protective Order with respect to the return (or destruction) of confidential documents at the conclusion of the litigation. To the extent the confidential documents pertain to Bossier, Causeway, and Mr. Gross, however, the reliance interest of the remaining Plaintiffs (Hope and the John Does) is diminished.

Finally, and most importantly, the fourth factor—whether good cause exists for the modification—weighs in favor of modification. "Good cause" in this context requires "changed circumstances or new situations" warranting modification of a protective order. *Washington-St. Tammany Elec. Coop.*, 2020 WL 10641896, at *4 (quoting *Murata*, 234 F.R.D. at 180). Courts have found good cause to modify protective orders to make confidential documents and information available for use in subsequent proceedings or to allow a party to place confidential documents and information in "escrow" for potential use in subsequent proceedings. *See Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1355 (9th Cir. 2013) (modifying protective order so that a deposition transcript could be held in escrow rather than destroyed); *see*

*also Peoples*, 2008 WL 2571900, at *2 (modifying protective to allow production of confidential recording in response to grand jury subpoena).

Here, there are changed circumstances and new situations warranting modification of the Protective Order. As discussed above, the Court finds that Paragraph 14 requires Defendant to return (but not destroy) confidential documents at the end of the litigation. Defendant's position that all documents produced in this litigation are "public records" under the Louisiana Public Records Act presents a changed circumstance or new situation meriting modification of Paragraph 14 for clarification.

Moreover, Bossier and Causeway appear to have destroyed all of their own documents when they closed their operations, and Mr. Gross is unavailable for a subsequent deposition because he is deceased. (R. Doc. 347-1 at 5).[2] The Court finds it compelling that confidential documents pertaining to Bossier, Causeway, and Mr. Gross "may be the *only* remaining source for certain information about those clinics." (R. Doc. 347-1 at 12). A return of the only copies of these documents to Plaintiffs' counsel, who no longer represent the interest of Bossier and Causeway, would put at risk the retention of the documents for future litigation. Given these circumstances, including the ongoing litigation in *June II*, the Court will modify the Protective Order to allow Defendant to **retain** copies of confidential documents produced by Plaintiffs or third-parties that pertain to Bossier, Causeway, and Mr. Gross, including discovery responses and deposition transcripts. Defendant must seek a subsequent court order, however, to use these documents in any other proceeding.[3]

---

[2] Defendant represents that certain other John Doe physicians in the subsequent litigation are elderly. (R. Doc. 347-1 at 5-6). There is no specific indication, however, that these individuals are unavailable for depositions in *June II* or subsequent litigation.

[3] Defendant has not established good cause for allowing it to retain other confidential documents pertinent to the *June II* litigation, which can be obtained through discovery in that action.

In accordance with the Protective Order as modified, Defendant must **return** (1) confidential documents, (2) produced by Plaintiffs or third parties (3) to Defendant during the course of this litigation that (4) have not been made part of the Court's record (whether sealed or unsealed), **with the exception of documents produced by, or pertaining to, Bossier, Causeway, or Mr. Gross.** Defendant must maintain documents produced by, or pertaining to, Bossier, Causeway, and Mr. Gross in accordance with the confidentiality provisions of the Protective Order.[4] If Defendant (or any other Louisiana entity or official) wishes to use any of these documents in *June II* or any subsequent litigation pertaining to abortion clinics, then Defendant (or the appropriate Louisiana entity or official) must file an appropriate motion with the appropriate judicial officer in the pending action in which Defendant is seeking to use the confidential documents. Any such motion must describe the terms of this Order and the modification of the Protective Order (R. Doc. 59).

## III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Clarify Protective Order Obligations or, Alternatively, to Preserve Documents (R. Doc. 347) is **GRANTED IN PART and DENIED IN PART**. The parties shall bear their own costs.

**IT IS FURTHER ORDERED** that the Protective Order (R. Doc. 59) is **MODIFIED** as discussed in the body of this Order. In accordance with Paragraph 14 as modified, Defendant must **return** all (1) confidential documents, (2) produced by Plaintiffs or third parties (3) to Defendant during the course of this litigation that (4) have not been made part of the Court's record (whether sealed or unsealed), with the exception of documents produced by, or pertaining

[4] Defendant specifically represents that the State "will respect the Protective Order's confidentiality protections as long as required" if allowed to retain copies of such documents and information. (R. Doc. 347-1 at 14).

to, Bossier, Causeway, and Mr. Gross, including discovery responses and deposition transcripts. Defendant must maintain documents produced by, or pertaining to, Bossier, Causeway, and Mr. Gross in accordance with the confidentiality provisions of the Protective Order. If Defendant (or the appropriate Louisiana State entity or official) wishes to use any of these documents in *June II* or any subsequent action pertaining to abortion clinics, then Defendant must make an appropriate motion with the appropriate judicial officer in the pending action in which Defendant is seeking to use the information or documents.

Signed in Baton Rouge, Louisiana, on May 10, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**