UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUNE MEDICAL SERVICES, LLC, *et al.*, <br><br>　　　　　Plaintiffs, <br><br>　v. <br><br>COURTNEY N. PHILLIPS, in her official capacity as Secretary of the Louisiana Department of Health, <br><br>　　　　　Defendant. | No. 3:14-CV-00525-JWD-RLB |

**PLAINTIFFS' OPPOSITION TO LOUISIANA'S RENEWED
EMERGENCY RULE 60(b) MOTION TO VACATE PERMANENT INJUNCTION**

　　For nearly six years, Act 620, which requires physicians who perform abortions to obtain active admitting privileges within thirty miles of the facility where the abortions are performed, has been permanently enjoined by this Court. Following the United States Supreme Court's opinion in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), Louisiana moved to vacate the injunction. This Court should deny Louisiana's renewed motion because the State has plainly failed to carry its heavy burden in demonstrating that prospective enforcement of the injunction is no longer equitable.

　　After its first motion to vacate was denied in July, Louisiana sought reconsideration, continued to ignore this Court's directives to file a motion on a regular briefing schedule, and filed an appeal with the Fifth Circuit. Five months later, Louisiana has finally submitted its renewed motion to vacate, but it now fails to grapple with the facts on the ground and, consequently, cannot convincingly offer a basis on which the permanent injunction enjoining Act 620's admitting privileges requirements must be vacated. Simply put, the State's own near-complete abortion bans have forced all abortion care to cease and therefore Act 620's admitting privileges requirements are moot. No single physician is seeking admitting privileges. Vacatur of the injunction would have

no impact whatsoever on the scope of permissible abortion services in Louisiana, nor, as the state feebly suggests, on the health of Louisiana women. Louisiana's contention that the people of Louisiana suffer "profound injury" "each day that passes with the injunction in effect" must be rejected for what it is: conclusory statements untethered to current medical care available in Louisiana. There is nothing inequitable about allowing the permanent injunction to stand when there are no clinic physicians left to force admitting privileges upon.

Defendants are not entitled to relief under Rule 60(b)(5) from the permanent injunction in this case.

## BACKGROUND

As enacted in 2014 by the Louisiana State Legislature, Act 620 (or the "Act") requires that physicians who perform abortions in Louisiana have active admitting privileges at a hospital within 30 miles of the facility where the abortions are performed. *See* 2014 Reg. Sess. Act 620 (codified at La. R.S. 40:1299.35.2(A)(2)). If enforced in 2014, the admitting privileges requirement would have resulted in a bar on all but one doctor then providing abortions at clinics in Louisiana from providing those services. A single physician, however, would have been physically unable to provide care to all women in Louisiana seeking abortion services. Accordingly, Plaintiffs filed a complaint and motion for permanent injunction in August 2014, seeking to enjoin enforcement of Act 620. ECF Nos. 1, 5. Several weeks later, this Court granted a temporary restraining order as to the Act's admitting privileges requirement. ECF No. 31.

Following extensive discovery, the development of a voluminous record, numerous expert reports, and a six-day bench trial in June 2015, this Court granted Plaintiffs' motion for a permanent injunction. ECF No. 274. Among other things, the Court concluded that the "overwhelming weight of the evidence demonstrates that, in the decades before the Act's passage, abortion in Louisiana has been extremely safe, with particularly low rates of serious complications, and as compared with

childbirth and with medical procedures that are far less regulated than abortion." *Id.* ¶ 240. It further recognized that there "was no significant health-related problem that the new law helped to cure" and that there was "no credible evidence in the record that Act 620 would further the State's interest in women's health beyond that which is already insured under existing Louisiana law." *Id.* ¶¶ 226, 240. The Supreme Court upheld the injunction in June 2020, declaring the Act unconstitutional as it related to the admitting-privileges requirement. *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2113 (2020).

Two years later, following the Supreme Court's decision in *Dobbs*, Louisiana has banned nearly all abortions. *See* La. R.S. 40:1061; 14:87.7; 14:87.8 (the "Trigger Bans"). Although the Trigger Bans were initially enjoined, on August 1, 2022, the Louisiana Supreme Court denied an emergency motion to review an order lifting the temporary block on the Trigger Ban's enforcement. *June Med. Servs. LLC v. Landry*, No. 22-CD-1038 (La. Aug. 12, 2022). Also in August 2022, the Louisiana Department of Health sent a cease-and-desist letter to June Medical Services, LLC ("Hope Medical"). Since receipt of the cease-and-desist letter, Hope Medical, as well as the only two other clinics then operating in the state, have ceased providing abortion care. There are currently no abortion clinics operating in Louisiana since the Trigger Bans, prohibiting virtually all abortions, have taken effect.

