## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JUNE MEDICAL SERVICES LLC, ET
AL.

CIVIL ACTION

VERSUS

NO. 14-525-JWD-RLB

COURTNEY PHILLIPS, in her official
capacity as Secretary of the Louisiana
Department of Health

## RULING AND ORDER

This matter comes before the Court on *Defendant's Renewed Emergency Rule 60(b) Motion to Vacate Permanent Injunction*, (Doc. 501), filed by Courtney Phillips, in her official capacity as Secretary of the Louisiana Department of Health ("Defendant"). Plaintiffs oppose the motion, (Doc. 502), and Defendant has filed a reply, (Doc. 503). Oral argument was scheduled for November 29, 2022, (Doc. 504), but the Court finds that it is no longer necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted, and the Court's permanent injunction in this case is hereby vacated.

I.     **Relevant Background**

A.  **This Court's Injunction**

On April 26, 2017, this Court issued an extensive 116-page *Findings of Fact and Conclusions of Law*, (Doc. 274), addressing the constitutionality of Act 620, which has been codified at an amended La. R.S. § 40:1299.35.2. (Doc. 274 at 12.) Section A(2)(a) requires every doctor who performs abortions in Louisiana to have "active admitting privileges" at a hospital within 30 miles of the facility where abortions are performed. (*Id.* (quoting La. R.S. §

40:1299.35.2A(2)(a)).) While the Act contains other requirements, this provision was the only one challenged in the case. (*Id.* (citing Doc 5-1 at 8 n.1).) Shortly before trial, on April 20, 2015, LDH promulgated implementing regulations that include an admitting privileges requirement repeating the language of Act 620 and a penalty provision of $4,000 per violation. (*Id.* (citing La. Admin. Code tit. 48, pt. I, §§ 4401 (definition of "active admitting privileges"); 4423(B)(3)(e), available at 41 La. Reg. 685, 696 (Apr. 20. 2015)).) These were accompanied by a statement averring that they "will only be enforced pursuant to Order" in the present case. (*Id.*) Thus, the Court's order embraced both the Act and the regulations.

Those *Findings of Fact and Conclusions of Law* culminated in the following:

> [T]he Court declares Act 620 unconstitutional in all of its applications, and enters a permanent injunction barring its enforcement. The active admitting privileges requirement of Section A(2)(a) of Act 620 is found to be a violation of the substantive due process right of Louisiana women to obtain an abortion, a right guaranteed by the Fourteenth Amendment of the United States Constitution as established in *Roe v. Wade*, 410 U.S. 113 (1973), and pursuant to the test first set forth in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992) ("*Casey*"), and subsequently refined in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2319 (2016) (hereinafter "*WWH*"). Act 620 is therefore declared unconstitutional, and its enforcement enjoined in all of its applications.

(*Id.* at 11.) This Court went on to say:

> Act 620 is unconstitutional on its face under *Casey* and *WWH*. The Act would create substantial obstacles for women seeking abortion in Louisiana without providing any demonstrated benefit to women's health or safety. Any marginal health benefits would be dramatically outweighed by the obstacles the restriction erects to women's access to their constitutional right to abortion. The Act therefore cannot withstand the scrutiny mandated by *WWH*. Plaintiffs have succeeded on the merits of their constitutional claim that the Act violates the Fourteenth Amendment.

* * *

2

> An order permanently enjoining enforcement of Act 620 in all of its applications is the appropriate remedy. As with the Texas abortion restrictions enjoined in all their applications by the decision in *WWH*, Act 620 would close most of the abortion facilities in Louisiana and "place added stress on those facilities able to remain open." *WWH*, 136 S. Ct. at 2319. Act 620 "vastly increase[s] the obstacles confronting women seeking abortions" in Louisiana "without providing any benefit to women's health capable of withstanding any meaningful scrutiny." *Id*. Therefore, Act 620 is unconstitutional on its face. Pursuant to this Court's authority under 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, this Court will enter orders declaring Act 620 unconstitutional and permanently enjoining the Act in all of its applications.

(*Id.* at 114–15.)  The Court entered a judgment in this matter effectuating this ruling and imposing a permanent injunction which barred the enforcement of Act 620 and its implementing regulations. (Doc. 275.)

Following an appeal and lengthy procedural history, this Court's decision was ultimately considered by the Supreme Court.  There, the High Court held, "We have examined the extensive record carefully and conclude that it supports the District Court's findings of fact. Those findings mirror those made in [*WWH*] in every relevant respect and require the same result. We consequently hold that the Louisiana statute is unconstitutional." *June Med. Servs. L. L. C. v. Russo*, 140 S. Ct. 2103, 2113 (2020).

### B.  *Dobbs*

Less than two years later, the Supreme Court changed course and issued the well-known decision of *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022).  There, the Supreme Court said:

> We hold that *Roe* and *Case*y must be overruled. The Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision, including the one on which the defenders of *Roe* and *Casey* now chiefly rely—the Due Process Clause of the Fourteenth Amendment.

3

* * *

> *Stare decisis*, the doctrine on which *Casey*'s controlling opinion was based, does not compel unending adherence to *Roe*'s abuse of judicial authority. *Roe* was egregiously wrong from the start. Its reasoning was exceptionally weak, and the decision has had damaging consequences. And far from bringing about a national settlement of the abortion issue, *Roe* and *Casey* have enflamed debate and deepened division.
>
> It is time to heed the Constitution and return the issue of abortion to the people's elected representatives. "The permissibility of abortion, and the limitations, upon it, are to be resolved like most important questions in our democracy: by citizens trying to persuade one another and then voting." *Casey*, 505 U.S. at 979, 112 S. Ct. 2791 (Scalia, J., concurring in judgment in part and dissenting in part). That is what the Constitution and the rule of law demand

*Id.* at 2242–43. The High Court went on to conclude that "rational-basis review is the appropriate standard for . . . challenges" to state abortion regulations, *id*. at 2283–84, and finished the decision as follows:

> We end this opinion where we began. Abortion presents a profound moral question. The Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion. *Roe* and *Casey* arrogated that authority. We now overrule those decisions and return that authority to the people and their elected representatives.

*Id.* at 2284.