Meanwhile, Louisiana filed an "emergency" motion to vacate the permanent injunction on June 27, 2022. ECF No. 487. This Court denied Louisiana's request for expedited relief in a short, text-only order. ECF No. 489. Rather than filing a renewed motion to vacate consistent with this Court's order and local rules, Louisiana filed a motion for reconsideration. ECF No. 490. Again, this Court denied Louisiana's motion for reconsideration, holding that Louisiana had "not satisfied *any* of the grounds for obtaining the relief she seeks," and that Louisiana "falls short" of the standard set forth in *Whole Woman's Health v. Young*, 37 F.4th 1098 (5th Cir. 2022). ECF No. 493 at 4

3

(emphasis added). Louisiana declined to heed this Court's directive to re-file its motion on a regular briefing schedule and instead appealed the orders denying expedited relief and reconsideration. Ten days after filing its notice, Louisiana filed a motion to expedite the appeal or, alternatively, to grant mandamus directing the district court to promptly vacate the permanent injunction in view of *Dobbs*. After briefing on an expedited schedule, the Fifth Circuit dismissed Louisiana's appeal for lack of appellate jurisdiction. Now, Louisiana's renewed "emergency" motion to vacate the permanent injunction is finally before this Court and should be denied.

## ARGUMENT

Rule 60(b) provides "an extraordinary remedy" that is tempered by the "[t]he desire for a judicial process that is predictable [and] mandates caution in reopening judgments.'" *In re Pettle*, 410 F.3d 189, 191 (5th Cir. 2005) (citations omitted). Accordingly, Rule 60(b) allows relief from a judgment or order only in limited circumstances. Under section (b)(5), such relief is permitted when (i) "the judgment has been satisfied, released, or discharged; [(ii)] it is based on an earlier judgment that has been reversed or vacated; or [(iii)] applying it prospectively is no longer equitable." The party seeking relief bears the burden of "showing that Rule 60(b)(5) applies." *Frew v. Janek*, 780 F.3d 320, 326-327 (5th Cir. 2015). Louisiana has failed to meet that burden.

Louisiana's brief does not demonstrate that it is inequitable to maintain the injunction in this case. Instead, it objects to the continuance of that injunction in light of *Dobbs*. But a change in the law alone is insufficient to overcome the finality built into federal rules under Rule 60(b)(5).[1]

"[W]hile 60(b)(5) authorizes relief when a judgment upon which it is based has been reversed or otherwise vacated, it does not authorize relief from a judgment on the ground that the

---

[1] Although Louisiana quoted from Rule 60(b)(6) in its Legal Standard section, ECF No. 501-1 at 5, Louisiana has not moved for relief under Rule 60(b)(6). Its motion is limited to Rule 60(b)(5).

4

law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding." *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990); *see also Hernandez v. Thaler*, 630 F.3d 420, 428-30 (5th Cir. 2011) (denying relief under Rule 60(b)(5) on the basis that the Supreme Court's decision to overturn precedential case law did not constitute "extraordinary circumstances"). Indeed, the cases interpreting Rule 60(b) "have reflected the courts' preference for finality." Wright & Miller, 11 Fed. Pract. & Proc. Civ. § 2851 (3d Ed.). The Fifth Circuit has consequently held that "final judgments should [not] be lightly reopened." *Lowry Dev. L.L.C. v. Groves & Assoc. Ins., Inc.*, 690 F.3d 382, 385 (5th Cir. 2012) (internal citations omitted).

Here, Louisiana has not established adequate justification for setting aside the final permanent injunction, especially when one considers the unavailability of abortions in Louisiana today. If the permanent injunction were lifted and the Act went into effect, the Act would have no practical impact on Louisiana's ability to regulate and restrict abortions *because no abortions are taking place in clinics with providers without admitting privileges*. In August, the Louisiana Supreme Court denied an emergency appeal that amounted to the last effort to enjoin the Trigger Bans. Now that the Trigger Bans are in effect, virtually all abortions are banned. As such, any abortions performed in Louisiana will be performed in an emergency context—likely in a hospital, where there is no possible need for an admitting privileges requirement. If Act 620 went into effect in this landscape, it would be regulating a nonexistent practice. This hardly amounts to the justification needed for setting aside a permanent injunction that has been in effect since 2017.

More obviously, the Louisiana Department of Health's cease-and-desist letters—which forced all three abortion clinics in the state to cease providing abortion care—forecloses the possibility that clinic physicians would need to obtain admitting privileges under the Act. There are no longer any such clinic physicians in Louisiana. Indeed, according to Louisiana, the Act was

5

specifically intended to bring "*abortion clinics* into conformity with the preexisting requirement that physicians at ambulatory surgical centers . . . have [admitting] privileges." *See June Med. Servs. LLC v. Gee*, 905 F.3d 787, 805 (5th Cir. 2018), *rev'd sub nom. June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103 (2020) (emphasis added). Accordingly, there can be no equitable basis by which to lift the permanent injunction: Louisiana will gain no additional control over abortions performed at clinics in Louisiana because as currently envisioned, all abortions will likely take place at a hospital, and no clinics in the state provide abortion care.