### C.  Post-*Dobbs* Proceedings

On June 27, 2022, Defendant filed an emergency motion seeking an order vacating the permanent injunction in this case in light of *Dobbs*. (Doc. 487.)  Defendant sought relief summarily or, alternatively, within two days of filing her motion. (*Id.*)  Plaintiffs opposed the motion, arguing that Defendant was not entitled to relief on the merits or, alternatively, that they should at least be given the opportunity to brief the matter fully. (Doc. 488.)

On June 29, 2022, this Court issued an order denying the motion in part and denying the motion without prejudice in part. (Doc. 489.)   The Court denied the request for expedited consideration, explaining, "The subject of this motion is a matter of considerable importance to the State and its citizens and involves complicated issues of procedural and substantive law. The Court finds that granting this motion with only two days consideration is unreasonable and unwarranted." (*Id.*)  However, the Court denied the substantive part of Defendant's motion without prejudice and stated that it would take up the matter after full briefing in compliance with and within the deadlines established by the Court's local rules. (*Id.*)

The same day, Defendant filed a motion to reconsider in light of *Whole Woman's Health v. Young*, 37 F.4th 1098 (5th Cir. 2022). (Doc. 490.)  This time, Defendant sought relief summarily, or alternatively, by the very next day. (*Id.*)  Plaintiffs opposed the motion. (Doc. 492.)

On July 5, 2022, this Court denied the motion for reconsideration. (Doc. 493.)  The Court found that none of the grounds required for reconsideration had been met. (*Id.* at 4–5.)  The Court then concluded:

> The Court notes in closing that, having reviewed *Dobbs* and *Young*, Plaintiffs appear to have an uphill battle. Defendant's underlying motion turns on the extent to which Rule 60(b)(5) is the proper vehicle for overturning a permanent injunction that has remained in place for years because of a Supreme Court decision in another case that has severely undercut it. There appears to be ample authority for the view that vacating the permanent injunction is appropriate in this situation because the relief is no longer equitable. *See* 11 Mary Kay Kane, *Federal Practice & Procedure (Wright & Miller)* § 2863 & n.31 (3d ed. 2022) ("Because the standard is an exacting one, many applications for relief on this ground are denied[.] . . . But on an adequate showing the courts will provide relief if it no longer is equitable that the judgment be enforced, whether because of subsequent legislation, *a change in the decisional law*, or a change in the operative facts. (emphasis added)).
>
> But that is a question for another day. Here, Defendant has not shown that the Court abused its discretion or manifestly erred in

> allowing Plaintiffs (and Defendant) a full opportunity to brief the issue—and certainly on more than two days' notice and a near *ex parte* basis. This is particularly true considering the fact that granting these motions is an "extraordinary remedy that should be used sparingly." [*Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 328 (5th Cir. 2017), *as revised* (Dec. 7, 2017)] (cleaned up).

(*Id.* at 5–6.)

Defendant then appealed the Court's order. (Doc. 494.) Defendant also sought a mandamus from the appellate court. *See June Med. Servs., L.L.C. v. Phillips*, No. 22-30425, 2022 WL 4360593 (5th Cir. Sept. 28, 2022).

On September 28, 2022, the Fifth Circuit dismissed the appeal for lack of jurisdiction. *Id.* at *2. The appellate court explained that this Court's order was merely "an administrative decision by the district court to manage its docket" which did not rule on the merits but only denied expedited relief. *Id.* at *1. Further, the Fifth Circuit denied Defendant's writ of mandamus:

> Even if the district court's initial order and its reconsideration denial are not the functional equivalent of a scheduling order, the district court did not abuse its discretion denying the only motion presented to it—one to vacate *forthwith or within two days*. A district court "has broad discretion and inherent authority to manage its docket." *In re Deepwater Horizon*, 988 F.3d 192, 197 (5th Cir. 2021) (per curiam). This district court acted prudently, with no evident dilatory purpose. The State has not persuaded this court that the district court abused its discretion when the district court refused to rule on the State's motion in the expedited fashion requested.

*Id.* at *2. The Fifth Circuit closed by "respectfully direct[ing] the district court to expeditiously address any merits claims that may be submitted by the respective parties and to enter an order accordingly." *Id.*

The following day, on September 29, 2022, this Court issued an expedited briefing scheduling giving Defendant fourteen days from the issuance of the mandate to file its renewed

motion, fourteen days for Plaintiffs to file an opposition, and seven days for Defendant to reply. (Doc. 499.)  On October 3, 2022, the mandate was issued. (Doc. 500.)

On the same day, Defendant filed the instant motion. (Doc. 501.)  Defendant again moves this Court for an order vacating the permanent injunction in this case, (Docs. 274, 275), in light of *Dobbs* and *Young*. (Doc. 501 at 1.)  According to Defendant, *Dobbs* removes the legal and equitable basis for the injunction, and *Young* demonstrates that injunctions like the one in this case should be vacated as a matter of circuit law. (*Id.*)

Following the completion of briefing, on November 1, 2022, this Court set oral argument in this mater for November 29, 2022. (Doc. 504.) But, again, the Court finds that this oral argument is no longer necessary.

## II.    Parties' Arguments

### A. Defendant's Original Memorandum (Doc. 501-1)

Defendant contends that the key question under Rule 60(b)(5) is whether a change in the law has rendered enforcement of the injunction detrimental to the public interest. (Doc. 501-1 at 6–7.) Defendant has the burden, but if she shows such a change in the law, the injunction must be modified. (*Id.* at 7.) Here, Defendant asserts that she has met her burden, as the *Dobbs* decision overturned *Roe v. Wade* and *Casey* and returned the regulation of abortion to the states. (*Id.* at 8.)

By Defendant's reckoning, "The only question this Court needs to answer is whether ongoing enforcement of the original [injunction is] supported by an ongoing violation of federal law." (*Id.* at 9 (alteration in original).)  The State law at issue need only pass rational basis review, but, here, this Court already determined that Act 620 did so. (*Id.*)  Thus, this Court should vacate its injunction. (*Id.*)  Other courts have done likewise. (*Id.*)  It is also important to note that, without

a constitutional violation, injunctions of this nature "raise[] grave federalism concerns." (*Id.*)  This

Court should thus act quickly to remedy the situation and vacate the injunction. (*Id.* at 10.)