Louisiana puzzlingly asserts in a footnote that unless the permanent injunction is vacated, "wide-spread abortion on demand will likely resume." ECF No. 501-1 at 10 n.2. In doing so, Louisiana ignores the factual reality and fails to explain—as it must to demonstrate an inequity worthy of the extraordinary remedy afforded under Rule 60(b)—how abortion will become "wide-spread" in Louisiana given that the Trigger Bans are in place and no clinics are performing abortions.

Furthermore, Louisiana's references to *Horne v. Flores*, 557 U.S. 433 (2009) throughout its motion do not lend support to its contention that continued enforcement of the permanent injunction would run contrary to the public interest and cause injury to "the State and its people." *See* ECF No. 501-1 at 4. In *Horne*, the Supreme Court addressed a Rule 60(b)(5) claim that stemmed from an "institutional reform injunction," a type of injunction with specific concerns not at issue here. 557 U.S. at 449-450 (noting that institutional reform injunctions "bind state and local officials to the policy preferences of their predecessors and may thereby 'improperly deprive future officials of their designated legislative and executive powers'"). *Horne* also did not involve a situation where, as here, a subsequent statute had outright banned the practice that the enjoined law was regulating. Instead, different state actors took contrary positions in the case, necessitating review of the institutional reform decree under Rule 60(b)(5). *Id.* at 452. No such fact patterns exist here.

6

Consequently, *Horne's* conclusion that "ongoing violations of federal law" and continued enforcement of the injunction necessarily "exceed appropriate limits" of the law simply do not apply here as the State suggests. *See id.* at 450, 454; *see also Horne*, 557 U.S. at 494 (Breyer, J., dissenting) ("And [*Milliken v. Bradley*, 433 U.S. 267, 389-90 (1977)] rejected the argument that a reviewing court must determine, in every case, whether an ongoing violation of federal law exists.").

Finally, Louisiana's passing reference to this Court's 2015 summary judgment order does not adequately address the change in circumstances or demonstrate the Act's continued rational basis. As Louisiana notes, a state's regulation of abortion must, even after *Dobbs*, be rationally related to a legitimate government purpose. ECF No. 501-1 at 9. Although it is true that this Court found that the Act passed the rational basis test in 2015, that decision came at a time when multiple clinics were providing abortion care in Louisiana. Now, those clinics do not provide abortion care and abortions only occur in the emergency context. The purported purpose for the admitting-privileges requirement was so that patients receiving abortion care could be transferred to and treated in a hospital when necessary. Now, however, abortions are likely already performed in a hospital, and patients are already receiving treatment by hospital-based physicians. Because patients receiving abortion care will be in a hospital, there is no rational basis for the Act. The circumstances have changed; this Court's analysis and conclusion about the Act should too.

Further calling into question the rational basis of the Act is the fact that this Court held, following an exhaustive, six-day bench trial with a fulsome record, that the "overwhelming weight of the evidence demonstrates that, in the decades before the Act's passage, abortion in Louisiana has been extremely safe, with particularly low rates of serious complications, and as compared with childbirth and with medical procedures that are far less regulated than abortion." ECF No. 274, ¶ 240. It further recognized that there "was no significant health-related problem that the new law helped to cure" and that there was "no credible evidence in the record that Act 620 would further

7

the State's interest in women's health beyond that which is already insured under existing Louisiana law." *Id.* ¶¶ 226, 240. These findings, though made in the context of evaluating the Act's undue burden on women, were made *after* the Court analyzed the question of rational basis on summary judgment in 2015. Now, the robust trial record and detailed findings from the Court, coupled with the change in circumstances in Louisiana, compel a conclusion that the Act lacks any rational basis and remains unconstitutional.

## CONCLUSION

For the reasons above, Plaintiffs respectfully request this Court deny Louisiana's Renewed Emergency Rule 60(b) Motion to Vacate Permanent Injunction.

Dated: October 17, 2022

Respectfully submitted,

*/s/ Charles M. Samuel, III*
Charles M. (Larry) Samuel, III
La. State Bar No. 11678
RITTENBERG, SAMUEL &
PHILLIPS, LLC
1539 Jackson Ave., Suite 115
New Orleans, Louisiana, 70130
(504) 524-5555
samuel@rittenbergsamuel.com

*Counsel for Plaintiffs*

*/s/ Jenny Ma*
Jenny Ma*
CENTER FOR
REPRODUCTIVE RIGHTS
199 Water St., 22nd Floor
New York, NY 10038
(917) 637-3705
jma@reprorights.org

*/s/ Dimitra Doufekias*
Dimitra Doufekias*
MORRISON & FOERSTER
LLP
2000 Pennsylvania Ave., NW
Suite 6000
Washington, DC 20006-1888
(202) 887-1500
DDoufekias@mofo.com

*admitted pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on this 17th of October, 2022, I electronically filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Dimitra Doufekias*
Dimitra Doufekias