### B.  Plaintiffs' Opposition (Doc. 502)

Plaintiffs respond that the Court should deny the motion "because the State has plainly

failed to carry its heavy burden in demonstrating that prospective enforcement of the injunction is

no longer equitable." (Doc. 502 at 1.)  Plaintiffs say Defendant has "fail[ed] to grapple with the

facts on the ground . . . . Simply put, the State's own near-complete abortion bans have forced all

abortion care to cease and therefore Act 620's admitting privileges requirements are moot." (*Id.*)

Thus, Plaintiffs argue, "Vacatur of the injunction would have no impact whatsoever on the scope

of permissible abortion services in Louisiana, nor, as the state feebly suggests, on the health of

Louisiana women." (*Id.* at 1–2.)  Elaborating, Plaintiffs explain:

> Two years later [after the Supreme Court's decision in the instant
> case,] following the Supreme Court's decision in *Dobbs*, Louisiana
> has banned nearly all abortions. *See* La. R.S. 40:1061; 14:87.7;
> 14:87.8 (the "Trigger Bans"). Although the Trigger Bans were
> initially enjoined, on August 1, 2022, the Louisiana Supreme Court
> denied an emergency motion to review an order lifting the
> temporary block on the Trigger Ban's enforcement. *June Med.
> Servs. LLC v. Landry*, No. 22-CD-1038 (La. Aug. 12, 2022). Also
> in August 2022, the Louisiana Department of Health sent a cease-
> and-desist letter to June Medical Services, LLC ("Hope Medical").
> Since receipt of the cease-and-desist letter, Hope Medical, as well
> as the only two other clinics then operating in the state, have ceased
> providing abortion care. There are currently no abortion clinics
> operating in Louisiana since the Trigger Bans, prohibiting virtually
> all abortions, have taken effect.

(*Id.* at 3.)

Turning to the argument, Plaintiffs say that Rule 60(b)(5) "does not authorize relief from a

judgment on the ground that the law applied by the court in making its adjudication has been

subsequently overruled or declared erroneous in another and unrelated proceeding." (*Id.* at 4–5

(quoting *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990) (citing *Hernandez v. Thaler*, 630 F.3d 420, 428–30 (5th Cir. 2011)).)

Plaintiffs assert:

> Here, Louisiana has not established adequate justification for setting aside the final permanent injunction, especially when one considers the unavailability of abortions in Louisiana today. If the permanent injunction were lifted and the Act went into effect, the Act would have no practical impact on Louisiana's ability to regulate and restrict abortions *because no abortions are taking place in clinics with providers without admitting privileges*. In August, the Louisiana Supreme Court denied an emergency appeal that amounted to the last effort to enjoin the Trigger Bans. Now that the Trigger Bans are in effect, virtually all abortions are banned. As such, any abortions performed in Louisiana will be performed in an emergency context—likely in a hospital, where there is no possible need for an admitting privileges requirement. If Act 620 went into effect in this landscape, it would be regulating a nonexistent practice. This hardly amounts to the justification needed for setting aside a permanent injunction that has been in effect since 2017.
>
> More obviously, the Louisiana Department of Health's cease-and-desist letters—which forced all three abortion clinics in the state to cease providing abortion care—forecloses the possibility that clinic physicians would need to obtain admitting privileges under the Act. There are no longer any such clinic physicians in Louisiana. Indeed, according to Louisiana, the Act was specifically intended to bring "*abortion clinics* into conformity with the preexisting requirement that physicians at ambulatory surgical centers . . . have [admitting] privileges." *See June Med. Servs. LLC v. Gee*, 905 F.3d 787, 805 (5th Cir. 2018), *rev'd sub nom. June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103 (2020) (emphasis added). Accordingly, there can be no equitable basis by which to lift the permanent injunction: Louisiana will gain no additional control over abortions performed at clinics in Louisiana because as currently envisioned, all abortions will likely take place at a hospital, and no clinics in the state provide abortion care.

(*Id.* at 5–6 (alteration in original).)

Plaintiffs also dispute Defendant's reliance on *Horne v. Flores*, 557 U.S. 433 (2009), as that case dealt with an "institutional reform injunction," which is "a type of injunction with specific

concerns not at issue here." (*Id.* at 6 (quoting *Horne*, 557 U.S. at 449–50 (noting that institutional reform injunctions "bind state and local officials to the policy preferences of their predecessors and may thereby 'improperly deprive future officials of their designated legislative and executive powers' ")).) Plaintiffs also emphasize that "*Horne* also did not involve a situation where, as here, a subsequent statute had outright banned the practice that the enjoined law was regulating." (*Id.*)

Plaintiffs close by arguing that, even if Act 620 passed rational basis review in 2015, circumstances have changed such that this Court's prior finding is no longer valid.  (*Id.* at 7.) Again, before, there were multiple clinics in Louisiana, and now, abortions can only take place in an emergency context (i.e., in a hospital anyway). (*Id.*)  Moreover, this Court also found in its prior ruling that (1) the "overwhelming weight of the evidence demonstrates that, in the decades before the Act's passage, abortion in Louisiana has been extremely safe, with particularly low rates of serious complications, and as compared with childbirth and with medical procedures that are far less regulated than abortion," and (2) that there " 'was no significant health-related problem that the new law helped to cure' and that there was 'no credible evidence in the record that Act 620 would further the State's interest in women's health beyond that which is already insured under existing Louisiana law.' " (*Id.* at 7– 8 (quoting Doc. 247, ¶¶ 226, 240).)  Plaintiffs maintain that all of these findings, following an extensive analysis of the record, compels the conclusion that Act 620 lacks a rational basis.

### C.  Defendant's Reply (Doc. 503)

Defendant replies that "Plaintiffs' opposition is shocking and vexatious." (Doc. 503 at 1.) Defendant then quotes from *Dobbs* to illustrate how resoundingly the Supreme Court overturned the precedent on which this Court relied and then cites *Young* for the proposition that "[t]he rule is so clear that the Fifth Circuit required only three-paragraphs to explain *Dobbs* alone warrants

vacating an injunction that relied on the overruled 'undue burden' standard that the Court applied in this case." (*Id.* (citing *Young*, 37 F.4th 1098).)

Defendant next explains that Plaintiffs do not dispute much of their motion; according to Defendant, Plaintiffs concede that a significant change in the law can warrant Rule 60(b)(5) relief and that there is no longer a violation of federal law. (*Id.* at 2.) Plaintiffs distinguish the Fifth Circuit cases relied upon by Plaintiffs on the grounds that two of them did not deal with prospective application like the injunction at issue here and the third involved the retroactive application of substantive criminal laws in a habeas proceeding. (*Id.* at 2–3.)

Defendant then argues that a fact-intensive inquiry is not appropriate because the underlying legal basis for the injunction has disappeared, but, even if it were appropriate, Plaintiffs get the facts wrong. (*Id.* at 4.) First, abortions can take place at hospitals *and* ambulatory surgical centers, and, in any event, the fact "that abortions are now generally limited to cases of medical necessity only *increases* the importance of having those abortions performed by doctors with admitting privileges." (*Id.* at 4–5.) Second, while the Trigger Ban prohibits abortions, that ruling has been appealed by Plaintiff June Medical and the injunction stayed. (*Id.* at 5.) Plaintiffs are seeking a permanent injunction. (*Id.*) And third, Louisiana suffers irreparable harm by the maintenance of an injunction that lacks a legal basis. (*Id.*)

Defendant next contends that *Horne* controls. (*Id.*) The key lesson there was that the injunction "improperly deprive[d] . . . officials of their designated legislative and executive powers." (*Id.* (quoting *Horne*, 557 U.S. at 449).) Defendant says, "Plaintiffs provide no basis for their claim that an injunction against a now-constitutional law does not implicate a federal court 'exceed[ing] appropriate limits' by maintaining an injunction where there is no 'ongoing violation[] of federal law.' " (*Id.* at 5–6 (quoting *Opposition*, Doc. 502 at 7 (quoting *Horne*, 557

U.S. at 450, 454)).)  Plaintiffs' reliance on the dissent in *Horne* is misplaced considering the fact that *Dobbs* expressly overruled the prior law. (*Id.* at 6.)

Defendant again urges that Act 620 has a rational basis. (*Id.*)  This Court concluded as much, and that decision was not appealed. (*Id.* at 6–7.)  Moreover, the Fifth Circuit found that this law passes rational basis review. (*Id.* at 7.)  Further, even if the Court revisited the issue, the law would be presumed constitutional, and the question would be whether legislature could have thought that the law would serve legitimate state interests. (*Id.*)  And all of the legitimate concerns that were considered by the Fifth Circuit and Supreme Court in *Dobbs* still apply. (*Id.* at 8.)

## III.    Relevant Standard

As this Court previously stated, the instant motion turns on the proper interpretation and application of Federal Rule of Civil Procedure 60(b). (Doc. 493 at 5–6.)  Thus, an extensive discussion is warranted.  The Court will begin with an analysis of the law governing Rule 60(b)(5) generally before turning to specific examples of cases dealing with injunctions in cases such as this one.

### A.  Rule 60(b)(5) Generally

" 'Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances,' making it 'an exception to finality.' " *Sec. & Exch. Comm'n v. Novinger*, 40 F.4th 297, 302 (5th Cir. 2022) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 528–59 (2005)). "As relevant here, the rule authorizes a district court to 'relieve a party or its legal representative from a final judgment, order, or proceeding' because . . .  (5) . . .  applying it prospectively is no longer equitable." *Id.* (quoting Fed. R. Civ. P. 60(b)(5)).

"Rule 60(b)(5) does not provide relief 'when it is no longer convenient to live with the terms of a [judgment].' " *Id.* at 307 (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367,

383 (1992)). "Rather, it 'provides a means by which a party can ask a court to modify or vacate a judgment or order if "a significant change either in factual conditions or in law" renders continued enforcement "detrimental to the public interest." ' " *Id.* (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo*, 502 U.S. at 384)). That is to say,

> Because the standard is an exacting one, many applications for relief on this ground are denied . . . .  But on an adequate showing the courts will provide relief if it no longer is equitable that the judgment be enforced, whether because of subsequent legislation, a change in the decisional law, or a change in the operative facts.

*See* Charles A. Wright and Arthur R. Miller, Federal Practice & Procedure § 2863 & n.31 (3d ed. 2022).

Two important Supreme Court cases—*Rufo* and *Horne*—provide extensive discussions of Rule 60(b)(5) in the context of consent decrees and "institutional reform" decrees.  Though these cases are of course different in some ways, the Supreme Court's framework is highly relevant to the instant analysis. *See* 2 Moore's Federal Practice - Civil § 60.47[2][b] (2022).

In *Rufo*, the Supreme Court explained that "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383. As to the first prong, "[m]odification [of a consent decree] is . . . appropriate when," *inter alia*, "a decree proves to be unworkable because of unforeseen obstacles, or when enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384–85 (cleaned up).  More pertinent here, "[a] consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal

law." *Id.* at 388.  "But modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Id.*

Likewise, in *Horne v. Flores*, the Supreme Court recognized that "courts must take a 'flexible approach' to Rule 60(b)(5) motions addressing such [institutional reform] decrees."  557 U.S. at 450 (quoting *Rufo*, 502 U.S. at 381). "A flexible approach allows courts to ensure that responsibility for discharging the State's obligations is returned promptly to the State and its officials when the circumstances warrant." *Id.* (cleaned up).  "In applying this flexible approach, courts must remain attentive to the fact that federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation." *Id.* (cleaned up). "If [a federal consent decree is] not limited to reasonable and necessary implementations of federal law, it may improperly deprive future officials of their designated legislative and executive powers." *Id.* (alteration in original) (cleaned up).  Under this "flexible standard," the Court should "return control to state and local officials as soon as a violation of federal law has been remedied . . . ." *Id.* at 450–51.

Plaintiffs urge that *Rufo* and *Horne* should be limited to cases involving "institutional reform decrees," (Doc. 502 at 6), but one leading treatise takes a contrary and, the Court believes, a better view:

> Some concern has been expressed that the flexible standard for determining whether relief is appropriate as announced in the *Rufo* case . . . may not be appropriately applied in private litigation or any litigation not directed at some governmental entity in the name of institutional reform. The better view clearly is that the flexible, *Rufo* standard should not be limited to "institutional reform" litigation because it "is no less suitable to other types of equitable cases." The very nature of a flexible standard is that it is adaptable to its surroundings. Factors that are very important in one type of litigation (for example, in institutional-reform litigation: the lengthy duration of injunctive decrees, federalism concerns in cases involving areas of core state responsibility and state or local budget

>priorities, and the limiting effect on current state and local officials of litigation decisions made by their predecessors) may be weighed much less in other types of litigation. In other types of litigation, other factors will be much more important (for example, in private commercial litigation: the need for finality of judgments and the sanctity of bargains). The language in *Rufo* stressing the unique factors to be weighed in deciding whether to modify a decree in institutional reform litigation may be just that—factors to be stressed in one particular type of action. What *Rufo* undoubtedly decided in any context was that the strict "grievous harm" standard was improper, and the reasons the *Rufo* court gave for rejecting this inflexible approach were not limited to any particular type of litigation.

12 Moore's Federal Practice - Civil § 60.47[2][b] (2022).

Thus, as this treatise later explains, "[t]here are a number of factors that may be considered in determining whether there is a 'significant change in circumstances' . . . that makes continued enforcement of the decree, without modification, inequitable. . . ." *Id.* § 60.47[2][c]. "The factors may vary depending on whether the relief sought is a complete dissolution of the injunction or only a modification of the injunction." *Id.* "[I]f a party seeks to have a decree set aside entirely, he or she has to show that the decree has served its purpose, and there is no longer any need for the injunction." *Id.* Further, "[t]he importance of the public interest varies with the type of litigation. . . . Some litigation seeking to enjoin strictly private entities is brought in the public interest and, therefore, is still intimately tied to important public policies." *Id.* "Finality of judgments and sanctity of agreements are much more important in private litigation than in institutional reform or other public-interest litigation." *Id.* "Ordinarily, … modification should not be granted where a party relies upon events that actually were anticipated at the time of the decree." *Id.* (cleaned up). "However, a party need not anticipate every conceivable contingency, and even if changes were anticipated, a rigid approach is not appropriate." *Id.* Finally, and perhaps most critically to the instant analysis:

15

> *Changes in law since [the] decree was entered are circumstances that may justify relief, but more so in institutional litigation than in private litigation.* **At least in institutional-reform and other forms of public-interest litigation, "modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent." And when no consent decree is involved, a change in the law that permits what was previously forbidden is sufficient by itself to warrant modification of the injunction; the court need not consider other factors such as the balance of harms.** In private litigation, however, the analysis may differ. Changes in the law *may* be considered by a court when a party seeks relief from a private decree; but changes in the law have much more importance when public interests are at stake than in private litigation in which the parties litigate or bargain with the expectation that their commercial dispute will be resolved, for a fixed cost, and in a *final* judgment. In any event, even a significant change in the law will not warrant relief from a judgment if that change would not have altered the outcome of the litigation in which the judgment was entered.

*Id.* (bold added, italics in original).

Ultimately, "Rule 60(b)(5) motions . . . are directed to the sound discretion of the district court . . . ." *Novinger*, 40 F.4th at 302 (cleaned up). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." *Horne*, 557 U.S. at 447 (cleaned up).

### B. Examples Involving Injunctions Based on Outdated Law

Several lower court cases illustrate the principle from *Rufo* and *Horne* that an injunction should be modified under Rule 60(b)(5) when the legal basis for that injunction is no longer present. Indeed, many of these cases confirm that it is an abuse of discretion for a court to fail to do so.

For example, in *Freeman v. City of Fayetteville*, 971 F. Supp. 971 (E.D.N.C. 1997), the district court observed that "[a] rising constitutional floor-or . . . a falling constitutional ceiling

16

may make modifications necessary." *Id.* at 974 (quoting *NAACP v. Seibels,* 20 F.3d 1489, 1504 (11th Cir. 1994)).  The issue in *Freeman* was whether "the rigid [racial] quotas imposed by [a] 1974 judgment [had] been rendered unconstitutional by subsequently-decided authority requiring the application of strict scrutiny to such quotas." *Id.* at 974–75. The district court determined that "[t]he judgment at issue [wa]s neither supported by the requisite compelling interest nor narrowly tailored in its remedy," *id.* at 976; that the consent decree was thus "unconstitutional," *id.* at 977; that "defendants ha[d] satisfied their burden of establishing a significant change in law as required by *Rufo,*" *id.*; and that, consequently, "their motion pursuant to Rule 60 [could] be allowed," *id.* As to the remedy, the Court concluded "that the continuation of the judgment [wa]s not permissible under federal law and [wa]s detrimental to the public interest" and that "[t]he only suitable modification to the drastic change in the state of the law [wa]s termination of the decree." *Id.*

Likewise, in *Theriault v. Smith*, 523 F.2d 601 (1st Cir. 1975), the First Circuit affirmed the district court's order vacating a consent decree. *Id.* at 601–02.  The circuit explained that a subsequent Supreme Court decision "represented a fundamental change in the legal predicates of the consent decree" and that "[t]his is arguably the kind of situation in which relief should be available under Rule 60(b)(5)." *Id.* at 601.  The First Circuit then stated:

> Defendant sought prospective relief only, and he did so only as a result of an important decision of the Supreme Court. It may well be unreasonable to require defendant, for the indefinite future, to abide by a consent decree based upon an interpretation of law that has been rendered incorrect by a subsequent Supreme Court decision. As Mr. Justice Cardozo stated in the leading case of *United States v. Swift & Co.*: "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." 286 U.S. 106, 114, 52 S. Ct. 460, 462 (1932). *See also System Federation No. 91 v. Wright*, 364 U.S. 642, 646-48, 81 S. Ct. 368, 5 L. Ed. 2d 349 (1961); 11 C. Wright & A. Miller, Federal Practice & Procedure, s 2863 (1973).

*Id.* at 601–02.  The appellate court concluded, "in vacating the consent decree, the district court exercised sound discretion, comporting with established principles of equity and the Federal Rules of Civil Procedure." *Id.* at 602.

But, again, Rule 60(b)(5)'s application to changes of the law is not limited to consent judgments and institutional reform litigation.  For instance, in *Prudential Insurance Co. of America v. National Park Medical Center, Inc.*, 413 F.3d 897 (8th Cir. 2005), the Eighth Circuit upheld in part a district court's decision to vacate an injunction based on an intervening change in the law.  At issue was the Arkansas Patient Protection Act of 1995 ("Arkansas PPA") generally and the Arkansas "any willing provider" ("AWP") law specifically, which "require[d] health care insurers to admit qualified health care providers into the insurer's provider networks if they are willing to meet the terms and conditions of participation." *Id.* at 902.  The Eighth Circuit had ruled that the Arkansas PPA was preempted in its "entirety" by ERISA and ordered the district court to enter an injunction prohibiting enforcement of the law.  *Id.*  However, a subsequent Supreme Court opinion—*Kentucky Association of Health Plans v. Miller*, 538 U.S. 329 (2003)—concluded that two Kentucky AWP statutes were not preempted, and this led a district court of Arkansas judge to hold that "that 'the significant shift in the law as a result of the *Miller* decision meets the requirement of an extraordinary circumstance' for the purposes of Rule 60(b)(5) and [to] dissolve[] the injunction barring the enforcement of the Arkansas PPA." *Id.* at 903.

On appeal, the Eighth Circuit rejected appellants' argument that there was no change to the Court's binding precedent. *Id.* at 904.  The appellate court explained that *Miller* did in fact overrule the circuit's precedent. *Id.*  Even putting this aside, the "district court . . . had authority to grant the motion" because it "only modified its own prior judgment by dissolving the injunction." *Id.* (citing *Standard Oil Co. of Calif. v. United States*, 429 U.S. 17, 18 (1976) (holding that where later

review makes doing so appropriate, a district court may grant relief from permanent injunctions without appellate leave)).  The Eight Circuit went on to conduct an ERISA preemption analysis and decided that *Miller* (1) "mandate[d] that [the Eighth Circuit] affirm the district court's dissolution of the [earlier] injunction with regard to insured ERISA plans and non-ERISA plans" but (2) did not require dissolution of the injunction with respect to self-funded ERISA plans and the civil penalties provision of the Arkansas PPA, as those issues were not addressed in *Miller*. *Id.* at 907–08.

But, perhaps the strongest case in support of Defendant's position is *California by & through Becerra v. United States Environmental Protection Agency*, 978 F.3d 708 (9th Cir. 2020). There, a district court "entered an injunction requiring [the] EPA to promulgate" a plan "detailing how [emissions guidelines for landfills would] be implemented" within six months, after the EPA had missed its previous deadline. *Id.* at 710–11.  "A few months later, EPA finalized the rulemaking process, which extended its regulatory deadline by two years." *Id.* at 711.  Faced with two conflicting deadlines (the one by the court and the one in the amended regulations), the "EPA asked the district court to modify the injunction, but it declined to do so." *Id.*  The Ninth Circuit summarized, "We're asked to decide whether a district court abuses its discretion by refusing to modify an injunction even after its legal basis has evaporated and new law permits what was previously enjoined. We answer affirmatively and reverse." *Id.*

The Ninth Circuit began with a discussion of the Rule 60(b)(5) standard:

> If [Rule 60(b)(5)] sounds like a pliable standard, that's because it is. But this flexibility is a virtue, not a vice. Historically, what made courts of equity different was that they could be "flexible" and "adjust their decrees, so as to meet most, if not all" of the exigencies to do justice for the parties. Such courts could "vary, qualify, restrain, and model the remedy, so as to suit to mutual and adverse claims, controlling equities, and the real and substantial rights of all the parties." Indeed, equity exists "[b]ecause it is impossible that any

> code, however minute and particular, should embrace or provide for the infinite variety of human affairs, or should furnish rules applicable to all of them[.]
>
> Rule 60(b)(5), and its malleable standard for modifying an injunction, preserves the courts' historical discretion over injunctions. . . . But judicial discretion—historically and now—is not unbridled. American equity jurisprudence, thus, reflected an "effort to restrain the discretion courts of equity once wielded and to roundly reject a view in which equity depends on the length of each chancellor's foot."

*Id.* at 713 (alterations in original) (internal citations omitted).

The Ninth Circuit then explained, "An unbroken line of Supreme Court cases makes clear that it is an abuse of discretion to deny a modification of an injunction after the law underlying the order changes to permit what was previously forbidden." *Id.* at 713–14 (citing, *inter alia*, *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (granting relief from an injunction in light of a shift in Establishment Clause jurisprudence and explaining, " '[a] court may recognize subsequent changes in either statutory or decisional law' giving rise to an injunction, and a 'court errs when it refuses to modify an injunction or consent decree in light of such changes.' " (*California*, 978 F.3d at 714))). The appellate court then looked at its own caselaw and observed, "We have likewise held that a shift in the legal landscape that removes the basis for an order warrants modification of an injunction." *Id.* at 715. The Ninth Circuit next stated:

> Other circuits have adopted similar approaches. *See Am. Horse Prot. Ass'n, Inc. v. Watt*, 694 F.2d 1310, 1316, 1318–19 (D.C. Cir. 1982) (holding that new law, by itself, warranted modification of an injunction); *Williams v. Atkins* 786 F.2d 457, 463 (1st Cir. 1986) (holding modification is warranted when the "legal predicate for [a] consent decree has changed so substantially[,] that [the decree] is now without a foundation in current federal law and it in part conflicts with federal law"); *Sweeton v. Brown*, 27 F.3d 1162, 1166–67 (6th Cir. 1994) (en banc) (reversing the district court and remanding with instructions to dissolve injunctions imposed by a consent decree based on a change in the law); *Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1187 (7th Cir. 1994) (lifting of injunction

was "mandated" by Congress's amendment to the Clayton Act).

*Id.*

The Ninth Circuit also rejected the state's position that the court needed to conduct "a broad, fact-intensive inquiry into whether altering an injunction is equitable, even if the legal duty underlying the injunction has disappeared." *Id.* at 715–16.  While *Rufo* engaged in such analysis, that case involved "a consent decree, which is a contract-like judgment that turns on the parties' expectations." *Id.* at 716 (citing *Rufo*, 502 U.S. at 378).  "Accordingly, the weight of authority confirms that, once the legal basis for an injunction has been removed, such that the law now permits what was previously forbidden, it is an abuse of discretion to not modify the injunction." *Id.* at 717.

The appellate court next explained how "[t]his caselaw accords with our understandings of equity." *Id*.

> As one leading commentator noted over 100 years ago, a "court of equity never grants an injunction on the notion that it will do no harm to the defendant if he does not intend to commit the act in question. An injunction will not issue unless some positive reasons are shown to call for it." 2 William Blackstone, Commentaries on the Laws of England and Additional Notes by Archibold, et al., *282 n.13 (George Sharswood ed. 1893) (discussing when injunctions may issue to prevent "waste"). So, even if an injunction appears to "do no harm to the defendant," it necessarily does so by its nature. *Id*. And, accordingly, we should require a "positive" basis for its imposition. *Id*. . . . Compelling EPA, then, to continue to adhere to an injunction based on a legal duty that has since disappeared is a harm in and of itself. EPA is now under no legal duty—besides the court's injunction—to promulgate a federal plan by the now-stayed November 2019 date. Because EPA's new regulations have removed the legal basis for the court's deadline, we hold it an abuse of discretion to deny EPA's request for relief under Rule 60(b)(5).

*Id.*  The Ninth Circuit ultimately concluded:

> We therefore hold that when a district court reviews an injunction based solely on law that has since been altered to permit what was

> previously forbidden, it is an abuse of discretion to refuse to modify the injunction in the light of the changed law. As courts, we are empowered to decide "[c]ases" and "[c]ontroversies." *See* U.S. Const. art. III, § 2. We have no power to pick and choose what law the parties before us ought to follow. Yet that is exactly what a court does when it refuses to modify an injunction that relies on a superseded law.

*Id*. at 718–19 (alterations in original).

## IV.    Analysis

### A.    Is it equitable after *Dobbs* to maintain the injunction as it currently stands?

There is little dispute that there has been a significant change in the law underpinning the injunction.  Again, this Court issued its order based on the reasoning that:

> Act 620 is unconstitutional on its face under *Casey* and *WWH*. The Act would create substantial obstacles for women seeking abortion in Louisiana without providing any demonstrated benefit to women's health or safety. Any marginal health benefits would be dramatically outweighed by the obstacles the restriction erects to women's access to their constitutional right to abortion. The Act therefore cannot withstand the scrutiny mandated by *WWH*. Plaintiffs have succeeded on the merits of their constitutional claim that the Act violates the Fourteenth Amendment.

(Doc. 274 at 114.)  But, as explained above, *Dobbs* overruled *Roe* and *Casey*, declared the former "egregiously wrong from the start" and the latter not entitled to deference under *stare decisis*, and established a rational basis review for state abortion laws. *Dobbs*, 142 S. Ct. at 2243, 2283–84. None of this is seriously disputed, nor can it be.

Thus, the only question before the Court is whether this significant change in the law brought by *Dobbs* makes continued maintenance of the injunction detrimental to the public interest and inequitable so as to justify an order vacating it.  In short, the Court finds that it does.

Again, all of the above authority recognizes that the Court acts properly in vacating an injunction when the legal basis for that injunction has been eliminated—and, indeed, the Court

likely abuses its discretion when it doesn't. *See Rufo*, 502 U.S. at 388 ("But modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent."); *Horne*, 557 U.S. at 450 ("In applying this flexible approach, courts must remain attentive to the fact that federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation."); *California*, 978 F.3d at 717 (" "Accordingly, the weight of authority confirms that, once the legal basis for an injunction has been removed, such that the law now permits what was previously forbidden, it is an abuse of discretion to not modify the injunction."); *Prudential Ins. Co. of Am.*, 413 F.3d at 907–08 (8th Cir. 2005) (affirming dissolution of earlier injunction in light of subsequent Supreme Court decision); *Theriault v. Smith*, 523 F.2d at 602 ("It may well be unreasonable to require defendant, for the indefinite future, to abide by a consent decree based upon an interpretation of law that has been rendered incorrect by a subsequent Supreme Court decision."); *Freeman*, 971 F. Supp. at 974 ("[A] rising constitutional floor-or . . . a falling constitutional ceiling may make modifications necessary." (alterations in original) (quoting *NAACP v. Seibels*, 20 F.3d at 1504)). Again, as *Moore's Federal Practice* explained:

> At least in institutional-reform **and other forms of public-interest litigation,** "modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent." ***And when no consent decree is involved, a change in the law that permits what was previously forbidden is sufficient by itself to warrant modification of the injunction; the court need not consider other factors such as the balance of harms.***

12 Moore's Federal Practice - Civil § 60.47[2][b] (2022) (emphasis added). Thus, there is little doubt that Rule 60(b)(5) serves as the proper basis for vacating the injunction under these circumstances.

Indeed, as Defendant argued in briefing, this circuit and many others have vacated laws dealing with abortion in light of *Dobbs*. *See Whole Women's Health v. Young*, 37 F.4th 1098, 1099–1100 (5th Cir. 2022) (vacating injunction of Texas law regulating disposal of embryonic and fetal tissue remains that had previously been found to run afoul of *Casey* and remanding the case "for further proceedings consistent with *Dobbs*"); *SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga.*, 40 F.4th 1320, 1324, 1326 (11th Cir. 2022) (vacating pre-*Dobbs* injunction on law prohibiting post-fetal-heartbeat abortions; finding that pre-*Dobbs* decisions that "apply any heightened review or state that any provision of the Constitution protects a right to abortion" were abrogated by *Dobbs*; and finding that, post-*Dobbs*, the law had a rational basis); *Planned Parenthood S. Atl. v. Wilson*, No. 21-1369, 2022 WL 2900658, at *1 (4th Cir. July 21, 2022) (granting, in light of *Dobbs*, motion for summary vacatur of prior affirming of preliminary injunction of fetal heartbeat law). While these cases did not expressly reference Rule 60(b)(5), the equitable power of the Court in handling these injunctions remains the same, and each decision strongly supports the conclusion that maintaining this injunction is no longer equitable.

The Court also agrees with Defendant that the authority relied upon by Plaintiffs for the proposition that a change in the law is insufficient is either distinguishable or unpersuasive. *See Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990) (holding, with respect to motion to reconsider ruling on motion for attorneys fees, that Rule 60(b)(5) did not apply because that rule "provides relief from a final judgment when it is no longer equitable that the judgment shall have prospective application" and because "the judgment in this case ha[d] no prospective effect." (citation omitted), *holding modified on other grounds by Hess v. Cockrell*, 281 F.3d 212 (5th Cir. 2002)); *Hernandez v. Thaler*, 630 F.3d 420, 430 (5th Cir. 2011) ("Direct review of Hernandez's federal habeas petition concluded in December 2006 when this court denied his first motion for a

COA. Hernandez cannot use Rule 60(b)(6) to circumvent the principle that when the Supreme Court announces a new rule of law and applies it to the parties before it, the new rule is given retroactive effect only in cases that are still open on direct review."); *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 386 (5th Cir. 2012) (affirming, in a professional negligence case, the granting of Rule 60(5) motion, made under a different clause of that rule than the one at issue here (which allows a court to relieve a party from a final judgment if it is "based on an earlier judgment that has been reversed or vacated") and stating in dicta that the "qualification" that "Rule 60(b)(5) does not authorize relief from a judgment on the ground that the *law* applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding" was "not implicated here").  None of these cases involve a situation like the present one: where a permanent injunction was entered enjoining the enforcement of a State's public law and the legal foundation of that injunction was later gutted by a subsequent Supreme Court decision such that maintenance of the injunction was no longer equitable.

In sum, the legal foundation of the Court's injunction banning the enforcement of Act 620 is no longer present.  Thus, maintaining the injunction, as currently constituted, is no longer equitable, and the legislation must be re-evaluated in light of the law currently in effect.

### B.  Can the injunction stand after *Dobbs*?

Accordingly, the Court must determine whether Act 620 withstands rational basis review following *Dobbs*.  In short, the Court finds that it does.

The Court begins with the standard succinctly summarized by *Dobbs*:

> States may regulate abortion for legitimate reasons, and when such regulations are challenged under the Constitution, courts cannot substitute their social and economic beliefs for the judgment of legislative bodies. That respect for a legislature's judgment applies even when the laws at issue concern matters of great social significance and moral substance.

> A law regulating abortion, like other health and welfare laws, is entitled to a strong presumption of validity. It must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests. These legitimate interests include respect for and preservation of prenatal life at all stages of development; the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the prevention of discrimination on the basis of race, sex, or disability.

*Dobbs*, 142 S. Ct. at 2283–84 (cleaned up).

Considering this standard, Act 620 easily passes muster. Indeed, this Court previously determined the statute did in fact pass rational basis review, for the following reasons:

> But in considering the similar Mississippi statute, the Court of Appeals in [*Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 453 (5th Cir. 2014),] held that,

>> [O]ur court in [*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott* ("*Abbott II*"), 748 F.3d 583 (5th Cir. 2014), *reh'g & reh'g en banc denied*, 769 F.3d 330 (5th Cir. 2014)] has addressed the rational basis of a virtually identical law, and we are bound by that precedent to accept that the Mississippi statute has a rational basis. . . . [W]e … held that the Texas regulation satisfied a rational basis review because it was based on the rational speculation that it would 'assist in preventing patient abandonment' by the doctor providing the abortion. We see no basis for distinguishing the rational basis of [Mississippi] H.B. 1390. None of the other rationales discussed in *Abbott [II]* was state specific, and each would be equally applicable to H.B. 1390. Accordingly, we hold that H.B. 1390 satisfies the rational basis review upon our binding precedent in *Abbott [II]*.

> *Currier*, 760 F.3d at 454 (footnote omitted).

This Court is likewise bound by this precedent and therefore finds that Act 620 passes rational basis review. Accordingly, Defendant's Motion for Partial Summary Judgment is granted in part. The issue

> of medical reasonableness – as it pertains to the issue of Act 620's
> rational review – is decided as a matter of law.

(Doc. 138 at 18.)  The same reasoning applies here to warrant upholding Act 620.

Plaintiffs complain that the facts on the ground have changed and that this justification is no longer viable.  Plaintiffs urge that there is a near complete ban on abortions in this state and that consequently Act 620 will serve no purpose.

The Court rejects this argument for two reasons.  First, as Defendant points out, Plaintiffs provide virtually no evidence in support of their factual assertions about how many abortions are or are not conducted in Louisiana, and where those abortions take place.  Thus, even if the Court were inclined to delve into the facts, it would not have an adequate basis for doing so.

But, second, and more fundamentally, Plaintiffs' position runs afoul of *Dobbs*.  There, the Supreme Court again requires only that the law "be sustained if there is a rational basis on which the legislature *could have thought* that it would serve legitimate state interests." *Dobbs*, 142 S. Ct. at 2284.  *Dobbs* specifically lists as such interests "the protection of maternal health and safety" and the "preservation of the integrity of the medical profession." *Id.* Given the "strong presumption of validity" and the *Dobbs* court's admonition that "courts cannot 'substitute their social and economic beliefs for the judgment of legislative bodies,' " *id.* at 2284, this Court cannot find that Act 620 lacks a rational basis.

For all these reasons, the Court finds that it is no longer equitable to maintain the permanent injunction in this case in the post-*Dobbs* legal regime.  As a result, the injunction will be vacated.

## V.    Conclusion

Accordingly,

27

**IT IS ORDERED** that the *Defendant's Renewed Emergency Rule 60(b) Motion to Vacate Permanent Injunction* (Doc. 501) is **GRANTED**.  The permanent injunction (Doc. 274, 275) entered in this case baring the enforcement of Act 620 and its regulations is hereby **VACATED**.

Signed in Baton Rouge, Louisiana, on <u>November 14, 2022</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**